1  DOWNEY BRAND LLP
   TORY E. GRIFFIN (Bar No. 186181)
2  MEGHAN M. BAKER (Bar No. 243765)
   555 Capitol Mall, Tenth Floor
3  Sacramento, CA  95814-4686
   Telephone: (916) 444-1000
4  Facsimile: (916) 444-2100
   mbaker@downeybrand.com
5  tgriffin@downeybrand.com

6  Attorneys for Plaintiffs GAULT SOUTH BAY, INC.
   and BOB GAULT

7

8                     UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

| | |
|---|---|
| 12 GAULT SOUTH BAY, INC., a California Corporation, BOB GAULT, and CANDICE POLICH, | Case No.  5:07-cv-04659-RS |
| 13 | **POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION** |
| 14 Plaintiff, | |
| 15 v. | |
| 16 DEPUY ORTHOPAEDICS, INC., an Indiana Corporation, | Date for Hearing on Application for TRO: TBD |
| 17 Defendant. | |
| 18 | |

19                        I. **INTRODUCTION**

20        Plaintiffs Bob Gault ("Gault") and Gault South Bay Inc. ("GSB") (collectively, the

21  "Plaintiffs") move ex parte for a temporary restraining order enjoining Defendant DePuy

22  Orthopaedics Inc. ("DePuy") from litigating a second action filed by DePuy in the United States

23  District Court, District of Indiana, (the "Indiana Action"), in deference to the earlier-filed action

24  pending before this Court (the "California Action").   (*See* Civil L.R. 7-10 (ex parte application)

25  and 65-1 (temporary restraining order).  Plaintiffs respectfully request that the Court also issue

26  DePuy an order to show cause fixing the time for a hearing on the motion for a preliminary

27  injunction. (*See id.* at 65-1(c) (stating that a temporary restraining order must be issued with an

28  order to show cause fixing the time for a hearing on a motion for a preliminary injunction).

876212.2                                    1

1    The principal issue in this lawsuit concerns the enforceability of a non-compete provision

2    in GSB's sales representative agreement with DePuy (the "Agreement").  The Agreement, which

3    was terminated on August 24, 2007, by DePuy, contains a broad prohibition against GSB and

4    Gault's ability to compete with DePuy for one year.  Because such non-compete provisions are

5    clearly unenforceable under well-established California law, Gault and GSB brought an action in

6    Santa Clara County Superior Court seeking a declaration that the non-compete provision is void

7    and unenforceable under California law.

8    DePuy's response to the California Action was improper.  Over two weeks later, on

9    September 11, 2007, DePuy filed the Indiana Action, which asserts multiple compulsory

10    counterclaims against Gault and GSB, including a claim for breach of the non-compete provisions

11    in the Agreement.  But DePuy did not stop there.  DePuy simultaneously moved the Indiana court

12    for a temporary restraining order and preliminary injunction to enjoin Gault and GSB from

13    violating the non-compete provisions in the Agreement.  A hearing on DePuy's TRO application

14    has been scheduled for hearing on September 17, 2007, at 1:30 p.m. Eastern time.

15    Allowing the Indiana Action to proceed simultaneously with the California Action would

16    not only be inefficient, expensive, and a waste of judicial resources, but would also allow DePuy

17    to circumvent the choice of forum by Plaintiffs and the well-established procedural mechanisms

18    available to DePuy to change venue.  Unsurprisingly, the federal courts have developed a rule to

19    address the precise situation presented by duplicative filings: the "first-to-file" rule, which

20    recognizes that courts should give priority to a earlier-filed action over a later-filed action

21    involving substantially the same issues and parties.  In order to effectuate the first-to-file rule,

22    district courts are empowered to enjoin a party from litigating a later-filed action pending the

23    determination of the first-filed action, thereby effectively staying litigation in the later-filed action

24    and allowing the first-filed action to precede to an orderly resolution.

