**EXHIBIT 4**

FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

07 SEP 11  PM 2: 11

| | | |
|---|---|---|
| DEPUY ORTHOPAEDICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| GAULT SOUTH BAY, INC. and | ) | 3:07CV0425 RM |
| ROBERT GAULT, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiff DePuy Orthopaedics, Inc. ("DePuy") respectfully requests that the Court enjoin
Gault South Bay, Inc. ("Gault South Bay") and Robert Gault ("Gault") from engaging in
competitive activities in breach of Gault South Bay's contractual agreement with DePuy; in
violation of their duties of care and loyalty; and in violation of unfair competition law, during the
pendency of this litigation. In support of this Motion, DePuy would show the Court:

1.    DePuy entered a valid sales representative agreement with Gault South Bay for
the sale of DePuy products to specific accounts and in a specific territory, dated November 22,
2006.

2.    DePuy has honored all of its contractual obligations toward Gault South Bay.

3.    The contract with Gault South Bay was terminated effective August 24, 2007,
because, among other things, Gault South Bay and its president/controlling shareholder, Gault,
while still within a contractual and agency relationship with DePuy, solicited DePuy customers
in Gault South Bay's territory to purchase products of Biomet, Inc. ("Biomet"), a competitor of

DePuy; solicited DePuy sales representatives to work for Biomet; and arranged for a DePuy sales representative to meet with a Biomet distributor.

4.    On information and belief, Gault took a position with Biomet effective September 4, 2007, and will continue to engage in these activities unless enjoined by this Court.

5.    As is set forth more fully in the accompanying Memorandum of Law, the contract between DePuy and Gault South Bay contains a duty to devote best efforts to selling DePuy products and not to engage in any competitive activities during the time of the appointment, and further contains restrictions on competition for one year after termination "for any reason." Under the terms of the contract, Gault South Bay and its employees and agents, including Gault, are obligated not to engage, directly or indirectly, in the sale of competitive products in its former territory or to its former accounts.

6.    As is set forth more fully in the accompanying Memorandum of Law, Gault South Bay and Gault have already engaged in the sale of competitive products in this former territory and to former accounts, and will continue to do so absent Court intervention.  This conduct will likely take the form of direct sales of competitive goods by Gault South Bay and/or Gault to former accounts in the former individual territory previously assigned to Gault South Bay, and/or improper assistance of other Biomet sales representatives in the sale of competitive goods in the former territory and to former accounts.

7.    As is more fully set forth in the accompanying Memorandum of Law, the restrictions on competition contained in Gault South Bay's contract are reasonable as to the scope and time of the restriction and are not counter to public policy; therefore, they are enforceable under Indiana law and DePuy is likely to succeed on the merits of its underlying claims for breach of the restrictive covenants.

2

8.    As is set forth more fully in the accompanying Memorandum of Law, every act of breach of the restrictive covenants by Gault South Bay or Gault results in damage to DePuy's goodwill, reputation, and customer base for which there is no suitable remedy at law.

9.    As is set forth more fully in the accompanying Memorandum of Law, neither Gault South Bay nor Gault will suffer any irreparable injury from this injunction.

10.    As is more fully set forth in the accompanying Memorandum of Law, granting an injunction would not disturb the public interest but would further the public interest in supporting the enforcement of contractual obligations.

11.    This Motion is supported by the accompanying Memorandum of Law; an Affidavit of Bradford C. LaPoint, Territory General Manager for sales with DePuy; an Affidavit of Jake Daneman, a DePuy Sales Representative; an Affidavit of Kendall Millard; and a copy of DePuy's contract with Gault South Bay.

WHEREFORE, Defendant DePuy Orthopaedics, Inc. requests that the Court issue a temporary restraining order enjoining Gault South Bay and Gault: (1) from engaging, directly or indirectly, in the sale or offer for sale of products competitive with those they formerly offered on behalf of DePuy, in any territory formerly serviced by Gault South Bay or Gault or to any of the accounts formerly serviced by Gault South Bay or Gault; and (2) from assisting or furthering violations of the restrictive covenants of other current or former DePuy sales representatives.

DePuy further requests that the Court conduct a hearing on DePuy's Motion for a Preliminary Injunction as soon as possible, and that the Court ultimately convert the requested Temporary Restraining Order into a Preliminary Injunction.

