**EXHIBIT 1**

P-SEND, ENTER, JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**ENTERED**
CLERK, U.S DISTRICT COURT
JUNE 29, 2006
JUN 29 2006
CENTRAL DISTRICT OF CALIFORNIA
BY MG DEPUTY

**CIVIL MINUTES - GENERAL**

Case No.: CV 06-3266-RGK (RZx)                     Date: June 28, 2006

Title: *E-Z DUN SERVICES, LLC, et al. v. DEPUY ORTHOPAEDICS, INC., et al.*

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Present: The Honorable   R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:        **(IN CHAMBERS) DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST THROUGH FOURTH CLAIMS FOR RELIEF
FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, TO
TRANSFER (DE 8)**

## I.   FACTUAL BACKGROUND

This case concerns a contract for the sale of medical equipment. In 1996, Johnson & Johnson formed a relationship with Plaintiff E-Z Dun Services, LLC ("E-Z Dun"),[1] and the two businesses entered into a contract whereby E-Z Dun would sell Johnson & Johnson's medical equipment. Two years later, Johnson & Johnson acquired DePuy Orthopaedics, Inc. ("DePuy" or "Defendant"), an Indiana corporation,[2] and it was through DePuy that Johnson & Johnson would conduct its future business with E-Z Dun. DePuy and E-Z Dun entered into a new written agreement (the "Agreement"), on October 27, 2003. The Agreement appointed E-Z Dun as the Southern California sales representative for DePuy's orthopedic and medical equipment, which E-Z Dun would sell to healthcare providers in Los Angeles County and Orange County. On or about March 28, 2006, DePuy terminated the Agreement with E-Z Dun. DePuy justified its termination of the Agreement on the grounds that E-Z Dun was wrongfully engaged in "direct billing" of DePuy's clients. E-Z Dun alleges this termination constitutes a material breach of the Agreement and that it has performed all covenants, conditions, and promises required to be performed by the terms of the Agreement with DePuy.

E-Z Dun and Ezold (collectively "Plaintiffs") filed this suit in Los Angeles Superior Court on April 25, 2006, alleging the following causes of action against DePuy and its employee Mathew Kraskouskas: (1) breach of contract; (2) breach of good faith and fair dealing; (3) quantum meruit; (4) unjust enrichment; and

---

[1]Plaintiff Andrew Ezold ("Ezold") is E-Z Dun's president.

[2]DePuy regularly conducts business in the County of Los Angeles and maintains an office in Hawthorne, California.

Exhibit "1" Page 4

(5) slander per se. DePuy removed this action to federal court on May 26, 2006, on the basis of diversity jurisdiction.

On June 5, 2006, Defendant filed the current Motion to Dismiss for Improper Venue or, in the alternative, to Transfer Venue to the Northern District of Indiana. Defendant alleges that the Agreement contains a forum selection clause that designates Indiana as the sole forum in which any action arising out of the Agreement may be brought. For the reasons stated below, the Court grants Defendant's Motion to Transfer the action to the Northern District of Indiana.

## II.    JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(3), a motion to dismiss pursuant to a forum selection clause may be brought as a motion to dismiss for improper venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In deciding such a motion, the Court is permitted to consider facts outside the pleadings and need not accept the pleadings as true. *Id.* Pursuant to 28 U.S.C. § 1406(a), a court may also transfer an action if it is filed in a district other than that designated in the forum selection clause.

Interpretation and enforcement of contractual forum selection clauses are procedural issues to be decided under federal law. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Under federal law, a forum selection clause is presumptively valid and should not be set aside unless the party challenging the clause shows that enforcement would be unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A court may repudiate a forum selection clause if: (1) the clause was included as a result of fraud or overreaching; (2) enforcement of the clause will deprive the opposing party of its day in court; or (3) public policy strongly favors resolution in the forum in which the suit is brought. *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1992).

## III.    DISCUSSION

Defendant contends that, pursuant to the forum selection clause in the Agreement, this Court is not the proper venue for Plaintiffs' case. For the reasons set forth below, the Court agrees with Defendant and orders this case transferred to the District Court for the Northern District of Indiana.

### A.    Enforcement of the Forum Selection Clause

As stated by the California Court of Appeal, "[t]he existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998). Furthermore, the Supreme Court has held that, absent some evidence establishing fraud or serious inconvenience, a forum selection clause included in a bargained-for contract should be respected as the expressed intent of the parties. *See M/S Bremen*, 407 U.S. at 12-19.

Here, the Agreement's forum selection clause states:

> Both parties agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside [sic] in the state and/or federal courts located in the state of Indiana.

(Mtn. to Dismiss, Ex. 1, p. 6).

Exhibit "1" Page 5

The parties do not dispute that the Agreement was fairly executed. Therefore, the outward manifestations of the parties indicate mutual consent to the terms included in the Agreement.

Plaintiffs bear the "heavy burden of proof" to show that enforcement of the forum selection clause is unreasonable. *See Richards* 135 F.3d at 1294. Plaintiffs argue that: (1) the forum selection clause is unreasonable because Indiana has no connection to the current litigation; (2) Plaintiff Ezold's financial hardship may prevent him from litigating in Indiana; and (3) enforcement of the forum selection clause would contravene the public policy of California. The Court disagrees with Plaintiffs, and finds enforcement of the forum selection clause to be reasonable.

### 1.    The Forum Selection Clause is Reasonable

Unless Plaintiffs can demonstrate that the forum selection clause in the Agreement is "unreasonable," the forum selection clause will be enforced. The unreasonableness test in the Ninth Circuit requires a party to show "evidence of fraud, undue influence, overweening bargaining power, or such serious inconvenience" as to deprive that party of its day in court. *See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d at 273, 280 (9th Cir. 1984).

Plaintiffs contend that enforcement of the forum selection clause would be unreasonable because the execution and performance of the Agreement took place in California and many material witnesses and pieces of evidence are located in California. However, these facts alone do not render the forum selection clause unreasonable. *Id.* at 281. Even if Plaintiffs' claim that there is no reasonable connection between Indiana and the present dispute was true,[3] the Court would find the forum selection clause to be reasonable, absent a stronger showing of inconvenience to the Plaintiffs. *Id.* at 280. Moreover, Plaintiffs have failed to present any evidence of fraud, undue influence, overwhelming bargaining power, or serious inconvenience showing that they are being deprived of their day in court. *Id.* As such, Plaintiffs have failed to show that the forum selection clause is unreasonable.

### 2.    An Unsupported Possibility of Financial Hardship Does Not Constitute Grave Inconvenience

Plaintiff Ezold also alleges that he may be unable to litigate in Indiana due to financial hardship, and thus enforcement of the forum selection clause would be unreasonable. (Ezold Decl., ¶ 13). However, Ezold provides no evidence to support this allegation. An unsupported allegation of possible financial hardship is not sufficient evidence that the party challenging the forum selection will be deprived its day in court. *Pelleport Investors*, 741 F.2d at 281. Thus, the Court finds that Ezold's assertion of financial hardship, without more, is insufficient to warrant a California venue.

### 3.    Enforcement of the Forum Selection Clause Does Not Contravene Public Policy

Plaintiffs further contend that enforcement of the forum selection clause would contravene California's public policy. California courts have routinely upheld contractual forum selection clauses that require California plaintiffs to litigate in out-of-state venues. *Hopkinson v. Lotus Devel. Corp.*, 1995 WL 381888 at *4 (N.D. Cal. June 20, 1995) (*citing Flake v. Medline Indus., Inc.*, 1995 U.S. Dist. LEXIS 4972 (E.D. Cal. Jan. 12, 1995); *Lifeco Servs. Corp. v. Superior Court*, 222 Cal. App. 3d 331 (1990)). "Although California has an interest in protecting the rights of resident plaintiffs, the designated forum state has an

---

[3]Plaintiffs ignore the substantial connection between Indiana and this dispute. DePuy is an Indiana corporation with its corporate headquarters in Indiana. The DePuy products sold by E-Z Dun under the Agreement were designed in, manufactured in, and shipped from Indiana.

Exhibit "1" Page 6

equal interest in regulating a resident corporation's activities and ensuring that contractual agreements are enforced." *Hopkinson*, 1995 WL 381888 at *4.

Here, Indiana has an interest in regulating its resident corporation, and California courts in the past have respected such interests when coupled with a forum selection clause such as the one in the Agreement. *See Lifeco Servs. Corp.*, 222 Cal. App. 3d at 335. In addition, as the Agreement specifically states that Indiana law will apply, it is reasonable to have an Indiana court hear this case. (Mtn. to Dismiss, Ex. 1, p. 6.) Thus, the Court finds that enforcing the forum selection clause in the Agreement does not contravene the public policy of California.

Plaintiffs chose to engage in business with an Indiana corporation and signed a contract with an Indiana forum selection provision. By doing so, they accepted the provision and cannot now deem it "unreasonable" or "arbitrary." Plaintiffs have not met the "heavy burden of proof" required to show that enforcement of the forum selection clause would be unreasonable. Thus, the Court finds that enforcement of the forum selection provision in the Agreement is reasonable.

### B.    Transfer, Rather Than Dismissal, is Warranted

In light of the Court's findings above, Plaintiffs' case must either be dismissed for improper venue or transferred to a proper venue pursuant to the forum selection clause. When a Rule 12(b)(3) motion is granted on the basis of a forum selection clause, transfer is generally favored in order to avoid statute of limitations problems and the cost and inconvenience of filing a new action. *See Minnette v. Time Warner*, 997 F.2d 1023, 1026-27 (2d Cir. 1993). Thus, having considered the benefit to judicial economy, the costs of filing a new action, and finding no prejudice to Defendants from a transfer, the Court orders this case transferred to the District Court for the Northern District of Indiana where venue is proper under 28 U.S.C. § 1391(a).

### C.    Plaintiffs' Motion to Remand

Plaintiffs filed a Motion to Remand with the Court on June 13, 2006, with a hearing date of July 3, 2006. As set forth above, this case has been transferred to the District Court for the Northern District of Indiana. As such, Plaintiffs' Motion to Remand is **denied as moot**.

## IV.    CONCLUSION

In light of the foregoing, the Court **grants** Defendant's Motion to Transfer the Action to the District Court for the Northern District of Indiana.

**IT IS SO ORDERED.**

Initials of Preparer _____ /slw

FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

07 SEP 11 PM 2: 11

DEPUY ORTHOPAEDICS, INC.,           )
                                    )
              Plaintiff,            )
                                    )
      v.                            )   Civil Action No.
                                    )
GAULT SOUTH BAY, INC. and           )
ROBERT GAULT,                       )   3:07CV0425 RM
                                    )
              Defendants.           )

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff DePuy Orthopaedics, Inc. ("DePuy") respectfully requests that the Court enjoin

Gault South Bay, Inc. ("Gault South Bay") and Robert Gault ("Gault") from engaging in

competitive activities in breach of Gault South Bay's contractual agreement with DePuy; in

violation of their duties of care and loyalty; and in violation of unfair competition law, during the

pendency of this litigation. In support of this Motion, DePuy would show the Court:

1.      DePuy entered a valid sales representative agreement with Gault South Bay for

the sale of DePuy products to specific accounts and in a specific territory, dated November 22,

2006.

2.      DePuy has honored all of its contractual obligations toward Gault South Bay.

3.      The contract with Gault South Bay was terminated effective August 24, 2007,

because, among other things, Gault South Bay and its president/controlling shareholder, Gault,

while still within a contractual and agency relationship with DePuy, solicited DePuy customers

in Gault South Bay's territory to purchase products of Biomet, Inc. ("Biomet"), a competitor of

**EXHIBIT 2**

DePuy; solicited DePuy sales representatives to work for Biomet; and arranged for a DePuy sales representative to meet with a Biomet distributor.

4.     On information and belief, Gault took a position with Biomet effective September 4, 2007, and will continue to engage in these activities unless enjoined by this Court.

5.     As is set forth more fully in the accompanying Memorandum of Law, the contract between DePuy and Gault South Bay contains a duty to devote best efforts to selling DePuy products and not to engage in any competitive activities during the time of the appointment, and further contains restrictions on competition for one year after termination "for any reason." Under the terms of the contract, Gault South Bay and its employees and agents, including Gault, are obligated not to engage, directly or indirectly, in the sale of competitive products in its former territory or to its former accounts.

6.     As is set forth more fully in the accompanying Memorandum of Law, Gault South Bay and Gault have already engaged in the sale of competitive products in this former territory and to former accounts, and will continue to do so absent Court intervention. This conduct will likely take the form of direct sales of competitive goods by Gault South Bay and/or Gault to former accounts in the former individual territory previously assigned to Gault South Bay, and/or improper assistance of other Biomet sales representatives in the sale of competitive goods in the former territory and to former accounts.

7.     As is more fully set forth in the accompanying Memorandum of Law, the restrictions on competition contained in Gault South Bay's contract are reasonable as to the scope and time of the restriction and are not counter to public policy; therefore, they are enforceable under Indiana law and DePuy is likely to succeed on the merits of its underlying claims for breach of the restrictive covenants.

2

8.    As is set forth more fully in the accompanying Memorandum of Law, every act of breach of the restrictive covenants by Gault South Bay or Gault results in damage to DePuy's goodwill, reputation, and customer base for which there is no suitable remedy at law.

9.    As is set forth more fully in the accompanying Memorandum of Law, neither Gault South Bay nor Gault will suffer any irreparable injury from this injunction.

10.    As is more fully set forth in the accompanying Memorandum of Law, granting an injunction would not disturb the public interest but would further the public interest in supporting the enforcement of contractual obligations.

11.    This Motion is supported by the accompanying Memorandum of Law; an Affidavit of Bradford C. LaPoint, Territory General Manager for sales with DePuy; an Affidavit of Jake Daneman, a DePuy Sales Representative; an Affidavit of Kendall Millard; and a copy of DePuy's contract with Gault South Bay.

WHEREFORE, Defendant DePuy Orthopaedics, Inc. requests that the Court issue a temporary restraining order enjoining Gault South Bay and Gault: (1) from engaging, directly or indirectly, in the sale or offer for sale of products competitive with those they formerly offered on behalf of DePuy, in any territory formerly serviced by Gault South Bay or Gault or to any of the accounts formerly serviced by Gault South Bay or Gault; and (2) from assisting or furthering violations of the restrictive covenants of other current or former DePuy sales representatives.

DePuy further requests that the Court conduct a hearing on DePuy's Motion for a Preliminary Injunction as soon as possible, and that the Court ultimately convert the requested Temporary Restraining Order into a Preliminary Injunction.

