**EXHIBIT 3**

1  Mark A. Neubauer (No. 73728)
   Rebecca Edelson (No. 150464)
2  Steptoe & Johnson LLP
   2121 Avenue of the Stars, Suite 2800
3  Los Angeles  CA  90067
   Telephone:  (310) 734-3200
4  Facsimile:  (310) 734-3300
   Email: mneubauer@steptoe.com
5  Email: redelson@steptoe.com

6  Attorneys for Defendant
   DEPUY ORTHOPAEDICS, INC.,
7  an Indiana corporation

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

12

13  GAULT SOUTH BAY, INC. a          CASE NO. 5:07-cv-4659-RS
    California Corporation, BOB
14  GAULT, an individual, and        **NOTICE OF ERRATA RE NOTICE**
    CANDICE POLICH, an individual,   **OF REMOVAL OF ACTION UNDER**
15                                   **28 U.S.C. § 1441(b) BY DEFENDANT**
                  Plaintiff,         **DEPUY ORTHOPAEDICS, INC.**
16
         vs.
17
    DEPUY ORTHOPAEDICS, INC.,
18  an Indiana corporation,

19              Defendants.

20      **TO THE CLERK OF THE ABOVE-ENTITLED COURT AND**

21  **PLAINTIFFS GAULT SOUTH BAY, INC., BOB GAULT AND CANDICE**

22  **POLICH AND THEIR COUNSEL OF RECORD:**

23          PLEASE TAKE NOTICE that Defendant DePuy Orthopaedics, Inc.'s

24  September 10, 2007 Notice of Removal of Action under 28 U.S.C. § 1441(b)

25  inadvertently failed to include Exhibit "A" to the Complaint, attached as Exhibit 1

26  to the Notice of Removal.

27          Defendant DePuy Orthopaedics, Inc. files herewith as Exhibit 1 hereto the

28  Complaint including its previously omitted Exhibit "A".

NOTICE OF ERRATA RE: NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) BY DEF.
DEPUY ORTHOPAEDICS, INC.

Page ___19___
CASE NO. 5:07-cv-04659-RS
Doc. # CC-166289 v.1

Exhibit ___3___

1      Defendant will give notice of the filing of this Notice of Errata to the Clerk

2   of the Superior Court of the State of California for the County of Santa Clara.

3      Defendant's counsel apologizes for the error.

4

5   DATED: September 12, 2007      STEPTOE & JOHNSON LLP

6                                 MARK A. NEUBAUER
7                                 REBECCA EDELSON

8

9                                 By    /s/ Rebecca Edelson
                                       REBECCA EDELSON
10                                     Attorneys for Defendant
                                       DEPUY ORTHOPAEDICS, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -
**NOTICE OF ERRATA RE: NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) BY DEF.
DEPUY ORTHOPAEDICS, INC.**

CASE NO. 5:07-cv-04659-RS
Doc. # CC-166289 v.1

Page ___20___
Exhibit ___3___

1  DOWNEY BRAND LLP
   TORY E. GRIFFIN (Bar No. 186181)
2  555 Capitol Mall, Tenth Floor
   Sacramento, CA 95814-4686
3  Telephone:   (916) 444-1000
   Facsimile:   (916) 444-2100
4
   Attorneys for Plaintiffs
5  GAULT SOUTH BAY, INC., BOB GAULT, and
   CANDICE POLICH
6

**UCS**

FILED  Santa Clara Co
08/24/07   1:42pm
Kiri Torre
Chief Executive Offic
By: mrosales DISCIVDI
R#200/00084255
CK          $320.00
IL          $320.00
Case: 1-07-CV-092906

M. Rosales

7

8                     SUPERIOR COURT OF CALIFORNIA

9                        COUNTY OF SANTA CLARA

10

11 GAULT SOUTH BAY, INC., a California        CASE NO. 107CV092906
   Corporation, BOB GAULT, an individual,
12 and CANDICE POLICH, an individual,         COMPLAINT

13                 Plaintiffs,

14       v.

15 DEPUY ORTHOPAEDICS, INC., an              FAXED
   Indiana Corporation,
16

17                 Defendant.

18

19

20       Plaintiffs Gault South Bay, Inc. ("Gault South Bay"), and Bob Gault ("Gault"),

21 (collectively referred to herein as "Plaintiffs") seek declaratory and injunctive relief pursuant to

22 California Code of Civil Procedure Section 1060 and Business and Professions Code Section

23 17200.  In support thereof, Plaintiffs allege:

24                          THE PARTIES

25       1.    Gault South Bay is a corporation incorporated in the State of California with its

26 principal place of business in California.  Gault is the President and sole shareholder of Gault

27 South Bay.  Gault South Bay's business purpose is to allow Gault to perform certain sales

28 activities on behalf of Defendant, as stated more fully herein.

872966.3                              1
                                  COMPLAINT

Page ___3___
Exhibit ___1___

Page ___21___
Exhibit ___3___

2.    Gault is an individual residing in Santa Clara County, California.

3.    Polich is an individual residing in California.

4.    Defendant DePuy Orthopedics, Inc. ("Defendant") is a corporation incorporated in the State of Indiana and having its principal place of business in the State of Indiana. Plaintiffs are informed and believes that Defendant maintains sufficient contacts with California such that this court has personal jurisdiction over said defendant. These contacts include, but are not limited to, numerous clients in California, and several employees residing in California. Moreover, the instant dispute arises out of the contract between Gault South Bay and Defendant, and such contract was to be performed in California.

5.    The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiffs at the time of filing this complaint, and therefore Plaintiffs sue said defendants under such fictitious names. Plaintiffs will amend this complaint to insert the true name and capacities of the fictitiously named Defendants when the same become known to Plaintiffs.

### VENUE

6.    Venue is proper in this court pursuant to Code of Civil Procedure sections 395 or 395.5 because (a) Defendant does not reside in California, and (b) because the controversy regarding the written agreement that is the subject of this declaratory relief action arose in Santa Clara County, California, and such written agreement was made in Santa Clara County, California.

### GENERAL BACKGROUND

7.    Defendant is a corporation that designs, manufactures and distributes orthopedic devices and supplies including hip, knee, extremity, trauma, orthobiologics, and operating room products.

8.    In November 2006, Gault South Bay and Defendant entered into an independent contractor agreement (the "Agreement") whereby Gault South Bay agreed to act as the independent sales representative for Defendant's products in a certain identified territory. The Agreement had an effective date of January 1, 2007. A copy of the Agreement is attached hereto

875966.3

2

COMPLAINT

Page _____ 4
Exhibit _____ 1

Page _____ 22
Exhibit _____ 3

1   as Exhibit A.

