1
DOWNEY BRAND LLP
TORY E. GRIFFIN (Bar No. 186181)
2
MEGHAN M. BAKER (Bar No. 243765)
555 Capitol Mall, Tenth Floor
3
Sacramento, CA  95814-4686
Telephone: (916) 444-1000
4
Facsimile: (916) 444-2100
mbaker@downeybrand.com
5
tgriffin@downeybrand.com

6
Attorneys for Plaintiffs GAULT SOUTH BAY, INC.
and BOB GAULT
7

8
UNITED STATES DISTRICT COURT

9
NORTHERN DISTRICT OF CALIFORNIA

10
SAN JOSE DIVISION

11

12
GAULT SOUTH BAY, INC., a California
Corporation, and BOB GAULT,

Case No.  5:07-cv-04659-RS

13
**MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
MOTION TO DISMISS**

Plaintiffs,

14

15
v.

Date: December 3, 2007
Time:

DEPUY ORTHOPAEDICS, INC., an
16
Indiana Corporation,

17
Defendant.

18

19
## I.  INTRODUCTION

20
In response to the Complaint in this action, Defendant DePuy Orthopaedics, Inc.

21
("DePuy") filed a separate lawsuit against the plaintiffs in this action, Gault South Bay, Inc.

22
("GSB") and Bob Gault ("Gault"), in the Northern District of Indiana (the "Indiana Action").

23
DePuy now asks this court to transfer the action to the Northern District of Indiana under 28

24
U.S.C. § 1406, or alternatively dismiss this action for improper venue under Fed. R. Civ. P.

25
12(b)(3).  Both of these arguments are based on the existence of a forum-selection clause

26
designating Indiana as the proper venue for disputes between the parties.

27
In the Indiana Action, GSB and Gault filed various motions, including a motion to transfer

28
that action to this court based on forum non-conveniens factors pursuant to 28 U.S.C. § 1404.

890240.1

1

1    DePuy opposed that motion. On November 13, 2007, the Indiana district court issued an ordering

2    finding that the forum-selection clause was enforceable, but transferring the case to this court

3    under 28 U.S.C. § 1404.

4        The ruling by the Indiana district court moots the instant motion. Even if this court were

5    to dismiss the case or transfer it to Indiana, the Indiana court's ruling shows that, notwithstanding

6    the forum-selection clause, it would simply transfer the case back to this court. The Indiana

7    district court's ruling on this issue is binding on DePuy, and cannot be re-litigated here.

8        Consequently, the instant motion is moot and must be denied.[1]

9    ## II. BACKGROUND

10        DePuy, an Indiana corporation, designs, manufactures and distributes orthopedic devices

11    and supplies including hip, knee, extremity, trauma, orthobiologics, and operating room products.

12    (Cal. Compl. ¶ 4, attached to Griffin Decl. as Ex. 1.) Gault served as the President and sole

13    shareholder of GSB, a California corporation formed for the specific business purpose of

14    allowing Gault to perform sales activities on behalf of DePuy. (*Id.* ¶ 1.)

15    **A.    The Agreement**

16        In November of 2006, GSB entered into an agreement with DePuy whereby GSB agreed

17    to act as the independent sales representative for DePuy products in a designated California

18    territory (the "Agreement"). (*Id.* ¶¶ 1, 4, 8.) The Agreement states that until the end of the

19    contract term, purportedly December 31, 2007, GSB will not "sell any competitive products or

20    engage in any competitive activities without obtaining DePuy's prior written consent." (*Id.* ¶ 9;

21    *see also* Ex. A to Cal. Compl. at 1.) The Agreement defines competitive activities as "selling,

22    offering for sale, promoting, receiving or soliciting orders for goods or services similar, or

23    intended for similar use as those offered by DePuy or any other J&J company, or accepting

24    remuneration or any kind from any person providing such goods and services." (*Id.*)

---

[1] Plaintiffs are embarrassed and apologize to the court and opposing counsel for the internal calendaring error resulting in the untimeliness of the instant opposition. Plaintiffs had calendared the opposition to the instant motion as being due on November 13, 2007, in light of the federal holiday on November 12th. Plaintiffs ask that this court consider the instant opposition, especially in light of factors raised in this motion which demonstrate that plaintiffs have been diligent in prosecuting this action and defending the related action in Indiana federal court. Plaintiffs are willing to make appropriate accommodations to Defendant in light of this error.

