**EXHIBIT 4**

Case 5:07-cv-04659-JW   Document 25-5   Filed 11/13/2007   Page 1 of 5

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEPUY ORTHOPAEDICS, INC.,    )
                             )
    Plaintiff,               )
                             )
v.                           )    No. 3:07 CV 0425 RM
                             )
GAULT SOUTH BAY, INC. and    )
ROBERT GAULT,                )
                             )
    Defendants.              )

## DECLARATION OF ROBERT GAULT

I, Robert Gault, declare as follows:

1. I am over the age of eighteen and competent to testify as to the matters set forth herein which are based on my personal knowledge.

2. I currently reside at 18428 Twin Creeks Road, Monte Sereno, California with my wife and four children. I have lived in California continuously since 1968.

3. I am the President and sole shareholder of Gault South Bay, Inc. ("GSB"), a California corporation that from January 1, 2007 until its termination on August 24, 2007, acted as an independent sales representative for DePuy Orthopaedics, Inc. ("DePuy").

4. In late 2006, I entered into negotiations on behalf of GSB to act as DePuy's independent sales representative for northern California. All negotiations occurred in California with DePuy's Emeryville, California office. Specifically, I dealt with Brad LaPoint, who is DePuy's Territory General Manager for Northern California.

5. In December 2006, GSB and DePuy executed in California an Agreement to be performed in California. I signed the Agreement solely on behalf of GSB. I signed my name in

the area designated for "Contractor," which is defined in the Agreement as GSB. I also indicated my position at GSB, President, under my signature.

6. While the Agreement includes a signature block for persons to sign in their individual capacity, I was never asked to sign this, and never did sign this.

7. The only other document I signed on GSB's behalf in connection with the Agreement was a December 21, 2006 amendment. The signature block on the amendment did not contain an area for me to include my title as President of GSB, but it does indicate that I signed as a "Representative" of GSB. I also executed the amendment in California.

8. In executing both the Agreement and the December 21, 2006 amendment thereto, I signed solely on behalf of GSB in a representative capacity. I did not, nor did I intend to execute either document in an individual capacity.

9. GSB's territory under the Agreement included the Santa Clara Valley and the Peninsula area. GSB's customer list included 20 hospitals and numerous individual physicians. The customers or accounts assigned to GSB had been customers of GSB and Gault for 23 years prior to GSB entering into the Agreement with DePuy.

10. All of GSB's customers, both hospitals and physicians, are located in California.

11. All of GSB's independent contractors are located in California.

12. All documents of both GSB and myself are located in California.

13. Ninety-nine percent of the communications I had in connection with the Agreement took place in California with DePuy's Emeryville, California office.

14. I never traveled to Indiana in connection with the Agreement.

15. On August 24, 2007, I received a letter dated August 20, 2007 from Brad LaPoint informing me that effective August 24, 2007, DePuy was terminating the Agreement with GSB.

- 2 -

In order to protect myself and GSB, on August 24, 2007, we filed a declaratory judgment action against DePuy in the Superior Court of California, County of Santa Clara. The lawsuit seeks a judicial determination that the non-compete provisions in the Agreement are void, invalid and contrary to governing California law. DePuy subsequently removed the action to the United States District Court for the Northern District of California, where it is currently pending.

16. DePuy then filed this action in Indiana against GSB and myself. DePuy claims that I "contractually agreed" to venue, but I have never personally executed any contract with DePuy and have not otherwise agreed to the jurisdiction of this Court.

17. During a September 17, 2007 hearing in this matter, Brad LaPoint testified regarding Drs. Steve Woolson, John Lannin, Ed Littlejohn and Terrance Delaney. These gentlemen are all orthopedic surgeons who reside and practice medicine in California. I know all of these gentlemen personally, and intend to call them to defend against DePuy's allegations. I can say that in the event they agree to testify in my defense, none of them would be amenable to traveling to Indiana. For example, Dr. Littlejohn operates all day on Monday, Tuesday and Friday and holds clinic where he see patients all day on Wednesday and Thursday. Similarly, when Dr. Lannon is not operating, he is in his clinic seeing patients. These doctors' schedules are so busy that when I have asked them to attend educational meetings, some of which would have been entirely paid for by DePuy, they often declined because they simply cannot afford to be out of the office. The only time off these surgeons take is to spend some time with their families.

18. With respect to any other surgeons or former colleagues that I may want to call in my defense to dispute any notion that I was wrongfully soliciting them, I expect to encounter the same results as discussed above. While orthopedic sales representatives do not actually perform

- 3 -

any surgeries, they often attend surgeries with the physicians. Additionally, the sales representatives work on commission, and every hour off the job means money out of their pockets. I believe I would be very hard-pressed to convince any of them to travel to Indiana to testify.

19. In addition to disrupting the surgeons' busy schedules, taking them away from their patients for any length of time to testify could also affect patient care. The process of scheduling an individual surgery can take from several weeks to several months. For example, Dr. Lannin is generally booked out three to four months in advance. Dr. Littlejohn is normally booked out three months ahead of time. Taking time away to travel to Indiana to testify would further draw out these schedules. GSB and myself also sold trauma products on behalf of DePuy. Obviously, if these trauma surgeons are in Indiana as opposed to California, they will not be available to deal with emergencies as they arise, further compromising patient care.

20. As for myself and GSB, the inconvenience and increased expenses we stand to incur if this case remains in Indiana amount to an extreme hardship. I would be required to spend extensive time away from California, which means spending time away from my family and my new job.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Robert Gadit

Executed on September 24, 2007