**EXHIBIT 7**

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT MAHONEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DEPUY ORTHOPAEDICS, INC., an Indiana corporation,<br><br>　　　　Defendant. | CIV F 07-1321  AWI SMS<br><br>ORDER ON PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S RULE 12(b)(3) MOTION TO DISMISS |

　　　　This is a declaratory judgment action brought by Plaintiff Kent Mahoney ("Mahoney") against DePuy Orthopaedics ("DePuy"). Mahoney seeks an injunction prohibiting DePuy from enforcing a non-competition clause and a declaration that the non-competition clause is void. The case was removed to this Court from the Stanislaus County Superior Court on the basis of diversity. Mahoney has filed a motion to remand and DePuy has filed a Rule 12(b)(3) motion to dismiss based on the violation of a forum selection clause. For the reasons that follow, Mahoney's motion to remand will be denied and DePuy's motion to dismiss will be granted.

## BACKGROUND[1]

　　　　From the complaint, in October 2005, Mahoney and DePuy entered into an independent

---

[1] Both sides have submitted declarations and objections to parts of the declarations. Given the resolution of the pending motions, it is unnecessary to rule on most of these objections.

contractor agreement ("the Agreement") whereby Mahoney would act as an independent sales representative for DePuy's products in central California.[2] Complaint at ¶ 5. Among its various clauses, the Agreement contains a forum selection clause, a choice of law clause, and a covenant not to compete. Complaint at Exhibit A. The covenant not to compete post-termination reads:

> You agree that, if this Agreement is terminated for any reason, that for a period of one(1) year after termination of the Agreement, that you will not, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement.

Id.

The choice of law and forum selection clause reads:

> We both agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be [sic] reside in the state and/or federal courts located in the state of Indiana.

Id.

In August 2007, Mahoney and DePuy agreed to terminate the Agreement. Complaint at ¶ 9. On August 9, 2007, DePuy sent Mahoney a letter purporting to require Mahoney, in exchange for DePuy's consent to terminate, to reaffirm all non-compete provisions of the Agreement and to agree not to sue DePuy for any claims arising out of or related to the Agreement. Id. Mahoney refused to sign or agree to these terms because he believed that the terms were contrary to a prior agreement and to California law. Id.

Mahoney wishes to explore other opportunities within his profession, see id. at ¶ 11, and apparently is now employed or represents a competitor of DePuy. See Coffaro Declaration at ¶ 6. However, DePuy continues to insist that the Agreement's non-compete provisions are valid and remain in effect for one year after the Agreement's termination. See Complaint at ¶ 11.

Mahoney seeks a declaration that the non-competition clauses are void and invalid under California Business and Professions Code § 16600 and that Mahoney can terminate the

---

[2] Mahoney's precise sales territory is unknown to the Court. Since Mahoney resides in Modesto and Mahoney's regional manager was responsible for Northern and Central California, see Coffaro Declaration at ¶ 3, the Court assumes Mahoney had a central California territory.

2

Agreement at will. Mahoney also seeks an injunction under California Business and Professions Code § 17200 that prohibits DePuy from enforcing the non-competition clause and the provision of the Agreement that purports to restrict the ability to terminate the Agreement prior to a particular certain.

Mahoney filed suit in state court and DePuy removed to this Court. DePuy filed a motion to dismiss based on the forum selection clause and alternatively requests transfer of this case to the Northern District of Indiana under 28 U.S.C. § 1406. Mahoney filed a motion to remand.

### 1.   **Motion To Remand**

*Plaintiff's Argument*

Mahoney argues that the removal petition offers no specific facts, but merely asserts that DePuy will be damaged in excess of $75,000 and that DePuy stands to lose over $75,000. There is no factual support for these statements. DePuy must set forth facts and evidence to establish the jurisdictional amount and the conclusory allegations are insufficient. Further, the evidence submitted in opposition to the remand motion is largely inadmissible and irrelevant. DePuy relies heavily on gross sales, but that is an irrelevant consideration. Since DePuy has failed to present evidence that establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court must remand this case.

