1          THE COURT:   You may step down, Mr. LaPoint.   Thank

2    you.

3                               (Witness excused.)

4          THE COURT:   I understand, with that, completes the

5    evidence?

6          MR. LUECK:   Yes, Your Honor.

7          We do anticipate the filing of a declaration or

8    affidavit from Candice Polich.   You may recall that she was

9    identified as the subrep.

10         Due to her absence over the weekend, I believe that

11   that has just been sent to us and will be filed by the end

12   of the day.

13         That would be the only supplemental evidence beyond

14   what we have in the record presently that we would introduce

15   in support of our TRO.

16         THE COURT:   My ruling may precede it, so we'll have

17   to see.

18         Any evidence for the Defense?

19         MR. HOWARD:   No, Your Honor.

20         I don't know if the Court wants to entertain any

21   further arguments on any of the --

22         THE COURT:   Yeah, but let me invite -- since the

23   Plaintiff is the primary moving party -- and I understand

24   you have your own functions as well.   Let me invite the

25   Plaintiff to go first.

1          MR. LUECK:  Thank you, Your Honor.

2          Your Honor, in many respects, this is a classic

3    noncompete case.  There's evidence that an individual and

4    entity -- although there's argument on which.  I'll address

5    that momentarily.  But the covenant was signed.  A

6    termination took place, and the covenant has been violated.

7          Interestingly enough, there is no evidence

8    contradicting the evidence that there have been violative

9    acts since the departure of Mr. Gault.  There certainly

10   could have been a Gault declaration to that extent.  There

11   has been.

12         The evidence -- and we believe that it is

13   well-supported through the affidavits of Daneman.  The

14   affidavit of LaPoint and the testimony today is that despite

15   the obligation that Gault and Gault South Bay have not to

16   violate their obligations of noncompetition, they have done

17   so.

18         There is an issue that Mr. Howard is pressing very

19   strongly, that somehow Bob Gault is not party to this and is

20   not in any way bound by this.

21         Interestingly enough, if you relate back to the

22   California complaint that Gault, Gault South Bay, and

23   allegedly Ms. Polich signed, they explicitly identify Bob

24   Gault as the president and sole shareholder of Gault South

25   Bay and see a sufficient concern about whether he's covered

1    by that covenant to feel necessary not merely to bring that

2    lawsuit on behalf of Gault South Bay but also on behalf of

3    Bob Gault.   I would submit that Defendants' actions speak

4    more loudly than their words in terms of there being some

5    coverage.

6            THE COURT:  I lost you.

7            As I understand, you're saying that they're

8    concerned that DePuy might claim that the covenant covers

9    Mr. Gault rather than just the corporation, somehow is proof

10   that it does cover Mr. Gault rather?

11           MR. LUECK:  Well, it's certainly evidence that this

12   is not a closed question.  It is an open question that they

13   felt was a sufficiently open question to name both Gault and

14   Gault South Bay as parties to that in that complaint.

15           But more to the point, it is well established, and

16   it's particularly well established that under Indiana law

17   that parties cannot use subterfuge to avoid obligations of

18   noncompetition.

19           That goes back to the McCart versus McCart case,

20   which we've cited in our briefing, and the Norlund v Faust

21   case.  You can't use subterfuge to avoid a noncompete.

22           Here you have a situation where Bob Gault was the

23   sole shareholder, the president of this company, and he's

24   going out and competing.

25           THE COURT:  What is the subterfuge?

1          MR. LUECK:  The subterfuge is using the corporation

2     as a shell to avoid noncompete obligations but using it as

3     the benefit to get all of the benefits of the contract other

4     than the noncompete obligation, so they get the benefits,

5     but they don't have any of the weight and any of the

6     obligations because they can simply have Mr. Gault step out

7     from behind the shadow and violate the noncompete.

8          THE COURT:  What makes that different from a

9     shareholder of any other company?

10         MR. LUECK:  It makes it different in that what we

11    are seeking here is injunctive relief.  And even under the

12    terms of Rule 65, an injunction extends to those acting in

13    active concert and participation.

14         At this point, we've sought expedited discovery to

15    see whether the contract between Biomet and either Gault

16    South Bay or Gault exists.

17         I would, frankly, be surprised if it's not a

18    contract between Gault South Bay and Biomet and Mr. Gault

19    acting, again, on behalf of Gault South Bay.

20         But, in any event, to the extent that a

21    noncompete -- to the extent an injunction were extended to

22    Gault South Bay, we do believe that it would appropriately

23    extend to Mr. Gault as someone acting on behalf of that

24    entity.

25         We also note that the complaint alleges tortious

```
 1    interference by Mr. Gault in causing the violations that are

 2    alleged to have -- serve as the basis of the noncompete

 3    violation and causes him to be a party acting in active

 4    concert and participation.  Gault South Bay is acting

 5    through Bob Gault when it violated its obligations under

 6    this noncompete.

 7            THE COURT:  How do I know -- how do I know that?

 8            MR. LUECK:  You know that because Bob is the sole

 9    shareholder and the president of the company.

10            THE COURT:  Are you, in essence -- I mean, you keep

11    coming back to that.  But my understanding is the corporate

12    veil would still suffice unless it's pierced somehow.

13            Are you contending that the corporate veil is

14    nonexistent, that it's pierced?  How do I know that

15    Mr. Gault treats the corporation as himself?

16            I guess I'm looking for those other things that I

17    usually see if somebody's telling me effectively that a

18    president/sole shareholder is the alter ego of the

19    corporation.  And so far, all I've got is Exhibit A and

20    Mr. Gault going around holding Biomet-sponsored physician

21    meetings.

22            How do I know that Gault equals Gault South Bay?

23            MR. LUECK:  Based on the ownership and the

24    activities, which we understand there's an issue, piercing

25    the corporate veil, and based on the fact that Gault South
```

1    Bay has these obligations.  And we expect that after

2    additional discovery, we'll establish that Gault South Bay

3    is the entity that is contracted and is bound by these

4    agreements, and the covenant should extend to both Gault and

5    Gault South Bay.

6         THE COURT:  Is there any evidence that I can look at

7    in this record -- as I understand, there's two potential

8    stumbling blocks for DePuy.