25    Utilizing its powers under the first-to-file rule, this court's immediate intervention is

26    necessary to ensure that Plaintiffs are not immediately and irreparably prejudiced by being forced

27    to defend themselves in Indiana and potentially being subject to a temporary restraining order,

28    under threat of contempt and in contravention of California law, while they seek to unravel the

876212.2                                         2

1   procedural mess created by DePuy.  Absent this court's immediate intervention, DePuy threatens

2   to undermine the jurisdiction of this court.  If DePuy feels Plaintiffs wrongfully filed this action in

3   California, it must resort to the proper procedural mechanisms to raise its arguments – a motion to

4   dismiss under Rule 12(b)(3) or a motion to transfer venue.  DePuy should not under any

5   circumstances be permitted to ignore or undermine the jurisdiction of this court by racing to an

6   Indiana court to seek a preemptive order.

7   ## II. <u>BACKGROUND</u>

8         DePuy, an Indiana corporation, designs, manufactures and distributes orthopedic devices

9   and supplies including hip, knee, extremity, trauma, orthobiologics, and operating room products.

10  (Cal. Compl. ¶ 4, attached as Ex. 1 to Griffin Decl., filed herewith.)  Gault serves as the President

11  and sole shareholder of GSB, a California corporation formed for the business purpose of

12  allowing Gault to perform sales activities on behalf of DePuy.  (*Id.* ¶ 1.)

13  **A.    <u>The Agreement</u>**

14        In November of 2006, GSB entered into the Agreement with DePuy whereby GSB agreed

15  to act as the independent sales representative for DePuy products in a designated California

16  territory.  (*Id.* ¶¶ 1, 4, 8.)  The Agreement states that until the end of the contract term,

17  purportedly December 31, 2007, GSB will not "sell any competitive products or engage in any

18  competitive activities without obtaining DePuy's prior written consent." (*Id.* ¶ 9; *see also* Ex. A

19  to Cal. Compl. at 1.)  The Agreement defines competitive activities as "selling, offering for sale,

20  promoting, receiving or soliciting orders for goods or services similar, or intended for similar use

21  as those offered by DePuy or any other J&J company, or accepting remuneration or any kind

22  from any person providing such goods and services." (Cal. Compl. ¶ 9; *see also* Ex. A to Cal.

23  Compl. at 1.)

24        The Agreement also contains an extremely broad covenant not to compete following

25  termination of the Agreement.  (Cal. Compl. ¶ 11.)  It provides, in pertinent part:

26              Contractor agrees that, if this Agreement is terminated for any
               reason, that for a period of one (1) year after termination of the
27              Agreement, that neither Contractor nor any of its employees,
               independent contractors, or agents who were involved in the
28              representation or sale of the Products, will, without DePuy's prior

876212.2                                    3

1  written consent, accept a position with a competitor of DePuy,
   which involves direct or indirect sales of competitive products in
2  the same Territory or sales to the same accounts covered by the
   Agreement or engage, directly or indirectly in the sales of
3  competitive products or in competitive activities as described
   above.

4
   (*Id.*; *see also* Exhibit A to Cal. Compl. at 7.)

5
       In addition, the Agreement also includes a provision that purports to limit the ability of

6
   GSB employees and independent contractors (such as Gault himself) from competing with

7
   DePuy, notwithstanding the fact that they are not parties to the Agreement.  (Cal. Compl. ¶ 12.)

8
   The Agreement states, in pertinent part:

9
           Contractor may hire its own employees or contract with other
10         individuals or entities to assist Contractor in the performance of its
           duties hereunder, which employees, individuals or entities shall be
11         solely Contractor's responsibility and shall be compensated solely
           by Contractor.  Contractor agrees that any such employees,
12         individuals or entities will not be subject to DePuy's approval or
           supervision, but will be bound by the same DePuy and Johnson &
13         Johnson guidelines, policies and procedures, the non-compete
           provisions and all other provisions of this agreement to which
14         Contractor is subject.

15 (*Id.* ¶ 12; *see also* Exhibit A to Cal. Compl. at 2.)