3

Respectfully submitted,

By:

Dwight D. Lueck (14294-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: dlueck@btlaw.com

D. Michael Anderson (20770-53)
BARNES & THORNBURG LLP
600 1st Source Bank Center
100 North Michigan
South Bend, IN 46601-1632
Telephone: (574) 233-1171
Facsimile: (574) 237-1125
E-mail: mike.anderson@btlaw.com

*Attorneys for Plaintiff,*
*DePuy Orthopaedics, Inc.*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

|  |  |  |
|---|---|---|
| DEPUY ORTHOPAEDICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| GAULT SOUTH BAY, INC. | ) | **3:07CV0425 RM** |
| and ROBERT GAULT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff DePuy Orthopaedics, Inc. ("DePuy") manufactures and sells orthopedic products throughout the United States. For many years, it has relied on Defendants Gault South Bay, Inc. ("Gault South Bay") and Robert Gault ("Gault") to serve as a sales representative of DePuy products to accounts in an area just south of San Francisco, California. In order to protect their respective interests, DePuy and Gault South Bay have executed sales representative agreements. The most recent became effective January 1, 2007 (the "Gault Agreement").

In late summer 2007, DePuy learned that Gault was recruiting sales representatives and customers on behalf of Biomet, Inc. ("Biomet"), a competitor of DePuy. DePuy terminated the Gault South Bay Agreement for cause. DePuy has now learned that Gault South Bay, through Gault, is breaching the non-compete obligations under the Gault Agreement without cause by soliciting surgeons and hospitals covered by that non-compete for Biomet. Based on these facts, DePuy moves for a temporary restraining order and a preliminary injunction enjoining Gault South Bay, and all those in active concert and participation with it, from violating the ongoing non-competition obligations to DePuy under the Gault Agreement.

As established below, DePuy is likely to prevail on its claims against Gault South Bay and Gault. Defendants' conduct will cause irreparable harm to DePuy, while refraining from such conduct would not cause legitimate harm to the Defendants and would not disserve the public interest. For these reasons, DePuy respectfully requests that the Court enter a temporary restraining order and preliminary injunction to preserve the *status quo ante* in this dispute, barring the Defendants from individually or jointly violating the covenant not to compete imposed by their agreement with DePuy.

I.    **BACKGROUND**

A.    **DePuy and Gault**

DePuy manufactures and distributes orthopedic implants and operating room products, among others. (Affidavit of Bradford C. LaPoint ("LaPoint Aff."), submitted herewith, at ¶ 3). These include devices for use in the reconstruction or replacement of shoulders, knees and hips. (*Id.*) DePuy offers these products through sales representatives located throughout the country. (*Id.* at ¶ 4). These sales representatives are DePuy's primary point of contact with the physicians and hospitals that use DePuy's products. (*Id.* at ¶ 5). DePuy provides the sales representative with training, product literature, and a defined territory. (*Id.* at ¶ 6).

The sale of orthopedic products is driven by personal contact and interaction. Sales representatives have to educate customers about product features, assist customers in understanding the proper use of the products, and often observe surgeries first hand to ensure that the products are being used appropriately. (*Id.* at ¶ 7). As a result of this interaction, the sales representatives' relationship with a customer will often drive the customer's purchasing decision. (*Id.* at ¶ 9). As a result, most sales representative contracts, including those used by DePuy, include restrictions on competition by the sales representative in the event the contract is

- 2 -

terminated. (*Id.* at ¶ 10). DePuy has suffered losses of customers and sales in a matter of days or weeks when departing sales representatives have failed to honor such restrictions. (*Id.* at ¶ 11).

In November 2006, DePuy entered into a contract with Gault South Bay (through its president, Mr. Gault) appointing it as sales representative for the sale of specified lines of DePuy products to specific accounts located in and around the South Bay area near San Francisco, California. (LaPoint Aff. at Ex. A (hereinafter "Gault Agreement" at 1). The appointment was to last until December 31, 2007, absent termination for cause by either party. (*Id.* at 5). The Gault Agreement contained a description of accounts that constituted Gault South Bay's territory and the commissions to be paid on sales. (*Id.* at 1-2 and Appendices A; LaPoint Aff. at ¶¶ 12-13).