3

Exhibit 2 Page 9

Respectfully submitted,

By:

Dwight D. Lueck (14294-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433
E-mail:  dlueck@btlaw.com

D. Michael Anderson (20770-53)
BARNES & THORNBURG LLP
600 1st Source Bank Center
100 North Michigan
South Bend, IN  46601-1632
Telephone:  (574) 233-1171
Facsimile:  (574) 237-1125
E-mail:  mike.anderson@btlaw.com

*Attorneys for Plaintiff,*
*DePuy Orthopaedics, Inc.*

4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEPUY ORTHOPAEDICS, INC.,          )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     Civil Action No.
                                   )
GAULT SOUTH BAY, INC.              )       3:07CV0425 RM
and ROBERT GAULT,                  )
                                   )
          Defendants.              )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff DePuy Orthopaedics, Inc. ("DePuy") manufactures and sells orthopedic products throughout the United States. For many years, it has relied on Defendants Gault South Bay, Inc. ("Gault South Bay") and Robert Gault ("Gault") to serve as a sales representative of DePuy products to accounts in an area just south of San Francisco, California. In order to protect their respective interests, DePuy and Gault South Bay have executed sales representative agreements. The most recent became effective January 1, 2007 (the "Gault Agreement").

In late summer 2007, DePuy learned that Gault was recruiting sales representatives and customers on behalf of Biomet, Inc. ("Biomet"), a competitor of DePuy. DePuy terminated the Gault South Bay Agreement for cause. DePuy has now learned that Gault South Bay, through Gault, is breaching the non-compete obligations under the Gault Agreement without cause by soliciting surgeons and hospitals covered by that non-compete for Biomet. Based on these facts, DePuy moves for a temporary restraining order and a preliminary injunction enjoining Gault South Bay, and all those in active concert and participation with it, from violating the ongoing non-competition obligations to DePuy under the Gault Agreement.

As established below, DePuy is likely to prevail on its claims against Gault South Bay and Gault. Defendants' conduct will cause irreparable harm to DePuy, while refraining from such conduct would not cause legitimate harm to the Defendants and would not disserve the public interest. For these reasons, DePuy respectfully requests that the Court enter a temporary restraining order and preliminary injunction to preserve the *status quo ante* in this dispute, barring the Defendants from individually or jointly violating the covenant not to compete imposed by their agreement with DePuy.

I.    **BACKGROUND**

    A.    **DePuy and Gault**

DePuy manufactures and distributes orthopedic implants and operating room products, among others. (Affidavit of Bradford C. LaPoint ("LaPoint Aff."), submitted herewith, at ¶ 3). These include devices for use in the reconstruction or replacement of shoulders, knees and hips. (*Id.*) DePuy offers these products through sales representatives located throughout the country. (*Id.* at ¶ 4). These sales representatives are DePuy's primary point of contact with the physicians and hospitals that use DePuy's products. (*Id.* at ¶ 5). DePuy provides the sales representative with training, product literature, and a defined territory. (*Id.* at ¶ 6).

The sale of orthopedic products is driven by personal contact and interaction. Sales representatives have to educate customers about product features, assist customers in understanding the proper use of the products, and often observe surgeries first hand to ensure that the products are being used appropriately. (*Id.* at ¶ 7). As a result of this interaction, the sales representatives' relationship with a customer will often drive the customer's purchasing decision. (*Id.* at ¶ 9). As a result, most sales representative contracts, including those used by DePuy, include restrictions on competition by the sales representative in the event the contract is

- 2 -

terminated. (*Id.* at ¶ 10). DePuy has suffered losses of customers and sales in a matter of days or weeks when departing sales representatives have failed to honor such restrictions. (*Id.* at ¶ 11).

In November 2006, DePuy entered into a contract with Gault South Bay (through its president, Mr. Gault) appointing it as sales representative for the sale of specified lines of DePuy products to specific accounts located in and around the South Bay area near San Francisco, California. (LaPoint Aff. at Ex. A (hereinafter "Gault Agreement" at 1). The appointment was to last until December 31, 2007, absent termination for cause by either party. (*Id.* at 5). The Gault Agreement contained a description of accounts that constituted Gault South Bay's territory and the commissions to be paid on sales. (*Id.* at 1-2 and Appendices A; LaPoint Aff. at ¶¶ 12-13).

Under the Gault Agreement, DePuy is required to pay the sales representative a commission as specified in the contract on completed sales. (*See* Gault Agreement at 3 and Appendices B & C). DePuy has met every one of these obligations. (LaPoint Aff. ¶ 16).

The Agreement imposes certain obligations on the Defendants. It requires the sales representative to refrain from engaging "in any competitive activities without obtaining DePuy's prior written consent" during the time that the appointment is in effect (Gault Agreement at 1). The contracts define "competitive activities" as "selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services." (*Id.*) Biomet, for example, is a competitor of DePuy. (LaPoint Aff., ¶ 17). Working as a sales representative of Biomet or soliciting customers or sales representatives on their behalf would require engaging in competitive activities. (*Id.*). DePuy has never given any of the Defendants permission, written or otherwise, to work for Biomet.

- 3 -

(*Id.*, ¶ 26). The Gault Agreement also imposes a duty of best efforts on Gault South Bay to sell DePuy Products. (Gault Agreement, ¶ 1).

The Gault Agreement states that if it is terminated "for any reason," for a period of "one (1) year after termination" the contracting Defendant (including, Gault South Bay and "any of its employees, independent contractors, or agents who were involved in the representation or sale" of DePuy products):

> "will not, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement."

(Gault Agreement at 7). Accepting a sales position with Biomet for the same accounts would fall squarely within this prohibition.

The Defendants agreed that the noncompetition provisions in the contracts are "a material inducement to DePuy to enter into this Agreement, are reasonable and necessary to protect the interests of DePuy, and will result in material and irreparable harm to DePuy if breached." (Gault Agreement at 2).

The Defendants have both further agreed "that Indiana law shall govern and interpret this appointment ... [and] that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall ... reside in the state and/or federal courts located in the state of Indiana." (Gault Agreement at 9). The interpretation and enforcement of forum selection clauses are procedural issues to be decided under federal law, *see Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 513 (9th Cir. 1988), and courts in California have held that the very forum selection clause at issue in this case is valid and should be enforced. *See e.g., E-Z Dun Services, LLC v. DePuy Orthopaedics, Inc.*, No. 06-3266, Slip Op. at 2-4 (C.D. Cal. June 29, 2006) (enforcing DePuy's forum selection clause and transferring case from the Central District

- 4 -

of California to the Northern District of Indiana). The *E Z Dun* opinion is submitted herewith as Exhibit A to the Affidavit of Kendall Millard ("Millard Aff.").

### B.    **Gault's Misconduct**

Gault actively engaged in activities to assist DePuy's competitor, Biomet, while still under contract with DePuy by soliciting DePuy customers and sales representatives for Biomet. (LaPoint Aff. ¶¶ 18-24). Gault contacted several of his customers in mid-August 2007, while still a DePuy sales representative, and solicited them to purchase Biomet products rather than DePuy products. (*Id.* ¶ 21-24).

On or about August 14, 2007, Mr. Gault solicited a surgeon Stanford University Medical Center who at the time was a customer Gault South Bay's territory who purchased DePuy products through Mr. Gault. (LaPoint Aff. ¶ 21). Mr. Gault solicited him to purchase Biomet products rather than the competing DePuy products, and promised him that Biomet would make him his own implant if he agreed to switch to Biomet products. (*Id.*).

On or about August 14, 2007, Mr. Gault told a surgeon at Los Gatos Hospital that he was moving to Biomet, and solicited him to purchase Biomet products rather than DePuy products. (*Id.* ¶ 22). On or about August 21, 2007, Mr. Gault left a voicemail for another surgeon at Stanford University Medical Center, asking him to write a letter stating that the surgeon was discontent with DePuy's services and products. (*Id.* ¶ 23). Then on or about August 30, 2007, Mr. Gault met with three doctors at Los Gatos Hospital and solicited them to purchase Biomet products in competition with DePuy products. (*Id.* ¶ 24).

Further, in mid-August, 2007, prior to Mr. Gault's termination, encouraged two other DePuy customers to purchase Biomet products instead of DePuy products, and promised them benefits if they did so. (Affidavit of Jake Daneman ("Daneman Aff."), submitted herewith, at

- 5 -

15). Mr. Gault promised one of them a consultant contract with Biomet if he switched to Biomet products. (*Id.*). Mr. Gault promised the other doctor a position as a developer with Biomet if he switched to Biomet products. (*Id. See also Id.* ¶¶ 15-16). Mr. Gault also told Mr. Daneman he had a plan to convert his current DePuy customers to Biomet products, and that he intended to bring specific DePuy customers to Biomet, including several doctors at Stanford University Medical Center. (*Id.* ¶ 6).

Mr. Gault, while still under contract with DePuy, also actively solicited DePuy sales representatives to leave DePuy and work for Biomet. On or about August 12, 2007, Mr. Gault called Mr. Daneman and told him told he was working on bringing a team of DePuy sales representatives to work at Biomet with him, and asked Mr. Daneman to join them. (Daneman Aff. ¶¶ 4-7). He also indicated that he had already spoken to DePuy sales representatives Craig Fry and Candice Polich and asked them to work for Biomet. (*Id.*) Mr. Gault also arranged a meeting between Mr. Daneman and a Biomet distributor to discuss working for Biomet. (*Id.* ¶¶ 6 & 8). Mr. Gault solicited sales representatives John Angeleri and Mike Olmes to work for Biomet as well. (LaPoint Aff. ¶¶ 20).

Mr. Gault told Mr. Daneman that a Biomet lawyer would call him to "take care of things." (Daneman Aff. ¶ 11). Then on August 24, 2007, Tory Griffin, a lawyer from the law firm of Downy Brand LLP with whom Mr. Daneman had no prior relationship, and had never expressed interest in having Downey Brand LLP represent him, solicited Mr. Daneman to sign a representation agreement so he could "get you out of your non-compete." (*Id.* ¶ 12). Mr. Daneman did not agree to have Mr. Griffin represent him. (*Id.*).

On August 20, 2007, DePuy sent Mr. Gault a letter providing notice that DePuy was terminating the Gault Agreement effective August 24, 2007, because of Mr. Gault's activities

Exhibit "2" Page 16

assisting Biomet. (LaPoint Aff. ¶ 27). Mr. Gault has accepted a position, to begin September 4, 2007, involving the sale of products competitive to those of DePuy in the same territory assigned to him by DePuy and to the same accounts assigned to him by DePuy in violation of his continuing contractual obligations with DePuy. (*Id.* ¶ 28-29).

On August 24, 2007, notwithstanding the mandatory Indiana forum selection clause in the Agreement, Gault and Gault South Bay Inc. filed a lawsuit in California Superior Court, Santa Clara County, seeking to declare the non-compete void and unenforceable and claiming unfair competition.[1]    The nature of the relief requested in the Defendants' complaint in California establishes that Gault's responsibilities with Biomet will include the sale and offer for sale of goods that are competitive with DePuy's at accounts covered by Gault South Bay's contract with DePuy.    (*See* Exhibit B to Millard Aff., First Cause of Action, requesting declaration "that the non-compete provisions contained in the Agreement are void and unenforceable."). This complaint was removed to federal court.

On or about September 10, 2007, Gault arranged and held a meeting with DePuy customers in Gault South Bay's territory for the purpose of soliciting those customers to purchase products from Biomet rather than from DePuy. (LaPoint Aff. ¶ 29). Thus, there is reason to believe that Gault South Bay, through Mr. Gault, will make sales of competitive products in violation of their contracts with DePuy unless enjoined by this Court.

---

[1] Gault's filing of a lawsuit in the wrong forum seeking a declaration that the covenant not to compete he signed only a few months ago is invalid does not stand in the way of this Court granting the injunctive relief sought by DePuy. *See, e.g., Tempco Electric Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746 (7th Cir. 1987) (declaratory judgment lawsuit, even if first filed, yields to second-filed substantive lawsuit).    Moreover, on September 10, 2007, DePuy removed the improperly filed California state court action to federal court, (*See* Notice of Filing of Notice of Removal, *Gault South Bay v. DePuy,* No. 107CV092906 (N.D. Cal. Sept. 10, 2007)), and will, in due course, seek transfer of that action to this Court in light of the Indiana forum selection clause.

- 7 -

II.    **ARGUMENT**

The grant of a preliminary injunction is entrusted to the Court's discretion.  To obtain an

injunction, DePuy must show: (1) a reasonable likelihood of success on the merits of its claim;

(2) that there is no adequate remedy at law such that irreparable harm would occur if the

injunction is not granted; (3) that the risk of harm to DePuy outweighs any risk of irreparable

harm to the Defendants if the injunction is granted; and (4) that the injunction will not disserve

the public interest. *JAK Productions, Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993).  DePuy

can and will show that the contracts have been materially breached by the Defendants, as well as

that the restrictions on competition are reasonable and enforceable.  Indiana law controls these

contracts, and Indiana has recognized that the harm to goodwill caused by competition from

former sales representatives is irreparable and supports injunctive relief.  There is no likelihood

of irreparable harm to the Defendants, as they have contractually agreed they have no rights of

any kind in the territories provided by DePuy.  (Gault Agreement at 1-2).  Finally, injunctive

relief will not disserve the public interest, but follows the recognized public policies of Indiana.

As a result, DePuy requests the Court grant a preliminary injunction to prevent violation of the

restrictions on competition in both of the Defendants' contracts.

A.    **DePuy is Likely to Succeed on its Claims.**

Defendants have breached the non-competition obligations of the Gault Agreement by

ceasing to act on DePuy's behalf and, instead, representing Biomet in the sale of orthopedic

products to their DePuy accounts.  (Compl. ¶¶ 15-31; LaPoint Aff. ¶¶ 21-29).  This is an

incurable material breach, as it would be impossible for the Defendants to correct their failure to

act in the best interests of DePuy.  Indeed, the Defendants acknowledged and agreed that the

non-compete provisions in the Agreements "are a material inducement to DePuy to enter into

- 8 -

this Agreement, are reasonable and necessary to protect the interests of DePuy, and will result in material and irreparable loss to DePuy if breached." (Gault Agreement at 2). Gault's solicitation of DePuy customers and sales representatives while still ostensibly working for DePuy, and Gault's anticipated participation in the sale of Biomet products to their former DePuy accounts are clear violations of the covenants not to compete they executed. (*See* Gault Agreement at 1 & 7). Consequently, DePuy is likely to prevail on the merits of its breach of contract claim. *Licocci v. Cardinal Assocs., Inc.,* 445 N.E.2d 556, 561 (Ind. 1983).

Indiana law applies per the parties' agreement. (Gault Agreement at 9). Further, it is reasonable that an Indiana-based company like DePuy would want its sales representatives governed by the law of the state where it is based. *See Sarnoff v. American Home Products Corp.,* 798 F.2d 1075, 1082 (7th Cir. 1986) (reversing district court's determination that choice of (New York) law provision in contract containing no-competition condition was invalid and contrary to (Illinois) public policy where employer "was reasonable in wanting all of its legal obligations with its employers to be governed by the law of the headquarters state if the employees could be persuaded to agree").

Indiana enforces covenants not to compete to the extent "they are reasonable with respect to the covenantee, the covenantor and the public interest." *Licocci,* 445 N.E.2d at 561. Determining reasonableness is a question of law, made in light of all the facts and circumstances of a particular case. *Id.* The focus in determining reasonableness is whether the covenant is designed to protect the legitimate interests of the covenantee and only restrains the covenantor's actions to an extent reasonably necessary to protect these interests. *Norlund v. Faust,* 675 N.E.2d 1142, 1154 (Ind. App. 1997). Under all of the facts and circumstances of the current case, the one year prohibitions on contact with former customers and accounts imposed by the

Exhibit "2" Page 19

covenants at issue are reasonably necessary to protect DePuy's legitimate business interests. *Id.*
As a result, the covenants are enforceable.