2       9.      The Agreement purports to be in effect until December 31, 2007, and states that

3   during this time period, Contractor will not "sell any competitive products or engage in any

4   competitive activities without obtaining DePuy's prior written consent." (Exhibit A, at p. 1.) The

5   Agreement further defines competitive activities in this context as "selling, offering for sale,

6   promoting, receiving or soliciting orders for goods or services similar, or intended for similar use

7   as those offered by DePuy or any other J&J company, or accepting remuneration or any kind

8   from any person providing such goods or services." (Id.)

9       10.     On August 24, 2007, DePuy sent a letter terminating the Agreement.

10      11.     In addition to the restrictive covenant noted in Paragraph 8 above, the Agreement

11  contains an extremely broad covenant not to compete following termination of the Agreement.  It

12  provides, in pertinent part:

13          Contractor agrees that, if this Agreement is terminated for any
            reason, that for a period of one (1) year after termination of the
14          Agreement, that neither Contractor nor any of its employees,
            independent contractors, or agents who were involved in the
15          representation or sale of the Products, will, without DePuy's prior
            written consent, accept a position with a competitor of DePuy,
16          which involves direct or indirect sales of competitive products in
            the same Territory or sales to the same accounts covered by the
17          Agreement or engage, directly or indirectly in the sales of
            competitive products or in competitive activities as described
18          above.

19          ...
            Contractor also agree [sic] to waive any defense to entry of a
20          preliminary injunction prohibiting its violation of the
            noncompetition provisions of this Agreement based on the
21          existence of an adequate remedy at law by DePuy.

22  (Exhibit A, at p.7.)

23      12.     Polich is not a party to the Agreement.  Polich is an independent contractor for

24  Gault South Bay.  Nevertheless, the Agreement purports to limit Polich's ability to compete with

25  DePuy.  The Agreement states:

26          Contractor may hire its own employees or contract with other
            individuals or entities to assist Contractor in the performance of its
27          duties hereunder, which employees, individuals or entities shall be
            solely Contractor's responsibility and shall be compensated solely
28          by Contractor.  Contractor agrees that any such employees,

872966.3

3

COMPLAINT

Page   23
Exhibit   3

1    individuals or entitles will not be subject to DePuy's approval or
     supervision, but will be bound by the same DePuy and Johnson &
2    Johnson guidelines, policies and procedures, the non-compete
     provisions and all other provisions of this agreement to which
3    Contractor is subject.

4    (Exhibit A, p. 2.)

5        13.    The Agreement also contains a waiver of a right to a jury trial. (Exhibit A, at p.9.)

6    Such provisions are unenforceable in California.

7        14.    By this action, Plaintiffs wish to have this court declare that the non-compete

8    provisions contained in the Agreement are void and invalid as contrary under California law, due

9    to California's strong public policy against agreements restricting an individual from employment

10   in his or her chosen trade or profession. (See Business and Professions Code Section 16600). In

11   particular, Plaintiffs seek to have this court declare all restrictive covenants in the Agreement void

12   as an improper restraint of trade under Business and Professions Code Section 16600. (See

13   Application Group, Inc. v. Hunter Group, Inc., 61 Cal.App.4th 881 (1998)).

14       15.    Plaintiffs further seek to have the Agreement declared invalid insofar as the one-

15   year term purports to prohibit Gault from engaging in his chosen profession during this one-year

16   period. Enforcement of the one-year term against Plaintiffs would constitute an unlawful restraint

17   of trade in violation of California law.

18                          FIRST CAUSE OF ACTION

19                        REQUEST FOR DECLARATORY RELIEF

20       16.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1

21   through 15, as though fully contained herein.

22       17.    An actual controversy has arisen and now exists between Plaintiffs and Defendant

23   concerning their respective rights and obligations under the Agreement. Plaintiffs believe the

24   Agreement is terminable at will, and that the non-compete provisions contained in the Agreement

25   are void and unenforceable. Plaintiffs, however, are informed and believe, and thereon allege,

26   that Defendant disputes these assertions.

27       18.    Plaintiffs request a judicial determination regarding the validity and enforceability

28   of the non-compete provisions contained in the Agreement, as well as the termination provision

     872063                       4
                               COMPLAINT

1    of the Agreement and the waiver of the right to a jury trial.

2        19.    A judicial declaration is necessary and appropriate at this time under the

3    circumstances so that Plaintiffs may ascertain the scope and extent of their right to do business in

4    their chosen profession.

5                        SECOND CAUSE OF ACTION
                            UNFAIR COMPETITION
6                    (Business & Professions Code § 17200)

7        20.    Plaintiff incorporates by reference the allegations contained in paragraphs 1

8    through 19, as though fully contained herein.

9        21.    The Agreement is unlawful and unfair within the meaning of Business &

10   Professions Code Section 17200 insofar as the Agreement restricts Plaintiffs' ability to compete

11   with DePuy, or otherwise restricts the ability to terminate the Agreement.

12       22.    Plaintiffs seek an injunction to prohibit enforcement of the invalid portions of the

13   Agreement, as set forth above.

14                        PRAYER FOR RELIEF

15       WHEREFORE, Plaintiffs pray for judgment against defendants as follows:

16       1.    For a declaration that the non-compete contained in the Agreement are void and

17   unenforceable in California, and that the Agreement is not applicable to or binding on non-parties

18   thereto, including the one-year term and non-compete provisions of the Agreement;

19       2.    For a preliminary and permanent injunction preventing Defendant from enforcing

20   any non-compete provisions contained in the Agreement, or from enforcing any portion of the

21   Agreement against non-parties thereto;

22       3.    For attorneys' fees, according to proof and as permitted by law;

23       4.    For costs of suit as permitted by law; and

24       5.    For such other relief as the court deems just and proper.