2

1      The Agreement also contains an extremely broad covenant not to compete following

2  termination of the Agreement.  (Cal. Compl. ¶ 11.)  It provides, in pertinent part:

3           Contractor agrees that, if this Agreement is terminated for any
            reason, that for a period of one (1) year after termination of the
4           Agreement, that neither Contractor nor any of its employees,
            independent contractors, or agents who were involved in the
5           representation or sale of the Products, will, without DePuy's prior
            written consent, accept a position with a competitor of DePuy,
6           which involves direct or indirect sales of competitive products in
            the same Territory or sales to the same accounts covered by the
7           Agreement or engage, directly or indirectly in the sales of
            competitive products or in competitive activities as described
8           above.

9  (*Id.*; *see also* Exhibit A to Cal. Compl. at 7.)

10      In addition, the Agreement also includes a provision that purports to limit the ability of

11 GSB employees and independent contractors (such as Gault himself) from competing with

12 DePuy, notwithstanding the fact that they are not parties or signatories to the Agreement.  (Cal.

13 Compl. ¶ 12.)  The Agreement states, in pertinent part:

14           Contractor may hire its own employees or contract with other
            individuals or entities to assist Contractor in the performance of its
15           duties hereunder, which employees, individuals or entities shall be
            solely Contractor's responsibility and shall be compensated solely
16           by Contractor.  Contractor agrees that any such employees,
            individuals or entities will not be subject to DePuy's approval or
17           supervision, but will be bound by the same DePuy and Johnson &
            Johnson guidelines, policies and procedures, the non-compete
18           provisions and all other provisions of this agreement to which
            Contractor is subject.
19

20 (*Id.* ¶ 12; *see also* Exhibit A to Cal. Compl. at 2.)

21      Effective August 24, 2007, DePuy terminated the Agreement with GSB, thereby raising

22 issues as to whether the non-compete provisions were valid and enforceable against GSB and/or

23 Gault.  (Cal. Compl. ¶¶ 10, 14-615, 17-19.)

24 **B.      The California Action**

25      On August 24, 2007, Gault and GSB filed this action against DePuy in the Superior Court

26 of California, County of Santa Clara, seeking a judicial determination regarding the validity and

27 enforceability of the non-compete provisions in the Agreement (the "California Action").  (Cal.

28 Compl. ¶ 18.)  Specifically, GSB and Gault ask that the Court declare the non-compete provisions

890240.1                                    3

1  void, invalid and contrary to California law due to the strong public policy against agreements

2  restricting an individual from employment in his or her chosen trade or profession.  (*Id.* ¶ 14

3  (citing Cal. Business and Professions Code § 16600) and *Application Group, Inc. v. Hunter*

4  *Group, Inc.*, 61 Cal.App.4th 881 (1998)).  In addition, GSB and Gault seek an injunction

5  prohibiting the enforcement of the provisions in the Agreement that purport to restrict their ability

6  to complete with DePuy.  (*Id.* ¶¶ 19-20.)

7       On September 10, 2007, DePuy removed the California Action to the United States

8  District Court, Northern District of California, on the basis of diversity jurisdiction.

9  **C.    The Indiana Action**

10      On September 11, 2007, two weeks after Plaintiffs filed the California Action, DePuy

11  filed a mirror-image against Gault and GSB in the United States District Court, District of Indiana

12  (the "Indiana Action").  (*See* Ind. Compl., attached to Griffin Decl. as Ex. 2.)  In the Indiana

13  Action, DePuy alleges that Gault and GSB breached the covenants not to compete in the

14  Agreement by soliciting customers on behalf of a competitor before and after the termination of

15  the Agreement.  (*Id.* ¶¶ 19-20, 23, 30.)  DePuy seeks monetary damages and injunctive relief

16  preventing Gault and GSB from further competing with DePuy.  (*Id.* ¶¶ 31, 37, 42, 46, 53.)

17      On September 24, 2007, Gault filed a motion to dismiss the Indiana Action for lack of

18  personal jurisdiction and a motion to dismiss for improper venue.  (Griffin Decl. ¶ 5, Ex. 3)  On

19  that same day, Gault and GSB moved to transfer the Indiana Action to the Northern District of

20  California under 28 U.S.C. 1404(a), or alternatively, to stay the Indiana Action pending resolution

21  of the California Action.  (*Id.*)  DePuy filed oppositions to these motions on October 12, 2007.