*Defendant's Opposition*

DePuy argues that its allegations in its removal petition are specific and the evidence that it submitted shows that it is more likely than not, from both DePuy's viewpoint and Mahoney's viewpoint, that the amount in controversy exceeds $75,000. From January to November of 2006, Mahoney generated $3.86 million in sales and generated $2.34 million between December 2006 and August 2007. DePuy's profits exceed $75,000 during this time period. DePuy stands to lose these revenues and profits if Mahoney is allowed to be employed by competitors. From Mahoney's standpoint, his commissions for those respective time periods were $420,000 and $250,000. These figures show that the amount in controversy exceeds $75,000.

*Notice of Removal*

In pertinent part, the notice of removal reads:

> The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. To the extent that the sales representative agreement at issue in the State Court Action is declared unenforceable as prayed for in the Complaint, DePuy stands to lose in excess of $75,000. To the extent that Plaintiff . . . is permitted to take to a competitor those accounts he serviced as a DePuy sales representative and wrongfully exploit those relationships he developed or enhanced using DePuy's resources in violation of his sales agreement with DePuy, DePuy will be damaged well in excess of $75,000 given the profits he generated for DePuy while he was a DePuy sales representative.

Court's Docket Doc. No. 1 at ¶ 15.

*Declarations*

DePuy has submitted several declarations in opposition to the remand motion. DePuy's regional manager for Central and Northern California, Peter Coffaro, declared in part:

> 3.    . . . [M]y duties and responsibilities included oversight of DePuy's relationship with . . . Mahoney and monitoring Mr. Mahoney's sales and performance for DePuy and the profits to DePuy generated by DePuy's relationship with Mr. Mahoney.
>
> . . . . . . .
>
> 5.    The sales Mr. Mahoney generated for DePuy as a result of his sales representative relationship and the commissions he generated for himself as a result of that relationship both far exceeded $75,000 per year. Although DePuy's profit margin on those sales is confidential to DePuy (and thus, I cannot disclose that profit margin here in this public document), the profits generated to DePuy on those sales by Mr. Mahoney were well in excess of $75,000 per year.

Mahoney Declaration at ¶¶ 3, 5.[3]

Michelle Rems, DePuy's Field Support Manager whose duties include administering payments of sales commissions, submitted copies of Mahoney's commission statements. Rems explained the commission statements in part as follow:

> 7.    By way of example of the contents of the Statements, the Commission Statement for January 2006 details the following information:
>
>    (a) The first portion of the Commission Statement reflects Gross Sales for Orthopaedics and Gross Sales for Trauma . . . with total gross sales . . . totaling $315,113.02 of sales by Mr. Mahoney for the month of January 2006.

---

[3] Mahoney objects to Paragraph 5 as lacking foundation, lacking personal knowledge, being hearsay, being irrelevant, and violating the best evidence rule. These objections are meritless and are overruled.

4

      (b) The . . . January 2006 Commission Statement reflects that Mr. Mahoney's Gross Commissions for January 2006 totaled $37,081.31. His Net Commissions, after adjustments were taken, totaled $36,281.31.

   8.    Cumulatively, Mr. Mahoney's Commission Statements for January 2006 through August 2007 . . . reflect the following information:

      (a) Mr. Mahoney generated in excess of $3.86 million in sales for DePuy between January 2006 and November 2006 and in excess of $2.37 million in sales for DePuy between December 2006 and August 2007.

      (b) DePuy paid Mr. Mahoney in excess of $420,00 in commissions on his sales for DePuy between January 2006 and November 2006 and in excess of $250,000 in commissions on his sales for DePuy between December 2006 and August 2007.

October 12, 2007, Rems Declaration at ¶¶ 7-8.[4]

*Legal Standard: Remand and Jurisdiction In Equitable Relief Actions*

28 U.S.C. § 1441(a) reads in relevant part: ". . . any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize Inc. v. Matrix Inc., 167 F.3d 1261, 1265 (9th Cir. 1999); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988). In the removal petition, the defendant must set forth the underlying facts that support its assertion of jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see also Gaus, 980 F.2d at 567. If the defendant's "jurisdictional facts are challenged by his adversary in any appropriate manner, [the defendant] must support them by competent proof." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403 (9th Cir. 1996); Gaus, 980 F.2d at 567. Where a complaint does not specify the amount of damages sought, the removing defendant must provide evidence that

---

[4] Relying on a case from the Southern District of Texas, Mahoney objects to Paragraph 8(a) as being irrelevant. For the reasons explained *infra*, the Court disagrees and overrules the objection.