9         One is:  If Gault South Bay and Gault are separate

10   entities -- we know Gault South Bay signed Exhibit A -- is

11   there any evidence that Mr. Gault is subject to the same

12   noncompete -- any evidence that I can point to to say that

13   Mr. Gault is subject to the noncompete provision?

14        And secondly -- let me give you both of them because

15   I think it may not be the flip side of the coin -- if they

16   are separate entities, is there any evidence that Gault

17   South Bay rather than Robert Gault is -- let's see.  I'm

18   trying to figure out how to do this without characterizing

19   -- is engaged in conduct that would violate the covenant not

20   to compete?

21        Do you see my --

22        MR. LUECK:  No, I see your question, Your Honor.

23        And based on the limited record that we have -- by

24   the way, we have sought expedited discovery, and that motion

25   hasn't been ruled on.

1          THE COURT:  Oh, I understand.  I understand.

2          MR. LUECK:  Based on the evidence, we have today, as

3    to the first part of the question, we believe it is telling

4    in terms of the observation of corporate formalities that

5    the addendum to Exhibit A is not signed as Bob Gault,

6    president of the company.  It's signed simply as Robert

7    Gault.

8          THE COURT:  But that line, the line where he signed,

9    is representative, isn't it?  Isn't that what the line says

10   on Exhibit C, representative, representative's name?

11         MR. LUECK:  It does, but it does not identify him as

12   president, just representative's name, which in many

13   respects is equivalent to him individually as it is to the

14   company.  It doesn't define the company as representative

15   anywhere else in the document.

16         That is the evidence of overlap.  In terms of

17   evidence Gault South Bay acting improperly post-termination,

18   that is evidence -- the only evidence we have there is Bob

19   Gault who was the principal, the president, and the overlap

20   in that respect.

21         There is no dispute -- we believe the facts clearly

22   establish what Mr. Gault has been engaged in since then.

23         As for personal jurisdiction, there is evidence that

24   Mr. Gault has come to Indiana to further the business of

25   himself and Gault South Bay in bringing surgeons to the

1    state.  He has checks issued from the state.  He's had a

2    relationship with an Indiana corporation for in excess of 10

3    years.

4         And as a result, under the broad long-arm statutes

5    of Indiana, we believe that there is jurisdiction over

6    Mr. Gault, and that will be established as that issue is

7    further briefed.

8         Curiously enough, we did not hear any objection as

9    to personal jurisdiction until the hearing started this

10   afternoon.  The other papers that were filed on Friday made

11   no issue as to personal jurisdiction.

12        There have been many questions raised as to whether

13   this Court is the appropriate forum in which to proceed with

14   this litigation.

15        We believe that Biomet or Mr. Gault has prompted a

16   decision, at least on a preliminary basis, by the California

17   Court in that regard by seeking the temporary restraining

18   order it sought in California, and the California court,

19   after careful consideration and briefing, refused to enjoin

20   DePuy from pursuing this action.

21        We acknowledge that there may be motions, and we'll

22   be briefing in the future as to motions to dismiss, motions

23   to transfer, but the issue today before the Court is

24   determining whether a temporary restraining order is

25   important, is appropriate and determining whether there

1    should be a schedule put in place for expedited discovery

2    and other discovery that will allow us to present the Court

3    with a full record for a preliminary injunction hearing.

4        We acknowledge and in a brief that was filed just as

5    this hearing was starting that in determining whether --

6        THE COURT:  You filed a brief today?

7        MR. LUECK:  We did.

8        And, Your Honor, I will just mention it.  Or if your

9    Court wishes it, I won't mention it.

10       But the focus -- we believe the focus of this

11   hearing should be on the temporary restraining order.  There

12   may be some issues as to the choice of law that applies.  We

13   believe the choice of law is clearly Indiana law.

14       And even under California law, we believe that the

15   narrow exception rule that allows covenants to be enforced

16   in narrow exceptions when you're not preventing someone from

17   continuing employment would apply here.

18       As Mr. LaPoint testified, the listing of accounts on

19   Exhibit B is not even exhaustive of all of the hospital in

20   the Silicon Valley area.

21       So if Mr. Gault or Gault South Bay were to be

22   enjoined from serving those hospitals, Mr. Gault and Gault

23   South Bay could still pursue a career in promoting DePuy

24   Orthopaedic products.

25       So we believe that the evidence establishes a basis

1    for a temporary restraining order.  We ask that that order

2    be entered and that we proceed expeditiously to complete the

3    record so that we can have a full preliminary injunction

4    hearing.

5         THE COURT:  Okay.  I've got two questions.  One --

6    and the question that floats through at least the

7    Defendants' brief.  I don't know about the response brief,

8    but I'll get to that in a minute -- is that you should be

9    arguing all these things to Judge Ware in California.  And I

10   guess my question is:  Why a Northern Indiana case as

11   opposed to a counterclaim and 1404 petition before Judge

12   Ware in California Northern?

13        MR. LUECK:  Because a 1404 petition just buys the

14   Defendants in this case, Plaintiffs in that case, more time

15   to violate the noncompete.

16        We are raising this litigation in the forum that's

17   required by the contract that Mr. Gault signed, a forum that

18   has a connection to the dispute because DePuy Orthopaedics

19   is located in Warsaw, Indiana, in a situation that is not

20   unlike agreements between Biomet and its sales

21   representatives that require lawsuits to be brought in

22   Indiana.

23        We believe it's appropriately brought here.  We

24   believe that, after all of the parties have filed their

25   motions and cross motions to dismiss and transfer and

1    everything else, that the case will be brought here, and we

2    believe that because this is an appropriate forum, it is

3    appropriate for this Court, rather than the California

4    court, to be determining the issues of the temporary

5    restraining order and issues relating to the enforcement of

6    the noncompete.