16     Effective August 24, 2007, DePuy terminated the Agreement with GSB, thereby raising

17 issues as to whether the non-compete provisions were valid and enforceable against GSB and/or

18 Gault.  (Cal. Compl. ¶¶ 10, 14-615, 17-19.)

19 **B.     The California Action**

20     On August 24, 2007, Gault and GSB filed the California Action against DePuy in the

21 Superior Court of California, County of Santa Clara.  (Griffin Decl., Ex. 1.)  The California action

22 seeks a judicial determination regarding the validity and enforceability of the non-compete

23 provisions in the Agreement.  (Cal. Compl. ¶ 18.)  Specifically, Plaintiffs ask that the Court

24 declare the non-compete provisions void, invalid and contrary to California law due to the strong

25 public policy against agreements restricting an individual from employment in his or her chosen

26 trade or profession.  (*Id.* ¶ 14 (citing Cal. Business and Professions Code Section 16600)).  In

27 particular, Plaintiffs ask the Court declare all restrictive covenants in the Agreement void as an

28 improper restraint of trade under Business and Professions Code Section 16600.  (*Id.* (citing

876212.2                                          4

1    *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881 (1998)).

2    On September 10, 2007, DePuy removed the California Action to the United States

3    District Court, Northern District of California, on the basis of diversity jurisdiction.   (*See* Griffin

4    Decl. Ex. 2.)

5    **C.   The Indiana Action**

6    On September 11, 2007, two weeks after Plaintiffs filed the California Action, DePuy

7    filed the Indiana Action against Gault and GSB in the United States District Court, District of

8    Indiana. (Griffin Decl. Ex. 3.)  The Indiana Action alleges that Gault and GSB breached the

9    covenants not to compete in the Agreement by soliciting customers on behalf of a competitor

10   before and after the termination of the Agreement.   (*See* Ind. Compl. ¶¶ 19-20, 23, 30, attached to

11   Griffin Decl. as Ex. 3.)  DePuy seeks monetary damages and injunctive relief preventing Gault

12   and GSB from further competing with DePuy.   (*Id.* ¶¶ 31, 37, 42, 46, 53.)

13   On the same day that DePuy filed the Indiana Action, it also filed a Motion for a

14   Temporary Restraining Order and Preliminary Injunction. (Griffin Decl. Ex. 4.)  The motion

15   requests that the Indiana Court issue a temporary restraining order enjoining GSB and Gault: (1)

16   from engaging, directly or indirectly, in the sale or offer of products competitive with those they

17   formerly offered on behalf of DePuy, in any territory serviced by GSB or Gault, or to any

18   accounts formerly serviced by GSB or Gault; and (2) from assisting or furthering violations of the

19   restrictive covenants of other current or former DePuy sales representatives.   (*Id.* at 3.)

20   As of the date of filing this motion, the Indiana court has not issued an order on the

21   Motion for a Temporary Restraining Order and a Preliminary Injunction. (Griffin Decl. ¶ 6.)

22   However, the Indiana court has scheduled a hearing on the motion for Monday, September 17,

23   2007, at 1:30 p.m. Eastern time. (*Id.* ¶ 6 & Exhs. 5-6.)

24   Unless this Court enjoins DePuy from prosecuting the Indiana Action before the

25   scheduled hearing, Plaintiffs will be forced to litigate the same action in multiple jurisdictions,

26   and could be enjoined from competing with DePuy in California in direct contravention of well-

27   established California law.  Moreover, this court's ability to properly resolve the issues before it

28   may be substantially undermined.

876212.2
5

### III.  LEGAL ARGUMENT

**A.    Legal Standard: The First to File Rule**

The first-to-file rule recognizes that courts should give priority to a prior-filed action over a later-filed action. *See generally Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). The rule reflects principles of federal comity and "sound judicial administration, which "indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit," as "no purpose would be served by proceeding with a second action." *Id.*

To effectuate the first-to-file rule, district courts are empowered to enjoin parties from litigating a later filed action pending the determination of the first-filed action, thereby forcing the defendant in the first filed-action to litigate its claims as compulsory counterclaims. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) (stating that "[w]hen a district court has jurisdiction over all parties involved, it may enjoin later-filed actions") (citing *United States v. Oregon*, 657 F.2d 1009, 1016 n. 17 (9th Cir.1981); *Seattle Totems Hockey Club, Inc. v. International Hockey League*, 652 F.2d 852, 854-56 (9th Cir.1981); *Northwest Sports Enterprises v. Seattle Totems Hockey Club*, 457 U.S. 1105 (1982); *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185-86 (1952)). For an injunction to issue, the first and later-filed actions need not be identical; the issues and parties only need be "substantially similar." *See Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1097 (N.D.Cal. 2006) (citation and quotation marks omitted).