Under the Gault Agreement, DePuy is required to pay the sales representative a commission as specified in the contract on completed sales. (*See* Gault Agreement at 3 and Appendices B & C). DePuy has met every one of these obligations. (LaPoint Aff. ¶ 16).

The Agreement imposes certain obligations on the Defendants. It requires the sales representative to refrain from engaging "in any competitive activities without obtaining DePuy's prior written consent" during the time that the appointment is in effect (Gault Agreement at 1). The contracts define "competitive activities" as "selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services." (*Id.*) Biomet, for example, is a competitor of DePuy. (LaPoint Aff., ¶ 17). Working as a sales representative of Biomet or soliciting customers or sales representatives on their behalf would require engaging in competitive activities. (*Id.*). DePuy has never given any of the Defendants permission, written or otherwise, to work for Biomet.

(*Id.*, ¶ 26). The Gault Agreement also imposes a duty of best efforts on Gault South Bay to sell

DePuy Products. (Gault Agreement, ¶ 1).

The Gault Agreement states that if it is terminated "for any reason," for a period of "one

(1) year after termination" the contracting Defendant (including, Gault South Bay and "any of its

employees, independent contractors, or agents who were involved in the representation or sale"

of DePuy products):

> "will not, without DePuy's prior written consent, accept a position with a
> competitor of DePuy, which involves direct or indirect sales of competitive
> products in the same Territory or sales to the same accounts covered by the
> Agreement."

(Gault Agreement at 7). Accepting a sales position with Biomet for the same accounts would fall

squarely within this prohibition.

The Defendants agreed that the noncompetition provisions in the contracts are "a material

inducement to DePuy to enter into this Agreement, are reasonable and necessary to protect the

interests of DePuy, and will result in material and irreparable harm to DePuy if breached."

(Gault Agreement at 2).

The Defendants have both further agreed "that Indiana law shall govern and interpret this

appointment … [and] that any and all jurisdiction and/or venue for any claims or matters related

to or arising from this Agreement shall … reside in the state and/or federal courts located in the

state of Indiana." (Gault Agreement at 9). The interpretation and enforcement of forum selection

clauses are procedural issues to be decided under federal law, *see Manetti-Farrow, Inc. v. Gucci

Am. Inc.*, 858 F.2d 509, 513 (9th Cir. 1988), and courts in California have held that the very

forum selection clause at issue in this case is valid and should be enforced. *See e.g., E-Z Dun

Services, LLC v. DePuy Orthopaedics, Inc.*, No. 06-3266, Slip Op. at 2-4 (C.D. Cal. June 29,

2006) (enforcing DePuy's forum selection clause and transferring case from the Central District

of California to the Northern District of Indiana).  The *E Z Dun* opinion is submitted herewith as

Exhibit A to the Affidavit of Kendall Millard ("Millard Aff.").

B.    **Gault's Misconduct**

Gault actively engaged in activities to assist DePuy's competitor, Biomet, while still

under contract with DePuy by soliciting DePuy customers and sales representatives for Biomet.

(LaPoint Aff. ¶¶ 18-24).  Gault contacted several of his customers in mid-August 2007, while

still a DePuy sales representative, and solicited them to purchase Biomet products rather than

DePuy products. (*Id.* ¶ 21-24).

On or about August 14, 2007, Mr. Gault solicited a surgeon Stanford University Medical

Center who at the time was a customer Gault South Bay's territory who purchased DePuy

products through Mr. Gault. (LaPoint Aff. ¶ 21).  Mr. Gault solicited him to purchase Biomet

products rather than the competing DePuy products, and promised him that Biomet would make

him his own implant if he agreed to switch to Biomet products. (*Id.*).

On or about August 14, 2007, Mr. Gault told a surgeon at Los Gatos Hospital that he was

moving to Biomet, and solicited him to purchase Biomet products rather than DePuy products.

(*Id.* ¶ 22).  On or about August 21, 2007, Mr. Gault left a voicemail for another surgeon at

Stanford University Medical Center, asking him to write a letter stating that the surgeon was

discontent with DePuy's services and products.  (*Id.* ¶ 23).  Then on or about August 30, 2007,

Mr. Gault met with three doctors at Los Gatos Hospital and solicited them to purchase Biomet

products in competition with DePuy products. (*Id.* ¶ 24).