### 1.    The Covenants Protect DePuy's Goodwill, A Legitimate Business Interest.

The first factor in assessing the reasonableness of a covenant not to compete is whether the
covenantee is seeking to protect its legitimate business interests.   Indiana, and federal courts
applying Indiana law, have long held that the protection of goodwill can justify a restrictive
covenant where the covenantor is a salesperson or otherwise has direct customer contact. *See
Licocci*, 445 N.E.2d at 562, 564 (Ind. 1983); *Miller v. Frankfort Bottle Gas, Inc.* 202 N.E.2d 395,
564 (Ind. App. 1964); *Smart Corp. v. Grider*, 650 N.E.2d 80, 83 (Ind. App. 1993); *Barnes Group
v. O'Brien*, 591 F. Supp. 454, 460 (N.D. Ind. 1984).   The Defendants were both salesperson
representatives for DePuy.   DePuy's experience has been that individual sales representatives
can quickly convert accounts if they fail to honor covenants not to compete.    These risks to
DePuy's legitimate business interests are precisely why DePuy puts such covenants into its
contracts, as do DePuy's competitors.

### 2.    The Restrictions Imposed are Reasonably Necessary to Protect DePuy's Legitimate Business Interests.

Restrictive covenants must also be reasonable in terms of duration and the scope of
activities restricted.   *Norlund*, 675 N.E.2d at 1155.   The covenants here only restrict the
Defendants from using for one year the information and goodwill that DePuy paid them
handsomely to develop for DePuy.   Gault South Bay was given a territory defined by particular
accounts, and the covenants are limited to those accounts.    These are the customers and
institutions that DePuy has developed goodwill with through the efforts of the Defendants, and
the areas in which DePuy is susceptible to harm from the Defendants' conduct.   As such, the

- 10 -

restrictions are only as broad as DePuy's legitimate business interests in its goodwill and customer base in these territories.

Indiana expressly permits covenants that are defined in terms of the present customers of a company. *See Norlund*, 675 N.E.2d at 1155 (enjoining contact with all optometrists who had referred patients to an ophthalmologist while the defendant-covenantee was employed); *see also Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 213 (Ind. App. 1982) (enjoining contact with all present clients of an accounting firm, but refusing to include past or prospective clients). DePuy only desires to restrict the Defendants' actions with those customers they have worked with on behalf of DePuy, not every customer of DePuy or any account not specified in the Defendants' contracts. This is a narrowly tailored restriction, and very reasonable.

Finally, the one year term is reasonable in light of the close contacts that the Defendants have developed as sales representatives. Indiana courts, and federal courts applying Indiana law, have found restraints that are as long or even much longer to be reasonable. *See Licocci*, 445 N.E.2d at 562-563(one year); *Norlund*, 675 N.E.2d at 1155 (two years); *Smart Corp.*, 650 N.E.2d at 84 (three years); *JAK Productions, Inc.*, 986 F.2d at 1090 (one year); *Barnes Group, Inc.*, 591 F.Supp at 460 (two years). No unique harm is posed to the public welfare such as to make these restrictive covenants unreasonable. Therefore, the restrictions are reasonable as to the covenantee, covenantor and public interest, and DePuy is likely to succeed in enjoining Gault and Gault South Bay under Indiana law.

The fact that Gault signed the Gault Agreement as President of Gault South Bay does not immunize him from liability. Upon information and belief, Gault is the sole owner of Gault South Bay and was its principal salesperson. The plain language of the Gault Agreement prohibits "indirect sales" of competitive products to the Defendants' former accounts. Any such

Exhibit "2" Page 21

attempt, would, moreover, run afoul of Indiana's prohibition on subterfuges designed to comply literally with a restriction on competition while practically eliminating the prohibition. *McCart v. H & R Block, Inc.,* 470 N.E.2d 756, 762 (Ind. App. 1984) (husband's conduct violated restriction in contract entered into by wife); *see also Norlund,* 675 N.E.2d at 1155 (financing and assistance of daughter optometrist's practice violated father optometrist's restrictive covenant).

Thus, at a minimum, DePuy is entitled under the contract to a period of one year after the termination of the Agreement in which the Defendants will not directly make sales of Biomet or other competitive products to their former customers, will not use their advantages and contacts to further the sale of Biomet or other competitive products by anyone to their former customers, and will otherwise refrain from direct or indirect competition with DePuy for the sale of orthopedic products to their former customers. Barring Court intervention, Gault's new position with Biomet will almost certainly run afoul of this clause.

## B.    Failing to Enter an Injunction Will Cause DePuy Irreparable Harm.

Gault has indicated an intent to sell competitive products for Biomet in Gault South Bay's former DePuy territory. Evidence establishes that Gault South Bay, though Gault, has already materially breached its covenant not to compete by soliciting customers and sales representatives in its territory while still under contract with DePuy (LaPoint Aff., ¶¶ 19-27; Daneman Aff., ¶¶ 4, 6, 10, 14-16), and has continued to do so since the Agreement was terminated (*Id.* ¶ 29). As the Seventh Circuit noted in *JAK Productions, Inc.,* "[w]henever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete, irreparable injury occurs and injunctive relief is appropriate." 986 F.2d at 1084 (internal citations omitted). DePuy would suffer the same irreparable harm where the breach is by an independent contractor. (LaPoint Aff., ¶ 30). Indiana courts have noted the impossibility

- 12 -

Exhibit "2" Page 22

of addressing harm to goodwill, business reputation and the ability to compete through damages. *See Unger,* 771 N.E.2d at 1246; *see also Norlund,* 675 N.E.2d at 1150 (calling efforts to calculate damages "pure speculation" and concluding that "an injunction against the prohibited behavior is the most efficient way to lift the burden of that harm from the shoulders of the employer who contracted so as not to suffer such harm."). If the Defendants are allowed to compete with DePuy in violation of their contracts, they will have an advantage that is rightfully DePuy's, one that money cannot restore. Thus, DePuy will suffer irreparable harm if an injunction is not granted.

C.    **The Balance of Hardships Favors DePuy.**

DePuy does not seek to stop the Defendants from working for Biomet entirely. DePuy does not even seek to stop them from working in California. DePuy merely seeks to ensure that these Defendants are not allowed to convert DePuy's goodwill developed on behalf of DePuy and for DePuy's products at particular accounts. As was stated in *Barnes Group,* "[t]hough the loss of any income is indeed a misfortune to anyone of any age, the opportunity to earn a livelihood is not closed" to the Defendants. 591 F. Supp. at 461.

Further, Gault, through Gault South Bay, expressly agreed "to waive any defense to entry of a preliminary injunction prohibiting ... violation of the noncompetitive provisions of this Agreement based on the existence of an adequate remedy at law by DePuy." (Gault Agreement at 7). These Defendants chose to contract with DePuy, knowing that termination would impose certain restrictions on their conduct for a year, and that DePuy would seek to preliminarily enjoin them from violating those restrictions if necessary. DePuy seeks nothing more than to hold them to their contract for which DePuy paid them handsomely. The balance of hardships favors DePuy and the entry of a preliminary injunction.

- 13 -

Exhibit "2" Page 23

D.    **An Injunction Will Serve the Public Interest.**

Indiana law recognizes the public's interest in ensuring the freedom of contract and enforcing valid contractual obligations. *Trimble v. Ameritech Pub., Inc.,* 700 N.E.2d 1128, 1129 (Ind. 1998); *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind. App. 1999). There is no countervailing interest in permitting individuals to sell orthopedic equipment. The injunction sought by DePuy will not halt the provision of vital services or otherwise impair any public interest. As a result, this factor also favors the entry of the requested injunction.

III.    **CONCLUSION**

For the foregoing reasons, DePuy respectfully requests the Court issue a preliminary injunction restricting the Defendants from violating their covenants not to compete contained in the Gault Agreement while the present lawsuit is pending before this Court. Specifically, DePuy requests the Defendants be enjoined, directly or indirectly, from undertaking any action to further the sales efforts of Biomet in Gault South Bay's former territory, including but not limited to the direct sale or offer for sale of competitive Biomet products to any former customers of the Defendants, and calling on DePuy customers previously assigned to Gault South Bay.

Respectfully submitted,

By:    _____

Dwight D. Lueck (14294-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN  46204
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433
E-mail:  dlueck@btlaw.com

- 14 -

D. Michael Anderson (20770-53)
BARNES & THORNBURG LLP
600 1st Source Bank Center
100 North Michigan
South Bend, IN 46601-1632
Telephone: (574) 233-1171
Facsimile: (574) 237-1125
E-mail: mike.anderson@btlaw.com

*Attorneys for Plaintiff,*
*DePuy Orthopaedics, Inc.*

Exhibit "2" Page 25

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above was served upon the following attorneys/parties

of record by facsimile and by depositing the same in the United States mail, properly addressed,

postage prepaid, on the 11th day of September, 2007.

Tory E. Griffin, Esq.
Matthew J. Weber, Esq.
Downey Brand LLP
555 Capitol Mall, Tenth Floor
Sacramento, CA 95814-4686

Robert G. Gault, Registered Agent
Gault South Bay, Inc.
18917 Cabernet Drive
Saratoga, CA 95070

INDS02 DDL 918776v1

Exhibit "2" Page 26

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DEPUY ORTHOPAEDICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| GAULT SOUTH BAY, INC. and | ) | |
| ROBERT GAULT, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF BRADFORD C. LAPOINT

I, Bradford C. LaPoint, under the penalties for perjury, state:

1.      I have personal knowledge of the facts set forth in this Affidavit, except as otherwise stated. I am competent to testify as to all matters stated, and I am under no legal disability which would in any way preclude me from testifying. If called upon to do so, I would testify to the facts set forth in this Affidavit.

2.      I am a Territory General Manager for DePuy Orthopaedics, Inc. ("DePuy") with responsibility for sales in northern California, among other areas.

3.      DePuy manufactures and distributes orthopedic implants and operating room products, among others. These include devices for use in the reconstruction or replacement of shoulders, knees, hips, fingers, wrists, ankles, and shoulders.

4.      DePuy contracts with sales representatives throughout the country to sell these products.

5.      These sales representatives are DePuy's primary point of contact with the physicians and hospitals that use DePuy's products.

6.      DePuy provides the sales representative with training, product literature, and a defined territory.

7.     Sales representatives play a vital role in DePuy's business. They have to educate customers about product features, assist customers in understanding the proper use of the products, and often observe surgeries first hand to ensure that the products are being used appropriately.

8.     Sales representatives also acquire, on behalf of DePuy, information about DePuy's customers, including their needs, preferences and sales history.

9.     The relationship a sales representative enjoys with a customer, enhanced by the sales representative's knowledge of the customer's preferences, needs and account history, will often drive the customer's purchasing decision.

10.     In my experience, most sales representative contracts, including those used by DePuy, include restrictions on competition by the sales representative in the event the contract is terminated.

11.     Based on my own experience, DePuy has suffered losses of customers and sales in a matter of days or weeks when departing sales representatives violate these restrictions.

12.     I have reviewed DePuy's contract with Gault South Bay, Inc. ("Gault South Bay") and Robert Gault (as president of Gault South Bay), dated November 22, 2006. A true and accurate copy of the executed agreement as it is maintained in DePuy's records is attached as Exhibit A to this Affidavit (the "Agreement").

13.     Appendix A to the Agreement references Gault South Bay's territory as "All accounts listed for customer number 701940." The number 701940 is Mr. Gault's senior sales representative account number, and identifies all customers assigned to Gault South Bay. A true and accurate list of the customers included in this account number is attached as Exhibit B to this Affidavit.

14.     This agreement was amended by letter dated December 21, 2006, to adding two provisions concerning commissions. A true and accurate copy of the amendment as it is maintained in DePuy's records is attached as Exhibit C to this Affidavit. There have been no other amendments to the Agreement.

2

15.     Based on my personal knowledge and my review of DePuy's records, DePuy provided Mr. Gault and Gault South Bay with sales literature and promotional items as needed.

16.     Based on my personal knowledge and my review of DePuy's records, DePuy has paid all commissions or flat payments due to Gault South Bay through the date of this Affidavit.

17.     Biomet Orthopedics, Inc. ("Biomet") is a competitor of DePuy, as Biomet sells orthopedic implants and operating room products that compete with DePuy products. Working as a sales representative or otherwise working on behalf of Biomet would require engaging in competitive activities as defined by the Agreement.

18.     On or about July 13, 2007, Mr. Gault approached me at a sales meeting in Chicago and told me he was looking at moving to a competitor, including potentially Biomet. Mr. Gault said he did not want to leave, but did not know if he had a choice. I understood this to be an attempt by him to renegotiate his contract, which was not at-will, but provided that Gault South Bay's appointment as a DePuy sales representative "will remain in effect until December 31, 2007."

19.     On or about August 12, 2007, I received a call from Jake Daneman, one of the DePuy sales representatives working under Mr. Gault in the South Bay area. Mr. Danemen informed me that Mr. Gault had solicited him to work for Biomet.

20.     I also learned that Mr. Gault had approached sales representatives Mike Olmes, John Angeleri, Candice Polich, and Craig Fry to solicit them to work for Biomet. Mr. Olmes was at that time the sales representative for the territory adjacent to the territory of Mr. Gault, and Mr. Angeleri, Ms. Polich, and Mr. Fry were sales representatives under Mr. Gault. I spoke with each of these individuals directly and they told me that Mr. Gault had attempted to get them to move to Biomet while Mr. Gault was still a DePuy sales representative.

21.     On or about August 14, 2007, I received a call from a surgeon at Stanford University Medical Center who at the time was an account in Mr. Gault's territory who ordered DePuy products through Mr. Gault. He informed me that Mr. Gault had solicited him to purchase Biomet products rather than the competing DePuy products, and that Mr. Gault had

3

promised him that Biomet would make him his own implant if he agreed to switch to Biomet products.

22.    On or about August 15, 2007, I spoke with a surgeon at Los Gatos Hospital who was another account in Mr. Gault's territory. He informed me that Mr. Gault had told him he was moving to Biomet, and solicited him to purchase Biomet products rather than DePuy products.

23.    On or about August 21, 2007, I spoke with another surgeon at Stanford University Medical Center. He informed me that Mr. Gault had left him a voicemail, asking him to write a letter stating that he was discontent with DePuy's services and products.

24.    On or about August 30, 2007, I spoke again with the first surgeon. He told me Mr. Gault had met with him and two other doctors from Los Gatos and solicited them to purchase Biomet products instead of DePuy products.

25.    At the time of those solicitations, Mr. Gault was still an independent contractor sales representative for DePuy and subject to the obligations in his Agreement. Nevertheless, he never requested my consent and I never gave him consent as his Territory General Manager to make such solicitations.

26.    Based on my personal knowledge and a review of DePuy's records, DePuy has not given Mr. Gault or Gault South Bay permission to work for Biomet or otherwise released them from the covenant not to compete in the Agreement.