25

26

27

28

872966.3

Page __25__                        Page __7__
Exhibit __3__                      Exhibit __1__

1    DATED: August 24, 2007          DOWNEY BRAND LLP

2

3                                    By:

4                                        TORY E. GRIFFIN
                                         Attorney for Plaintiffs
5                                    GAULT SOUTH BAY SYSTEMS, INC., BOB
                                     GAULT, and CANDICE POLICH
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

872966.3

6

COMPLAINT

Page _____ 26
Exhibit _____ 3

Page _____ 8
Exhibit _____ 1

**EXHIBIT A**

Page ___27___
Exhibit ___3___

Page ___9___
Exhibit ___1___



**DePuy**
a Johnson-Johnson company

**DePuy Orthopaedics, Inc.**

November 22, 2006

Gault South Bay Inc.
18428 Twin Creeks Road
Monte Sereno, CA 95939

Dear Bob,

Effective January 1, 2007 (the "Effective Date") please accept this letter as DePuy Orthopaedics, Inc.'s ("DePuy") appointment of Gault South Bay Inc. ("Contractor") as its independent sales representative for the specific DePuy Territory ("Territory") and specific DePuy product categories (the "Products"), as outlined on the attached Appendix A, which appendix is incorporated herein by reference. DePuy may add or delete any or all Product category or categories included on Appendix A or change the category or classification of any or all of the Products included in the Product categories listed on Appendix A at any time on sixty (60) days prior written notice to Contractor. Except as set forth herein, the Territory described on Appendix A may be modified from time to time only as mutually agreed by the parties.

Contractor agrees that it is an independent contractor and not an employee of DePuy. Contractor shall be responsible for making sales calls representing DePuy and completing sales within the Territory in accordance with DePuy and Johnson and Johnson ("J&J") guidelines, policies and procedures, including without limitation, policies and procedures concerning prevention of healthcare fraud and abuse, that are made known to Contractor from time to time. Contractor agrees to devote its best efforts and sufficient working time to selling DePuy Products. Contractor agrees to cause its employees, contractors and other entities which assist Contractor with its duties under this Agreement to participate in and comply with the requirements of the Salesforce Certification Program outlined in Appendix C. Contractor further agrees that DePuy may, on at least thirty (30) days prior written notice to Contractor, change the requirements set forth in the Salesforce Certification Program but may not during the term of this Agreement, modify the Recognition and Non-Compliance section of such Program without Contractor also agrees to attend and participate, and cause its employees, contractors and other entities assisting Contractor in its duties under this Agreement, to attend and participate in sales training and training related to DePuy and/or J&J guidelines, policies and procedures as required by DePuy. The manner in which Contractor performs its obligations under the Agreement is at Contractor's sole discretion, provided that Contractor complies with DePuy's sales policies and procedures. Contractor is required to submit orders to DePuy, or, in the case of Co-Marketed Products, (as defined below) to other parties, and may from time to time be requested by DePuy to provide reports to DePuy regarding Contractor's sales activities or results. Contractor agrees that neither Contractor nor anyone in its employ, nor any member of the immediate family of any one owning the majority of the stock, a controlling interest or exercising control of the Contractor will, during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent. Competitive activities mean selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services. Contractor is, of course, free to engage in any non-competitive activities.

4240 Holden Street ⚫ Emeryville, California 94608 ⚫ Toll Free Phone: (886) 592-5633 ⚫ Fax: (510) 597-4220 ⚫ Fax: (510) 597-4221

Page ___28___
Exhibit ___3___

Page ___10___
Exhibit ___1___

Gault South Bay Inc.
November 22, 2006
Page 2

Contractor acknowledges and agrees that the noncompetition provisions contained in this Agreement are a material inducement to DePuy to enter into this Agreement, are reasonable and necessary to protect DePuy's interests and will result in material and irreparable loss to DePuy if breached.

Contractor may hire its own employees or contract with other individuals or entities to assist Contractor in the performance of its duties hereunder, which employees, individuals or entities shall be solely Contractor's responsibility and shall be compensated solely by Contractor. Contractor agrees that any such employees, individuals or entities will not be subject to DePuy's approval or supervision, but will be bound by the same DePuy and Johnson & Johnson guidelines, policies and procedures, the non-compete provisions and all other provisions of this agreement to which Contractor is subject. Contractor agrees to provide DePuy with information regarding such employees and/or copies of any agreements between Contractor and any such employees, individuals or entities as requested by DePuy. Contractor further agrees to remove any such employee from the sale of Product should DePuy have a reasonable objection to their representation or sale of such Products. Contractor further agrees to modify such agreements as reasonably requested by DePuy to achieve the purposes of this paragraph. Contractor is responsible for maintaining its own office and/or office equipment for its employees' use.

Contractor will be responsible for all federal, state and local income taxes, social security, unemployment compensation, workers compensation and insurance coverage and all expenses incurred by Contractor or its employees in the performance of this Agreement.

Prices for the Products will be set by DePuy at its sole discretion and commissions will be paid based on the actual price charged by DePuy to the customer. Contractor shall not offer or otherwise communicate any discount on any Product without DePuy's prior written consent. DePuy may change the price of any Product at any time. Contractor agrees that it will not enter into any agreement with any customer of DePuy or any third party regarding the sale or delivery of the Products and that Contractor has no authority to bind DePuy to such agreements or any other agreements of any kind.

Contractor will not in any way modify DePuy packaging or products, including any related instruments and accessories. Contractor will only sell DePuy products, which conform to the specifications and quality control procedures of DePuy. Contractor will not provide, suggest or advise the use of any other instrument(s) in connection with the Products outside of those provided or approved for use by DePuy. Contractor will not knowingly submit to DePuy any false, inaccurate or misleading information regarding the sales of products, the customers to whom the products were sold, or the inventory of products in Contractor's possession. Contractor will not engage in direct billing of products to any customer or any other person. Direct billing means any transaction involving a third party's acquisition, use or lease of a

Gault South Bay Inc.
November 22, 2006
Page 3

Product, instrument or service connected with a Product which results in such third party being invoiced or charged a price or fee(s) of any kind, including a delivery charge or fee, for the product or instrument by Contractor, someone in Contractor's control or employ, or by an entity in which Contractor has a financial interest. Pursuant to DePuy's and J&J's policies and procedures, Contractor will immediately report to DePuy any reports of problems with any DePuy product which comes to its attention, including without limitation, adverse events regarding such products.

DePuy will pay Contractor a monthly commission, as described on Appendix B, based on invoice sales completed to customers in the Territory while this appointment is in effect. It is DePuy's normal business practice to pay earned commissions by the 20th day of the month following the generation of the invoice. This will be the only compensation paid by DePuy to Contractor regarding sales of the products. DePuy will pay commissions on Contractor's sales based upon invoices generated by DePuy. The commission rate for a sale already completed will only be adjusted by mutual written consent. *Notwithstanding the foregoing, if Contractor fails to meet the requirements established by DePuy in the Salesforce Certification Program, Contractor agrees that DePuy may adjust the commission rates as describe in Appendix C.* Contractor agrees to repay DePuy on demand any commission paid in error, any commission for which DePuy is unable to collect the underlying invoice, or any advance or any other commission which Contractor did not earn. Commissions on Co-Marketed Products will be paid as set forth below.