22  (*Id.* ¶ 6, Ex. 3, 5.)

23      On November 13, 2007, the Indiana Court issued an Order on the motions to dismiss,

24  transfer, and stay filed by Gault and/or GSB.  (*See* Order, attached to Griffin Decl. as Ex. 6.)  In

25  that Order, the Indiana court denied the motion to dismiss for lack of personal jurisdiction and

26  improper venue, but granted the motion to transfer the Indiana Action to the Northern District of

27  California.  (*Id.* at 24-25.)  In support of its transfer decision, the court found that venue was

28  proper in the Northern District of California and that transfer to that district would be more

890240.1                                    4

1  convenient for third party witnesses, would provide better access to documents and other sources

2  of proof, and would serve the interests of justice. (*Id.* at 18-24.)

3       The Indiana Court also acknowledged the mirror-image California Action, noting that both

4  cases involved "the same parties" and "the same legal and factual issues." (*Id.* at 23.)  The court

5  reasoned that transferring the action to the Northern District of California, the venue of the

6  California Action, would promote judicial efficiency and, to some degree, reduce the risk of

7  inconsistent judgments. (*Id.* at 24.)  Significantly, the court also found that California had a

8  greater interest in the outcome of the litigation because "[i]ts citizens are more closely related to

9  and interested in the dispute as DePuy seeks to restrict a California resident from pursuing his

10  livelihood in the state of California," and because "[m]ost of the material events . . . occurred in

11  California and concern California residents." (*Id.*)

12  ### III. <u>ANALYSIS</u>

13  **A.**     <u>In light of the Northern District of Indiana's Decision on November 13, 2007 in the</u>
   <u>Related Indiana Action, the Present Motion is Moot, and DePuy is Estopped from</u>

14  <u>Re-Litigating the Issues Decided in the Indiana Action</u>

15       In yet another somewhat related case involving DePuy in the Eastern District of

16  California, DePuy recently made the identical motion at issue here.  That case involved an

17  identical forum-selection clause, and DePuy's motion to dismiss/transfer in that case was nearly

18  verbatim to its motion in the present case.  In its recent order, the Eastern District enforced the

19  forum-selection clause and ordered the case dismissed based on improper venue. (*See* Order,

20  attached to Griffin Decl. as Ex. 7.)  In doing so, the court rejected the forum non-conveniens

21  arguments raised by the plaintiff, stating that the Ninth Circuit has rejected reliance on the

22  traditional forum non-conveniens balancing test when deciding whether to enforce a forum

23  selection clause. (*Id.* at p. 13 (citing *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741

24  F.2d 273, 280 (9th Cir. 1984).)  The court further ruled that to the extent the plaintiff filed his

25  motion to transfer under 28 U.S.C. § 1404 in Indiana, it was speculative what the Indiana court

26  may do. (*Id.*)  The court, therefore, deferred to the Indiana court to decide the forum non-

27  conveniens issues if and when the plaintiff re-filed its action in Indiana. (*Id.*)

28  / / /

5

1    Notwithstanding the similarities in the underlying motions, the outcome in this case

2    should *not* be the same as the outcome in the Eastern District.  In the case before the Eastern

3    District, DePuy simply filed its motion to dismiss for improper venue or, alternatively, to transfer

4    the action to Indiana under 28 U.S.C. § 1406.  (Griffin Decl. ¶ 8.)  DePuy did not file a separate

5    affirmative action in Indiana.  (*Id.*)  In contrast, in this case, DePuy ignored standard procedure

6    and elected to file a separate lawsuit against GSB and Gault in Indiana instead of filing

7    counterclaims against the same parties in the instant action.  In response to the Indiana Action,

8    GSB and Gault filed a motion to transfer the action to this court under 28 U.S.C. § 1404.  On

9    November 13, 2007, the district court in Indiana issued its decision.  (Griffin Decl. ¶ 7, Ex. 6.)

10   Importantly, the Indiana district court found that while the forum-selection clause is enforceable,

11   the case nevertheless ought to be transferred to California under 28 U.S.C. § 1404.  (*Id.*)

12   In light of the November 13, 2007, ruling from the Indiana district court, the instant

13   motion is moot.  Even if the court were to grant the motion to transfer to Indiana under 28 U.S.C.