1  establishes by a preponderance of the evidence, i.e. it is "more likely than not," that the amount
2  in controversy exceeds the jurisdictional minimum. Abrego v. Dow Chem. Co., 443 F.3d 676,
3  683 (9th Cir.2006); Valdez, 372 F.3d at 1117; Gaus, 980 F.2d at 566-67. There is a strong
4  presumption against removal. Gaus, 980 F.2d at 566; see also Abrego, 443 F.3d at 685. If there
5  is any doubt as to the right of removal in the first instance, "federal jurisdiction must be
6  rejected." Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); Gaus, 980 F. 2d at 566.

7        The Declaratory Judgment Act allows a federal court to "declare the rights and other legal
8  relations" of parties to a "case of actual controversy." 28 U.S.C. § 2201; Spokane Indian Tribe v.
9  United States, 972 F.2d 1090, 1091 (9th Cir. 1992). "The purpose of [§ 2201] is to relieve
10 potential defendants from the Damoclean threat of impending litigation which a harassing
11 adversary might brandish, while initiating suit at his leisure - or never." Spokane Indian Tribe,
12 972 F.2d at 1091-92. "However, the Declaratory Judgment Act is not a jurisdictional statute"
13 and "does not create subject matter jurisdiction where none otherwise exists," rather it "only
14 creates a particular kind of remedy available in actions where the district court already has
15 jurisdiction to entertain a suit." Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir. 1970); see also
16 Clark v. Busey, 959 F.2d 808, 811 (9th Cir. 1992). Stated differently, in order to obtain
17 declaratory relief in federal court, the basis for federal jurisdiction must be independent of the
18 Declaratory Judgment Act itself. See Stock West, Inc. v. Confederated Tribes of Colville
19 Reservations, 873 F.2d 1221, 1225 (9th Cir. 1989).

20       Under 28 U.S.C. § 1332, a district court has jurisdiction when the matter in controversy
21 exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of
22 different states. 28 U.S.C. § 1332(a). "In actions seeking declaratory or injunctive relief, it is
23 well established that the amount in controversy is measured by the value of the object of the
24 litigation." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977); Cohn
25 v. Petsmart, Inc., 282 F.3d 837, 840 (9th Cir. 2002). In non-class action cases, the amount in
26 controversy may be met from the viewpoint of either the plaintiff or defendant, that is, "the value
27 of the thing sought to be accomplished by the action may relate to either or any party to the
28 action." In re Ford Motor Co., 264 F.3d 952, 958 (9th Cir. 2001); Ridder Bros. v. Blethen, 142

1  F.2d 395, 399 (9th Cir. 1944); see also Guglielmino v. McKee Foods Corp., --- F.3d ---, 2007
2  U.S. App. LEXIS 23654, *13-*14 (9th Cir. 2007). If a suit involves the enforcement of a
3  covenant not to compete, courts "usually will look to the profits earned by the employer on
4  business generated by the employee during the period immediately preceding his termination."
5  Mailwaukee Mailing, Shipment & Equip., Inc. v. Neopost, Inc., 259 F.Supp.2d 769, 773 (E.D.
6  Wis. 2003); Basicomputer Corp. v. Scott, 791 F.Supp. 1280, 1286 (N.D. Ohio 1991); Zimmer-
7  Hatfield, Inc. v. Wolf, 843 F.Supp. 1089, 1091 (S.D. W. Va. 1994); C. Wright, A. Miller, & E.
8  Cooper, 14B Federal Practice & Procedure § 3708 (Ed. 1998) ("Wright & Miller"). Courts have
9  also examined the revenues generated by an employee and the revenues lost by the employer in
10 determining whether the jurisdictional minimum has been met. See Basicomputer Corp. v. Scott,
11 973 F.2d 507, 510 (6th Cir. 1992); Premier Industrial Corp. v. Texas Industrial Fastener Co., 450
12 F.2d 444, 446-47 (5th Cir. 1971); Robert Half Int'l, Inc. v. Van Steenis, 784 F.Supp. 1263, 1265-
13 66 (E.D. Mich. 1991); Basicomputer, 791 F.Supp. at 1286; cf. USAchem, Inc. v. Goldstein, 512
14 F.2d 163, 170 (2d Cir. 1975) (relying on "volume of sales involved").