7         THE COURT:  Thank you.

8         Mr. Howard.

9         MR. HOWARD:  Thank you, Judge.

10        May I speak from here, Your Honor?

11        THE COURT:  Sure.

12        MR. HOWARD:  Your Honor, I guess I'll start to work

13   backwards.

14        I think Your Honor raises a valid point about why no

15   counterclaim in the California court, why no 1404, et

16   cetera, and I think the reasons are quite clear as to why

17   that is the case.

18        Mr. Lueck's response that it makes no sense to do so

19   out in California because they're so concerned about

20   alleged violations of a noncompete by Gault South Bay really

21   doesn't fly, because that matter has been out there for four

22   weeks.

23        THE COURT:  Let me ask this.  When did they get -- I

24   know when the case was filed, and I know when they removed

25   it.  What I haven't learned is when they were served.

1          MR. HOWARD:  I believe that they were served six

2   days before they removed, Your Honor, because --

3          THE COURT:  It's not two weeks or four weeks.  It's

4   actually -- if they were served six days before they

5   removed, that would be September 4th, so they effectively

6   learned about that case, because I think your brief said,

7   you know, "This thing's been on file" -- "they waited two

8   weeks, and then they filed this suit."

9          MR. HOWARD:  Your Honor, they had knowledge of the

10  filing of the lawsuit immediately.

11         And in terms of when they actually filed their

12  petition for removal, I don't recall.

13         THE COURT:  The petition for removal was

14  September 10th.  I know that, and this case was filed

15  September 11th.

16         MR. HOWARD:  Right.

17         And I know that -- and I know that at a minimum, I

18  believe that there were four days left in the time frame for

19  their removal, so, you know, if that helps at all in terms

20  of the 10-day removal period.

21         So they have known about the case for at least two

22  weeks, assuming that the removal is the operative date.  My

23  information is -- and I have to apologize, because I'm just

24  into this at the very eleventh hour.

25         THE COURT:  Oh, I understand.

1         MR. HOWARD:  They were served almost immediately,

2    but --

3         THE COURT:  I want to say, with respect to both

4    sides, what I said as far as being able to marshal facts, I

5    know that applies to learning about the case as well.

6         MR. HOWARD:  Right.

7         And the point here is that -- I think there's a lot

8    to be said about the fact that counsel could have filed and

9    done something in California, and they haven't.

10        The interesting thing is that, on September 11th,

11   counsel from Barnes & Thornburg wrote a letter to California

12   counsel, Mr. Tory Griffin.  Mr. Tory Griffin works out of

13   Sacramento.  He's representing Gault South Bay.  And one of

14   Mr. Lueck's colleagues, Kendall Millard, wrote a letter

15   saying, quote:  DePuy intends to file a motion to dismiss,

16   transfer the action improperly filed in California.  But in

17   the meantime, DePuy's entitled to seek injunctive relief, et

18   cetera.

19        And Mr. Lueck stated that he thinks the correct

20   court here is here in Indiana.

21        Well, again, all of these things kind of interrelate

22   in terms of the propriety of a temporary restraining order,

23   the true emergency nature of things,  did they act properly,

24   did they act with clean hands.  They had ample time to do

25   something there and didn't.  Everything was set up there to

1    take some action.

2              All of the witnesses, as Mr. LaPoint testified, are

3    in California, much more facility to get that done there.

4              The other interesting thing --

5              THE COURT:  Let me -- let me clarify, because I want

6    to be sure that I'm on the same calendar page.

7              That case has been pending in the Northern District

8    of California for less than seven days; is that right?

9              MR. HOWARD:  No, sir.

10             THE COURT:  Seven days?

11             MR. HOWARD:  Well, the case was pending in the state

12   court --

13             THE COURT:  The Northern District of California.

14             You can't 1404 from the state court.

15             MR. HOWARD:  No, I understand that, sir.

16             It was -- there was original filing in the state

17   court.  And, unfortunately, the dates just escape me.

18             THE COURT:  I've got August 24th.

19             MR. HOWARD:  August 24, I believe, is correct.

20             And we received notice of the petition for removal,

21   I believe, perhaps, on the 9th or 10th, on the 10th of

22   September.

23             THE COURT:  The 10th is what I show having been

24   filed.

25             So it's been in the Northern District of California

Page 55

 1    and, therefore, subject to 1404 transfer.

 2            MR. HOWARD:  Right.

 3            And the other point, my understanding of the timing

 4    here, Your Honor, I believe their answer would be due today

 5    or their petition to transfer would be due today, which,

 6    again, raises the specter of why everything is going the way

 7    it's going.

 8            And what I see here, what I think is happening here,

 9    is forum shopping by the Plaintiffs in this case.

10            They make a bold statement, a conclusory

11    statement --

12            THE COURT:  Wasn't your guy forum shopping, too?

13            MR. HOWARD:  No, sir, I don't think he was.  I don't

14    think he was at all.  I can't --

15            THE COURT:  I'm not asking to look into your mind.

16            But when I look at it, you're telling me California

17    has this strong policy against covenants not to compete.

18    Your guy wants to be in California.  And I certainly

19    understand why.  A, he lives there.  And, B, the law favors

20    him.  And DePuy wants to be here.  A, they live here.  B,

21    their contract says, assuming the contract binds him, says

22    they're supposed to be here.  And, C, the law favors them

23    more than California at least.

24            So, I mean, it strikes me that everybody's forum

25    shopping.

1          MR. HOWARD:  Well, the difference here, Your Honor,

2     is this:  That everything that is involved in this case,

3     everything, other than possibly the source of the checks --

4     and I'm not even sure that that's true -- is in California.