The decision to enjoin a later-filed action rests within the sound discretion of the district court. *Id.* (citing *Del Mar Avionics v. Quinton Instruments Co.*, 645 F.2d 832, 836 (9th Cir.1981) (observing that an order enjoining a later-filed action "will rarely be overturned")). The Ninth Circuit has opined that the district court should exercise that discretion "with a view to the dictates of sound judicial administration," which may include consideration of the convenience of the parties and witnesses. *Pacesetter Systems*, 678 F.2d at 95-97. Nevertheless, "absent the showing of balance of convenience . . . or special circumstances," "the first suit should have priority . . . ." *First City National Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.

1    1989); *accord Pacesetter Systems*, 678 F.2d at 95 (stating that the first to file rule "should not be

2    disregarded lightly").

3    **B.    The Court Should Enjoin the Later-Filed Indiana Action Because the California
         Action Is Substantially Similar and Sound Judicial Administration Dictates that the**

4    **California Action Be Decided First**

5            Given the timeline of events and the similarities of the parties and issues, the prerequisites

6    for the application of the first-to-file rule are easily satisfied.  Plaintiffs filed and served the

7    California Action first, more than two weeks before DePuy filed the Indiana Action.  In addition,

8    all of the parties in the Indiana Action are also parties to the California Action: DePuy brought the

9    Indiana Action against Gault and GSB, both of whom are Plaintiffs in the California Action, and

10   conversely, Gault and GSB brought the California Action against DePuy, the Plaintiff in the

11   Indiana Action.

12           Furthermore, the issues raised in the California and Indiana Actions are strikingly similar.

13   The central issues raised in the two Actions concern the validity and enforceability of the

14   restrictive covenants in the Agreement.  Although the actions involve different claims,

15   (declaratory relief and unfair business practices in the California Action, and breach of contract,

16   unfair business practices, and business torts in the Indiana Action), the crux of all the claims

17   concerns the restrictive covenants in the Agreement.[1]  Specifically, the California Action seeks a

18   declaration on behalf of Gault and GSB that these covenants are invalid, while the Indiana Action

19   seeks to enforce these covenants against Gault and GSB.  Clearly, the claims by DePuy in the

20   Indiana Action would be considered compulsory counterclaims in the California Action, as both

21   arise out of the same transaction or occurrence.

22           Finally, enjoining the Indiana Action pending the resolution of the California Action

23   would further the goal of sound judicial administration because Plaintiffs, who are California

24   residents, and most, if not all, of the third party witnesses are located in California, not Indiana.

25   Indeed, the Agreement at issue involves sales territory located in Santa Clara County, California.

26

27   [1] Under the first-to-file rule, a court treats claims for declaratory relief the same as other types of claims.  *See
     Pacesetter Systems*, 678 F.2d at 95 n.1 (rejecting argument by defendant that a declaratory relief claim should be

28   subjected to a "more searching review").

876212.2                                                  7

1    In addition, DePuy contends that Gault and GSB have sold competing products in California, not

2    Indiana.  As a result, Indiana has little, if any connection to this lawsuit, other than serving as the

3    principle place of business for DePuy.

4         In sum, the California Action should be given priority over the Indiana Action because (1)

5    Plaintiffs filed the California Action first, (2) all of the parties in the Indiana Action are parties to

6    the California Action, (3) the issues raised by the Complaints in the California and Indiana

7    Actions are substantially similar, and (4) sound judicial administration dictates that the California

8    Action proceed to judgment before the Indiana Action.

9         At a minimum, therefore, the court should enjoin DePuy from litigating the Indiana

10    Action until (1) judgment has been entered in the California Action, or (2) this court issues an

11    order granting DePuy's anticipated motion to dismiss based on Rule 12(b)(3), or motion to

12    transfer venue, whichever occurs earlier.  If this court ultimately denies DePuy's anticipated

13    motion to dismiss or transfer, then DePuy should be enjoined from litigating the Indiana Action at

14    least until judgment has been entered in this action.