Further, in mid-August, 2007, prior to Mr. Gault's termination, encouraged two other

DePuy customers to purchase Biomet products instead of DePuy products, and promised them

benefits if they did so. (Affidavit of Jake Daneman ("Daneman Aff."), submitted herewith, at

- 5 -

15).  Mr. Gault promised one of them a consultant contract with Biomet if he switched to Biomet products.  (*Id.*).  Mr. Gault promised the other doctor a position as a developer with Biomet if he switched to Biomet products. (*Id.  See also Id.* ¶¶ 15-16).  Mr. Gault also told Mr. Daneman he had a plan to convert his current DePuy customers to Biomet products, and that he intended to bring specific DePuy customers to Biomet, including several doctors at Stanford University Medical Center.  (*Id.* ¶ 6).

Mr. Gault, while still under contract with DePuy, also actively solicited DePuy sales representatives to leave DePuy and work for Biomet.  On or about August 12, 2007, Mr. Gault called Mr. Daneman and told him told he was working on bringing a team of DePuy sales representatives to work at Biomet with him, and asked Mr. Daneman to join them. (Daneman Aff. ¶¶ 4-7).  He also indicated that he had already spoken to DePuy sales representatives Craig Fry and Candice Polich and asked them to work for Biomet. (*Id.*)  Mr. Gault also arranged a meeting between Mr. Daneman and a Biomet distributor to discuss working for Biomet. (*Id.* ¶¶ 6 & 8).  Mr. Gault solicited sales representatives John Angeleri and Mike Olmes to work for Biomet as well.  (LaPoint Aff. ¶¶ 20).

Mr. Gault told Mr. Daneman that a Biomet lawyer would call him to "take care of things." (Daneman Aff. ¶ 11).   Then on August 24, 2007, Tory Griffin, a lawyer from the law firm of Downy Brand LLP with whom Mr. Daneman had no prior relationship, and had never expressed interest in having Downey Brand LLP represent him, solicited Mr. Daneman to sign a representation agreement so he could "get you out of your non-compete."  (*Id.* ¶ 12).  Mr. Daneman did not agree to have Mr. Griffin represent him.  (*Id.*).

On August 20, 2007, DePuy sent Mr. Gault a letter providing notice that DePuy was terminating the Gault Agreement effective August 24, 2007, because of Mr. Gault's activities

- 6 -

assisting Biomet. (LaPoint Aff. ¶ 27). Mr. Gault has accepted a position, to begin September 4, 2007, involving the sale of products competitive to those of DePuy in the same territory assigned to him by DePuy and to the same accounts assigned to him by DePuy in violation of his continuing contractual obligations with DePuy. (*Id.* ¶ 28-29).

On August 24, 2007, notwithstanding the mandatory Indiana forum selection clause in the Agreement, Gault and Gault South Bay Inc. filed a lawsuit in California Superior Court, Santa Clara County, seeking to declare the non-compete void and unenforceable and claiming unfair competition.[1]    The nature of the relief requested in the Defendants' complaint in California establishes that Gault's responsibilities with Biomet will include the sale and offer for sale of goods that are competitive with DePuy's at accounts covered by Gault South Bay's contract with DePuy. (*See* Exhibit B to Millard Aff., First Cause of Action, requesting declaration "that the non-compete provisions contained in the Agreement are void and unenforceable."). This complaint was removed to federal court.

On or about September 10, 2007, Gault arranged and held a meeting with DePuy customers in Gault South Bay's territory for the purpose of soliciting those customers to purchase products from Biomet rather than from DePuy. (LaPoint Aff. ¶ 29). Thus, there is reason to believe that Gault South Bay, through Mr. Gault, will make sales of competitive products in violation of their contracts with DePuy unless enjoined by this Court.

---

[1] Gault's filing of a lawsuit in the wrong forum seeking a declaration that the covenant not to compete he signed only a few months ago is invalid does not stand in the way of this Court granting the injunctive relief sought by DePuy. *See, e.g., Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1987) (declaratory judgment lawsuit, even if first filed, yields to second-filed substantive lawsuit). Moreover, on September 10, 2007, DePuy removed the improperly filed California state court action to federal court, (*See* Notice of Filing of Notice of Removal, *Gault South Bay v. DePuy*, No. 107CV092906 (N.D. Cal. Sept. 10, 2007)), and will, in due course, seek transfer of that action to this Court in light of the Indiana forum selection clause.