27.    I considered Mr. Gault's solicitation activities referred to above to be clear breaches of the Agreement, and provided sufficient cause to terminate the Agreement. Accordingly, on August 20, 2007, I sent Mr. Gault a letter informing him that the Agreement would be terminated, effective August 24, 2007, although Gault South Bay and Mr. Gault post-termination obligations to DePuy continue. A true and accurate printout of this letter is attached as Exhibit B to this Affidavit.

28.    It is my understanding based on numerous discussions with DePuy sales representatives and physician customers that Mr. Gault formally started working with Biomet on September 4, 2007.

4

Exhibit 2 Page 30

case 3:07-cv-00425-PLM-CAN    document 3-3    filed 09/11/2007    page 5 of 5

29.    On or about September 10, 2007, Mr. Gault arranged and held a meeting with DePuy customers in Gault South Bay's territory for the purpose of soliciting those customers to purchase products from Biomet rather than from DePuy.  Mr. Gault had invited Candice Polich to the meeting to continue to solicit her to join Biomet, and I learned about this meeting and its purpose from her.

30.    If Mr. Gault is permitted to continue to solicit his former DePuy customers and sales representatives on behalf of Biomet, DePuy will lose customers, and DePuy's goodwill will be irreparably harmed.


THIS CONCLUDES MY AFFIDAVIT.


I affirm, under the penalties for perjury, that the facts set forth in this Affidavit are true based on my personal knowledge or, where stated, on information and belief.



_____
Bradford C. LaPoint

**SWORN BEFORE ME** in the City        )
of _Emeryville_, in the State of California, )
this _11_ day of September 2007.        )
                                        )
_____               )
A Notary Public        Signature        )
_Marina Harris_                         )
                        **Printed**

My Commission Expires:  _2/26/2011_

MARINA HARRIS
Commission # 1727433
Notary Public - California
Alameda County
My Comm. Expires Feb 26, 2011

5

# EXHIBIT A

*T-117*

November 22, 2006

● DePuy

*a Johnson-Johnson company*

**RECEIVED**

**JAN 02 2007**

**COMMISSIONS**

**COPY**

DePuy Orthopaedics, Inc.

Gault South Bay Inc.
18428 Twin Creeks Road
Monte Sereno, CA 95939

Dear Bob,

Effective January 1, 2007 (the "Effective Date") please accept this letter as DePuy Orthopaedics, Inc.'s ("DePuy") appointment of Gault South Bay Inc. ("Contractor") as its independent sales representative for the specific DePuy Territory ("Territory") and specific DePuy product categories (the "Products") as outlined on the attached Appendix A, which appendix is incorporated herein by reference. DePuy may add or delete any or all Product category or categories included on Appendix A or change the category or classification of any or all of the Products included in the Product categories listed on Appendix A at any time on sixty (60) days prior written notice to Contractor. Except as set forth herein, the Territory described on Appendix A may be modified from time to time only as mutually agreed by the parties.

Contractor agrees that it is an independent contractor and not an employee of DePuy. Contractor shall be responsible for making sales calls representing DePuy and completing sales within the Territory in accordance with DePuy and Johnson and Johnson ("J&J") guidelines, policies and procedures, including without limitation, policies and procedures concerning prevention of healthcare fraud and abuse, that are made known to Contractor from time to time. Contractor agrees to devote its best efforts and sufficient working time to selling DePuy Products. Contractor agrees to cause its employees, contractors and other entities which assist Contractor with its duties under this Agreement to participate in and comply with the requirements of the Salesforce Certification Program outlined in Appendix C. Contractor further agrees that DePuy may, on at least thirty (30) days prior written notice to Contractor, change the requirements set forth in the Salesforce Certification Program but may not during the term of this Agreement, modify the Recognition and Non-Compliance section of such Program without Contractor also agrees to attend and participate, and cause its employees, contractors and other entities assisting Contractor in its duties under this Agreement, to attend and participate in sales training and training related to DePuy and/or J&J guidelines, policies and procedures as required by DePuy. The manner in which Contractor performs its obligations under the Agreement is at Contractor's sole discretion, provided that Contractor complies with DePuy's sales policies and procedures. Contractor is required to submit orders to DePuy, or, in the case of Co-Marketed Products, (as defined below) to other parties, and may from time to time be requested by DePuy to provide reports to DePuy regarding Contractor's sales activities or results. Contractor agrees that neither Contractor nor anyone in its employ, nor any member of the immediate family of any one owning the majority of the stock, a controlling interest or exercising control of the Contractor will, during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent. Competitive activities mean selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services. Contractor is, of course, free to engage in any non-competitive activities.

Exhibit "2" Page 33

Gault South Bay Inc.
November 22, 2006
Page 2

Contractor acknowledges and agrees that the noncompetition provisions contained in this Agreement are a material inducement to DePuy to enter into this Agreement, are reasonable and necessary to protect DePuy's interests and will result in material and irreparable loss to DePuy if breached.

Contractor may hire its own employees or contract with other individuals or entities to assist Contractor in the performance of its duties hereunder, which employees, individuals or entities shall be solely Contractor's responsibility and shall be compensated solely by Contractor. Contractor agrees that any such employees, individuals or entities will not be subject to DePuy's approval or supervision, but will be bound by the same DePuy and Johnson & Johnson guidelines, policies and procedures, the non-compete provisions and all other provisions of this agreement to which Contractor is subject. Contractor agrees to provide DePuy with information regarding such employees and/or copies of any agreements between Contractor and any such employees, individuals or entities as requested by DePuy. Contractor further agrees to remove any such employee from the sale of Product should DePuy have a reasonable objection to their representation or sale of such Products. Contractor further agrees to modify such agreements as reasonably requested by DePuy to achieve the purposes of this paragraph. Contractor is responsible for maintaining its own office and/or office equipment for its employees' use.

Contractor will be responsible for all federal, state and local income taxes, social security, unemployment compensation, workers compensation and insurance coverage and all expenses incurred by Contractor or its employees in the performance of this Agreement.

Prices for the Products will be set by DePuy at its sole discretion and commissions will be paid based on the actual price charged by DePuy to the customer. Contractor shall not offer or otherwise communicate any discount on any Product without DePuy's prior written consent. DePuy may change the price of any Product at any time. Contractor agrees that it will not enter into any agreement with any customer of DePuy or any third party regarding the sale or delivery of the Products and that Contractor has no authority to bind DePuy to such agreements or any other agreements of any kind.

Contractor will not in any way modify DePuy packaging or products, including any related instruments and accessories. Contractor will only sell DePuy products, which conform to the specifications and quality control procedures of DePuy. Contractor will not provide, suggest or advise the use of any other instrument(s) in connection with the Products outside of those provided or approved for use by DePuy. Contractor will not knowingly submit to DePuy any false, inaccurate or misleading information regarding the sales of products, the customers to whom the products were sold, or the inventory of products in Contractor's possession. Contractor will not engage in direct billing of products to any customer or any other person. Direct billing means any transaction involving a third party's acquisition, use or lease of a

Gault South Bay Inc.
November 22, 2006
Page 3

Product, instrument or service connected with a Product which results in such third party being invoiced or charged a price or fee(s) of any kind, including a delivery charge or fee, for the product or instrument by Contractor, someone in Contractor's control or employ, or by an entity in which Contractor has a financial interest. Pursuant to DePuy's and J&J's policies and procedures, Contractor will immediately report to DePuy any reports of problems with any DePuy product which comes to its attention, including without limitation, adverse events regarding such products.

DePuy will pay Contractor a monthly commission, as described on Appendix B, based on invoice sales completed to customers in the Territory while this appointment is in effect. It is DePuy's normal business practice to pay earned commissions by the 20th day of the month following the generation of the invoice. This will be the only compensation paid by DePuy to Contractor regarding sales of the products. DePuy will pay commissions on Contractor's sales based upon invoices generated by DePuy. The commission rate for a sale already completed will only be adjusted by mutual written consent. *Notwithstanding the foregoing, if Contractor fails to meet the requirements established by DePuy in the Salesforce Certification Program, Contractor agrees that DePuy may adjust the commission rates as describe in Appendix C.* Contractor agrees to repay DePuy on demand any commission paid in error, any commission for which DePuy is unable to collect the underlying invoice, or any advance or any other commission which Contractor did not earn. Commissions on Co-Marketed Products will be paid as set forth below.

Contractor agrees to meet mutually agreed upon annual sales quotas for each Product category. Provided this agreement has not been terminated, Contractor agrees to meet with DePuy representative(s) no later than thirty (30) days prior to the anniversary of this agreement to discuss such sales quotas for the next year. If Contractor fail to meet with DePuy representative(s) or if Contractor and DePuy cannot reach agreement on such sales quotas before the anniversary date of this agreement, then both parties agrees that the annual sales quotas for the next year will be equal to the prior year's sales for each of the following Product or Product Categories, provided these Products or Product Categories are included in Appendix A, in the Territory plus the following percentages: ten percent (10%) for Total Hip Systems and Total Knee Systems; fifteen percent (15%) for Extremities; twenty percent (20%) for Bone Cement and/or Orthobiologics and/or Trauma Products; and three percent (3%) for O.R. Products. In the event that Contractor fails to meet such annual sales quotas for any or all Product categories for two (2) successive calendar quarters on an annualized basis, Contractor agrees that DePuy may, at its sole option, may take the following actions on thirty (30) days prior written notice to Contractor: (a) terminate this agreement: or (b) remove any Product category(ies) from the Products listed on Appendix A; or (c) modify the Territory described in Appendix A. DePuy's

Gault South Bay Inc.
November 22, 2006
Page 4

exercise of any of the foregoing options a, b or c shall not be considered or construed as a waiver of DePuy's right or option to future exercise of any such option for continued failure to meet any sales quota(s).

DePuy will reimburse Contractor certain expenses Contractor incurs in connection with Contractor's performance of its obligations under this Agreement, in accordance with DePuy sales policies and procedures. In no event, however, will Contractor be reimbursed for its travel or transportation expenses. Notwithstanding the foregoing, DePuy may, at its sole option, reimburse Contractor for travel and related expenses incurred by Contractor in connection with sales training, trade, and educational meetings and seminars, Contractor and/or its employees attends at DePuy's request.

DePuy will supply Contractor at no charge with reasonable quantities of descriptive literature, promotional materials and catalogs describing the products and access to inventory and instrument as DePuy feels is appropriate. DePuy at its option may accept or refuse orders and will not be bound by an order until it is accepted by DePuy. Further, DePuy shall not be liable to Contractor for any loss or damages caused by non-acceptance of orders, by failure to deliver products or by delays in making shipments. Contractor agrees that DePuy may at any time this Agreement is in effect and for a period of three (3) years after termination of this Agreement for any reason audit and inspect Contactor's business record to ensure compliance with DePuy and J&J policies and procedures.

From time to time during the term of this appointment, DePuy may, but shall not be required to offer new products for sale in the Territory ("New Products"). With regard to such New Products in the Territory, DePuy reserves the right, in its sole discretion, to (a) on thirty (30) days prior written notice to Contractor, require Contractor to market and solicit sales of New Products pursuant to the terms of this Agreement; or (b) on thirty (30) days prior written notice to Contractor, require Contractor to jointly introduce and market such New Products in conjunction with the efforts of DePuy and any other J&J company or companies ("Affiliate") and/or DePuy's business partners ("Business Partner"). For purposes of this Agreement, an "Affiliate" is any other company or entity controlling, controlled by or under common control with DePuy and a Business Partner shall include, without limitation, an individual or entity which is not an Affiliate and which has contracted with DePuy regarding the marketing or distribution of such New Product; or (c) introduce and market such New Product on DePuy's own behalf or through its Affiliates on an exclusive basis, in which event such New Products will not be made available to Contractor or included in the Products covered by this Agreement. DePuy shall have the sole and exclusive right to establish the terms under which New Products will be marketed and to make all decisions regarding such marketing arrangements, including but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Notwithstanding anything to the contrary contained in this Agreement, DePuy shall not be liable to make any payment to Contractor with regard to a New

Exhibit 2  Page 36

Gault South Bay Inc.
November 22, 2006
Page 5

Product if Company introduces and markets such New Product pursuant to (c) in the immediately preceding paragraph. All of Contractor's obligations regarding Products shall also apply to any New Products which are added to this Agreement.

Notwithstanding anything herein to the contrary, DePuy shall have the right to enter into Co-Marketing Arrangements (as defined below) with its Affiliates related to the marketing, representation and sale of New Products. As used herein, "Co-Marketing Arrangement" means that New Products subject to a Co-Marketing Arrangement will be marketed, represented and sold in the Territory through the sales forces of DePuy and/or its Affiliates and/or its Business Partners. DePuy reserves the sole right to establish the terms under which New Products will be co-marketed and to make all decisions regarding such Co-Marketing Arrangements, including but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Products currently subject to a Co-Marketing Arrangement are identified on Appendix A, which may be modified from time to time by DePuy. Products and New Products currently subject to a Co-Marketing Arrangement or which become subject to a Co-Marketing Arrangement during the term of this Agreement will be referred to herein as "Co-Marketed Products". Commissions from the sale of Co-Marketed Products will be included in commission payments made to Contractor within forty-five (45) days of the first to occur of (a) receipt by DePuy of the actual commission from the applicable Business Partner or Affiliate or (b) receipt by DePuy of a report from the Business Partner or Affiliate confirming the sale and/or commission due from the sale of the Co-Marketed Product.

Contractor will not engage in any advertising or promotion of any of the Products, New Products or Co-Marketed Products in any form or media without DePuy's prior written consent or approval. Contractor further agrees not to issue any payment or otherwise convey or provide any item of independent value to any health care provider, whether an institution or an individual, for any reason without prior written approval from DePuy.

This appointment will remain in effect until December 31, 2007. The appointment shall be automatically renewed for one (1) year periods thereafter unless terminated by either party on sixty (60) days' notice prior to the end of the initial term or any renewal period. In the event that DePuy provides written notice pursuant to this paragraph that this Agreement will not be renewed or extended at the end of the initial term or any renewal term, Contractor agrees that anytime in the sixty (60) day period immediately prior to termination or expiration of this Agreement, DePuy may, at is sole option, immediately terminate this Agreement by paying Contractor an amount equal to one (1) month's average commissions based on the prior six (6) months commissions paid to Contractor, in which case the noncompetition period described below will commence upon Contractor's receipt of such payment.

In the event that neither party provides sixty (60) days notice prior the end of the term that this Agreement will not be extended for an additional year, DePuy may, on sixty (60) days written notice prior to the end of the term or then current term, change or modify the Territory. However, DePuy agrees, that, except as agreed to by the parties, changes or modifications in the Territory will not occur more than once per year with while this Agreement is in effect.