Contractor agrees to meet mutually agreed upon annual sales quotas for each Product category. Provided this agreement has not been terminated, Contractor agrees to meet with DePuy representative(s) no later than thirty (30) days prior to the anniversary of this agreement to discuss such sales quotas for the next year. If Contractor fails to meet with DePuy representative(s) or if Contractor and DePuy cannot reach agreement on such sales quotas before the anniversary date of this agreement, then both parties agrees that the annual sales quotas for the next year will be equal to the prior year's sales for each of the following Product or Product Categories, provided these Products or Product Categories are included in Appendix A, in the Territory plus the following percentages: ten percent (10%) for Total Hip Systems and Total Knee Systems; fifteen percent (15%) for Extremities; twenty percent (20%) for Bone Cement and/or Orthobiologics and/or Trauma Products; and three percent (3%) for O.R. Products. In the event that Contractor fails to meet such annual sales quotas for any or all Product categories for two (2) successive calendar quarters on an annualized basis, Contractor agrees that DePuy may, at its sole option, may take the following actions on thirty (30) days prior written notice to Contractor: (a) terminate this agreement; or (b) remove any Product category(ies) from the Products listed on Appendix A; or (c) modify the Territory described in Appendix A. DePuy's

Page   30
Exhibit   3

Page   12
Exhibit   1

Gault South Bay Inc.
November 22, 2006
Page 4

exercise of any of the foregoing options a, b or c shall not be considered or construed as a waiver of DePuy's right or option to future exercise of any such option for continued failure to meet any sales quota(s).

DePuy will reimburse Contractor certain expenses Contractor incurs in connection with Contractor's performance of its obligations under this Agreement, in accordance with DePuy sales policies and procedures. In no event, however, will Contractor be reimbursed for its travel or transportation expenses. Notwithstanding the foregoing, DePuy may, at its sole option, reimburse Contractor for travel and related expenses incurred by Contractor in connection with sales training, trade, and educational meetings and seminars, Contractor and/or its employees attends at DePuy's request.

DePuy will supply Contractor at no charge with reasonable quantities of descriptive literature, promotional materials and catalogs describing the products and access to inventory and instrument as DePuy feels is appropriate. DePuy at its option may accept or refuse orders and will not be bound by an order until it is accepted by DePuy. Further, DePuy shall not be liable to Contractor for any loss or damages caused by non-acceptance of orders, by failure to deliver products or by delays in making shipments. Contractor agrees that DePuy may at any time this Agreement is in effect and for a period of three (3) years after termination of this Agreement for any reason audit and inspect Contactor's business record to ensure compliance with DePuy and J&J policies and procedures.

From time to time during the term of this appointment, DePuy may, but shall not be required to offer new products for sale in the Territory ("New Products"). With regard to such New Products in the Territory, DePuy reserves the right, in its sole discretion, to (a) on thirty (30) days prior written notice to Contractor, require Contractor to market and solicit sales of New Products pursuant to the terms of this Agreement; or (b) on thirty (30) days prior written notice to Contractor, require Contractor to jointly introduce and market such New Products in conjunction with the efforts of DePuy and any other J&J company or companies ("Affiliate") and/or DePuy's business partners ("Business Partner"). For purposes of this Agreement, an "Affiliate" is any other company or entity controlling, controlled by or under common control with DePuy and a Business Partner shall include, without limitation, an individual or entity which is not an Affiliate and which has contracted with DePuy regarding the marketing or distribution of such New Product; or (c) introduce and market such New Product on DePuy's own behalf or through its Affiliates on an exclusive basis, in which event such New Products will not be made available to Contractor or included in the Products covered by this Agreement. DePuy shall have the sole and exclusive right to establish the terms under which New Products will be marketed and to make all decisions regarding such marketing arrangements, including, but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Notwithstanding anything to the contrary contained in this Agreement, DePuy shall not be liable to make any payment to Contractor with regard to a New

Gault South Bay Inc.
November 22, 2006
Page 5

Product if Company introduces and markets such New Product pursuant to (c) in the immediately preceding paragraph. All of Contractor's obligations regarding Products shall also apply to any New Products which are added to this Agreement.

Notwithstanding anything herein to the contrary, DePuy shall have the right to enter into Co-Marketing Arrangements (as defined below) with its Affiliates related to the marketing, representation and sale of New Products. As used herein, "Co-Marketing Arrangement" means that New Products subject to a Co-Marketing Arrangement will be marketed, represented and sold in the Territory through the sales forces of DePuy and/or its Affiliates and/or its Business Partners. DePuy reserves the sole right to establish the terms under which New Products will be co-marketed and to make all decisions regarding such Co-Marketing Arrangements, including but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Products currently subject to a Co-Marketing Arrangement are identified on Appendix A, which may be modified from time to time by DePuy. Products and New Products currently subject to a Co-Marketing Arrangement or which become subject to a Co-Marketing Arrangement during the term of this Agreement will be referred to herein as "Co-Marketed Products". Commissions from the sale of Co-Marketed Products will be included in commission payments made to Contractor within forty-five (45) days of the first to occur of (a) receipt by DePuy of the actual commission from the applicable Business Partner or Affiliate or (b) receipt by DePuy of a report from the Business Partner or Affiliate confirming the sale and/or commission due from the sale of the Co-Marketed Product.

Contractor will not engage in any advertising or promotion of any of the Products, New Products or Co-Marketed Products in any form or media without DePuy's prior written consent or approval. Contractor further agrees not to issue any payment or otherwise convey or provide any item of independent value to any health care provider, whether an institution or an individual, for any reason without prior written approval from DePuy.

This appointment will remain in effect until December 31, 2007. This appointment shall be automatically renewed for one (1) year periods thereafter unless terminated by either party on sixty (60) days' notice prior to the end of the initial term or any renewal period. In the event that DePuy provides written notice pursuant to this paragraph that this Agreement will not be renewed or extended at the end of the initial term or any renewal term, Contractor agrees that anytime in the sixty (60) day period immediately prior to termination or expiration of this Agreement, DePuy may, at its sole option, immediately terminate this Agreement by paying Contractor an amount equal to one (1) month's average commissions based on the prior six (6) months' commissions paid to Contractor, in which case the noncompetition period described below will commence upon Contractor's receipt of such payment.