14   § 1406 based on the enforceability of the forum-selection clause, the Indiana court has already

15   ruled that the case ought to be transferred to this court under the separate forum non-conveniens

16   factors pursuant to 28 U.S.C. § 1404.  As odd as this procedural situation may seem, it is one

17   created by DePuy, not the plaintiffs, inasmuch as DePuy, in response to the Complaint in this

18   case, elected to pursue a separate case in Indiana.

19   Due to DePuy's actions, DePuy is now estopped from asserting that this court is not the

20   proper court under 28 U.S.C. § 1404.  *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d

21   997, 1005 n.5 (9th Cir. 2002) ("Issue preclusion, also known as collateral estoppel, binds parties

22   in a subsequent action, whether on the same or a different claim when an issue of fact or law has

23   been actually litigated and resolved by a valid final judgment.") (internal citations and quotations

24   omitted); *Durkin v. Shea & Gould*, 92 F.3d 1510, 1515 (9th Cir. 1996)("The doctrine of issue

25   preclusion (collateral estoppel) bars relitigation of issues actually litigated and necessarily

26   determined by a court.") (internal quotations and citations omitted).  Based on the record, of

27   which this court can take judicial notice, there is no doubt that DePuy had a full and fair

28   opportunity to litigate the forum non-conveniens issues in the Indiana Action.  (*See* Griffin Decl.,

890240.1                                              6

1    Ex. 3 (Docket Report for Indiana Action) and Ex. 5 (DePuy Opposition in Indiana Action).)

2    Because the forum non-conveniens issues have been resolved by the Indiana district court in GSB

3    and Gault's favor, there is nothing left for this court to decide on this motion.  No matter what

4    happens, the decision in the Indiana Action means that the case will end up back in this court.

5          Accordingly, the court must deny the instant motion as moot.

6    **B.    The Indiana District Court's Ruling Comports With Settled Law**

7          Even if this court found the forum selection clause enforceable—as did the Eastern

8    District of California in the recent action involving DePuy or as did the Indiana district court in

9    the Indiana Action—this court is still the most convenient forum for the instant litigation, and the

10   case should proceed here.  *See United Rentals, Inc. v. Pruett*, 296 F.Supp.2d 220, 228-233 (D.

11   Conn. 2003) (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988)).

12         Weighing the various convenience and fairness factors leads to the conclusion that this

13   action should be venued in California.  The Agreement between Gault and DePuy was to be

14   performed entirely in California.  (Gault Decl. ¶ 2, attached to Griffin Decl. as Ex. 4.)  All

15   discussions regarding the terms of the Agreement took place in California with a DePuy

16   employee.  (*Id.* ¶ 3.)  Gault executed the Agreement, in his capacity as President of GSB, in

17   California.  (*Id.*)  GSB and Gault have never conducted any business in Indiana.  Consequently,

18   *all* acts relevant to this dispute took place in California, and all witnesses to those acts are in

19   California.

20         Under similar circumstances, other cases have refused to enforce a forum selection clause

21   based on forum non-conveniens factors.  For example, in *United Rentals*, 296 F.Supp.2d at 228-

22   233, the federal district court concluded that an action for breach of a non-compete agreement

23   ought to be transferred from Connecticut to California, notwithstanding an enforceable forum-

24   selection clause designating Connecticut as the proper forum.  The court noted that the

25   convenience of the parties and non-party witnesses heavily favored a transfer to California,

26   especially since all of the potential non-witness would be outside of the subpoena power of the

27   Connecticut court.  *Id.* at 229-30.  In addition, the interests of justice dictated a California venue

28   because, notwithstanding a provision in the contract to the contrary, California law governed the

890240.1                                    7

1  non-compete agreement. *Id.* at 230-31. Furthermore, the public policy of California, which

2  "generally prohibits covenants not to compete" and "strongly favors employee mobility"

3  counseled for a California forum and gave California "a materially greater interest in the outcome

4  of the litigation" than Connecticut. *Id.* at 231-333. Accordingly, the court concluded that the

5  choice of forum provision was "outweighed by the powerful convenience and fairness factors

6  suggesting California as the appropriate forum." *Id.* at 233-34.