*Resolution*

Initially, it is unnecessary to decide whether DePuy's removal petition was conclusory and insufficient. The factual basis for removal has been called into question by Mahoney and DePuy has provided evidence in support of its jurisdictional amount assertions. See Gaus, 980 F.2d at 966-67. Evidence submitted in opposition to a motion to remand may properly be treated as an amendment to the original removal petition. See Cohn, 281 F.3d at 840 n.1. Assuming that the petition was deficient, the evidence submitted in the opposition to remand will be viewed as an amendment that cures any such defect.

As for the substance of the remand motion, the Court agrees with DePuy. The revenues generated by Mahoney and the commissions paid to Mahoney are substantial and well in excess of $75,000. It is true that the precise amount of lost profits has not been established by DePuy. However, Peter Coffaro has declared that the profits generated by Mahoney were in excess of $75,000 per year. See Coffaro Declaration at ¶ 5. This declaration is significantly bolstered by the sales/revenues that were generated by Mahoney. There is no dispute that Mahoney generated

7

over $6 million in revenues between January 2006 and August 2007 for DePuy. See October 12, 2007, Rems Declaration at ¶¶ 7-8. It is unlikely that DePuy's profit on these revenues would be equal to or less than $75,000 in light of the approximately $3.9 million and $2.4 million sales revenues generated by Mahoney.[5]

Mahoney's primary argument is that the precise amount of profits have not been established and that the evidence of gross sales is irrelevant under *Zep Mfg. Corp. v. Haber*, 202 F.Supp. 847, 848 (S.D. Tex. 1962). *Zep* was a suit for equitable relief and enforcement of a covenant not to compete. See *Zep*, 202 F.Supp. at 847. The *Zep* court applied a plaintiff's viewpoint test for determining the amount in controversy, concluded that gross income generated by the defendant for the plaintiff ($115,000) was "a neutral fact insofar as it does not reflect true benefit to the plaintiff from defendant's services," and believed that the evidence of profits generated by the defendant reflected the true benefit to the plaintiff. See *id.* at 848-49. This Court does not believe that *Zep* aides Mahoney. First, *Zep* held that the gross sales figure was a neutral fact, and the only evidence concerning the plaintiff's profit showed that the profit ($3,300) was well short of the $10,000 then-existing jurisdictional minimum. See *id.* Here, Coffaro's declaration states that DePuy's profits on Mahoney's sales exceeded $75,000 per year, and there is no evidence that suggests that DePuy's profits were less than $75,000. Additionally, the exact amount of DePuy's profit is not revealed, but the over $6 million in gross sales/revenues generated by Mahoney clearly supports and gives further meaning to Coffaro's sworn assertion concerning DePuy's profits. Because of this "buttressing effect," the Court believes that gross sales/revenues is not simply a "neutral fact" in this case. Finally, other courts have examined the sales/revenues generated by an employee in finding that a jurisdictional amount was met. See Basicomputer, 973 F.2d at 510; Robert Half, 784 F.Supp. at 1265-66; cf. USAchem, 512 F.2d at 170 (examining sales volume involved); Premier, 450 F.2d at 446-47 (noting that lost sales revenues may serves as the figure for the amount in controversy in an

---

[5]The Court notes that there is a distinction between revenues and profits. "Revenue" is "gross income or receipts." Black's Law Dictionary 1344 (8th ed. 2004). "Profit" is "the excess of revenues over expenditures in a business transaction: gain." Id. at 1246.

8

equitable action involving a non-compete clause). To the extent that *Zep* may hold that gross sales/revenues are irrelevant when examining the value of a non-competition clause, this Court disagrees and will not follow that holding.