5          The fact that -- you know, counsel made a comment

6     about, "Well, Mr. Gault was a party as a plaintiff to the

7     underlying suit."

8          Well, the point was, of course, of a declaratory

9     judgment action is to make sure that there's a definition as

10    to whom is bound by what.

11         THE COURT:  You don't have to address that one.  I

12    understand.

13         MR. HOWARD:  Fair enough.

14         But the issue here, too, with respect to the

15    location is, Mr. Gault has nothing to do with this location.

16    And even the complaint and the pleadings that were filed by

17    the Plaintiffs demonstrate that Mr. Gault doesn't belong

18    here.  They have no jurisdiction, because it's a conclusory

19    allegation.

20         They make a blanket statement with respect to venue

21    that 1391(a)(2) applies.

22         1391(a)(2) says; A substantial part of the events or

23    omissions giving rise to the claim must occur in this forum.

24         That's not the case here.  So, again, we're left

25    with the situation of absolutely nothing happening here in

1    Indiana.

2            Let me move to another point about Mr. Gault.

3            And, again, I just referred now to the pleadings

4    that were filed by DePuy in this case.

5            Count 3 of the complaint is a -- I believe it's

6    Count 3 -- is a claim for, yes, tortious interference with

7    contract, and the claim is by DePuy against Mr. Gault for

8    the contract between DePuy and Gault South Bay.

9            It's axiomatic that you cannot interfere with your

10   own contract.  We have a judicial admission by DePuy that

11   Mr. Gault is not a party to that contract.  It's as clear as

12   day.  I turn the tables and --

13           THE COURT:  Can't they plead in the alternative?

14           MR. HOWARD:  It's not pled in the alternative.  It's

15   not pled in the alternative.  It's pled as a tortious

16   interference against Mr. Gault with the contract between GSB

17   and Gault South Bay.

18           THE COURT:  Don't they also allege in -- I can't

19   remember whether it's Count 1 or 2.  I can dig out the

20   contract.  But 1 or 2, don't they allege that he's a party

21   in breaching the covenant not to compete?

22           MR. HOWARD:  Actually, Count 1, Your Honor, in

23   Paragraph 28, they say:  Gault South Bay entered into the

24   contract.

25           And in Paragraph 30, they say:  Gault South Bay

1    violated the noncompete.

2           In Count 2 -- actually, Count 2 is the tortious

3    inference with contract.

4           MR. PALMER:   (Indicating.)

5           MR. HOWARD:   Right.

6           And Mr. Palmer points out to me as well, Your Honor,

7    that Count 1, under the heading in parentheticals says,

8    quote:  Directed to Gault South Bay.

9           So if you look at the heading, you look at Paragraph

10   28, Paragraph 30, they all state specifically that it's

11   Gault South Bay that violated the agreement.

12          And in Paragraph 34 of Count 2, Your Honor, they

13   say:  Gault was aware of the contract between Gault South

14   Bay and DePuy and that Gault interfered -- this is Paragraph

15   36 -- with these agreements.

16          Taking matters even further and making this

17   situation even worse on DePuy's end is that they rely on

18   Paragraphs 19 and 20 of the preliminary allegations for

19   these alleged violations or these alleged improper conduct

20   or items of improper conduct by Mr. Gault.

21          Paragraph 19 and 20 are both based on information

22   and belief.

23          The standard is clear.  There has to be clear

24   showing of a violation.  Information and belief is not a

25   clear showing.  The hearsay upon hearsay that we heard from

1    Mr. LaPoint is not a clear showing.

2         So I digress, but back to the original point.

3    Counsel in DePuy's own pleadings show and prove that Robert

4    Gault is not a proper defendant here, and there's been no

5    evidence to demonstrate that he's availed himself of this

6    jurisdiction or that he did any business here.

7         And this vague general allegation or reference, I

8    should say, to the long-arm statute, there's been no

9    evidence here of any information that would meet the

10   requirements of the long-arm statute under Indiana law.

11        If I may just continue on, again, backwards with

12   comments by counsel in his closing discussion.

13        Mr. Lueck specifically said -- I'd like the Court to

14   focus on the TRO.  I think that's, according to their

15   pleading, what we're here to do.  But I think if we focus on

16   the TRO, one of the first things that has to be addressed,

17   which, again, is very indicative of the things that are

18   going on here, is the likelihood of success on the merits.

19        I believe that California law would apply even if

20   the Court was to decide the matter -- this Court was to

21   decide the matter.

22        Under California law, this noncompete is

23   unenforceable.  It's overly broad.  It includes Johnson &

24   Johnson which is the parent company of DePuy.  It basically

25   would preclude Gault South Bay from even selling Band-Aids

1    or ear swabs, even though he never participated in that.

2        THE COURT:  Help me out with that, because I noticed

3    your -- on Page 19 of your brief, it says:  The noncompete

4    agreement broadly defines competitive activities as, quote,

5    selling, offering for sale, promoting, receiving, or

6    soliciting order for goods or services similar or intended

7    for similar use as those offered by DePuy or any other J & J

8    Company.

9        And I gather that's what you're referring to?

10       MR. HOWARD:  Yes, sir.

11       THE COURT:  I can't find that in the noncompete

12   provision.  I must be looking in the wrong place.  But I've

13   got Exhibit A here, and I just can't find that.  Can you

14   help me find where you --

15       MR. HOWARD:  Yes, Your Honor.  I'm going to try and

16   find it for you real quick.

17       Your Honor, I can't put my hands on it at the

18   moment, but Mr. Palmer will continue to search so I can

19   cover the rest of the topics.

20       THE COURT:  All right.

21       MR. HOWARD:  But backing up to the likelihood of

22   success.