15    **C.**    **Any Decision Based on the Forum-Selection Clause in the Contract is Premature,**
**and the Enforceability (or Lack Thereof) Must be Decided by This Court in the First**

16    **Instance**

17         As justification for its later-filed Indiana action, DePuy has suggested that Plaintiffs filed

18    the instant action in the wrong forum, citing to the forum-selection clause in the Agreement

19    designating Indiana as the proper forum.  In essence, DePuy simply presumed this forum-

20    selection clause to be valid, and based on that presumption made the unilateral decision to file suit

21    in Indiana.  By doing so, DePuy not only improperly ignored the proper procedure to raise the

22    issue before this court, but also presumed too much with respect to the validity of the forum-

23    selection clause.

24         Courts have discretion to refuse enforcement of a forum-selection clause where transfer

25    would "contravene a strong public policy of the forum in which the suit is brought whether

26    declared by statute or by judicial decision."  *M/s Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15,

27    92 S.Ct. 1907 (1972); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000); *see*

28    *also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).  Moreover, even in the

1    face of a forum-selection clause, a different forum may be proper based on equally important

2    factors. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30, 108 S.Ct.2239 (1988).

3    "The existence of a forum-selection clause cannot preclude the district court's inquiry into the

4    public policy ramifications of transfer decisions." *Red Bull Assocs. v. Best Western Int'l, Inc.*,

5    862 F.2d 963, 967 (2d Cir. 1988).

6         The Ninth Circuit's decision in *Jones* is instructive. In *Jones*, a franchise agreement

7    required a California franchisee to file any suit against the franchisor in Pennsylvania. The Ninth

8    Circuit held that the forum-selection clause was unenforceable in California because it violated a

9    strong public policy in California to protect California franchisees from the expense,

10    inconvenience and possible prejudice of litigating in a non-California venue. *Id.*

11         In *Jones*, the Ninth Circuit articulated ten factors to be weighed in deciding a motion for

12    transfer of venue: (1) the location where the relevant agreements were negotiated and executed;

13    (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4)

14    the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of

15    action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the

16    availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the

17    ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the

18    relevant public policy of the forum state, if any. *Id.* at 498-99.

19         All but one of these factors – the ninth one – weighs in favor of this court maintaining

20    jurisdiction over the disputes between the parties. The Agreement at issue was negotiated in

21    California. California courts are most familiar with California law, which applies here

22    notwithstanding the Indiana choice of law provision in the contract. *The Application Group, Inc.*

23    *v. The Hunter Group, Inc.*, 61 Cal.App.4th 881, 894-905 (1998) (validity of non-compete

24    provision governed by California law notwithstanding Maryland choice of law provision in

25    contract); *Davis v. Advanced Care Technologies, Inc.*, 2007 WL 2288298 (E.D. Cal. August 8,

26    2007) (validity of non-compete provision governed by California law notwithstanding

27    Connecticut choice of law provision in contract). Plaintiffs chose California as the proper forum.

28    Plaintiffs only do business in California, and DePuy does business throughout California. All the

876212.2
     9

1    contacts relevant to the dispute are in California, and all of the witnesses and other evidence to

2    support Plaintiffs' claims or DePuy's counterclaims are located in California, inasmuch as the

3    Agreement was to be performed entirely in California. The cost to litigate in Indiana would be

4    much greater, again because all the witnesses are in California. The many non-party California

5    witnesses could not be compelled to appear and testify at trial in Indiana. Fed. R. Civ. P.

6    45(b)(2). And, finally, California has a strong public policy against non-compete agreements and

7    has consistently protected its employees from unlawful non-compete agreements. *See*

8    *Application Group*, 61 Cal.App.4th at 899-901.