II.    **ARGUMENT**

The grant of a preliminary injunction is entrusted to the Court's discretion. To obtain an injunction, DePuy must show: (1) a reasonable likelihood of success on the merits of its claim; (2) that there is no adequate remedy at law such that irreparable harm would occur if the injunction is not granted; (3) that the risk of harm to DePuy outweighs any risk of irreparable harm to the Defendants if the injunction is granted; and (4) that the injunction will not disserve the public interest. *JAK Productions, Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993). DePuy can and will show that the contracts have been materially breached by the Defendants, as well as that the restrictions on competition are reasonable and enforceable. Indiana law controls these contracts, and Indiana has recognized that the harm to goodwill caused by competition from former sales representatives is irreparable and supports injunctive relief. There is no likelihood of irreparable harm to the Defendants, as they have contractually agreed they have no rights of any kind in the territories provided by DePuy. (Gault Agreement at 1-2). Finally, injunctive relief will not disserve the public interest, but follows the recognized public policies of Indiana. As a result, DePuy requests the Court grant a preliminary injunction to prevent violation of the restrictions on competition in both of the Defendants' contracts.

A.    **DePuy is Likely to Succeed on its Claims.**

Defendants have breached the non-competition obligations of the Gault Agreement by ceasing to act on DePuy's behalf and, instead, representing Biomet in the sale of orthopedic products to their DePuy accounts. (Compl. ¶¶ 15-31; LaPoint Aff. ¶¶ 21-29). This is an incurable material breach, as it would be impossible for the Defendants to correct their failure to act in the best interests of DePuy. Indeed, the Defendants acknowledged and agreed that the non-compete provisions in the Agreements "are a material inducement to DePuy to enter into

- 8 -

this Agreement, are reasonable and necessary to protect the interests of DePuy, and will result in material and irreparable loss to DePuy if breached." (Gault Agreement at 2). Gault's solicitation of DePuy customers and sales representatives while still ostensibly working for DePuy, and Gault's anticipated participation in the sale of Biomet products to their former DePuy accounts are clear violations of the covenants not to compete they executed. (*See* Gault Agreement at 1 & 7). Consequently, DePuy is likely to prevail on the merits of its breach of contract claim. *Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556, 561 (Ind. 1983).

Indiana law applies per the parties' agreement. (Gault Agreement at 9). Further, it is reasonable that an Indiana-based company like DePuy would want its sales representatives governed by the law of the state where it is based. *See Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1082 (7th Cir. 1986) (reversing district court's determination that choice of (New York) law provision in contract containing no-competition condition was invalid and contrary to (Illinois) public policy where employer "was reasonable in wanting all of its legal obligations with its employers to be governed by the law of the headquarters state if the employees could be persuaded to agree").

Indiana enforces covenants not to compete to the extent "they are reasonable with respect to the covenantee, the covenantor and the public interest." *Licocci*, 445 N.E.2d at 561. Determining reasonableness is a question of law, made in light of all the facts and circumstances of a particular case. *Id.* The focus in determining reasonableness is whether the covenant is designed to protect the legitimate interests of the covenantee and only restrains the covenantor's actions to an extent reasonably necessary to protect these interests. *Norlund v. Faust*, 675 N.E.2d 1142, 1154 (Ind. App. 1997). Under all of the facts and circumstances of the current case, the one year prohibitions on contact with former customers and accounts imposed by the

covenants at issue are reasonably necessary to protect DePuy's legitimate business interests. *Id.* As a result, the covenants are enforceable.

### 1. The Covenants Protect DePuy's Goodwill, A Legitimate Business Interest.

The first factor in assessing the reasonableness of a covenant not to compete is whether the covenantee is seeking to protect its legitimate business interests. Indiana, and federal courts applying Indiana law, have long held that the protection of goodwill can justify a restrictive covenant where the covenantor is a salesperson or otherwise has direct customer contact. *See Licocci*, 445 N.E.2d at 562, 564 (Ind. 1983); *Miller v. Frankfort Bottle Gas, Inc.* 202 N.E.2d 395, 564 (Ind. App. 1964); *Smart Corp. v. Grider*, 650 N.E.2d 80, 83 (Ind. App. 1993); *Barnes Group v. O'Brien*, 591 F. Supp. 454, 460 (N.D. Ind. 1984). The Defendants were both salesperson representatives for DePuy. DePuy's experience has been that individual sales representatives can quickly convert accounts if they fail to honor covenants not to compete. These risks to DePuy's legitimate business interests are precisely why DePuy puts such covenants into its contracts, as do DePuy's competitors.