08/24/07 Case 5:07-cv-04426-PVT-CAN   Document 3-4   Filed 09/11/2007   page 7 of 15

Gault South Bay Inc.
November 22, 2006
Page 6

The appointment may be terminated unilaterally by either party on thirty (30) days' notice in the event of either (a) breach of any provision of this appointment which, if correctable, is not corrected within the thirty (30) days notice period; or, (b) if either party becomes bankrupt or enters into any arrangement with its creditors or enters into liquidation. DePuy, at its sole discretion, may also terminate this Agreement thirty (30) days written notice to Contractor in the event Contractors and/or Contractors employees, contractors and other entities assisting Contractor in its duties under this Agreement fail to participate in or comply with the requirements of the Salesforce Certification Program. Notwithstanding the above, however, Contractor agrees that there will be sufficient cause to terminate this appointment immediately in the event that Contractor or any of its employees sells a competitive product, knowingly provides to DePuy false and misleading information regarding products sold, engages in direct billing, violates any written DePuy or J&J policy and procedure, is debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program, if Contractor knowingly employs or contracts with an individual or entity so debarred, excluded or prohibited. Contractor agrees to notify DePuy of any final adverse action, discovery of employment by or contract with an excluded individual or entity or exclusion as defined above within thirty (30) days of such an action. Contractor further agrees that DePuy may terminate this Agreement immediately if Contractor commits any act or omission which in DePuy's sole determination has or will have a negative effect on the reputation of DePuy and/or J&J. The appointment will automatically terminate in the event of the dissolution of Contractor or if Contractor, or a major part of its assets, becomes subject to the direction or control of a party other than the owner(s) of Contractor at the time this agreement is signed by the parties..

Upon termination, Contractor further agrees to return to DePuy all DePuy owned inventory, instruments and promotional materials in Contractor's possession. Any inventory, instruments and promotional materials related to Co-Marketed Products shall be returned either to DePuy or another party, as directed solely by DePuy. Contractor also agrees to reimburse DePuy for any such inventory which is not returned and for which there is no record of sale to any other party or which is returned to DePuy in a damaged condition rendering such inventory incapable of sale. Contractor also agrees within thirty (30) days of the termination of this agreement for any reason to pay to DePuy any sums that are outstanding. DePuy agrees to pay Contractor any commissions due to Contractor within thirty (30) days of termination of this Agreement; however, DePuy may offset against such commissions any amounts owed by Contractor to DePuy. Contractor further agrees that DePuy may deduct from any commissions owed to Contractor any outstanding amounts resulting from Contractor's failure to return to DePuy any inventory, instruments and promotional materials in its possession or for which there is no record of sale or any inventory which has been damaged to a point where it is no longer capable of sale. Any office or other equipment purchased by Contractor shall remain its property upon termination.

Gault South Bay Inc.
November 22, 2006
Page 7

Contractor further acknowledges that it may be receiving and processing Protected Health Information ("PHI") as that term is defined in 45 C.F.R.Section 164.501 from the Company or on its behalf, that has been disclosed subject to a HIPAA authorization, under 45 C.F.R. Section 164.508 or to a Business Associate Agreement(s) between DePuy and a healthcare provider or institution, copies of which shall be provided to the Contractor by DePuy upon request by the Contractor.    Contractor will collect, hold, use and disclose such information only for the purposes authorized in the Business Associate Agreement and as expressly directed by DePuy.

Contractor shall not disclose any PHI to any third party or use PHI for any purpose, commercial or otherwise.  Contractor shall either (a) remove any PHI from its records and/or systems no later than thirty (30) days after receipt of such PHI or (b) take reasonable measures to ensure the security and confidentiality of such PHI.  Contractor's failure to comply with this Section shall be considered a material breach of this Agreement and DePuy shall have the right to terminate this Agreement pursuant immediately without payment of any penalty or termination fee.

Contractor agrees that, if this Agreement is terminated for any reason, that for a period of one (1) year after termination of the Agreement, that neither Contractor nor any of its employees, independent contractors, or agents who were involved in the representation or sale of the Products, will, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement or engage, directly or indirectly in the sales of competitive products or in competitive activities as described above. Contactor agrees that no claim that Contractor, or any of its employees, independent contractors or agents  may have against DePuy shall constitute a defense to enforcement of the noncompetition provisions of this Agreement. Contractor also agree to waive any defense to entry of a preliminary injunction prohibiting its violation of the noncompetition provisions of this Agreement based on the existence of an adequate remedy at law by DePuy. As consideration for the foregoing agreement not to accept such a position, upon termination of this Agreement, DePuy agrees to pay Contractor on a monthly basis during the one (1) year period after termination an amount equal to one-twelfth of the aggregate commissions paid to Contractor for the twelve months prior to such termination, beginning with the first month following such termination. DePuy will pay Contractor this amount unless this Agreement is terminated by DePuy due to Contractor's sale of a competitive product, or providing DePuy with false and misleading information about the sale of products, or direct billing or failure to comply with DePuy and/or J&J policies and procedures. Notwithstanding the foregoing, however, if DePuy should give Contractor thirty (30) days prior written notice before it begins such payments that it chooses not to make such payments or if during the one year (1) period after termination DePuy should give Contractor thirty (30) days prior written notice that it will cease making such payments, then Contractor will be released from any and all restrictions on accepting a position with a competitor of DePuy and/or on sales of product competitive to DePuy.  In addition, if Contractor should accept a position with a

Gault South Bay Inc.
November 22, 2006
Page 8

competitor or enter into any agreement or arrangement with any third party which involves, directly or indirectly, the sales of products competitive to DePuy during the one (1) year period after terminate, such payments shall immediately cease and DePuy shall have no further obligation to make such payments. In each such event described above, will Contractor have no right or claim to any further payments from DePuy.

Contactor acknowledges and agrees that the noncompetition provisions of this Agreement, including, without limitation, the scope and geographical areas included therein, are fair and reasonable and reasonably required for the protection of DePuy and to enable DePuy to obtain the benefit of this Agreement.

Contractor represents and warrants to DePuy that the execution, delivery, and performance of this Agreement by Contractor will not conflict with, breach, cause a default under, or result in the termination of any contract, employment relationship, agreement, or understanding, oral or written, with any third party, including without limitation any noncompetition covenant to which or by which Contractor is bound and that there are no other commitments or agreements that would prevent Contractor from entering into this Agreement or performing the obligations required of Contractor under this Agreement. In the event that Contractor is so bound or has commitments or agreements that prevent it from entering into this Agreement or performing its obligations under this Agreement, Contractor agrees that this Agreement will not commence until it is free of any such agreements or commitments, and that it will not perform any of its obligations under this Agreement while such agreements or commitments are in existence. In the event that the foregoing should delay the Effective Date of this Agreement, Contractor agrees that DePuy may, at its sole discretion and without further obligation to Contractor, terminate this Agreement at any time prior to the actual start of this Agreement. Contractor agrees to indemnify, hold harmless and defend DePuy, its employees, officers and directors, against any causes of action, claims, suits, proceedings, damages and judgments arising out of any claim by any third party arising out of any alleged or actual misrepresentation or violation of the provisions of this paragraph.

It is expressly stipulated, agreed and understood between the parties that the business relationship between Contactor and DePuy shall be that of independent contractor and not employer-employee or principal-agent. Contractor further agrees that the only monetary or economic obligation of DePuy to Contractor shall be to provide commissions as set forth herein that Contractor shall not be entitled to receive and shall not receive from DePuy any medical

Gault South Bay Inc.
November 22, 2006
Page 9

coverage, vacation pay, pension benefits, stock options, insurance, or any other type of employee or fringe benefit. Should Contractor otherwise have any right to receive any such benefit from DePuy, Contractor hereby expressly waive the right to receive same. Neither Contractor nor DePuy shall have the authority to legally bind the other in contract, debt or otherwise.

Contractor further represents and warrants that Contractor is not now and has not at any time in the past been debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program and Contractor has not knowingly employed or contracted with an individual or entity so debarred, excluded or prohibited. Finally, Contractor agrees that Contractor has no rights of any kind concerning the Territory and cannot assign its appointment or any part of this agreement to any other party or recover any money from any party to whom DePuy may subsequently assign all or part of the Territory. Any attempt to do so will be cause for DePuy to immediately terminate Contractor's appointment as DePuy's independent sales representative. Both parties agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside in the state and/or federal courts located in the state of Indiana. Each party specifically agrees to waive our right to trial by jury in any litigation arising from this Agreement. Each party agrees that this Agreement supersedes any and all other agreements, written or oral, regarding this appointment and relationship with DePuy including, without limitation, the letter dated December 5, 2005. Each party agrees that the language of this Agreement will be construed as a whole, according to its fair meaning and not for or against either of us, regardless of who drafted such language. If a court of competent jurisdiction or an arbitrator finds or determines any provision of this Agreement invalid or unenforceable, such provision shall not affect the remainder of this Agreement, which shall remain in full force and effect.

08/24/07 13:37 EAX 004257 DEPUY CAN     document 13-4 DEPT filed 09/11/2007     page 11 of 15

Gault South Bay Inc.
November 22, 2006
Page 10

If Contractor agrees to accept this appointment under these terms, please sign and return to the undersigned the enclosed copy of this document. Contractor agrees that the above Agreement is not effective until approved by the appropriate DePuy' Director for Sales or other appropriate officer of DePuy. .

If there are any questions please feel free to contact me. We look forward to working with you.

Very truly yours,

Bradford C. LaPoint
Territory General Manager Northern California

**AGREED AND ACCEPTED:**

Contractor

By: _____

Title: _President_

Date: _12/21/06_

**APPROVED:**

DePuy Orthopaedics, Inc.

By: _____

Title: _Pacific Area Director_

Date: _12/22/06_

As a material inducement to DePuy to enter into the foregoing agreement, and with full intent to be bound by the terms of the foregoing agreement, the following individual(s) agree, represent and warrant that they will personally perform all the obligation of the Contractor and will honor and perform all the promises of the Contractor, including without limitation, those addressing Contractor's noncompete obligations during the term of the foregoing agreement and after termination thereof.

_____
name

_____
date

## APPENDIX A

**Territory:**   **All accounts listed for customer number 701940:**

**Contractor:**   **Gault South Bay Inc.**

**Products:**      DePuy Product categories to include:

- Total Hip Systems
- Total Knee Systems
- O.R. Products (Excluding Hall Power Equipment)
- Extremities
- Bone Cement and Accessories
- Trauma Products

- Co-Marketed Product categories to include:

  o Orthosorb
  o Restore
  o Conduit
  o Alpha BSM
  o Symphony
  o I.C. Graft Chamber
  o Optium
  o Cellect & Cellect DBM Bone Products, excluding those with Healos

**Symphony/IC Graft Chambers/Conduit/Cellect/Optium ("SICCO") Product Commissions:**

Product Categories:
- o  Co-Marketed Products
  - ▪ Symphony
  - ▪ I.C. Graft Chamber
  - ▪ Conduit
  - ▪ Optium
  - ▪ Cellect & Cellect DBM Bone Products, excluding those with Healos

1.  For Sales Representatives with Orthopaedic and Trauma product responsibilities SICCO commissions will be calculated as follows:

   - o  SICCO Base Commission rate will match the sales representative's orthopaedic base commission rate.  SICCO base commission will be paid on 100% of the SICCO net sales billed by DePuy and/or its Affiliates and/or its Business Partners.

   - o  DePuy Orthopaedic and SICCO net sales (at 100%) will be combined and measured against prior year sales.  Standard growth commission will be paid on Orthopaedic sales in excess of last year's sales.  Sales growth commissions for SICCO will be calculated on 50% of the SICCO sales growth dollars. The growth commission percentage rate for SICCO will be the same additional percentage as the rep's orthopaedic growth commissions.

Gault South Bay, Inc. will receive an addition 1% commission (total of 12%) towards payment for John Angilari for the length of this contract on the following accounts, (Stanford University 339740, Sequoia HS 327550, VAPA 360129, Menlo Park Surgical Hospital 307232, Surgical Center of Palo Alto 339740).

Gault South Bay Inc. will receive a commission subsidy of $3,000 per month towards sales coverage at Stanford University. This will remain in effect until the first to occur, Termination of the Agreement or you cease to have additional individuals working with you to assist you in performing your sales obligations under this Agreement.

Upon achieving annual Sales Goal in core Trauma, Hand Innovation and Biologics of 30% growth over prior six months and year-end a 1% bonus on total sales (DePuy Reconstructive excluded) will be paid. Bonus will be paid at 6 and 12 months if sales meet target.

Gault South Bay Inc. will receive an addition .5% commission on all Reconstructive Sales should territory be at or above 15% growth and 1% should territory be at or above 20% growth over 2006 year end Reconstructive Sales. Bonus will be paid at 6 and 12 months if sales meet target.

Gault South Bay Inc. will receive an additional 1% on all Knee sales should Knee sales meet or exceed sales quota of 15% growth over 2006 year end Knee sales. This will be paid at the end of year.

Exhibit  2   Page 44

**Appendix C**

**DePuy Salesforce Certification Program**

**General Program Overview:**
The Certification Program will begin February 1, 2006. An 18-month time frame will be used for the Primary Certification period.

*Participation:*
All DePuy Sales Associates and their sub-representatives and/or assistants are required to participate in and comply with the requirements of this Certification Program.

*Reconstructive Sales Associates:* Hips, Knees, Extremities and ORCA
Sales Associates who have contracted with DePuy **prior to February 1, 2006** will need to accumulate 29 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy **after February 1, 2006** will need to accumulate 95 hours.

*Trauma Sales Associates:*
Sales Associates who have contracted with **DePuy prior to February 1, 2006** will need to accumulate 45 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy **after February 1, 2006** will need to accumulate 80 hours.

*Orthobiologics Sales Associates:*
Sales Associates who have contracted with DePuy **prior to February 1, 2006** will need to accumulate 35 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy **after February 1, 2006** will need to accumulate 55 hours.

Once the Primary Certification is accomplished, all Sales Associates must complete **25** continuing education credit hours per 12-month period to retain their certification status.

**Primary:** Consists of courses that focus on our core product offerings.
**Continuing Education:** Consists of courses that focus on **honing product knowledge, surgical and selling skills,** which build upon the core product certification.

Sales Associates must complete a minimum of **25 continuing education credit hours** per year to retain their certification status. Failure to meet this requirement will result in being demoted to a non-certified status and at DePuy's sole option, implementation of the Non Compliance Consequences set forth below.

Pfiedler Enterprises will act as DePuy's third party accreditation body for this program. Pfiedler's role is to grant credits from **The International Association of Continuing Education and Training (IACET).**

**Sales Associate Recognition/Non Compliance Consequence:**

*Company Store Representatives:*
Beginning in 2007, DePuy will reduce commissions ½% for each year a Sales Associate does not meet certification requirements. The maximum commission penalty will be 1%. Failure to achieve certification in any given year is considered a material breach of the Sales Associate Agreement.

*Recognition:*
All Sales Associates achieving certification will be recognized at the NSM. Other recognition may include name badge enhancement to identify certification and certification insignia that could be added to business cards indicating certification. Sales Associate certification accomplishments will also be featured prominently on www.accessdepuy.com.

**Course Catalog:**
A course catalog detailing the various learning opportunities and associated CMEs will be distributed prior to the start of each calendar year. The Courses included in this catalog may be added, modified and or deleted by DePuy at anytime. However, the Sales Associate who successfully completed a Course prior to deletion will retain credits for that Course.