In the event that neither party provides sixty (60) days notice prior to the end of the term that this Agreement will not be extended for an additional year, DePuy may, on sixty (60) days written notice prior to the end of the term or then current term, change or modify the Territory. However, DePuy agrees that, except as agreed to by the parties, changes or modifications in the Territory will not occur more than once per year with while this Agreement is in effect.

Gault South Bay Inc.
November 22, 2006
Page 6

The appointment may be terminated unilaterally by either party on thirty (30) days' notice in the event of either (a) breach of any provision of this appointment which, if correctable, is not corrected within the thirty (30) days notice period; or, (b) if either party becomes bankrupt or enters into any arrangement with its creditors or enters into liquidation. DePuy, at its sole discretion, may also terminate this Agreement thirty (30) days written notice to Contractor in the event Contractors and/or Contractors employees, contractors and other entities assisting Contractor in its duties under this Agreement fail to participate in or comply with the requirements of the Salesforce Certification Program. Notwithstanding the above, however, Contractor agrees that there will be sufficient cause to terminate this appointment immediately in the event that Contractor or any of its employees sells a competitive product, knowingly provides to DePuy false and misleading information regarding products sold, engages in direct billing, violates any written DePuy or J&J policy and procedure, is debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program, if Contractor knowingly employs or contracts with an individual or entity so debarred, excluded or prohibited. Contractor agrees to notify DePuy of any final adverse action, discovery of employment by or contract with an excluded individual or entity or exclusion as defined above within thirty (30) days of such an action. Contractor further agrees that DePuy may terminate this Agreement immediately if Contractor commits any act or omission which in DePuy's sole determination has or will have a negative effect on the reputation of DePuy and/or J&J. The appointment will automatically terminate in the event of the dissolution of Contractor or if Contractor, or a major part of its assets, becomes subject to the direction or control of a party other than the owner(s) of Contractor at the time this agreement is signed by the parties.

Upon termination, Contractor further agrees to return to DePuy all DePuy owned inventory, instruments and promotional materials in Contractor's possession. Any inventory, instruments and promotional materials related to Co-Marketed Products shall be returned either to DePuy or another party, as directed solely by DePuy. Contractor also agrees to reimburse DePuy for any such inventory which is not returned and for which there is no record of sale to any other party or which is returned to DePuy in a damaged condition rendering such inventory incapable of sale. Contractor also agrees within thirty (30) days of the termination of this Agreement for any reason to pay to DePuy any sums that are outstanding. DePuy agrees to pay Contractor any commissions due to Contractor within thirty (30) days of termination of this Agreement; however, DePuy may offset against such commissions any amounts owed by Contractor to DePuy. Contractor further agrees that DePuy may deduct from any commissions owed to Contractor any outstanding amounts resulting from Contractor's failure to return to DePuy any inventory, instruments and promotional materials in its possession or for which there is no record of sale or any inventory which has been damaged to a point where it is no longer capable of sale. Any office or other equipment purchased by Contractor shall remain its property upon termination.

Gault South Bay Inc.
November 22, 2006
Page 7

Contractor further acknowledges that it may be receiving and processing Protected Health Information ("PHI") as that term is defined in 45 C.F.R. Section 164.500 from the Company or on its behalf, that has been disclosed subject to a HIPAA authorization under 45 C.F.R. Section 164.508 or to a Business Associate Agreement(s) between DePuy and a healthcare provider or institution, copies of which shall be provided to the Contractor by DePuy upon request by the Contractor. Contractor will collect, hold, use and disclose such information only for the purposes authorized in the Business Associate Agreement and as expressly directed by DePuy.

Contractor shall not disclose any PHI to any third party or use PHI for any purpose, commercial or otherwise. Contractor shall either (a) remove any PHI from its records and/or systems no later than thirty (30) days after receipt of such PHI or (b) take reasonable measures to ensure the security and confidentiality of such PHI. Contractor's failure to comply with this Section shall be considered a material breach of this Agreement and DePuy shall have the right to terminate this Agreement pursuant immediately without payment of any penalty or termination fee.

Contractor agrees that, if this Agreement is terminated for any reason, that for a period of one (1) year after termination of the Agreement, that neither Contractor nor any of its employees, independent contractors, or agents who were involved in the representation or sale of the Products, will, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement or engage, directly or indirectly in the sales of competitive products or in competitive activities as described above. Contractor agrees that no claim that Contractor, or any of its employees, independent contractors or agents may have against DePuy shall constitute a defense to enforcement of the noncompetition provisions of this Agreement. Contractor also agree to waive any defense to entry of a preliminary injunction prohibiting its violation of the noncompetition provisions of this Agreement based on the existence of an adequate remedy at law by DePuy. As consideration for the foregoing agreement not to accept such a position, upon termination of this Agreement, DePuy agrees to pay Contractor on a monthly basis during the one (1) year period after termination an amount equal to one twelfth of the aggregate commissions paid to Contractor for the twelve months prior to such termination, beginning with the first month following such termination. DePuy will pay Contractor this amount unless this Agreement is terminated by DePuy due to Contractor's sale of a competitive product, or providing DePuy with false and misleading information about the sale of products, or direct billing or failure to comply with DePuy and/or J&J policies and procedures. Notwithstanding the foregoing, however, if DePuy should give Contractor thirty (30) days prior written notice before it begins such payments that it chooses not to make such payments or if during the one year (1) period after termination DePuy should give Contractor thirty (30) days prior written notice that it will cease making such payments, then Contractor will be released from any and all restrictions on accepting a position with a competitor of DePuy and/or on sales of product competitive to DePuy. In addition, if Contractor should accept a position with a

Gault South Bay Inc.
November 22, 2006
Page 8

competitor or enter into any agreement or arrangement with any third party which involves, directly or indirectly, the sales of products competitive to DePuy during the one (1) year period after terminate, such payments shall immediately cease and DePuy shall have no further obligation to make such payments. In each such event described above, will Contractor have no right or claim to any further payments from DePuy.

Contactor acknowledges and agrees that the noncompetition provisions of this Agreement, including, without limitation, the scope and geographical areas included herein, are fair and reasonable required for the protection of DePuy and to enable DePuy to obtain the benefit of this Agreement.