7    The Ninth Circuit endorsed a similar approach in *Jones v. GNC Franchising Inc.*, 211

8  F.3d 495 (2000). In that case, the Ninth Circuit denied a motion to transfer venue from California

9  to Pennsylvania, notwithstanding a forum selection clause designating Pennsylvania as the proper

10  forum. *Id.* at 498-99. The Ninth Circuit articulated ten non-exclusive factors that affected its

11  venue determination: (1) the location where the relevant agreements were negotiated and

12  executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of

13  forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's

14  cause of action in the chosen forum; (6) the differences in the costs of litigation in the two

15  forums; (7) the availability of compulsory process to compel attendance of unwilling non-party

16  witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause;

17  and (10) the relevant public policy of the forum state, if any. *Id.* at 498-99.

18    All but one of these factors – the ninth one – weighs in favor of this court maintaining

19  jurisdiction over the disputes between the parties. DePuy and Gault, acting on behalf of GSB,

20  negotiated the Agreement in Emeryville, California. (Gault Decl. ¶ 4, attached to Griffin Decl. at

21  Ex. 4.) In addition, Gault executed the Agreement, on behalf of GSB, in California. (*Id.* ¶ 5.)

22  California courts are most familiar with California law, which applies notwithstanding the Indiana

23  choice of law provision in the contract. *See Application Group, Inc. v. Hunter Group, Inc.*, 61

24  Cal.App.4th 881, 894-905 (1998) (validity of non-compete provision governed by California law

25  notwithstanding Maryland choice of law provision in contract); *Davis v. Advanced Care*

26  *Technologies, Inc.*, 2007 WL 2288298 (E.D. Cal. August 8, 2007) (validity of non-compete

27  provision governed by California law notwithstanding Connecticut choice of law provision in

28  contract). The parties have significant contacts with California, as GSB did business (only) in

890240.1

8

1    California, Gault is a California resident, and DePuy does business throughout California. (Gault

2    Decl. ¶¶ 2, 9-12, attached to Griffin Decl. at Ex. 4.)  Moreover, because Agreement was to be

3    performed entirely in California, the declaratory and injunctive relief claims directly relate to

4    contacts with that state.  The cost to litigate in Indiana would be much greater because all the

5    evidence and all of the key witnesses are located in California.  Further, any non-party California

6    witnesses could not be compelled to appear and testify at trial in Indiana.  Fed. R. Civ. P.

7    45(b)(2).  And, finally, the state of California has a strong public policy against non-compete

8    agreements and has consistently protected its employees from unlawful non-compete agreements.

9    *See Application Group*, 61 Cal.App.4th at 899-901.

10          Therefore, even if the court should find the forum selection clause enforceable, that

11   provision should be found "outweighed by the powerful convenience and fairness factors

12   suggesting California as the appropriate forum."  *United Rentals*, 296 F.Supp.2d at 233-34.  The

13   Northern District of Indiana has agreed, and that decision is both binding on the parties and is

14   consistent with well-settled law.

15          Accordingly, the court should deny the Motion to Transfer/Dismiss and allow the action

16   to remain in the more convenient forum, the Northern District of California.

17                              **IV.  CONCLUSION**

18          The court should deny DePuy's motion.  After full briefing, the Indiana district court has

19   already ruled, based on forum non-conveniens factors, that this court is the proper venue to

20   resolve this dispute.  While normally the forum non-conveniens analysis is the second step in the

21   process, here it was resolved first in light of DePuy's filing of the Indiana Action.  The Indiana

22   district court's ruling makes the instant motion moot because, even if this court were to enforce

23   the forum-selection clause, it has been conclusively decided by the Indiana district court that the

24   forum-selection clause must give way to convenience factors under 28 U.S.C. § 1404, and that the

25   instant action should proceed here.

26

27

28

890240.1                                           9

1    DATED:  November 13, 2007          DOWNEY BRAND LLP

2        .

3                                        By:_____/s/ Tory E. Griffin_____

4                                                TORY E. GRIFFIN
                                              Attorney for Plaintiffs
5                                         GAULT SOUTH BAY, INC. and BOB GAULT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

890240.1                                    10

OPPOSITION TO MOTION TO DISMISS/TRANSFER