The Coffaro and Rems declarations show that Mahoney generated over $6 million in sales revenues from January 2006 to August 2007, and that Mahoney generated profits in excess of $75,000 per year for DePuy in 2006 and 2007. This evidence sufficiently shows that it is more likely than not that the amount in controversy exceeds $75,000. See Valdez, 372 F.3d at 1117; Gaus, 980 F.2d at 566-67; Basicomputer, 973 F.2d at 510; USAchem, 512 F.2d at 170; Mailwaukee Mailing, 259 F.Supp.2d at 773; Zimmer-Hatfield, 843 F.Supp. at 1091; Basicomputer, 791 F.Supp. at 1286; Robert Half, 784 F.Supp. at 1265-66; 14B Wright & Miller § 3708. This Court has diversity jurisdiction over this case, and remand is inappropriate.

### 2. Rule 12(b)(3) Motion to Dismiss

*Defendant's Argument*

DePuy argues that the forum selection clause is valid and should be enforced. Courts routinely honor mandatory forum selection clauses, including federal California courts, and the language of this clause designates Indiana as the mandatory forum. Mahoney's focus on the alleged invalidity of other clauses does not invalidate the forum selection clause. Further, there is no indication that Indiana courts cannot address choice of law issues or the covenant not to compete. Since Mahoney filed suit in an improper venue, the complaint should be dismissed or alternatively transferred to the Northern District of Indiana.

*Plaintiff's Opposition*

Mahoney argues that the forum selection clause is contrary to the strong California public policy against contractual provisions that restrain competition. Indiana law also does not favor restrictive covenants, but such covenants may nevertheless be enforced under certain circumstances. California courts routinely apply California law when dealing with non-competition clauses, even in the face of a choice of law provision that adopts the law of a different state. Since California law applies to the interpretation of the Agreement and California

1  has a strong public policy against competition restricting covenants, the forum selection clause
2  should not be enforced.
3      Additionally, DePuy inserted the forum selection clause into the contract as a bad faith
4  tactic to discourage litigation and was aware of California's contrary law regarding non-
5  competition clauses. DePuy's bad faith makes enforcing the forum selection clause
6  fundamentally unfair.
7      Further, the factors associated with *forum non conveniens* counsel against enforcing the
8  forum selection clause. The Agreement was executed and performed in California, all acts
9  relevant to this dispute occurred in California, all witnesses to the relevant acts are in California,
10 Mahoney has never been to Indiana, and California law governs the agreement. All but one of
11 the nine considerations for deciding a *forum non conveniens* motion that were identified by the
12 Ninth Circuit weigh in favor of California as the more convenient venue. If the court transfers
13 the case to the Northern District of Indiana, then Mahoney will move to transfer the case back to
14 California under 28 U.S.C. § 1404, which will result in unnecessary expenditures of judicial
15 resources.
16     Finally, DePuy has a history of selectively enforcing its forum selection clauses. In one
17 lawsuit, it filed suit in Indiana against two former employees, despite a forum selection clause
18 that identified New Jersey as the appropriate forum. See Request for Judicial Notice Exhibit A.
19     *Forum Selection Clauses*
20     Federal courts sitting in diversity apply federal law to determine the effect and scope of a
21 forum selection clause. Jones v. GNC Franchising, Inc., 211 F.3d 495, 497 (9th Cir. 2000);
22 Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988). "The rule set
23 forth by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.* controls the consideration of
24 a motion to dismiss for improper venue based upon a forum selection clause." Jones, 211 F.3d at
25 497; Manetti-Farrow, 858 F.2d at 513. Accordingly, forum selection clauses are presumptively
26 valid and the party challenging the clause "bears a heavy burden of proof" and "must clearly
27 show that enforcement would be unreasonable and unjust, or that the clause was invalid for such
28 reasons as fraud or over-reaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-15

1  (1972); Murphy v. Schneider National, Inc., 362 F.3d 1133, 1140 (9th Cir. 2003);
2  Manetti-Farrow, 858 F.2d at 514.  To establish the unreasonableness of a forum selection clause,
3  the party opposing enforcement of the clause "has the heavy burden of showing that trial in the
4  chosen forum would be so difficult and inconvenient that the party effectively would be denied a
5  meaningful day in court." Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996);
6  Manetti-Farrow, 858 F.2d at 515; Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741
7  F.2d 273, 280 (9th Cir. 1984).  Enforcement of a forum selection clause may be unreasonable if:

> (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; or (3) if enforcement would contravene a strong public policy of the forum in which the suit is brought.