23       With respect to Mr. Gault, again, as Your Honor

24   mentioned at the very beginning of the discussion, there is

25   an issue as to the likelihood of success against Mr. Gault

1    based on the fact that he's not a party to the agreement.

2         With respect to Gault South Bay or GSB to save a few

3    syllables, we do believe that it is overbroad, and we do

4    believe that California law as set forth in our brief would

5    not support the enforcement of it.

6         And even if the case were to proceed here, which by

7    these arguments we're not saying that it should because of

8    our prior position, we think that, if California law were

9    applied, it would be held to be unforcible, and Plaintiffs

10   would not be likely to succeed on the merits.

11        As far as the other elements that are required, that

12   DePuy is required to prove and demonstrate by a clear

13   showing, they have to prove that they have no adequate

14   remedy at law.

15        Well, everything I heard from Mr. LaPoint, including

16   the alleged defamation, is recoverable by money damages.

17   Any alleged lost business and lost sales that they've

18   referred to is also something that could be recovered from

19   money damages, assuming anything that they said is true.

20        The protectable interest element.  Mr. LaPoint

21   testified that, with respect to Exhibit B, the list of

22   entities with whom Gault South Bay had done business, he had

23   said that those entities had done business with Mr. Gault

24   before he ever even created Gault South Bay.

25        So the interest here one would see as Mr. Gault's is

1    the fact that he was the one that brought those entities

2    into Gault South Bay to do business with DePuy.  That's

3    another element that fails.

4            There's an issue of whether there's any emergency

5    here for a TRO.

6            Again, August 20th is when Mr. LaPoint testified

7    that GSB's relationship ended with DePuy.

8            They claim in their pleadings at Paragraph 23 that

9    the relationship between Gault and Biomet started

10   September 4th, so we're at least two weeks after the fact

11   that they knew that this had happened or they were aware

12   that this had happened, that now they're coming into this

13   Court and trying to take some action, so, again, I don't

14   think there's an emergency that would require the entry of a

15   TRO.

16           And one other issue with respect to where this

17   matter should or should not proceed.

18           We referenced in our brief the fact that -- and this

19   supports the forum-shopping argument that I mentioned before

20   -- that DePuy actually has filed a lawsuit in Kosciusko

21   County with respect to a relationship that they had in New

22   Jersey.

23           I'm sorry.  With respect to a contract that they had

24   where the forum-selection clause was New Jersey.

25           So I think you'll see even by that document, which

1    we would ask the Court to take judicial notice.  It's an

2    exhibit to our pleading -- that DePuy is filing actions

3    where it sees fit or where it sees its advantage versus --

4              THE COURT:  That one I need to ask you about.

5              They file in Kosciusko or -- they file in Kosciusko

6    or say in Kosciusko County that a given forum-selection

7    clause is unforcible or it doesn't apply.

8              That means that they're estopped from ever relying

9    on a forum -- I don't understand how we get from Point A to

10   Point B, and I'm not sure what Point B is.

11             MR. HOWARD:  Right.  You asked me -- right.  In my

12   first discussion, I was mentioning forum shopping, and you

13   made the comment with respect to, "Well, isn't that

14   happening in California?  Isn't that happening here?"

15             We only have one instance upon which to rely with

16   respect to Gault South Bay or Mr. Gault, and that's their

17   issue in their case in California.

18             In the DePuy versus Zimmer and Los case, which,

19   again, is referenced in our pleadings, there was a forum

20   clause in New Jersey, but they still filed suit here in

21   Indiana.

22             So, again, it's a situation where who is making

23   decisions about strategic or tactical advantage and forum

24   shopping.  I think we have a trend or pattern here that I'm

25   trying to reference in terms of what DePuy is doing.

1          I think that there is a reasonable and logical

2    solution here, and I think that it is something that DePuy

3    should not really object to because it's what they

4    themselves have said in their September 11 letter that they

5    were going to do.  The logical solution here is -- because

6    there's an absence of evidence.  There's no clear showing.

7    They're not likely to succeed on their merits.  The balance

8    of harm does not weigh in their favor.  They haven't

9    satisfied any of the elements with respect to specific

10   evidence to support the extraordinary remedy of the TRO.

11   They have stated the intention to go file something in

12   California, to say, "No, no, no.  This is the wrong forum.

13   It should be transferred."

14          We would respectfully suggest that that's what they

15   ought to do.  They could have spent the time that we were

16   here doing that.  Perhaps it would be the more prudent use

17   of time.

18          I would suggest to the Court that no order be

19   entered today, the matter be stayed pending their stated

20   desire and intent to file something in California with

21   respect to a transfer.

22          And I want to go off on a tangent for just one

23   second.  It's interesting that DePuy has elected to follow

24   and use the Rules of Civil Procedure when it suits them --

25   case filed in state court, removed to federal court -- but

1    they don't follow the Rules of Civil Procedure with respect

2    to asking for a transfer or asking for the ability to file a

3    counterclaim or just filing a counterclaim in that court.

4            So, again, I'm not -- I guess I'm trying to

5    establish here that there is a pattern of what's going on

6    here.

7            I think the fair thing here is to do exactly what

8    they said they're going to do; stay these proceedings and

9    ask them to file -- order them to file the appropriate

10   motions in the California state court so that we can have

11   that addressed in the appropriate time.

12           And, Your Honor, my colleague here has pointed out,

13   Mr. Palmer has pointed out, that at the very bottom of Page

14   1 -- this goes back to your question about Johnson &

15   Johnson.  The very last sentence, it states, quote:

16   Competitive activities means -- and I think it's a typo or I

17   guess it's not.  Competitive activities means selling,

18   offering for sale, et cetera, et cetera, offered by DePuy or

19   other J & J company, et cetera, et cetera.

20           So that's the reference to --

21           THE COURT:  How does that tie back then to the

22   noncompete provision on Pages 7 and 8?

23           MR. HOWARD:  Because the noncompete provision

24   references competitive activities.  They define competing

25   activities on Page 1.