9         At least one federal court looking at similar factors has concluded that an action for breach

10    of a non-compete agreement ought to be transferred from Connecticut to California,

11    notwithstanding the forum-selection clause designating Connecticut as the proper forum. *United*

12    *Rentals, Inc. v. Pruett*, 296 F.Supp.2d 220, 228-233 (D. Conn. 2003). "Given the lack of

13    mutuality of interest and the one-sided nature of this Employment Agreement, the parties'

14    contractual choice of forum is outweighed by the powerful convenience and fairness factors

15    suggesting California as the appropriate forum." *Id.* at 233-34.

16         Moreover, Plaintiffs have valid arguments that the forum-selection clause is unenforceable

17    because it violates the rule that such clauses be fundamentally fair. *See Carnival Cruise Lines,*

18    *Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct 1522 (1991). One of the factors to determine whether

19    forum-selection clauses are fundamentally unfair is whether the forum was selected by one party

20    as a bad faith tactic to discourage pursuit of legitimate claims by another. *Id.* Here, there can be

21    no reasonable argument that DePuy was or is unaware of California's strong public policy against

22    non-compete agreements. In light of this, DePuy includes a forum-selection clause as part of its

23    form contract to California distributors in the hope that Indiana courts will apply Indiana, not

24    California law. Courts in California have universally applied California law when dealing with

25    the validity of a non-compete agreement such as the one at issue here, *even in the face of a*

26    *contractual choice of law provision*, on the ground that California has a "materially grater

27    interest" in the outcome of the issue. *See Application Group*, 61 Cal.App.4th at 894-905; *Davis,*

28    2007 WL 2288298, at *7. Indeed, DePuy's effort to ignore this court's jurisdiction, run to

876212.2

10

1   Indiana federal court, and ignore California law in an attempt to obtain a temporary restraining

2   order and preliminary injunction enforcing the non-compete agreement against Plaintiffs,

3   demonstrates not only DePuy's ploy to avoid clear California law but also the fundamental

4   unfairness of the forum-selection clause in the contract at issue.

5          Finally, Plaintiffs have strong arguments that DePuy should be estopped from enforcing

6   the forum-selection clause here, given its history of ignoring such clauses when it has sued its

7   competitors for hiring its sales representatives. (*See* Griffin Decl., Ex. 7, at ¶ 16 (DePuy filed suit

8   in Indiana against former sales representatives, notwithstanding paragraph 16 of its own contract,

9   which required actions to be brought in New Jersey).)

10         Accordingly, it is simply improper to conclude that the forum-selection clause in the

11  Agreement is the beginning and the end of the issue, and that DePuy should be permitted to haul

12  Plaintiffs into federal court in Indiana over the same dispute.  These issues should all be

13  addressed through the proper procedure in this court – a motion to dismiss under Rule 12(b)(3) or

14  a motion to transfer venue.  DePuy should not be permitted to sidestep this process and ignore the

15  serious questions as to the validity of the forum-selection clause by filing an action in Indiana and

16  seeking a temporary restraining order there.

17                                    **IV.  CONCLUSION**

18         Plaintiffs respectfully request that this court immediately issue a temporary restraining

19  order enjoining DePuy from litigating the Indiana Action until (1) judgment has been entered in

20  the California Action, or (2) this court issues an order granting DePuy's anticipated motion to

21  dismiss based on Rule 12(b)(3), or motion to transfer venue, whichever occurs earlier.  If this

22  court ultimately denies DePuy's anticipated motion to dismiss or transfer, then DePuy should be

23  enjoined from litigating the Indiana Action at least until judgment has been entered in this action.

24  Plaintiffs further request that this court issue DePuy an order to show cause fixing the time for a

25  hearing on the motion for a preliminary injunction.

26

27

28

876212.2

11

1

DATED:  September 12, 2007          DOWNEY BRAND LLP

2

3                                              By:_____/s/ Tory E. Griffin_____

4                                                     TORY E. GRIFFIN
                                                     Attorney for Plaintiffs
5                                              GAULT SOUTH BAY, INC. and BOB GAULT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

876212.2                                              12