### 2. The Restrictions Imposed are Reasonably Necessary to Protect DePuy's Legitimate Business Interests.

Restrictive covenants must also be reasonable in terms of duration and the scope of activities restricted. *Norlund*, 675 N.E.2d at 1155. The covenants here only restrict the Defendants from using for one year the information and goodwill that DePuy paid them handsomely to develop for DePuy. Gault South Bay was given a territory defined by particular accounts, and the covenants are limited to those accounts. These are the customers and institutions that DePuy has developed goodwill with through the efforts of the Defendants, and the areas in which DePuy is susceptible to harm from the Defendants' conduct. As such, the

- 10 -

restrictions are only as broad as DePuy's legitimate business interests in its goodwill and customer base in these territories.

Indiana expressly permits covenants that are defined in terms of the present customers of a company. *See Norlund*, 675 N.E.2d at 1155 (enjoining contact with all optometrists who had referred patients to an ophthalmologist while the defendant-covenantee was employed); *see also Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 213 (Ind. App. 1982) (enjoining contact with all present clients of an accounting firm, but refusing to include past or prospective clients). DePuy only desires to restrict the Defendants' actions with those customers they have worked with on behalf of DePuy, not every customer of DePuy or any account not specified in the Defendants' contracts. This is a narrowly tailored restriction, and very reasonable.

Finally, the one year term is reasonable in light of the close contacts that the Defendants have developed as sales representatives. Indiana courts, and federal courts applying Indiana law, have found restraints that are as long or even much longer to be reasonable. *See Licocci*, 445 N.E.2d at 562-563(one year); *Norlund*, 675 N.E.2d at 1155 (two years); *Smart Corp.*, 650 N.E.2d at 84 (three years); *JAK Productions, Inc.*, 986 F.2d at 1090 (one year); *Barnes Group, Inc.*, 591 F.Supp at 460 (two years). No unique harm is posed to the public welfare such as to make these restrictive covenants unreasonable. Therefore, the restrictions are reasonable as to the covenantee, covenantor and public interest, and DePuy is likely to succeed in enjoining Gault and Gault South Bay under Indiana law.

The fact that Gault signed the Gault Agreement as President of Gault South Bay does not immunize him from liability. Upon information and belief, Gault is the sole owner of Gault South Bay and was its principal salesperson. The plain language of the Gault Agreement prohibits "indirect sales" of competitive products to the Defendants' former accounts. Any such

attempt, would, moreover, run afoul of Indiana's prohibition on subterfuges designed to comply literally with a restriction on competition while practically eliminating the prohibition. *McCart v. H & R Block, Inc.*, 470 N.E.2d 756, 762 (Ind. App. 1984) (husband's conduct violated restriction in contract entered into by wife); *see also Norlund*, 675 N.E.2d at 1155 (financing and assistance of daughter optometrist's practice violated father optometrist's restrictive covenant).

Thus, at a minimum, DePuy is entitled under the contract to a period of one year after the termination of the Agreement in which the Defendants will not directly make sales of Biomet or other competitive products to their former customers, will not use their advantages and contacts to further the sale of Biomet or other competitive products by anyone to their former customers, and will otherwise refrain from direct or indirect competition with DePuy for the sale of orthopedic products to their former customers. Barring Court intervention, Gault's new position with Biomet will almost certainly run afoul of this clause.