**New requirements for OST learning connections 08/2006**
**Credit requirements for primary certification are as follows:**

**Biologics Certification Track**

- Start date before February 1, 2006 – 20 credit hours Primary - 12, Elective - 8

- Start date after February 1, 2006 –38 credit hours – Primary -30, Elective -8

**Trauma and Extremities Certification Track**

- Start date before February 1, 2006 – 31 credit hours – Primary 23, Elective 8

- Start date after February 1, 2006 – 76 credit hours – Primary 68, Elective 8

**Reconstructive Products Certification Track**

- Start date before February 1, 2006 – 36 credit hours – Primary 29, Elective 7

- Start date after February 1, 2006 – 84 credit hours – Primary 77, Elective 7

# EXHIBIT B

**BOB GAULT - 701 940**

| Hospital | City | Account |
|----------|------|---------|
| Advanced Surgery Center | San Jose | 104215 |
| Bascom Surgery Center | Campbell | 102644 |
| Camino Medical Group | Santa Clara | 504092 |
| Community Los Gatos | Los Gatos | 161675 |
| El Camino Hospital | Mt. View | 181225 |
| El Camino Surgery Center | Mt. View | 181226 |
| Forest Surgery Center | San Jose | 189208 |
| Good Samaritan | San Jose | 203900 |
| Harold Chope Comm Hospital | San Mateo | 165075 |
| Menlo Park Surgical Hospital | Menlo Park | 307232 |
| O'Connor | San Jose | 286100 |
| Palo Alto Surg Center | Palo Alto | 339740 |
| Reg Med Center San Jose | San Jose | 102000 |
| San Jose Market consol dist. Ctr | San Jose | 324200 |
| Sequoia Hospital | Redwood City | 327550 |
| Silicon Valley Surg Center | San Jose | 103970 |
| Stanford | Palo Alto | 335560 |
| VA Palo Alto | Palo Alto | 360129 |
| Valley Medical Center | San Jose | 324788 |
| Waverly Surgery Center | Palo Alto | 102529 |

# EXHIBIT C

Exhibit 2  Page 49

T-117

RECEIVED

MAR 21 2007

● DePuy
a Johnson-Johnson company

DePuy Orthopaedics, Inc.

December 21, 2006

COMMISSIONS
Michillans

Gault South Bay Inc.
18428 Twin Creeks Road
Monte Sereno, CA 95939

Dear Bob,

Concerning your Sales Agreement (the "Agreement") dated November 22, 2006; we agree that effective January 1, 2007 the agreement will be amended by adding the following to Appendix B:

1.  Gault South Bay Inc. will receive and additional 1% commission (12%) on the following accounts for the commission add for John Angileri, CN335560, 327550, 307232, 339740, 360129, and 102529.

2.  Gault South Bay Inc. will receive an addition .5% commission on all Reconstructive Sales should territory be at or above 10% growth and 1% should territory be at or above 15% growth over 2006-year end Reconstructive Sales. Bonus will be paid at 6 and 12 months if sales meet target.

All other provisions and terms of the Agreement will remain in effect and unmodified.

If the above changes are acceptable to you, please sign and return to me the two copies of this letter. You agree that this amendment is not effective until approved by Depuy's Area Director of Sales or other appropriate officer of DePuy. If there are any questions please feel free to contact me.

Sincerely,

Brad LaPoint
Territory General Manager Northern California

Agreed and Accepted:                          Approved:

Representative Name:                          DePuy Orthopaedics, Inc.

Robert B. Gault                               By:
Print

Date: 3-10-07                                 Title: Pacific AD

                                              Date: 3-12-07

4240 Holden Street ● Emeryville, California 94608 ● Toll Free Phone: (866) 592-5633 ● Ph: (510) 597-4220 ● Fax: (510) 597-4221

Case 5:07-cv-04659-JW     Document 15-2     Filed 09/14/2007     Page 51 of 81

09/10/2007 Case 3:07-cv-00425-RLM-CAN     document 3 POSTAL filed 09/11/2007     page 2 of 6
09/10/2007 20:00 FAX   31723    33          BARNES&THORNBURGLLP                         002/005

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DEPUY ORTHOPAEDICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| GAULT SOUTH BAY, INC. and | ) | |
| ROBERT GAULT, | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF JAKE DANEMAN

I, Jake Danemen, under the penalties for perjury, state:

1.     I have personal knowledge of the facts set forth in this Affidavit, except as otherwise stated. I am competent to testify as to all matters stated, and I am under no legal disability which would in any way preclude me from testifying. If called upon to do so, I would testify to the facts set forth in this Affidavit.

2.     I am a sales representative ("sales rep") for DePuy Orthopedics, Inc. ("DePuy"). I have been a DePuy sales rep for about three years. My territory includes customers in the South Bay area of San Francisco, California.

3.     I worked under Bob Gault and his company, Gault South Bay Inc., from January of this year until his contract was terminated by DePuy in August 2007. John Angileri, Candice Polich, and Craig Fry worked as DePuy sales reps under Mr. Gault as well.

4.     On or about August 12, 2007, Mr. Gault called me and told me he was going to work for Biomet Orthopedics, Inc. ("Biomet"), a competitor of DePuy. He told me he was working on bringing a team of DePuy sales reps to work at Biomet with him, and that he wanted me to join them. He told me he had already spoken to Mr. Fry and Ms. Polich, and that he had encouraged them to move to Biomet as well.

Case 5:07-cv-04659-JW   Document 15-2   Filed 09/14/2007   Page 52 of 81
case 3:07-cv-00425-RLM-CAN   document 36TAL filed 09/11/2007   page 45 of 93
09/10/2007 17:33   4155...3
09/10/2007 20:10 FAX   31723...3   BARNES&THORNBURGLLP   ☑003/005

5.    That same day, after speaking with Mr. Gault, I called Brad LaPoint, our DePuy Territory General Manager, and told him what Mr. Gault had told me. Mr. LaPoint told me to keep him informed, which I did.

6.    The following week, Mr. Gault and I met at the VA Hospital in Palo Alto, California, and he continued to solicit me to work for Biomet. He told me he had a plan to convert his current DePuy customers to Biomet products, and that he intended to bring specific DePuy customers to Biomet. For example, he said he was confident he could get several doctors at Stanford University to use Biomet rather than DePuy products. He also said I should contact a Biomet distributor named Chris Robbins to discuss the details of moving to Biomet with him, and gave me Mr. Robbin's phone number.

7.    Mr. Gault called me several more times over the next month, encouraging me to work for Biomet.

8.    On or about August 15, 2007, Mr. Robbins called me to discuss my working for Biomet. I had not called him, and had not spoken with him before. Mr. Robbins told me that Mr. Gault had told him I would be a good sales rep for Biomet and recommended that he call me.

9.    I met with Mr. Robbins on two occasions. He provided me an offer of employment on both occasions. The second offer was memorialized in a letter sent August 22, 2007.

10.    On August 22, 2007, I spoke with Ms. Polich and asked her whether she planned to follow Mr. Gault to Biomet. She told me Mr. Gault had been putting pressure on her to work for Biomet, and that Mr. Gault was promising to get 70% of the doctors at El Camino Hospital in Los Gatos to switch from DePuy to Biomet products. She told me she had nevertheless decided to stay at DePuy.

11.    During the week of August 20, 2007, Mr. Gault and Mr. Robbins both told me that a Biomet lawyer would call me to "take care of things." I did not request or agree to have such a lawyer contact me.

2

12.    On August 24, 2007, a lawyer from the law firm of Downy Brand named Tory Griffin called me. I had no prior relationship with Mr. Griffin, I have not been a client of his law firm, and I have never expressed any interest in becoming a client. Mr. Griffin asked me to sign a representation agreement so he could "get you out of your non-compete" with DePuy so I could leave and work for Biomet. I did not agree to have him represent me, and I did not sign any agreement. Mr. Griffin is not now and has never been my lawyer.

13.    On August 27, 2007, I communicated my decision to not work for Biomet to Mr.Griffin and Mr. Robbins, and rejected Biomet's offer of employment.

14.    Based on my personal knowledge and conversations with DePuy customers, Mr. Gault appears to be assisting in sales of Biomet products to his former DePuy customers.

15.    For example, in mid August, 2007, prior to Mr. Gault's termination, two of Mr. Gault's doctor customers told me that Mr. Gault had recently encouraged them to purchase Biomet products instead of DePuy products, and promised them benefits if they did so. One doctor told me that Mr. Gault promised to get him a consultant contract with Biomet if he switched to Biomet products. Another doctor told me that Mr. Gault promised to get him a position as a developer with Biomet if he switched to Biomet products.

16.    On another occasion, a doctor told me that Mr. Gault had been harassing doctors to switch to Biomet products, claiming to one that if they did not switch, he could not put his kids through college.

THIS CONCLUDES MY AFFIDAVIT.

3

09/10/2007  17:33   415565____
09/10/2007  20:10 FAX   31723____    BARNES&THORNBURGLLP    PAGE  05
                                                            @005/006

I affirm, under the penalties for perjury, that the facts set forth in this Affidavit are true

based on my personal knowledge or, where stated, on information and belief.

Jake Daneman

**SWORN BEFORE ME** in the City                    )

of _San Francisco_ , in the State of California, )

this _10th_ day of September 2007.                  )

                                                    )

                                                    )

_A Notary Public_         **Signature**            )

_Maryo Magsaman_          **Printed**

My Commission Expires:  July _08  20 11_

MARYO MOGANNAM
Commission # 1788763
Notary Public - California
San Francisco County
My Comm. Expires Jul 8, 2011

4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DEPUY ORTHOPAEDICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| GAULT SOUTH BAY, INC. and | ) | |
| ROBERT GAULT, | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF KENDALL MILLARD**

I, Kendall Millard, under the penalties for perjury, state:

1.    I have personal knowledge of the facts set forth in this Affidavit, except as otherwise stated. I am competent to testify as to all matters stated, and I am under no legal disability which would in any way preclude me from testifying. If called upon to do so, I would testify to the facts set forth in this Affidavit.

2.    I am an associate attorney at Barnes & Thornburg LLP in Indianapolis, Indiana.

3.    Attached to this Affidavit as Exhibit A is a true and correct copy of the slip opinion in *E-Z Dun Services, LLC v. DePuy Orthopaedics, Inc.*, No. 06-3266, Slip Op. (C.D.Cal. June 29, 2006).

4.    Attached to this Affidavit as Exhibit B is a true and correct copy of the complaint filed in the Superior Court of California, County of Santa Clara, dated August 24, 2007, entitled *Gault South Bay, Inc., et al. v. DePuy Orthopaedics, Inc.*, No. 107CV092906.

THIS CONCLUDES MY AFFIDAVIT.

I affirm, under the penalties for perjury, that the facts set forth in this Affidavit are true based on my personal knowledge or, where stated, on information and belief.

Kendall Millard
Kendall Millard

**SWORN BEFORE ME** in the City    )
of Indianapolis, in the State of Indiana,    )
this 11th day of September 2007.    )
                                        )
_____    )
A Notary Public        **Signature**    )
LORI ROBERTSON    )
                            **Printed**

My Commission Expires:


LORI A. ROBERTSON
Johnson County, Indiana
My Commission Expires
August 9, 2014

2

Exhibit 2 Page 56

# EXHIBIT A

P-SEND, ENTER, JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ENTERED
CLERK, U.S DISTRICT COURT
JUNE 29, 2006
JUN 29 2006
CENTRAL DISTRICT OF CALIFORNIA
BY ___ MG DEPUTY

CIVIL MINUTES - GENERAL

Case No: CV 06-3266-RGK (RZx)    Date: June 28, 2006

Title: *E-Z DUN SERVICES, LLC, et al. v. DEPUY ORTHOPAEDICS, INC., et al.*

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Present: The Honorable: R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:           Attorneys Present for Defendants:

Not Present                                Not Present

**Proceedings:**   **(IN CHAMBERS) DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST THROUGH FOURTH CLAIMS FOR RELIEF FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, TO TRANSFER (DE 8)**

## I.   FACTUAL BACKGROUND

This case concerns a contract for the sale of medical equipment. In 1996, Johnson & Johnson formed a relationship with Plaintiff E-Z Dun Services, LLC ("E-Z Dun"),[1] and the two businesses entered into a contract whereby E-Z Dun would sell Johnson & Johnson's medical equipment. Two years later, Johnson & Johnson acquired DePuy Orthopaedics, Inc. ("DePuy" or "Defendant"), an Indiana corporation,[2] and it was through DePuy that Johnson & Johnson would conduct its future business with E-Z Dun. DePuy and E-Z Dun entered into a new written agreement (the "Agreement"), on October 27, 2003. The Agreement appointed E-Z Dun as the Southern California sales representative for DePuy's orthopedic and medical equipment, which E-Z Dun would sell to healthcare providers in Los Angeles County and Orange County. On or about March 28, 2006, DePuy terminated the Agreement with E-Z Dun. DePuy justified its termination of the Agreement on the grounds that E-Z Dun was wrongfully engaged in "direct billing" of DePuy's clients. E-Z Dun alleges this termination constitutes a material breach of the Agreement and that it has performed all covenants, conditions, and promises required to be performed by the terms of the Agreement with DePuy.

E-Z Dun and Ezold (collectively "Plaintiffs") filed this suit in Los Angeles Superior Court on April 25, 2006, alleging the following causes of action against DePuy and its employee Mathew Kraskouskas: (1) breach of contract; (2) breach of good faith and fair dealing; (3) quantum meruit; (4) unjust enrichment; and

---

[1] Plaintiff Andrew Ezold ("Ezold") is E-Z Dun's president.

[2] DePuy regularly conducts business in the County of Los Angeles and maintains an office in Hawthorne, California.



(5) slander per se. DePuy removed this action to federal court on May 26, 2006, on the basis of diversity jurisdiction.

On June 5, 2006, Defendant filed the current Motion to Dismiss for Improper Venue or, in the alternative, to Transfer Venue to the Northern District of Indiana. Defendant alleges that the Agreement contains a forum selection clause that designates Indiana as the sole forum in which any action arising out of the Agreement may be brought. For the reasons stated below, the Court grants Defendant's Motion to Transfer the action to the Northern District of Indiana.

## II.    JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(3), a motion to dismiss pursuant to a forum selection clause may be brought as a motion to dismiss for improper venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In deciding such a motion, the Court is permitted to consider facts outside the pleadings and need not accept the pleadings as true. *Id.* Pursuant to 28 U.S.C. § 1406(a), a court may also transfer an action if it is filed in a district other than that designated in the forum selection clause.

Interpretation and enforcement of contractual forum selection clauses are procedural issues to be decided under federal law. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Under federal law, a forum selection clause is presumptively valid and should not be set aside unless the party challenging the clause shows that enforcement would be unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A court may repudiate a forum selection clause if: (1) the clause was included as a result of fraud or overreaching; (2) enforcement of the clause will deprive the opposing party of its day in court; or (3) public policy strongly favors resolution in the forum in which the suit is brought. *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1992).

## III.   DISCUSSION

Defendant contends that, pursuant to the forum selection clause in the Agreement, this Court is not the proper venue for Plaintiffs' case. For the reasons set forth below, the Court agrees with Defendant and orders this case transferred to the District Court for the Northern District of Indiana.