Contractor represents and warrants to DePuy that the execution, delivery, and performance of this Agreement by Contractor will not conflict with, breach, cause a default under, or result in the termination of any contract, employment relationship, agreement, or understanding, oral or written, with any third party, including without limitation any noncompetition covenant to which or by which Contractor is bound and that there are no other commitments or agreements that would prevent Contractor from entering into this Agreement or performing the obligations required of Contractor under this Agreement. In the event that Contractor is so bound or has commitments or agreements that prevent it from entering into this Agreement or performing its obligations under this Agreement, Contractor agrees that this Agreement will not commence until it is free of any such agreements or commitments, and that it will not perform any of its obligations under this Agreement while such agreements or commitments are in existence. In the event that the foregoing should delay the Effective Date of this Agreement, Contractor agrees that DePuy may, at its sole discretion and without further obligation to Contractor, terminate this Agreement at any time prior to the actual start of this Agreement. Contractor agrees to indemnify, hold harmless and defend DePuy, its employees, officers and directors, against any causes of action, claims, suits, proceedings, damages and judgments arising out of any claim by any third party arising out of any alleged or actual misrepresentation or violation of the provisions of this paragraph.

It is expressly stipulated, agreed and understood between the parties that the business relationship between Contactor and DePuy shall be that of independent contractor and not employer-employee or principal-agent. Contractor further agrees that the only monetary or economic obligation of DePuy to Contractor shall be to provide commissions as set forth herein that Contractor shall not be entitled to receive and shall not receive from DePuy any medical

Gault South Bay Inc.
November 22, 2006
Page 9

coverage, vacation pay, pension benefits, stock options, insurance, or any other type of employee or fringe benefit. Should Contractor otherwise have any right to receive any such benefit from DePuy, Contractor hereby expressly waive the right to receive same. Neither Contractor nor DePuy shall have the authority to legally bind the other in contract, debt or otherwise.

Contractor further represents and warrants that Contractor is not now and has not at any time in the past been, debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program and Contractor has not knowingly employed or contracted with an individual or entity so debarred, excluded or prohibited. Finally, Contractor agrees that Contractor has no rights of any kind concerning the Territory and cannot assign its appointment or any part of this agreement to any other party or recover any money from any party to whom DePuy may subsequently assign all or part of the Territory. Any attempt to do so will be cause for DePuy to immediately terminate Contractor's appointment as DePuy's independent sales representative. Both parties agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside in the state and/or federal courts located in the state of Indiana. Each party specifically agrees to waive our right to trial by jury in any litigation arising from this Agreement. Each party agrees that this Agreement supersedes any and all other agreements, written or oral, regarding this appointment and relationship with DePuy including, without limitation, the letter dated December 5, 2005. Each party agrees that the language of this Agreement will be construed as a whole, according to its fair meaning and not for or against either of us, regardless of who drafted such language. If a court of competent jurisdiction or an arbitrator finds or determines any provision of this Agreement invalid or unenforceable, such provision shall not affect the remainder of this Agreement, which shall remain in full force and effect.

Gault South Bay Inc.
November 22, 2006
Page 10

If Contractor agrees to accept this appointment under these terms, please sign and return to the undersigned the enclosed copy of this document. Contractor agrees that the above Agreement is not effective until approved by the appropriate DePuy Director for Sales or other appropriate officer of DePuy. .

If there are any questions please feel free to contact me. We look forward to working with you.

Very truly yours,

Bradford C. LaPoint
Territory General Manager Northern California

**AGREED AND ACCEPTED:**

Contractor

By:

Title:

Date:

**APPROVED:**

DePuy Orthopaedics, Inc.

By:

Title:

Date:

As a material inducement to DePuy to enter into the foregoing agreement, and with full intent to be bound by the terms of the foregoing agreement, the following individual(s) agree, represent and warrant that they will personally perform all the obligation of the Contractor and will honor and perform all the promises of the Contractor, including without limitation, those addressing Contractor's noncompete obligations during the term of the foregoing agreement and after termination thereof.

name

date

## APPENDIX A

**Territory:**   All accounts listed for customer number 701940:

**Contractor:**   Gault South Bay Inc.

**Products:**    DePuy Product categories to include:

- Total Hip Systems
- Total Knee Systems
- O.R. Products (Excluding Hall Power Equipment)
- Extremities
- Bone Cement and Accessories
- Trauma Products

- Co-Marketed Product categories to include:

  o Orthosorb
  o Restore
  o Conduit
  o Alpha BSM
  o Symphony
  o I.C. Graft Chamber
  o Optium
  o Cellect & Cellect DBM Bone Products, excluding those with Healos

**APPENDIX B**

Contractor: Gault South Bay Inc.

**DePuy Reconstructive Product Commissions:**

Commission tiers on sales of the Product Categories noted below:

11% on all sales up to 10% growth over prior year
16% on all growth sales should Territory finish between 10% and 15% growth over prior year
18% on all growth sales should Territory finish between 15% and 20% growth over prior year
22% on growth at or above 20%

Product Categories:

- o   Hips
- o   Knees
- o   Extremities
- o   OR Medical
- o   Bone Cement/Accessories
- o   Co-Marketed Products
  - ▪   Restore

**DePuy Trauma and Biologic Product Commissions:**

Commission tiers on sales of the Product Categories noted below:

14% on all sales up to 15% growth over prior year
18% on all growth sales should Territory finish between 15% and 20% growth over prior year
22% on all growth sales should Territory finish at or above 20% growth over prior year

Product Categories:

- o   Trauma Products
- o   Co-Marketed Products
  - ▪   Orthsorb
  - ▪   Alpha BSM

Symphony/IC Graft Chambers/Conduit/Cellect/Optium ("SICCO") Product Commissions:

Product Categories:
- o  Co-Marketed Products
  - Symphony
  - I.C. Graft Chamber
  - Conduit
  - Optium
  - Cellect & Cellect DBM Bone Products, excluding those with Healos

1. For Sales Representatives with Orthopaedic and Trauma product responsibilities SICCO commissions will be calculated as follows:

   - o  SICCO Base Commission rate will match the sales representative's orthopaedic base commission rate.  SICCO base commission will be paid on 100% of the SICCO net sales billed by DePuy and/or its Affiliates and/or its Business Partners.

   - o  DePuy Orthopaedic and SICCO net sales (at 100%) will be combined and measured against prior year sales.  Standard growth commission will be paid on Orthopaedic sales in excess of last year's sales.  Sales growth commissions for SICCO will be calculated on 50% of the SICCO sales growth dollars.  The growth commission percentage rate for SICCO will be the same additional percentage as the rep's orthopaedic growth commissions.