Murphy, 362 F.3d at 1140; see also M/S Bremen, 407 U.S. at 12-18; Jones, 211 F.3d at 497;
Argueta, 87 F.3d at 325.  "Overreaching" is a ground "short of fraud," and a mere showing of
"non-negotiability and power difference" does not render a forum selection clause unenforceable.
Murphy, 362 F.3d at 1141; E.J. Gallo Winery v. Andina Licores S.A., 440 F.Supp.2d 1115, 1126
(E.D. Cal. 2006).  A party seeking to avoid enforcement of the forum selection clause under the
first exception must show that the inclusion of the clause itself into the agreement was improper;
it is insufficient to allege that the agreement as a whole was improperly procured.  See Scherk v.
Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974); Batchelder v. Nobuhiko Kawamoto, 147
F.3d 915, 919 (9th Cir. 1998).  In considering the second exception, courts may consider, *inter
alia*, a party's financial ability to litigate in the forum selected by the contract.  Murphy, 362
F.3d at 1141-42 (citing Spradlin v. Lear Siegler Mgmt. Services Co., 926 F.2d 865, 869 (9th Cir.
1991)).  However, because of the greater burden of showing that enforcement of a forum
selection clause would effectively deprive a party of his day in court, reliance on a traditional
*forum non conveniens* balancing analysis will not be persuasive.  Pelleport Investors, 741 F.2d at
280.

A forum selection clause will be enforced where venue is specified through mandatory
language.  Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir.1989).  If the
language of the forum selection clause is non-mandatory, then the forum selection clause will not

preclude suit elsewhere. Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987).

*Discussion*

Initially, there is no dispute that the forum selection clause in this case is a mandatory clause. See Docksider, 875 F.2d at 764. Further, there is no dispute that this suit falls within the scope of the forum selection clause. See Manetti-Farrow, 858 F.2d at 514. Thus, the forum selection clause is presumptively valid and Indiana is the presumptively proper venue for this suit. Mahoney has the heavy burden of showing that enforcement of the clause is unreasonable. See Murphy, 362 F.3d at 1140.

With respect to Mahoney's argument that enforcing the forum selection clause would violate California's strong public policy against non-competition clauses, the Court disagrees. Mahoney never directly addresses the forum selection clause itself. Instead, Mahoney speculates as to how an Indiana court may or may not rule on the Agreement's choice of law clause and covenant not to compete. This type of indirect attack on a forum selection clause has been rejected by this and other courts. See Swenson v. T-Mobile United States, Inc., 415 F.Supp.2d 1101, 1104-05 (S.D. Cal. 2006); Multimin USA, Inc. v. Walco Int'l, Inc., 2006 U.S. Dist. LEXIS 33624, *17-*18 (E.D. Cal. 2006); Manchester v. Arista Records, Inc., 1981 U.S. Dist. LEXIS 18642, *15-*17 (C.D. Cal. 1981); see also Ingenieria Alimentaria Del Matatipac, S.A. v. Ocean Garden Prods., Inc., 2007 U.S. Dist. LEXIS 40015, *12 (S.D. Cal. 2007). "The forum selection clause determines where the case will be heard. It is separate and distinct from choice of law provisions that are not before the court." Multimin USA, 2006 U.S. Dist. LEXIS 33624 at *17. The "question is not whether the application of the forum's law would violate the policy of the other party's state, but rather, whether enforcement of the forum selection agreement would violate the policy of the other party's state as to the forum for litigation of the dispute." Swenson, 415 F.Supp.2d at 1105. Importantly, there is no indication that Indiana courts will not or cannot entertain Mahoney's choice of law arguments or that they cannot apply California law if it is determined that California law governs. Cf. Swenson, 415 F.Supp.2d at 1104 (noting that plaintiffs could and did make choice of law arguments to Washington state court); Multimin

USA, 2006 U.S. Dist. LEXIS 33624 at *17-*18 (noting that plaintiff had not shown that it could not present claims and arguments to Texas courts). Any notion that Indiana courts will not safeguard Mahoney's rights is "speculative" and reflects a "provincial attitude" towards the Indiana courts. Mannetti-Farrow, 858 F.2d at 515. Mahoney has not met his heavy burden of showing that enforcement of the forum selection clause would violate a strong California public policy or deprive him of his day in court. See Swenson, 415 F.Supp.2d at 1104-05; Multimin USA, 2006 U.S. Dist. LEXIS 33624 at *17-*18.