1          And I apologize it took us a while to find that.  My

2      error.

3          So that would be the practical solution here.  I

4      don't think that.  Given the time that's passed and given

5      the absence of competent evidence, nonhearsay admissible

6      evidence, that there's any harm in that occurring.  And as I

7      said, based on my calendar -- and I may be wrong -- I think

8      that would be today that they would have to file something

9      along those lines.

10         If the case were to proceed, and even if the case

11     were to come back here at some point, I think that what we

12     will likely do, given the exigencies and the circumstances

13     of the witnesses and the documents and everything else, I

14     think a forum nonconvenience motion would still proceed at

15     that point so that we could address these issues.

16         I only mention that for this reason.  If reality

17     were different and the case was originally filed here, there

18     very likely would be a forum nonconvenience motion that

19     would be filed, because everything else is out in

20     California.  You have an individual who's fighting this

21     company.  You have witnesses, eight or nine witnesses that

22     were identified by Mr. LaPoint.

23         And, again, that perhaps is a bit moot at this

24     point, if you will.  But if the situation were reversed, we

25     may have the very same circumstances.

1          Why is it important?  It's important because I think

2     we should have this matter stayed at this time; have the

3     appropriate pleadings filed based upon counsel's own stated

4     intention in California; let the California court ferret it

5     out; and we see where we end up at that point.

6          On a substantive level, I simply don't see the

7     evidence to support a TRO.  They asked for expedited

8     discovery.  So be it.  They still have to make a showing, a

9     preliminary showing, that there is something going on here

10    and enough evidence to support the entry of a TRO, and I

11    don't think they've satisfied that, Your Honor.

12         THE COURT:  Thank you, Mr. Howard.

13         Mr. Lueck, the right to close.

14         MR. LUECK:  Thank you, Your Honor.

15         Mr. Howard identifies these lawsuits that involve

16    employees rather than independent contractors of DePuy who

17    have agreements that are different from the agreements at

18    issue here, forum selection clauses that are different from

19    the forum selection clauses here.

20         THE COURT:  You don't have to address that.

21         MR. LUECK:  Okay.  I think the E-Z Dun case, which

22    is -- the opinion of which was attached to Kendall Millard's

23    affidavit is the more telling here.  That has a

24    forum-selection clause.  It was a dispute involving a

25    terminated distributor suing DePuy in California.

1          THE COURT:  I don't know whether that's similar to

2     this one either.

3          MR. LUECK:  Well, I think that --

4          THE COURT:  I have no reason to think it's any more

5     similar than the one they're talking about.

6          MR. LUECK:  Certainly, Your Honor.

7          The idea that DePuy is acting improperly is not

8     something that's borne out by the record.

9          This is the Court in which this lawsuit belongs.

10    It's the Court in which the parties agreed to have the

11    lawsuit resolved.  It's the Court that is the Court located

12    where DePuy Orthopaedics is located.

13         There's no malfeasance going on here.  What there is

14    is a desire to get relief.

15         We heard the testimony of Mr. LaPoint regarding

16    evening meetings with doctors and the other activities that

17    create the irreparable harm that cannot be remedied merely

18    by money damages.

19         Rather than go with the court that is not going to

20    keep the case, we believe, in California, we've come to the

21    Court that should keep the case.  We're seeking the TRO, and

22    we're seeking the expedited discovery to move this to a

23    preliminary injunction stage.

24         There is no adequate remedy at law.  That's well

25    established by the cases in Indiana as to these activities

1   in the noncompete context.

2       And Mr. Gault is an appropriate party here.  Here is

3   the tortious interferer who is causing Gault South Bay to

4   act improperly.  And for those reasons, an injunction

5   should -- a TRO should enter, and expedited discovery should

6   go forward to conclude this dispute and get the preliminary

7   injunction in place.

8       Thank you.

9       THE COURT:  Thank you, sir.

10      I need to begin with the matter of personal

11   jurisdiction, and I think I have to apply a quick-glance

12   type of standard to the evidence, because we have a motion

13   that, as far as I can tell, was made an hour-and-a-half ago

14   with no opportunity to prepare a response.

15      On the other hand, obviously, I cannot issue a

16   temporary restraining order without at least glancing at the

17   matter of personal jurisdiction to be sure that there is

18   some basis on which to say that all parties being enjoined

19   are properly before the Court and that the Court has the

20   authority to do it.

21      And I think, based on that standard, which is really

22   all I can do since I really have very little in the way of

23   evidence, the evidence that I do have is that Mr. Gault

24   signed the agreement.  Whether he did so as president solely

25   or individual capacity, he signed the agreement, so I think

1   he's tied to the agreement for specific jurisdiction

2   purposes, and there is evidence that he came to Indiana at

3   least once as a DePuy representative to allow physician

4   tours of the plant.  And, accordingly, while there may not

5   be general jurisdiction for a California resident,

6   California citizen, I think there is at least what appears

7   to be, since I have no evidence to the contrary from the

8   Plaintiff -- I mean from the Defense -- what appears to be

9   sufficient for a showing of specific jurisdiction over

10  Mr. Gault.

11          I say that without prejudice to a motion -- an

12  ultimate motion to dismiss for personal jurisdiction.