B.    **Failing to Enter an Injunction Will Cause DePuy Irreparable Harm.**

Gault has indicated an intent to sell competitive products for Biomet in Gault South Bay's former DePuy territory. Evidence establishes that Gault South Bay, though Gault, has already materially breached its covenant not to compete by soliciting customers and sales representatives in its territory while still under contract with DePuy (LaPoint Aff., ¶¶ 19-27; Daneman Aff., ¶¶ 4, 6, 10, 14-16), and has continued to do so since the Agreement was terminated (*Id.* ¶ 29). As the Seventh Circuit noted in *JAK Productions, Inc.*, "[w]henever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete, irreparable injury occurs and injunctive relief is appropriate." 986 F.2d at 1084 (internal citations omitted). DePuy would suffer the same irreparable harm where the breach is by an independent contractor. (LaPoint Aff., ¶ 30). Indiana courts have noted the impossibility

- 12 -

of addressing harm to goodwill, business reputation and the ability to compete through damages. *See Unger*, 771 N.E.2d at 1246; *see also Norlund*, 675 N.E.2d at 1150 (calling efforts to calculate damages "pure speculation" and concluding that "an injunction against the prohibited behavior is the most efficient way to lift the burden of that harm from the shoulders of the employer who contracted so as not to suffer such harm."). If the Defendants are allowed to compete with DePuy in violation of their contracts, they will have an advantage that is rightfully DePuy's, one that money cannot restore. Thus, DePuy will suffer irreparable harm if an injunction is not granted.

C.    **The Balance of Hardships Favors DePuy.**

DePuy does not seek to stop the Defendants from working for Biomet entirely. DePuy does not even seek to stop them from working in California. DePuy merely seeks to ensure that these Defendants are not allowed to convert DePuy's goodwill developed on behalf of DePuy and for DePuy's products at particular accounts. As was stated in *Barnes Group*, "[t]hough the loss of any income is indeed a misfortune to anyone of any age, the opportunity to earn a livelihood is not closed" to the Defendants. 591 F. Supp. at 461.

Further, Gault, through Gault South Bay, expressly agreed "to waive any defense to entry of a preliminary injunction prohibiting ... violation of the noncompetitive provisions of this Agreement based on the existence of an adequate remedy at law by DePuy." (Gault Agreement at 7). These Defendants chose to contract with DePuy, knowing that termination would impose certain restrictions on their conduct for a year, and that DePuy would seek to preliminarily enjoin them from violating those restrictions if necessary. DePuy seeks nothing more than to hold them to their contract for which DePuy paid them handsomely. The balance of hardships favors DePuy and the entry of a preliminary injunction.

D.    **An Injunction Will Serve the Public Interest.**

Indiana law recognizes the public's interest in ensuring the freedom of contract and enforcing valid contractual obligations. *Trimble v. Ameritech Pub., Inc.*, 700 N.E.2d 1128, 1129 (Ind. 1998); *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind. App. 1999). There is no countervailing interest in permitting individuals to sell orthopedic equipment. The injunction sought by DePuy will not halt the provision of vital services or otherwise impair any public interest. As a result, this factor also favors the entry of the requested injunction.

III.    **CONCLUSION**

For the foregoing reasons, DePuy respectfully requests the Court issue a preliminary injunction restricting the Defendants from violating their covenants not to compete contained in the Gault Agreement while the present lawsuit is pending before this Court. Specifically, DePuy requests the Defendants be enjoined, directly or indirectly, from undertaking any action to further the sales efforts of Biomet in Gault South Bay's former territory, including but not limited to the direct sale or offer for sale of competitive Biomet products to any former customers of the Defendants, and calling on DePuy customers previously assigned to Gault South Bay.

Respectfully submitted,

By:

Dwight D. Lueck (14294-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: dlueck@btlaw.com

- 14 -

D. Michael Anderson (20770-53)
BARNES & THORNBURG LLP
600 1st Source Bank Center
100 North Michigan
South Bend, IN  46601-1632
Telephone:  (574) 233-1171
Facsimile:  (574) 237-1125
E-mail:  mike.anderson@btlaw.com

*Attorneys for Plaintiff,*
*DePuy Orthopaedics, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above was served upon the following attorneys/parties

of record by facsimile and by depositing the same in the United States mail, properly addressed,

postage prepaid, on the 11th day of September, 2007.

Tory E. Griffin, Esq.
Matthew J. Weber, Esq.
Downey Brand LLP
555 Capitol Mall, Tenth Floor
Sacramento, CA 95814-4686

Robert G. Gault, Registered Agent
Gault South Bay, Inc.
18917 Cabernet Drive
Saratoga, CA 95070

INDS02 DDL 918776v1