### A.    Enforcement of the Forum Selection Clause

As stated by the California Court of Appeal, "[t]he existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998). Furthermore, the Supreme Court has held that, absent some evidence establishing fraud or serious inconvenience, a forum selection clause included in a bargained-for contract should be respected as the expressed intent of the parties. *See M/S Bremen*, 407 U.S. at 12-19.

Here, the Agreement's forum selection clause states:

> Both parties agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside [sic] in the state and/or federal courts located in the state of Indiana.

(Mtn. to Dismiss, Ex. 1, p. 6).

The parties do not dispute that the Agreement was fairly executed. Therefore, the outward manifestations of the parties indicate mutual consent to the terms included in the Agreement.

Plaintiffs bear the "heavy burden of proof" to show that enforcement of the forum selection clause is unreasonable. *See Richards* 135 F.3d at 1294. Plaintiffs argue that: (1) the forum selection clause is unreasonable because Indiana has no connection to the current litigation; (2) Plaintiff Ezold's financial hardship may prevent him from litigating in Indiana; and (3) enforcement of the forum selection clause would contravene the public policy of California. The Court disagrees with Plaintiffs, and finds enforcement of the forum selection clause to be reasonable.

### 1.    *The Forum Selection Clause is Reasonable*

Unless Plaintiffs can demonstrate that the forum selection clause in the Agreement is "unreasonable,"the forum selection clause will be enforced. The unreasonableness test in the Ninth Circuit requires a party to show "evidence of fraud, undue influence, overweening bargaining power, or such serious inconvenience" as to deprive that party of its day in court. *See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d at 273, 280 (9th Cir. 1984).

Plaintiffs contend that enforcement of the forum selection clause would be unreasonable because the execution and performance of the Agreement took place in California and many material witnesses and pieces of evidence are located in California. However, these facts alone do not render the forum selection clause unreasonable. *Id.* at 281. Even if Plaintiffs' claim that there is no reasonable connection between Indiana and the present dispute was true,[3] the Court would find the forum selection clause to be reasonable, absent a stronger showing of inconvenience to the Plaintiffs. *Id.* at 280. Moreover, Plaintiffs have failed to present any evidence of fraud, undue influence, overwhelming bargaining power, or serious inconvenience showing that they are being deprived of their day in court. *Id.* As such, Plaintiffs have failed to show that the forum selection clause is unreasonable.

### 2.    *An Unsupported Possibility of Financial Hardship Does Not Constitute Grave Inconvenience*

Plaintiff Ezold also alleges that he may be unable to litigate in Indiana due to financial hardship, and thus enforcement of the forum selection clause would be unreasonable. (Ezold Decl., ¶ 13). However, Ezold provides no evidence to support this allegation. An unsupported allegation of possible financial hardship is not sufficient evidence that the party challenging the forum selection will be deprived its day in court. *Pelleport Investors*, 741 F.2d at 281. Thus, the Court finds that Ezold's assertion of financial hardship, without more, is insufficient to warrant a California venue.

### 3.    *Enforcement of the Forum Selection Clause Does Not Contravene Public Policy*

Plaintiffs further contend that enforcement of the forum selection clause would contravene California's public policy. California courts have routinely upheld contractual forum selection clauses that require California plaintiffs to litigate in out-of-state venues. *Hopkinson v. Lotus Devel. Corp.*, 1995 WL 381888 at *4 (N.D. Cal. June 20, 1995) (*citing Flake v. Medline Indus., Inc.*, 1995 U.S. Dist. LEXIS 4972 (E.D. Cal. Jan. 12, 1995); *Lifeco Servs. Corp. v. Superior Court*, 222 Cal. App. 3d 331 (1990)). "Although California has an interest in protecting the rights of resident plaintiffs, the designated forum state has an

---

[3]Plaintiffs ignore the substantial connection between Indiana and this dispute. DePuy is an Indiana corporation with its corporate headquarters in Indiana. The DePuy products sold by E-Z Dun under the Agreement were designed in, manufactured in, and shipped from Indiana.

equal interest in regulating a resident corporation's activities and ensuring that contractual agreements are enforced." *Hopkinson*, 1995 WL 381888 at \*4.

Here, Indiana has an interest in regulating its resident corporation, and California courts in the past have respected such interests when coupled with a forum selection clause such as the one in the Agreement. *See Lifeco Servs. Corp.*, 222 Cal. App. 3d at 335. In addition, as the Agreement specifically states that Indiana law will apply, it is reasonable to have an Indiana court hear this case. (Mtn. to Dismiss, Ex. I, p. 6.) Thus, the Court finds that enforcing the forum selection clause in the Agreement does not contravene the public policy of California.

Plaintiffs chose to engage in business with an Indiana corporation and signed a contract with an Indiana forum selection provision. By doing so, they accepted the provision and cannot now deem it "unreasonable" or "arbitrary." Plaintiffs have not met the "heavy burden of proof" required to show that enforcement of the forum selection clause would be unreasonable. Thus, the Court finds that enforcement of the forum selection provision in the Agreement is reasonable.

### B.    Transfer, Rather Than Dismissal, is Warranted

In light of the Court's findings above, Plaintiffs' case must either be dismissed for improper venue or transferred to a proper venue pursuant to the forum selection clause. When a Rule 12(b)(3) motion is granted on the basis of a forum selection clause, transfer is generally favored in order to avoid statute of limitations problems and the cost and inconvenience of filing a new action. *See Minnette v. Time Warner*, 997 F.2d 1023, 1026-27 (2d Cir. 1993). Thus, having considered the benefit to judicial economy, the costs of filing a new action, and finding no prejudice to Defendants from a transfer, the Court orders this case transferred to the District Court for the Northern District of Indiana where venue is proper under 28 U.S.C. § 1391(a).

### C.    Plaintiffs' Motion to Remand

Plaintiffs filed a Motion to Remand with the Court on June 13, 2006, with a hearing date of July 3, 2006. As set forth above, this case has been transferred to the District Court for the Northern District of Indiana. As such, Plaintiffs' Motion to Remand is **denied as moot.**

## IV.    CONCLUSION

In light of the foregoing, the Court grants Defendant's Motion to Transfer the Action to the District Court for the Northern District of Indiana.

**IT IS SO ORDERED.**

Initials of Preparer _____ /slw

# EXHIBIT B

ORIGINAL

DOWNEY BRAND LLP
TORY E. GRIFFIN (Bar No. 186181)
555 Capitol Mall, Tenth Floor
Sacramento, CA 95814-4686
Telephone:    (916) 444-1000
Facsimile:    (916) 444-2100

Attorneys for Plaintiffs
GAULT SOUTH BAY, INC., BOB GAULT, and
CANDICE POLICH

**UCS**

FILED  Santa Clara Co
08/24/07   1:42pm
Kiri Torre
Chief Executive Offic
By: mrosales DISCIVLI
R#200/00084255
CR              $320.00
IL              $320.00
Case: 1-07-CV-092906

*M. Rosales*

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

GAULT SOUTH BAY, INC., a California
Corporation, BOB GAULT, an individual,
and CANDICE POLICH, an individual,

                    Plaintiffs,

        v.

DEPUY ORTHOPAEDICS, INC., an
Indiana Corporation,

                    Defendant.

CASE NO. **107CV092906**

**COMPLAINT**

FAXED

        Plaintiffs Gault South Bay, Inc. ("Gault South Bay"), and Bob Gault ("Gault"),

(collectively referred to herein as "Plaintiffs") seek declaratory and injunctive relief pursuant to

California Code of Civil Procedure Section 1060 and Business and Professions Code Section

17200.  In support thereof, Plaintiffs allege:

                        **THE PARTIES**

        1.        Gault South Bay is a corporation incorporated in the State of California with its

principal place of business in California.  Gault is the President and sole shareholder of Gault

South Bay.  Gault South Bay's business purpose is to allow Gault to perform certain sales

activities on behalf of Defendant, as stated more fully herein.

872986.3

1

COMPLAINT

Exhibit 2  Page 63

1    2.    Gault is an individual residing in Santa Clara County, California.

2    3.    Polich is an individual residing in California.

3    4.    Defendant DePuy Orthopedics, Inc. ("Defendant") is a corporation incorporated in

4    the State of Indiana and having its principal place of business in the State of Indiana. Plaintiffs

5    are informed and believes that Defendant maintains sufficient contacts with California such that

6    this court has personal jurisdiction over said defendant. These contacts include, but are not

7    limited to, numerous clients in California, and several employees residing in California.

8    Moreover, the instant dispute arises out of the contract between Gault South Bay and Defendant,

9    and such contract was to be performed in California.

10    5.    The true names and capacities of the Defendants sued herein as DOES 1 through

11    10, inclusive, are unknown to Plaintiffs at the time of filing this complaint, and therefore

12    Plaintiffs sue said defendants under such fictitious names. Plaintiffs will amend this complaint to

13    insert the true name and capacities of the fictitiously named Defendants when the same become

14    known to Plaintiffs.

15    **VENUE**

16    6.    Venue is proper in this court pursuant to Code of Civil Procedure sections 395 or

17    395.5 because (a) Defendant does not reside in California, and (b) because the controversy

18    regarding the written agreement that is the subject of this declaratory relief action arose in Santa

19    Clara County, California, and such written agreement was made in Santa Clara County,

20    California.

21    **GENERAL BACKGROUND**

22    7.    Defendant is a corporation that designs, manufactures and distributes orthopedic

23    devices and supplies including hip, knee, extremity, trauma, orthobiologics, and operating room

24    products.

25    8.    In November 2006, Gault South Bay and Defendant entered into an independent

26    contractor agreement (the "Agreement") whereby Gault South Bay agreed to act as the

27    independent sales representative for Defendant's products in a certain identified territory. The

28    Agreement had an effective date of January 1, 2007. A copy of the Agreement is attached hereto

872966.3    2

COMPLAINT

1   as Exhibit A.

2       9.    The Agreement purports to be in effect until December 31, 2007, and states that

3   during this time period, Contractor will not "sell any competitive products or engage in any

4   competitive activities without obtaining DePuy's prior written consent." (Exhibit A, at p. 1.) The

5   Agreement further defines competitive activities in this context as "selling, offering for sale,

6   promoting, receiving or soliciting orders for goods or services similar, or intended for similar use

7   as those offered by DePuy or any other J&J company, or accepting remuneration or any kind

8   from any person providing such goods and services." (*Id.*)

9       10.    On August 24, 2007, DePuy sent a letter terminating the Agreement.

10      11.    In addition to the restrictive covenant noted in Paragraph 8 above, the Agreement

11  contains an extremely broad covenant not to compete following termination of the Agreement.  It

12  provides, in pertinent part:

13          Contractor agrees that, if this Agreement is terminated for any
            reason, that for a period of one (1) year after termination of the
14          Agreement, that neither Contractor nor any of its employees,
            independent contractors, or agents who were involved in the
15          representation or sale of the Products, will, without DePuy's prior
            written consent, accept a position with a competitor of DePuy,
16          which involves direct or indirect sales of competitive products in
            the same Territory or sales to the same accounts covered by the
17          Agreement or engage, directly or indirectly in the sales of
            competitive products or in competitive activities as described
18          above.

19          ...

            Contractor also agree [sic] to waive any defense to entry of a
20          preliminary injunction prohibiting its violation of the
            noncompetition provisions of this Agreement based on the
21          existence of an adequate remedy at law by DePuy.

22  (Exhibit A, at p.7.)

23      12.    Polich is not a party to the Agreement.  Polich is an independent contractor for

24  Gault South Bay.  Nevertheless, the Agreement purports to limit Polich's ability to compete with

25  DePuy.  The Agreement states:

26          Contractor may hire its own employees or contract with other
            individuals or entities to assist Contractor in the performance of its
27          duties hereunder, which employees, individuals or entities shall be
            solely Contractor's responsibility and shall be compensated solely
28          by Contractor.  Contractor agrees that any such employees,

872966.3                                    3

                                        COMPLAINT

1    individuals or entitles will not be subject to DePuy's approval or
     supervision, but will be bound by the same DePuy and Johnson &
2    Johnson guidelines, policies and procedures, the non-compete
     provisions and all other provisions of this agreement to which
3    Contractor is subject.

4    (Exhibit A, p. 2.)

5        13.    The Agreement also contains a waiver of a right to a jury trial. (Exhibit A, at p.9.)

6    Such provisions are unenforceable in California.

7        14.    By this action, Plaintiffs wish to have this court declare that the non-compete

8    provisions contained in the Agreement are void and invalid as contrary under California law, due

9    to California's strong public policy against agreements restricting an individual from employment

10   in his or her chosen trade or profession. (*See* Business and Professions Code Section 16600). In

11   particular, Plaintiffs seek to have this court declare all restrictive covenants in the Agreement void

12   as an improper restraint of trade under Business and Professions Code Section 16600. (*See*

13   *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881 (1998)).

14       15.    Plaintiffs further seek to have the Agreement declared invalid insofar as the one-

15   year term purports to prohibit Gault from engaging in his chosen profession during this one-year

16   period. Enforcement of the one-year term against Plaintiffs would constitute an unlawful restraint

17   of trade in violation of California law.

18   **FIRST CAUSE OF ACTION**

19   **REQUEST FOR DECLARATORY RELIEF**

20       16.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1

21   through 15, as though fully contained herein.

22       17.    An actual controversy has arisen and now exists between Plaintiffs and Defendant

23   concerning their respective rights and obligations under the Agreement. Plaintiffs believe the

24   Agreement is terminable at will, and that the non-compete provisions contained in the Agreement

25   are void and unenforceable. Plaintiffs, however, are informed and believe, and thereon allege,

26   that Defendant disputes these assertions.

27       18.    Plaintiffs request a judicial determination regarding the validity and enforceability

28   of the non-compete provisions contained in the Agreement, as well as the termination provision

872966.1

4

COMPLAINT

of the Agreement and the waiver of the right to a jury trial.

19.    A judicial declaration is necessary and appropriate at this time under the circumstances so that Plaintiffs may ascertain the scope and extent of their right to do business in their chosen profession.

### SECOND CAUSE OF ACTION
### UNFAIR COMPETITION
### (Business & Professions Code § 17200)

20.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 19, as though fully contained herein.

21.    The Agreement is unlawful and unfair within the meaning of Business & Professions Code Section 17200 insofar as the Agreement restricts Plaintiffs' ability to compete with DePuy, or otherwise restricts the ability to terminate the Agreement.