Gault South Bay Inc. will receive a commission subsidy of $3,000 per month towards sales coverage at Stanford University. This will remain in effect until the first to occur: Termination of the Agreement or you cease to have additional individuals working with you to assist you in performing your sales obligations under this Agreement.

Upon achieving annual Sales Goal in core Trauma, Hand Innovation and Biologics of 30% growth over prior six months and year-end a 1% bonus on total sales. (DePuy Reconstructive excluded) will be paid. Bonus will be paid at 6 and 12 months if sales meet target.

Gault South Bay Inc. will receive an addition .5% commission on all Reconstructive Sales should territory be at or above 15% growth and 1% should territory be at or above 20% growth over 2006 year end Reconstructive Sales. Bonus will be paid at 6 and 12 months if sales meet target.

Gault South Bay Inc. will receive an additional 1% on all Knee sales should Knee sales meet or exceed sales quota of 15% growth over 2006 year end Knee sales. This will be paid at the end of year.

**Appendix C**

**DePuy Salesforce Certification Program**

**General Program Overview:**
The Certification Program will begin February 1, 2006. An 18-month time frame will be used for the Primary Certification period.

**Participation:**
All DePuy Sales Associates and their sub-representatives and/or assistants are required to participate in and comply with the requirements of this Certification Program.

**Reconstructive Sales Associates:** Hips, Knees, Extremities and ORCA
Sales Associates who have contracted with DePuy prior to February 1, 2006 will need to accumulate 29 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy after February 1, 2006 will need to accumulate 95 hours.

**Trauma Sales Associates:**
Sales Associates who have contracted with DePuy prior to February 1, 2006 will need to accumulate 45 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy after February 1, 2006 will need to accumulate 80 hours.

**Orthobiologics Sales Associates:**
Sales Associates who have contracted with DePuy prior to February 1, 2006 will need to accumulate 35 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy after February 1, 2006 will need to accumulate 55 hours.

Once the Primary Certification is accomplished, all Sales Associates must complete 25 continuing education credit hours per 12-month period to retain their certification status.

**Primary:** Consists of courses that focus on our core product offerings.
**Continuing Education:** Consists of courses that focus on honing product knowledge, surgical and selling skills, which build upon the core product certification.

Sales Associates must complete a minimum of 25 continuing education credit hours per year to retain their certification status. Failure to meet this requirement will result in being demoted to a non-certified status and at DePuy's sole option, implementation of the Non-Compliance Consequences set forth below.

Page 41
Exhibit 3

Page 23
Exhibit 1

Pfiedler Enterprises will act as DePuy's third party accreditation body for this program. Pfiedler's role is to grant credits from The International Association of Continuing Education and Training (IACET).

**Sales Associate Recognition/Non Compliance Consequence:**

*Company Store Representatives:*
Beginning in 2007, DePuy will reduce commissions ½% for each year a Sales Associate does not meet certification requirements. The maximum commission penalty will be 1%. Failure to achieve certification in any given year is considered a material breach of the Sales Associate Agreement.

*Recognition:*
All Sales Associates achieving certification will be recognized at the NSM. Other recognition may include name badge enhancement to identify certification and certification insignia that could be added to business cards indicating certification. Sales Associate certification accomplishments will also be featured prominently on www.accessdepuy.com.

**Course Catalog:**
A course catalog detailing the various learning opportunities and associated CMEs will be distributed prior to the start of each calendar year. The Courses included in this catalog may be added, modified and or deleted by DePuy at anytime. However, the Sales Associate who successfully completed a Course prior to deletion will retain credits for that Course.

**New requirements for OST learning connections 08/2006**
**Credit requirements for primary certification are as follows:**

**Biologics Certification Track**

- Start date before February 1, 2006 – 20 credit hours Primary 12, Elective - 8

- Start date after February 1, 2006 – 38 credit hours – Primary - 30, Elective -8

**Trauma and Extremities Certification Track**

- Start date before February 1, 2006 – 31 credit hours – Primary 23, Elective 8

- Start date after February 1, 2006 – 76 credit hours – Primary 68, Elective 8

**Reconstructive Products Certification Track**

- Start date before February 1, 2006 – 36 credit hours – Primary 29, Elective 7

- Start date after February 1, 2006 – 84 credit hours – Primary 77, Elective 7

## Edelson, Rebecca

**From:** ECF-CAND@cand.uscourts.gov
**Sent:** Wednesday, September 12, 2007 4:24 PM
**To:** efiling@cand.uscourts.gov
**Subject:** Activity in Case 5:07-cv-04659-RS Gault South Bay, Inc. et al v. DePuy Orthopaedics, Inc. Errata

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available* .
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from by Edelson, Rebecca entered on 9/12/2007 4:23 PM and filed on 9/12/2007
**Case Name:**        Gault South Bay, Inc. et al v. DePuy Orthopaedics, Inc.
**Case Number:**     5:07-cv-4659
**Filer:**            DePuy Orthopaedics, Inc.
**Document Number:** 11

**Docket Text:**
ERRATA *Notice of Errata Re Notice of Removal of Action* by DePuy Orthopaedics, Inc.. (Attachments: # (1) Exhibit Exhibit 1 to Notice of Errata re Notice of Removal of Action)(Edelson, Rebecca) (Filed on 9/12/2007)

**5:07-cv-4659 Notice has been electronically mailed to:**

Rebecca Edelson    bedelson@steptoe.com, jcole@steptoe.com

Tory Edward Griffin    tgriffin@downeybrand.com, afrench@downeybrand.com

Mark Alan Neubauer    mneubauer@steptoe.com, smcloughlin@steptoe.com

**5:07-cv-4659 Notice has been delivered by other means to:**

9/12/2007    Page   43
Exhibit   3

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\mrodrigu\Desktop\Notice of Errata Re Notice of Removal.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=9/12/2007] [FileNumber=3744251-0]
[42059d6d7ec4c4d583b76ec71067843bfe83eca32df56f0a9806b76064d81389bc78f
104444d4c495148ba14dbedeccc946d3ae1b47c4481731d9fc790996e08]]
**Document description:**Exhibit Exhibit 1 to Notice of Errata re Notice of Removal of Action
**Original filename:**C:\Documents and Settings\mrodrigu\Desktop\Exhibit 1 to Notice of Errata re Notice of
Removal.PDF
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=9/12/2007] [FileNumber=3744251-1]
[664851ba4d668700d3474bd002df63e68690b513aed0e4620305a6ad92860b7209a3c
f000e495dfe2b92e53b25cca55bccbbb3ef883d910c7192643f64e66975]]