As for Mahoney's argument that the forum selection clause was inserted as a bad faith tactic to discourage legitimate claims, Mahoney provides no evidence in support of this argument. DePuy is incorporated and has its principal place of business in Indiana, see Court's Docket Doc. No. 1 at 2:22-25, and the largest concentration of its employees (over 1000 out of 2,028 total) is in Indiana. See October 19, 2007, Rems Declaration at ¶ 3. It is neither surprising nor unreasonable that DePuy prefers and contracts to be sued in Indiana. Given that forum selection clauses are presumptively valid, see Murphy, 362 F.3d at 1140, the mere presence of a forum selection clause in a contract without more is not bad faith. Mahoney's bare assertion of bad faith is far from sufficient to meet his heavy burden.

With respect to Mahoney's *forum non conveniens* argument under 28 U.S.C. § 1404 and his pledge to file such a motion in an Indiana court, these considerations are not persuasive. First, the Ninth Circuit has rejected reliance on the traditional *forum non conveniens* balancing test when deciding whether to enforce a forum selection clause. Pelleport Investors, 741 F.2d at 280. Second, although the Ninth Circuit has examined the hardship caused to a litigant from enforcing a forum selection clause, see Murphy, 362 F.3d at 1141-42, Mahoney has presented no evidence regarding any hardships or inconveniences from litigating in Indiana, let alone hardships that would deprive him of his day in court. Cf. Mahoney Declaration with Murphy, 362 F.3d at 1141-42; Pelleport Investors, 741 F.2d at 280. Finally, assuming that Mahoney does file a motion to transfer in the Northern District of Indiana under 28 U.S.C. § 1404, it is speculative what the Indiana court may do. Considering the nature of this lawsuit and DePuy's reply brief, it is not certain whether the Indiana court would grant a § 1404 motion. For example,

13

it is not clear at this point that California law applies, it is not clear that Indiana has no ties to this dispute, there is a forum selection clause, and since this declaratory judgment action is about the legal question of the validity or invalidity of contractual clauses, it is unclear what witnesses are really necessary. How another court may or may not decide a subsequent 28 U.S.C. § 1404 motion does not justify the Court refusing to enforce the forum selection clause.[6] Mahoney has not shown that he will be deprived of his day in court if forced to litigate in Indiana.

Finally, as to Mahoney's argument that DePuy selectively enforces forum selection clauses, this argument is frivolous. Mahoney's argument is based on one, unrelated action filed by DePuy in 2007 in Indiana. That lawsuit contained a permissive forum selection clause for New Jersey and was against an Indiana corporation, an individual citizen of Indiana, and an individual citizen of Mississippi. See Mahoney Request for Judicial Notice Exhibit A. This Court does not know why DePuy chose to file suit in Indiana instead of New Jersey in that case, although it could be that the forum selection clause was not mandatory or that DePuy and two of the three defendants are located in Indiana and that Indiana and New Jersey are equally inconvenient for the Mississippi resident. The fact of the matter is that the events of a completely unrelated case are irrelevant to DePuy exercising the contractual rights it has with Mahoney in this case.[7] The wholly unrelated Indiana case identified by Mahoney is no ground for refusing to enforce the forum selection clause in this case.