13          I think we all understand that we're in a hurry-up

14  mode.  Whether we're moving as fast as we might have if we

15  did it last week or faster than we would have if we did it

16  later this week, we're still in a hurry-up mode.  There is

17  still much to be learned by both sides and a great deal to

18  be learned by me and perhaps a great deal to be learned by

19  Judge Ware.  I don't know.

20          In any event, I will not dismiss at this point on

21  personal jurisdiction grounds.  Again, this is without

22  jurisdiction -- or without prejudice to an ultimate motion

23  for -- written motion to dismiss for lack of personal

24  jurisdiction, but I will not dismiss or defer ruling on the

25  TRO for that purpose.

1          To be entitled to a TRO, a plaintiff must make the

2    same type of showing as must be made for a preliminary

3    injunction, although it's done with a little softer gaze at

4    the evidence, understanding nobody's really had a chance to

5    marshal their resources yet.  But a party seeking a TRO must

6    show a reasonable likelihood of success on the merits, which

7    in this circuit means better than negligible.  The Plaintiff

8    must show or the movant must show that it is suffering

9    irreparable harm that outweighs any harm the Defendants will

10   suffer if the injunction is granted, and it's later

11   determined to be an error, that there is no adequate remedy

12   at law, and that an injunction would not harm the public

13   interest.

14         And based on today's submission -- and I recognize,

15   as I said in response to Mr. Lueck, that this all may change

16   by the time of the preliminary injunction.  I'm ruling

17   simply on what I have here -- there is not evidence that

18   demonstrates a better than negligible likelihood of success

19   on the merits.

20         I don't think there is sufficient evidence that I

21   could find that Mr. Gault has used the corporation as his

22   alter ego or to pierce the corporate veil.  Mr. Gault signed

23   the agreement in a representative capacity and signed the

24   addendum to the agreement in a representative capacity.

25         And I do agree, having looked at the complaint --

1    and I'm a bit confused, and I meant to ask Mr. Lueck this in

2    his rebuttal argument.  The motion or the brief in support

3    of the motion -- and, again, I recognize we do these things

4    hurriedly, but it says:  The Defendants have breached -- and

5    that's plural -- have breached the noncompetition

6    obligations of the Gault agreement, and I can't -- like the

7    Defendants, I cannot find a claim against Mr. Gault for

8    breaching the noncompetition obligation, so I'm not sure on

9    what claim the Plaintiff would be likely to prevail if they

10   showed that Mr. Gault was a party, but that's -- I don't

11   turn on that which is something we're going to need to -- if

12   we get to the temporary injunction hearing, that's something

13   I'll be asking about.

14        And I don't think there's any evidence that Gault

15   South Bay itself, the contracting party, is violating the

16   noncompete agreement.  And unless Mr. Gault is actually

17   causing Gault South Bay to breach the agreement -- and,

18   again, on the basis of this record, I can't find that he is.

19   Maybe he is.  Maybe there will be evidence of that at the

20   temporary injunction hearing, but there isn't now.  I don't

21   think that I can find that he is tortiously interfering.

22        And, accordingly, because of that, I will deny the

23   temporary restraining order, understanding -- and I probably

24   have said this too many times already but one more time --

25   things may be different at the temporary injunction hearing.

```
 1              We have a couple of things that we need to address.
 2    One is the shortened discovery schedule, and I would propose
 3    that we march ahead with that.  I would propose to provide
 4    that the discovery would apply in both cases, any discovery
 5    you do in this case apply in that and vice versa, because it
 6    does appear we've got overlapping issues, and I'll talk to
 7    you in a moment about how much time.
 8              We do have a motion to dismiss.  And, Mr. Howard,
 9    the District Rules -- and, again, I know everybody is moving
10    quickly, but the District Rules say that every motion has to
11    be separate and supported by a brief.
12              I read the motion which, of course, combines the
13    brief and combines about three different motions because we
14    had the TRO hearing.
15              I'm going to go ahead and deny it for failure to
16    comply, allowing you to refile, and I don't do that just for
17    the sake of formality.  But your motion to transfer, I
18    think, is a significant issue.  And I know you were trying
19    to address everything in a very short time, so I don't know
20    whether you're going under 1404 or 1406 or how you're
21    analyzing those.  And before I ask the Plaintiff to respond,
22    I think we need to know.
23              MR. HOWARD:  Fair enough.
24              THE COURT:  And I understand you may want to raise
25    the personal jurisdiction, too, so I will deny that motion
```

1    without prejudice to its being refiled in compliance with

2    the District Rules.

3         And I think we ought to go ahead and set a temporary

4    injunction hearing, understanding that by the time we get to

5    that, either Judge Ware or I will likely have ruled on a

6    motion to transfer. But just in case, it's here, it seems

7    as though we ought to be not having to call each other with

8    calendars and that sort of thing.

9         So let me start, Mr. Lueck, with you. You asked for

10   the shortened discovery schedule. What sort of time frame

11   do you seek to -- and I gather you want deposition of the

12   defendants, and I gather they may want a deposition or two,

13   and you want some written discovery. How much time do you

14   think will be needed to complete that?

15        MR. LUECK: Probably to get it altogether and have

16   additional briefing to the Court would take three weeks,

17   possibly four weeks.

18        THE COURT: Okay. Does that sound workable from

19   your standpoint, Mr. Howard?

20        MR. HOWARD: We'll do our best, yes, sir.

21        THE COURT: Okay. So run it out 30 days then for

22   discovery.

23        What motions do you contemplate filing out of the, I

24   guess two potential ones, the dismissal and the transfer

25   motion, and how soon do you think you can get them on file?

1          Again, I don't want to see everybody spinning their

2    wheels preparing for an injunction hearing only to shift the

3    case to -- I can't remember whether Judge Ware's San Jose,

4    Oakland, or San Francisco.  I should know that -- but

5    whichever he's in.  And I'm not tipping a hand, because I

6    have no idea.  But I don't want to see anybody waste time

7    preparing for one hearing, only to move halfway, two-thirds

8    of the away across the country.

9          MR. HOWARD:  Your Honor, I would endeavor to file

10   the correctly segregated motions by week's end.

11         THE COURT:  Okay.  So by Friday.  That would be the

12   22nd.

13         And I gather you want to respond quickly so that we

14   can get it done?

15         MR. LUECK:  Yes, Your Honor.

16         THE COURT:  Would the following Friday be enough or

17   you would want until the Monday after that?