22.    Plaintiffs seek an injunction to prohibit enforcement of the invalid portions of the Agreement, as set forth above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against defendants as follows:

1.    For a declaration that the non-compete contained in the Agreement are void and unenforceable in California, and that the Agreement is not applicable to or binding on non-parties thereto, including the one-year term and non-compete provisions of the Agreement;

2.    For a preliminary and permanent injunction preventing Defendant from enforcing any non-compete provisions contained in the Agreement, or from enforcing any portion of the Agreement against non-parties thereto;

3.    For attorneys' fees, according to proof and as permitted by law;

4.    For costs of suit as permitted by law; and

5.    For such other relief as the court deems just and proper.

872966.1

5

COMPLAINT

1    DATED: August 24, 2007

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



DOWNEY BRAND LLP

By:_____
TORY E. GRIFFIN
Attorney for Plaintiffs
GAULT SOUTH BAY SYSTEMS, INC., BOB
GAULT, and CANDICE POLICH

872966.3

6

COMPLAINT

FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

07 SEP 11  PM 2: 10

DEPUY ORTHOPAEDICS, INC.,    )
                             )
         Plaintiff,          )
                             )
    v.                       )  Civil Action No.
                             )
GAULT SOUTH BAY, INC. and    )
ROBERT GAULT,                )       3:07CV0425 RM
                             )
         Defendants.         )

## TEMPORARY RESTRAINING ORDER

This matter comes before the Court on the Motion for Temporary Restraining Order and Preliminary Injunction of the Plaintiff, DePuy Orthopaedics, Inc. ("DePuy"), against the Defendants, Gault South Bay, Inc. ("Gault South Bay") and Robert Gault ("Gault"). The Court, having reviewed the moving papers, DePuy's brief in support of its motion and the evidence submitted in support of the same, hereby makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1.    DePuy is a corporation organized under the laws of the State of Indiana and has its principal place of business at 700 Orthopaedic Drive, Warsaw, IN 46581-0988.

2.    Gault South Bay is a corporation incorporated in the State of California with its principle place of business in California.

3.    Gault is a citizen and resident of the State of California.

4.    This Court has personal jurisdiction over the defendants.

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity between the plaintiff and defendants and the amount in controversy exceeds $75,000, exclusive of costs and interest.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) as the parties have contractually agreed to venue of all disputes in this district.

7.      DePuy contracts with various individuals and companies throughout the country to serve as its sales representatives.

8.      These individuals and companies are tasked with developing goodwill and strong customer relationships on behalf of DePuy and have direct contact with DePuy customers on a regular basis.

9.      DePuy takes various steps to protect the goodwill and customer relationships developed by its sales representatives, including requiring restrictions on post-termination competition by those sales representatives.

10.     When sales representatives fail to honor such restrictions, they are typically successful in converting some or all of their former DePuy accounts into purchasers of competitive products.

11.     DePuy entered into a contract with Gault South Bay, dated November 22, 2006, appointing it as a sales representative for the sale of DePuy products to specific locations within northern California until December 31, 2007, absent termination for cause by either party.

12.     The contract states that Gault South Bay will "devote its best efforts" to selling DePuy products, and that neither it nor any of its employees, independent contractors or agents, including Mr. Gault will "during the time that this appointment is in effect, sell any competitive

- 2 -

products or engage in any competitive activities without obtaining DePuy's prior written consent."

13.    The contract also states that if it is terminated "for any reason" the contracting Defendant "will not, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement" for "one (1) year after termination."

14.    The contract state that it is to be interpreted in accordance with Indiana law and are subject to resolution in Indiana courts of competent jurisdiction.

15.    There is no evidence that DePuy has in any way failed in any obligation under its contract with Gault South Bay.

16.    DePuy terminated the contract with Gault South Bay effective August 24, 2007, for engaging in competitive activities in violation of the contract.

17.    Specifically, in August 2007, prior to his termination from DePuy, Mr. Gault contacted at least four different surgeons at Stanford University Medical Center and Los Gatos Hospital, who at the time were accounts in Mr. Gault's territory and ordered DePuy products through Mr. Gault, and solicited them to purchase Biomet Orthopaedics, Inc. ("Biomet") products rather than the competing DePuy products.

18.    Biomet is a competitor of DePuy.

19.    Further, on or about August 12, 2007, Mr. Gault solicited DePuy sales representative Jake Daneman to leave DePuy and work for Biomet, and arranged for Daneman to meet with a Biomet representative.    Mr. Gault also attempted to solicit DePuy sales representatives Mike Olmes, John Angeleri, Candice Polich, and Craig Fry to work for Biomet.

20.    Since leaving DePuy, Mr. Gault took a position with Biomet involving the direct or indirect sale of products competitive to those of DePuy in the same territory assigned to Gault South Bay by DePuy and to the same accounts assigned to it by DePuy. Mr. Gault's position with Biomet became effective on or about September 4, 2007.

21.    On or about September 10, 2007, Mr. Gault arranged and held a meeting with DePuy customers in Gault South Bay's territory for the purpose of soliciting those customers to purchase products from Biomet rather than from DePuy.

22.    Mr. Gault and Gault South Bay are likely to assist or continue to assist in the direct or indirect sale of Biomet products in violation of one or more restrictive covenants.

23.    Every sale of competitive products, whether individually, in concert with others or in aid of others, damages DePuy's goodwill and customer relationships.

24.    Enforcing the restrictive covenants in question would not prevent either Mr. Gault or Gault South Bay from selling competitive products in another geographic region or engaging in any number of non-competitive activities.

## CONCLUSIONS OF LAW

In light of the foregoing Findings of Fact, the Court concludes as follows:

1.    Mr. Gault and Gault South Bay's conduct is in violation of the plain language of the restrictive covenants and best efforts clauses in the contract, and in violation of their obligations of their duties as agents of DePuy. Thus, the only question for this Court to resolve in determining whether DePuy is likely to succeed on the merits of its case for breach of contract is the enforceability of the restrictive covenants.

2.    The restrictive covenants contained Gault South Bay's contract is subject to interpretation under Indiana law.

- 4 -

3.    Indiana law will enforce covenants that are reasonable "are reasonable with respect to the covenantee, the covenantor and the public interest." *Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556, 561 (Ind. 1983).   Determining reasonableness is a question of law, made in light of all the facts and circumstances of a particular case. *Id.*

4.    The focus in determining reasonableness is whether the covenant is designed to protect the legitimate interests of the covenantee and is reasonable both in duration and the scope of activities restricted. *Norlund v. Faust,* 675 N.E.2d 1142, 1154-1155 (Ind. App. 1997).

5.    DePuy's goodwill is a protectable interest justifying a restrictive covenant under Indiana law, particularly in light of Gault South Bay's former responsibilities as a sales representative for DePuy. *See Licocci,* 445 N.E.2d at 562, 564; *Miller v. Frankfort Bottle Gas, Inc.,* 202 N.E.2d 395, 564 (Ind. App. 1964); *Smart Corp. v. Grider*, 650 N.E.2d 80, 83 (Ind. App. 1993); *Barnes Group v. O'Brien*, 591 F. Supp. 454, 460 (N.D. Ind. 1984).

6.    The restrictive covenants contained in Gault South Bay's contract is reasonable as to the scope of prohibited activities, as they are limited to the particular customers and product lines that were within Gault South Bay's responsibilities on behalf of DePuy and hence will protect DePuy's goodwill.   *See Norlund,* 675 N.E.2d at 1155 (enjoining contact with all optometrists who had referred patients to an ophthalmologist while the defendant-covenantee was employed); *see also Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 213 (Ind. App. 1982) (enjoining contact with all present clients of an accounting firm, but refusing to include past or prospective clients).

7.    Prohibitions on competitive activities for a year or more have been upheld by several Indiana precedents as reasonable.   *See Licocci*, 445 N.E.2d at 562-563 (one year); *Norlund,* 675 N.E.2d at 1155 (two years); *Smart Corp.,* 650 N.E.2d at 84 (three years); *JAK*

- 5 -

*Productions, Inc. v. Wiza*, 986 F.2d 1080, 1090 (7th Cir. 1993) (applying Indiana law and upholding one year prohibition); *Barnes Group, Inc.*, 591 F.Supp at 460 (two years) The Court discerns no reason or circumstance that would render the one year term in Gault South Bay's contract unreasonable.

      8.      Gault South Bay's contract is not contrary to any public policy.

      9.      Therefore, the Court concludes as a matter of law that the covenants in Gault South Bay's contract is enforceable under Indiana law.

      10.     Therefore, DePuy has established a likelihood of success on the merits of its claim for breach of contract.

      11.     Under Indiana law, harm to goodwill is irreparable. *See JAK Productions, Inc.*, 986 F.2d at 1084; *see also Norlund*, 675 N.E.2d at 1150. DePuy has demonstrated irreparable harm from the acts of the Defendants in violating their reasonable restrictions on competition.

      12.     Gault South Bay and Mr. Gault have the opportunity to earn income either in non-competitive activities or in another region. As a result, the balance of harms favors DePuy. *See Barnes Group*, 591 F. Supp. at 461.

      13.     Honoring valid contracts furthers the public interest in ensuring the freedom of contract and enforcing valid contractual obligations. *Trimble v. Ameritech Pub., Inc.*, 700 N.E.2d 1128, 1129 (Ind. 1998); *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind. App. 1999). There is no countervailing interest sufficient to defeat entry of a temporary restraining order.

      **WHEREFORE**, in keeping with the foregoing Findings of Fact and Conclusions of law, the Court **ORDERS** as follows:

1.      Gault South Bay and Mr. Gault, and all those in active concert and participation

with Gault South Bay and Gault, are hereby **ENJOINED** from engaging, directly or indirectly,

in the sale or offer for sale of products competitive with those they formerly offered on behalf of

DePuy, to any accounts assigned to Gault South Bay or Mr. Gault under the Gault Agreement

pending resolution of DePuy's Motion for a Preliminary Injunction.  A list of those accounts is

attached to this order;

2.      This Order shall expire 10 days from its entry absent extension for good cause

shown or consent to extension by the Defendants;

3.      DePuy shall post security pursuant to Federal Rule of Civil Procedure 65(c) in the

amount of $_____ to secure this temporary restraining order; and

4.      The Court shall conduct a hearing on DePuy's Motion for a Preliminary

Injunction on _____, 2007, commencing at _____ a.m./p.m.


Dated:_____, 2007

                                             _____
                                             Judge, United States District Court
                                             United States District Court for the
                                             Northern District of Indiana

Exhibit "2" Page 75

Distribution:

Dwight D. Lueck
BARNES & THORNBURG
11 South Meridian Street
Indianapolis, IN 46204

D. Michael Anderson
BARNES & THORNBURG
600 1st Source Bank Center
100 North Michigan
South Bend, IN 46601-1632

INDS02 kmillard 917935v1

- 8 -

**EXHIBIT 3**

1  Mark A. Neubauer (No. 73728)
   Rebecca Edelson (No. 150464)
2  Steptoe & Johnson LLP
   2121 Avenue of the Stars, Suite 2800
3  Los Angeles  CA  90067
   Telephone:  (310) 734-3200
4  Facsimile:   (310) 734-3300
   Email: mneubauer@steptoe.com
5  Email: redelson@steptoe.com

6  Attorneys for Defendant
   DEPUY ORTHOPAEDICS, INC.,
7  an Indiana corporation

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12

13  GAULT SOUTH BAY, INC., a          CASE NO. 5:07-cv-04659-RS
    California Corporation, BOB
14  GAULT, an individual, and         **NOTICE OF PENDENCY OF**
    CANDICE POLICH, an individual     **OTHER ACTION BY**
15                                     **DEFENDANT DEPUY**
                                       **ORTHOPAEDICS, INC.  [LOCAL**
16         Plaintiffs,                 **RULE 3-13]**

17      vs.

18  DEPUY ORTHOPAEDICS, INC.,
    an Indiana Corporation
19
           Defendant.
20

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

---

**NOTICE OF PENDENCY OF OTHER ACTION BY DEFENDANT DEPUY ORTHOPAEDICS, INC.**
**Case No. : 5:07-cv-04659-RS**
Doc. # CC-166208 v.1

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

The undersigned, counsel of record for Defendant DePuy Orthopaedics, Inc., gives notice under Local Rule 3-13, that DePuy Orthopaedics, Inc. vs. Gault South Bay, Inc. and Robert Gault, Case No. 3:07CV0425RM filed on September 11, 2007 in the United States District Court for the Northern District of Indiana ("Indiana Action") involves a material part of the same subject matter and the same parties (other than Candace Polich) as the instant action in this Court ("Instant Action").

In the Indiana Action, DePuy Orthopaedics, Inc. ("DePuy") filed a Complaint against Robert (aka Bob) Gault ("Gault") and Gault South Bay, Inc. arising from Gault South Bay, Inc.'s competitive activities in violation of its obligations to DePuy pursuant to Gault South Bay, Inc.'s sales representative agreement with DePuy ("Agreement"). That Complaint asserts claims for breach of contract, tortious interference with contractual relationship, and tortious interference with customer relationships, breach of duties, and unfair competition.

In the Instant Action, Gault and Gault South Bay, Inc. filed against DePuy a Complaint for declaratory relief and unfair competition, alleging that certain terms of the Agreement are unenforceable, including the terms that require Gault South Bay, Inc. not to compete with DePuy.

Given the mandatory Indiana forum selection clause in the Agreement, it is DePuy's position that the Instant Action should be dismissed or transferred from this Court to the United States District Court for the Northern District of Indiana. No later than September 17, 2007, DePuy intends to file, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), a motion for an order dismissing the Instant Action or, alternatively, for an order transferring it from this Court to the United States District Court for the Northern District of Indiana on the ground that venue is improper since according to the forum selection clause in the parties' Agreement that gave rise to

1

NOTICE OF PENDENCY OF OTHER ACTION BY DEFENDANT DEPUY ORTHOPAEDICS, INC.
Case No. : 5:07-cv-04659-RS
Doc. # CC-166208 v.1

1  the Instant Action all disputes related to the Agreement must be resolved in an Indiana
2  forum.

3

4                              Respectfully submitted:

5

6  DATED: September 11, 2007        STEPTOE & JOHNSON LLP

7                                  MARK A. NEUBAUER
                                   REBECCA EDELSON
8

9

10                                 By    /s/ Rebecca Edelson
                                        REBECCA EDELSON
11                                      Attorneys for Defendant
                                        DEPUY ORTHOPAEDICS, INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notices

5:07-cv-04659-RS Gault South Bay, Inc. et al v. DePuy Orthopaedics, Inc.
ADRMOP, E-Filing

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available .*
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at for more information.

The following transaction was received from by Edelson, Rebecca entered on 9/11/2007 5:44 PM and filed on 9/11/2007

**Case Name:**         Gault South Bay, Inc. et al v. DePuy Orthopaedics, Inc.
**Case Number:**       5:07-cv-4659
**Filer:**             DePuy Orthopaedics, Inc.
**Document Number:** 6

**Docket Text:**
NOTICE by DePuy Orthopaedics, Inc. *Notice of Pendency of Other Action by Defendant DePuy Orthopaedics, Inc. [Local Rule 3-13]* (Edelson, Rebecca) (Filed on 9/11/2007)

**5:07-cv-4659 Notice has been electronically mailed to:**

Rebecca Edelson    bedelson@steptoe.com, jcole@steptoe.com

Tory Edward Griffin    tgriffin@downeybrand.com, afrench@downeybrand.com

Mark Alan Neubauer    mneubauer@steptoe.com, smcloughlin@steptoe.com

**5:07-cv-4659 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** \\sjccfile1\users\jcole\Desktop\Notice of Pendency of Other Action.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=9/11/2007] [FileNumber=3740561-0]
[004533000c2f9270c2adf4624d5f1ea99c5770563cfed8b52a6d60f1146b77aa8f77e
db395b518fd4fb0f87dc13ae7b24a73df18ad46c19a11194edd452195c5]]