Page 44
Exhibit 3

9/12/2007

**EXHIBIT 4**

1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  DONALD P. GAGLIARDI, Bar No. 138979
   dgagliardi@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:  (408) 297-6000

7  Attorneys for
   CANDICE POLICH

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12 | GAULT SOUTH BAY, INC., a California | Case No.  5:07-cv-04659-JW
   | Corporation, BOB GAULT, an individual, and |
13 | CANDICE POLICH, an individual |

14 |                         Plaintiff, | **REQUEST FOR DISMISSAL OF CANDICE**
   |                                    | **POLICH**
15 |      vs.                           |   **[Fed.R.Civ.P. 41(a)(i)]**

16 | DEPUY ORTHOPAEDICS, INC., an Indiana |
   | Corporation,                       | Complaint Filed:     August 24, 2007
17 |                         Defendants. | Trial Date:          None Set

18

19

20

21

22

23

24

25

26

27

28

Page ___45___

Exhibit ___4___

REQUEST FOR DISMISSAL OF CANDICE POLICH
Case No. 5-07-cv-04659 JW

1    Pursuant to Rule 41(a)(i) of the Federal Rules of Civil Procedure, purported plaintiff

2  Candice Polich hereby voluntarily dismisses the Complaint in the above-captioned action insofar

3  as maintained by her.  As reflected by her declaration served and filed herewith, Ms. Polich did

4  not engage plaintiff counsel Downey Brand to represent her, nor did Ms. Polich authorize plaintiff

5  counsel to file this action on her behalf.   Further, because the adverse party, defendant Depuy

6  Orthopaedics, Inc., has not filed an answer or motion for summary judgment, Ms. Polich is

7  entitled to voluntarily dismiss the action without a court order or stipulation from other parties.

8  Fed.R.Civ.P. 41(a)(i).

9

10  Dated:  September 14, 2007                    BERGESON, LLP

11

12                                         By: _____/s/_____

13                                             Donald P. Gagliardi

14                                         Attorneys for
                                           CANDICE POLICH

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

REQUEST FOR DISMISSAL OF CANDICE POLICH
Case No. 5-07-CV-04659 JW

1  DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
jfowler@be-law.com
3  DONALD P. GAGLIARDI, Bar No. 138979
dgagliardi@be-law.com
4  BERGESON, LLP
303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
Telephone: (408) 291-6200
6  Facsimile: (408) 297-6000

7  Attorneys for
CANDICE POLICH

8

9                  UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12  GAULT SOUTH BAY, INC., a California          Case No. 5:07-cv-04659-JW
Corporation, BOB GAULT, an individual, and
13  CANDICE POLICH, an individual

14                          Plaintiff,           **DECLARATION OF CANDICE POLICH IN
                                                 SUPPORT OF REQUEST FOR DISMISSAL**
15          vs.

16  DEPUY ORTHOPAEDICS, INC., an Indiana
Corporation,                                     Complaint Filed:    August 24, 2007
17                          Defendants.          Trial Date:         None Set

18

19

20

21

22

23

24

25

26

27

28

Page ___47___              DECLARATION OF CANDICE POLICH
Exhibit ___4___                Case No. 5-07-cv-04659 JW

1    I, Candice Polich, declare as follows:

2    1.    I am purportedly a plaintiff in the above-captioned action. I have personal

3    knowledge of the matters set forth herein and if called as a witness could and would competently

4    testify thereto. I make this declaration in support of my request for dismissal of the Complaint in

5    the above-captioned action.

6    2.    I am currently a sales representative for Depuy Orthopaedics, Inc. ("Depuy"),

7    whom I understand is a defendant in the above-captioned action. For nearly four years, from in or

8    about October 2003 through August 2007, I was a sales representative for Bob Gault and the firm

9    under whose name he does business, Gault South Bay, Inc. (collectively, "Gault"), whom I

10   understand are both plaintiffs in the above-captioned action. I ceased to be a sales representative

11   for Gault on or about August 24, 2007, when Gault's sales representation agreement with Depuy

12   was terminated by Depuy.

13   3.    I did not engage the law firm of Downey Brand, or attorney Tory E. Griffin, to

14   represent me in this action (including when it was in state court) or in any capacity whatsoever at

15   any time. Further, I did not authorize Downey Brand or Mr. Griffin to file the Complaint on my

16   behalf.

17   4.    I have had only one communication with Mr. Griffin, and none to my knowledge

18   with any other person affiliated with the law firm of Downey Brand. My single communication

19   with Mr. Griffin occurred before the termination of the contract between Gault and Depuy in

20   August 2007. Mr. Griffin called me, informed me that he represented Gault, and asked me if he

21   could forward to me papers which if I consented to sign would have the effect of engaging him to

22   represent me in connection with legal recourse regarding the relationship between Gault and

23   Depuy. I informed Mr. Griffin that he could send me papers but that I did not agree to sign them.

24   I have not spoken to Mr. Griffin since.

25   5.    Subsequently, on or about the time of the termination of the contract between Gault

26   and Depuy, I had a telephone conversation with Bob Gault in which he asked me to sign the

27   paperwork sent to me by Mr. Griffin. I told Bob Gault that I would not do so. The next day, Mr.

28   Gault accosted me in person at the Good Samaritan Hospital in Los Gatos and made the same

1

DECLARATION OF CANDICE POLICH
Case No. 5-07-CV-04659 JW

1  request, to which I reiterated that I was not interested in participating in a lawsuit against DePuy.

2  I have not spoken to Mr. Gault about the matter since.

3      6.    Based on the foregoing, I believe that both Mr. Griffin and Mr. Gault were at all

4  relevant times fully aware that my inclusion as a purported plaintiff in this litigation was without

5  my authorization.

6      I declare under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct and that this declaration was executed this 14th day of September

8  2007 at San Jose, California.

9

10                                        _____

11                                              Candice Polich

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    Page  49

28    Exhibit  4

2
DECLARATION OF CANDICE POLICH
Case No. 5-07-CV-04659 JW

1  request, to which I reiterated that I was not interested in participating in a lawsuit against DePuy.

2  I have not spoken to Mr. Gault about the matter since.

3       6.     Based on the foregoing, I believe that both Mr. Griffin and Mr. Gault were at all

4  relevant times fully aware that my inclusion as a purported plaintiff in this litigation was without

5  my authorization.

6       I declare under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct and that this declaration was executed this 14th day of September

8  2007 at San Jose, California.

9

10  _____

                Candice Polich

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page  50

27  Exhibit  4

28

2