Mahoney has a heavy burden in showing that enforcement of selection of a forum selection clause is unreasonable. Mahoney has not shown fraud or overreaching, that enforcing the forum selection clause would violate a strong California public policy, or that enforcing the

---

[6] Mahoney cites *United Rentals, Inc. v. Pruett*, 296 F.Supp.2d 220 (D. Conn. 2003), as an example of a similar case that transferred an action from Connecticut to California notwithstanding a forum selection clause that designated Connecticut as the proper forum. However, in *United Rentals*, the court first addressed a Rule 12(b)(3) and 28 U.S.C. § 1406 argument and held that the forum selection clause defeated those motions. See id. at 228. The *United Rentals* court then addressed the alternative motion for transfer under 28 U.S.C. § 1404. See id. at 223, 228. In contrast, there is no 28 U.S.C. § 1404 motion before this Court. Again, how an Indiana court will view or rule on a 28 U.S.C. § 1404 motion is too speculative to influence the rulings in this case; *United Rentals* does not help Mahoney here.

[7] Mahoney requests that the Court take judicial notice of the Indiana case. Although it is generally appropriate to take judicial notice of public documents, because the Indiana case is irrelevant to this motion, the Court declines to take judicial notice.

1  forum selection clause would be fundamentally unfair. There is insufficient evidence to indicate
2  that Indiana courts cannot or will not be able to resolve and address the issues in this case, and
3  Mahoney has not shown that enforcement of the forum selection clause will deny him his day in
4  court. The proper venue for this case is Indiana – it is not the Eastern District of California. See
5  Murphy, 362 F.3d at 1140; Manetti-Farrow, 858 F.2d at 514-15; Pelleport Investors, 741 F.2d at
6  280; Swenson, 415 F.Supp.2d at 1104-05; Multimin USA, 2006 U.S. Dist. LEXIS 33624 at *17-
7  *18.
8        Where venue is improper, the district court has the discretion to dismiss the case or
9  transfer the case, if it is in the interests of justice, to an appropriate jurisdiction under 28 U.S.C. §
10 1406(a). See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); King v. Russell, 963
11 F.2d 1301, 1304 (9th Cir. 1992); Cook v. Fox, 537 F.2d 370, 371 (9th Cir. 1976); Citizens For A
12 Better Environment v. Union Oil Co., 861 F.Supp. 889, 897 (N.D. Cal. 1994). Here, DePuy's
13 motion in the main requests dismissal. There does not appear to be any statute of limitations
14 issue, and Mahoney does not argue that the Court should transfer this case or argue that the
15 interests of justice require transfer. Mahoney did argue *forum non conveniens* considerations and
16 that, if the case was transferred, he would file a motion to transfer back to the Eastern District of
17 California under 28 U.S.C. § 1404. Mahoney also filed a motion to remand and has consistently
18 argued only that DePuy's motion should be denied. In light of the above, the Court will dismiss
19 this case without prejudice to refiling in a state or federal court in Indiana.
20
21                             **CONCLUSION**
22       There are two motions before the Court. With respect to Mahoney's motion to remand,
23 the evidence submitted shows that Mahoney generated sales/revenues of over $6 million from
24 January 2006 to August 2007, and generated over $75,000 in profit per year for DePuy. The
25 evidence submitted by DePuy corrects any deficiencies in the removal petition and also
26 establishes that it is more likely than not that the amount in controversy in this case exceeds
27 $75,000. Accordingly, Mahoney's motion to remand will be denied.
28       With respect to DePuy's Rule 12(b)(3) motion, this case fits within the coverage of the

15

forum selection clause and the forum selection clause contains mandatory language that identifies the state and federal courts of Indiana as the proper venue for this action. Mahoney has a heavy burden of showing that enforcement of the forum selection clause would be unreasonable. However, Mahoney has failed to show that the forum selection clause was a product of fraud or overreaching, that enforcement of the forum selection clause would contravene a strong California public policy, or that enforcing the forum selection clause would effectively deny him his day in court. Indiana is therefore the proper venue for this case. Although the Court has discretion, in light of the filings of the parties, the Court will not transfer this case, but will instead dismiss.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to remand is DENIED;
2. Defendant's Rule 12(b)(3) motion to dismiss is GRANTED and this case is DISMISSED without prejudice to refiling in either the state or federal courts for the state of Indiana; and
3. The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

**Dated:   November 7, 2007**                    **/s/ Anthony W. Ishii**
                                                  UNITED STATES DISTRICT JUDGE