18         MR. LUECK:  Yes, I think we could do it by the

19   following Friday.

20         THE COURT:  Okay.  So 9/28 for response.

21         MR. HOWARD:  I'm sorry.  I just realized that this

22   Friday I have another substantial brief due.  And if I could

23   possibly get until Monday, that would be very helpful.

24         THE COURT:  Okay.  So 9/24 and then kick it over to

25   10/1 for your response.

1        MR. LUECK:  The following Monday.

2        THE COURT:  And can we go, say, to the following

3   Thursday for any reply.  You don't have to file a reply.

4   But if you want to, you'll have a few days to do it.

5        MR. HOWARD:  That's fine.  Thank you, Your Honor.

6        THE COURT:  Okay.  Thirty days from now, if this is

7   the 17th, would be, I guess, the 17th of October, so I guess

8   we'd be looking -- and that 9/29 would be for any 12(b)(2)

9   motion or motion for transfer under Section 1404 or 1406 of

10  Title 28.

11       Now comes the tough question, because you folks have

12  not gotten involved in discovery, and I gather you haven't

13  been the principal folks out in California.  If we do have a

14  hearing here, how long a hearing are we talking about?  I

15  mean, it sounds as though a day should be sufficient, but I

16  don't know.

17       MR. LUECK:  A long day.

18       MR. HOWARD:  Very hard to say, but, again, we'll do

19  our best to finish in a day, if that's at all possible.

20       THE COURT:  Let me see what we've got here.

21       MR. HOWARD:  Actually, you know, Your Honor, given

22  the logistics, if it does proceed here, there would be

23  people traveling from California.

24       THE COURT:  Right.

25       MR. HOWARD:  It may make sense, for purposes of your

1    calendar, to maybe look at two days in case there's a

2    logistics issue for somebody getting here.

3         THE COURT:  Well, what I was thinking, maybe start a

4    Thursday afternoon and then, hopefully, have most of Friday.

5    Although, I've got to warn you.  If we go into a game day,

6    they have a tough time getting out of town.

7         MR. HOWARD:  Understood.  I guess they'll just have

8    to get tickets.

9         MR. PALMER:  That shouldn't be difficult this year,

10   Your Honor.

11        THE COURT:  Yeah, that's increasingly easy.

12        Well, I've got two other preliminary injunctions the

13   week of October 29th.  How would you look for November 1st?

14        MR. HOWARD:  What day of the week is that, Your

15   Honor?

16        THE COURT:  That's a Thursday, and we could do that

17   Thursday/Friday, combination.  I don't know the Notre Dame

18   schedule.  I don't pay enough attention to know whether

19   there's a game November 3rd.

20        MR. LUECK:  Your Honor, I have a hearing on another

21   matter scheduled for Federal Court in St. Louis, Wednesday

22   morning, the 31st, and that is Halloween evening.  It would

23   be difficult for me to have witnesses together and ready for

24   a hearing starting the 1st.

25        THE COURT:  Okay.

1          MR. LUECK:  I hate to go into the following week,

2     but would that be a possibility?

3          THE COURT:  It's more challenging.  We've got three

4     criminal cases set that Monday, and that isn't a problem the

5     week before.  Nobody's been going to trial.  But on the

6     other hand, as you know, they get the courtroom if they need

7     it.  But I can give you a Tuesday/Wednesday combination that

8     week, November 6th and 7th.

9          MR. LUECK:  Okay.  That would be better for us.

10         MR. HOWARD:  Your Honor, some familiarity with the

11    physicians' and surgeons' schedules, my understanding

12    historically is that they're extremely busy in the beginning

13    of the week and that a Thursday/Friday would work much

14    better.

15         Is that true, Brad?

16         MR. LaPOINT:  Yes, it is.

17         MR. HOWARD:  I don't mean to ask you directly, but

18    that's my understanding.

19         THE COURT:  I can't give you that Thursday, and

20    we've got a ton of sentencings set that Friday.  We've got a

21    judge sidelined, and I'm taking all his sentencings.

22         So I could go to the following week.  I hate to keep

23    moving it further down, but the 15th and 16th.  Again, we've

24    got criminal cases early in the week, but I'm not going to

25    be able to avoid that.

1          MR. LUECK:  That would be acceptable.

2          THE COURT:  The 15th/16th combination?

3          MR. HOWARD:  Yes, sir.

4          THE COURT:  Okay.  Do you want to do that 1:30 start

5    or would you rather start in the morning and hope we can get

6    some folks on and off in the morning?

7          MR. LUECK:  I really don't have any strong

8    preference one way or the other.

9          MR. HOWARD:  I think the early afternoon start would

10   probably be fine in case there are problems with people

11   getting in.  It would probably help on that morning.

12         THE COURT:  Okay.  All right.  07-CV-425, 1.5 day

13   preliminary injunction.

14         That covers everything on my agenda other than -- I

15   guess, again, I don't know what Judge Ware's thinking.  He

16   may set the same kind of schedule and see what happens with

17   the motion to transfer.  And I don't have a written ruling

18   obviously to e-mail to California Northern.  Can I rely on

19   folks to get word to the Judge what happened here today?

20         MR. HOWARD:  Yes, sir.

21         MR. LUECK:  We'll communicate.

22         THE COURT:  Okay.  Anything else then for Plaintiff?

23         MR. LUECK:  No, Your Honor.

24         THE COURT:  Or for Defense?

25         MR. HOWARD:  No, sir.

1          THE COURT:  Okay.  See you all in November.

2          MS. LINDER:  All rise.

3                          (Proceedings concluded.)

4                              ***

5                          CERTIFICATE

6     I, DEBRA J. BONK, certify that the foregoing is a

7     correct transcript from the record of proceedings in the

8     above-entitled matter.

9     _____

10                    DEBRA J. BONK, RMR, CRR
                      UNITED STATES COURT REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25