1   DOWNEY BRAND LLP
    TORY E. GRIFFIN (Bar No. 186181)
2   MEGHAN M. BAKER (Bar No. 243765)
    555 Capitol Mall, Tenth Floor
3   Sacramento, CA 95814-4686
    Telephone: (916) 444-1000
4   Facsimile: (916) 444-2100
    mbaker@downeybrand.com
5   tgriffin@downeybrand.com

6   Attorneys for Plaintiffs GAULT SOUTH BAY, INC.
    and BOB GAULT
7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  GAULT SOUTH BAY, INC., a California        Case No.  C 07-cv-04659-JW
    Corporation, and BOB GAULT,                Case No. C 07-cv-05897-JW
13
            Plaintiffs,                        **SUPPLEMENTAL BRIEF IN SUPPORT**
14                                             **OF CONSOLIDATION OF ACTIONS**
    v.
15
    DEPUY ORTHOPAEDICS, INC., an
16  Indiana Corporation,

17          Defendant.

18
    DEPUY ORTHOPAEDICS, INC., an
19  Indiana Corporation,

20          Plaintiff,

21  v.

22  GAULT SOUTH BAY, INC., a California
    Corporation, and BOB GAULT,
23
            Defendants.
24

25

26

27

28

    894109.4

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION..................................................................................................... 1

II.  BACKGROUND..................................................................................................... 2

    A.   The Agreement................................................................................................ 2

    B.   The California Action ...................................................................................... 3

    C.   The Indiana Action......................................................................................... 4

    D.   Briefing on the Motion to Dismiss/Transfer in the California Action .................. 5

    E.   Subsequent Developments in Indiana and California Actions.............................. 5

III. LEGAL ANALYSIS ............................................................................................... 6

    A.   Legal Standard for Consolidation ......................................................................... 6

    B.   The Actions Should Be Consolidated Because They Are Compulsory
         Counterclaims Involving Common Issues of Law and Fact ................................... 8

    C.   Because Splitting the Actions Would Lead to Highly Undesirable Results,
         the Court Should Deny the Motion to Dismiss the California Action .................. 10

    D.   The Mahoney Action Cannot be Consolidated with the California and
         Indiana Actions, and thus the Mahoney Action is Irrelevant to the Court's
         Determinations on the Pending Motion to Dismiss and Consolidation ............... 12

IV.  CONCLUSION ....................................................................................................... 16

1

## TABLE OF AUTHORITIES

2

Page

3

### CASES

4

5

*Application Group, Inc. v. Hunter Group, Inc.*
   61 Cal.App.4th 881 (1998)..................................................................................... 3

6

*Berkowitz ex rel. Affymetrix, Inc. v. Fodor*
   2006 WL 3365587, *1 (N.D. Cal. 2006) (Ware, J.).......................................... 6

7

*Brown v. Kelly*
   2006 WL 3411868, *1 (N.D. Cal. 2006) (Ware, J.)...................................... 6, 9

8

*Cyprus Corp. v. Whitman*
   93 F.R.D. 598, 606 (S.D.N.Y. 1982) ............................................................ 7, 9

9

*Huene v. United States*
   743 F.2d 703, 704 (9th Cir.1984).................................................................. 6, 16

10

*In re Adams Apple, Inc.*
   829 F.2d 1484, 1487 (9th Cir. 1987) .................................................................. 6

11

*Internet Law Library, Inc. v. Southridge Capital Management, LLC*
   208 F.R.D. 59, 63 (S.D.N.Y. 2002) ...................................................... 7, 9, 10

12

13

*Investors Research Co. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*
   877 F.2d 777, 777 (9th Cir. 1989)....................................................................... 6

14

*Meritage Homes Corp. v. Hancock*
   2007 WL 3359649, *8 (D. Ariz. 2007)............................................................. 11

15

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*
   741 F.2d 273, 280 (9th Cir. 1984).................................................................... 15

16

17

*Pinkstaff v. United States*
   974 F.2d 113, 115 (9th Cir. 1992).................................................................... 8

18

*Pochiro v. Prudential Ins. Co. of Am.*
   827 F.2d 1246, 1249 (9th Cir.1987)................................................................ 8, 9

19

*Webb v. Just In Time, Inc.*
   769 F.Supp. 993, 994 (E.D. Mich. 1991).................................................... 7, 9

20

21

*Woodrow v. Satake Family Trust*
   2006 WL 2092630, *1 (N.D. Cal. 2006)........................................................ 8, 9

22

### STATUTES

23

24

28 U.S.C. § 1404 ............................................................................... 1, 14, 15

25

28 U.S.C. § 1406 ...................................................................................... 1, 4

28 U.S.C. § 1404(a)..................................................................................... 4

26

Cal. Business and Professions Code § 16600 ......................................... 3

27

28

SUPPLEMENTAL BRIEF IN SUPPORT OF CONSOLIDATION

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

4

## RULES

Fed. R. Civ. Proc. 13(a)................................................................................................ 7, 8

Federal Rule of Civil Procedure 12(b)(3) ................................................................. 1, 4

Federal Rule of Civil Procedure 42............................................................................... 6

Federal Rule of Civil Procedure 42(a) ................................................................. 1, 6, 15

5

6

7

8

9

## OTHER AUTHORITIES

Wright and Miller, Federal Practice and Procedure, Civil § 2382.................................. 9

Wright and Miller, Federal Practice and Procedure, Civil § 2384 (2007) ............... 6, 15

Wright and Miller, Federal Practice and Procedure: Civil § 2383 (2007) .................... 6

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL BRIEF IN SUPPORT OF CONSOLIDATION

# I.  INTRODUCTION

Two weeks after Plaintiffs Gault South Bay, Inc. ("GSB") and Bob Gault ("Gault") filed this action in the Northern District of California (the "California Action"), Defendant DePuy Orthopaedics, Inc. ("DePuy") filed a mirror-image action in the Northern District of Indiana (the "Indiana Action").  These two actions involve the same parties, implicate common questions of fact and require resolution of identical legal issues, namely, the validity and enforceability of covenants not to compete in an agreement between GSB and DePuy.  As a result, the claims in the Indiana Action are compulsory counterclaims to those in the California Action, as are the claims in the California Action to those in the Indiana Action, because they all arise out of the same transaction or occurrence.

As a result of DePuy electing to file the Indiana Action rather than file its compulsory counterclaims in the California Action, the parties have been litigating essentially the same legal dispute on opposite sides of the country.  To minimize the duplication of effort and expense this caused, and also to protect their original choice of forum, Gault and GSB moved to transfer the Indiana Action to this California court pursuant to 28 U.S.C. § 1404 based on forum non-conveniens factors.  Around the same time, DePuy moved to transfer the California Action to Indiana under 28 U.S.C. § 1406, or alternatively, to dismiss this action for improper venue under Federal Rule of Civil Procedure 12(b)(3), based on the existence of a forum-selection clause designating Indiana as the proper venue for disputes between the parties.

On November 13, 2007, the Indiana court issued an Order finding the forum-selection clause enforceable, but nevertheless transferring the Indiana Action to this court pursuant to 28 U.S.C. § 1404.  The Indiana Action was officially docketed in the Northern District of California on November 20, 2007, as Case No. C 07-cv-05897-RS.

At the case management conference on December 3, 2007, this court requested supplemental briefing by the parties regarding whether the two actions should be consolidated under Federal Rule of Civil Procedure 42(a).  In accordance with that request, Plaintiffs submit this supplemental brief, which respectfully requests that the court consolidate the Indiana and

894109.4

1

1  California Actions.[1]  In light of the fact that the two actions involve not only common but the

2  *same* issues of law and fact, procedure, equity, and judicial economy all dictate that this court

3  consolidate the two actions, thereby allowing all of the claims to be decided in one lawsuit and

4  avoiding the risk of inconsistent rulings.

5  ## II.  BACKGROUND

6  DePuy, an Indiana corporation, designs, manufactures and distributes orthopedic devices

7  and supplies including hip, knee, extremity, trauma, orthobiologics and operating room products.

8  (Cal. Compl. ¶ 4, attached to Griffin Decl. as Ex. 1.)  Gault served as the President and sole

9  shareholder of GSB, a California corporation formed for the specific business purpose of

10  allowing Gault to perform sales activities on behalf of DePuy.  (*Id.* ¶ 1.)

11  **A.    The Agreement**

12  In November of 2006, GSB entered into an agreement with DePuy whereby GSB agreed

13  to act as the independent sales representative for DePuy products in a designated California

14  territory (the "Agreement").  (*Id.* ¶¶ 1, 4, 8.)  The Agreement states that until the end of the

15  contract term, purportedly December 31, 2007, GSB will not "sell any competitive products or

16  engage in any competitive activities without obtaining DePuy's prior written consent."  (*Id.* ¶ 9;

17  *see also* Ex. A to Cal. Compl. at 1.)  The Agreement defines competitive activities as "selling,

18  offering for sale, promoting, receiving or soliciting orders for goods or services similar, or

19  intended for similar use as those offered by DePuy or any other J&J company, or accepting

20  remuneration or any kind from any person providing such goods and services."  (*Id.*)

21  The Agreement also contains an extremely broad covenant not to compete following

22  termination of the Agreement.  (Cal. Compl. ¶ 11.)  It provides, in pertinent part:

23  Contractor agrees that, if this Agreement is terminated for any

24  reason, that for a period of one (1) year after termination of the
   Agreement, that neither Contractor nor any of its employees,
   independent contractors, or agents who were involved in the

25  representation or sale of the Products, will, without DePuy's prior
   written consent, accept a position with a competitor of DePuy,

26  

27  ---
   [1] Plaintiffs have attempted to present a comprehensive brief on the issues pending before this court, but further direct
   the court to their Opposition to Defendant's Motion to Dismiss, filed November 13, 2007, wherein Plaintiffs raise
28  additional arguments as to why the Defendant's Motion to Dismiss should be denied.

1    which involves direct or indirect sales of competitive products in
     the same Territory or sales to the same accounts covered by the
2    Agreement or engage, directly or indirectly in the sales of
     competitive products or in competitive activities as described
3    above.

4    (*Id.*; *see also* Exhibit A to Cal. Compl. at 7.)

5         In addition, the Agreement also includes a provision that purports to limit the ability of

6    GSB employees and independent contractors (such as Gault himself) from competing with

7    DePuy, notwithstanding the fact that they are not parties or signatories to the Agreement.  (Cal.

8    Compl. ¶ 12.)  The Agreement states, in pertinent part:

9         Contractor may hire its own employees or contract with other
          individuals or entities to assist Contractor in the performance of its
10        duties hereunder, which employees, individuals or entities shall be
          solely Contractor's responsibility and shall be compensated solely
11        by Contractor.  Contractor agrees that any such employees,
          individuals or entities will not be subject to DePuy's approval or
12        supervision, but will be bound by the same DePuy and Johnson &
          Johnson guidelines, policies and procedures, the non-compete
13        provisions and all other provisions of this agreement to which
          Contractor is subject.

14

15   (*Id.* ¶ 12; *see also* Exhibit A to Cal. Compl. at 2.)

16        Effective August 24, 2007, DePuy terminated the Agreement with GSB, thereby raising

17   issues as to whether the non-compete provisions were valid and enforceable against GSB and/or

18   Gault.  (Cal. Compl. ¶¶ 10, 14-615, 17-19.)

19   **B.    The California Action**

20        On August 24, 2007, Gault and GSB filed the California Action against DePuy in the

21   Superior Court of California, County of Santa Clara, seeking a judicial determination regarding

22   the validity and enforceability of the non-compete provisions in the Agreement.  (Cal. Compl. ¶

23   18.)  Specifically, GSB and Gault ask that the court declare the non-compete provisions void,

24   invalid and contrary to California law due to the strong public policy against agreements

25   restricting an individual from employment in his or her chosen trade or profession.  (*Id.* ¶ 14

26   (citing Cal. Business and Professions Code § 16600; *Application Group, Inc. v. Hunter Group,*

27   *Inc.*, 61 Cal.App.4th 881 (1998)).  In addition, GSB and Gault seek an injunction prohibiting the

28   enforcement of the provisions in the Agreement that purport to restrict their ability to complete

894109.4                                      3

1   with DePuy.  (*Id.* ¶¶ 19-20.)

2          On September 10, 2007, DePuy removed the California Action to the United States

3   District Court, Northern District of California, on the basis of diversity jurisdiction.  (Griffin

4   Decl. ¶ 3.)  DePuy subsequently moved to dismiss the action for improper venue under Federal

5   Rule of Civil Procedure 12(b)(3), based on the existence of a forum-selection clause designating

6   Indiana as the venue for disputes between the parties, or alternatively, to transfer the action to

7   Indiana under 28 U.S.C. § 1406.

8   **C.    The Indiana Action**

9          On September 11, 2007, two weeks after Plaintiffs filed the California Action, DePuy

10  filed the mirror-image Indiana Action against Gault and GSB in the United States District Court,

11  District of Indiana.  (*See* Ind. Compl., attached to Griffin Decl. as Ex. 2.)  In the Indiana Action,

12  DePuy alleges that Gault and GSB breached the covenants not to compete in the Agreement by

13  soliciting customers on behalf of a competitor before and after the termination of the Agreement.

14  (*Id.* ¶¶ 19-20, 23, 30.)  DePuy seeks monetary damages and injunctive relief preventing Gault and

15  GSB from further competing with DePuy.   (*Id.* ¶¶ 31, 37, 42, 46, 53.)

16         On September 24, 2007, Gault filed a motion to dismiss the Indiana Action for lack of

17  personal jurisdiction and a motion to dismiss for improper venue.  (Griffin Decl. ¶ 5, Ex. 3)  On

18  that same day, Gault and GSB moved to transfer the Indiana Action to the Northern District of

19  California under 28 U.S.C. 1404(a), or alternatively, to stay the Indiana Action pending resolution

20  of the California Action.  (*Id.*)  DePuy filed oppositions to these motions on October 12, 2007.

21  (*Id.* ¶ 6, Ex. 4.)

22         On November 13, 2007, the Indiana Court issued an Order on the motions to dismiss,

23  transfer and stay filed by Gault and/or GSB.  (*See* Order, attached to Griffin Decl. as Ex. 5.)  In

24  that Order, the Indiana court denied the motion to dismiss for lack of personal jurisdiction and

25  improper venue, but granted the motion to transfer the Indiana Action to the Northern District of

26  California.  (*Id.* at 24-25.)  In support of its transfer decision, the court found that venue was

27  proper in the Northern District of California and that transfer to that district would be more

28  convenient for third party witnesses, would provide better access to documents and other sources

894109.4                                    4

1   of proof and would serve the interests of justice. (*Id.* at 18-24.)

2       In reaching its decision, the Indiana Court acknowledged the mirror-image California

3   Action, noting that both cases involved "the same parties" and "the same legal and factual issues."

4   (*Id.* at 23.)  The court reasoned that transferring the action to the Northern District of California –

5   the venue of the California Action – would promote judicial efficiency and, to some degree,

6   reduce the risk of inconsistent judgments. (*Id.* at 24.)  Significantly, the court also found that

7   California had a greater interest in the outcome of the litigation because "[i]ts citizens are more

8   closely related to and interested in the dispute as DePuy seeks to restrict a California resident from

9   pursuing his livelihood in the state of California," and because "[m]ost of the material events . . .

10   occurred in California and concern California residents." (*Id.*)

11   **D.**     **Briefing on the Motion to Dismiss/Transfer in the California Action**

12       At the time the Indiana court issued its ruling transferring the Indiana Action to the

13   Northern District of California, DePuy had already filed its Motion to Dismiss/Transfer the

14   California Action.  As a result, DePuy did not (and could not) address the effect of the Indiana

15   order in its Motion or its supporting Points of Authorities.

16       In fact, the Indiana order was issued the very same day that Plaintiffs filed their

17   Opposition to the Motion to Dismiss/Transfer.  As soon as Plaintiffs learned of and obtained the

18   Indiana order late in the afternoon on November 13, 2007, they scrapped the Opposition that they

19   had already drafted, hurriedly reanalyzed the issues and drafted and filed a new Opposition – all

20   within a two or three hour timeframe.  As a result of the limited time in which Plaintiffs had to

21   react to the Indiana order, Plaintiffs did not have the opportunity to fully brief the effect of that

22   order on the California Action or the Motion to Dismiss.

23   **E.**     **Subsequent Developments in Indiana and California Actions**

24       The Indiana Action was officially docketed in the Northern District of California on

25   November 20, 2007. (Griffin Decl. ¶ 8 & Ex. 6.)  On November 28, 2007, Magistrate Judge

26   Richard Seeborg referred the Indiana Action to Judge James Ware for a determination regarding

27   whether the Indiana action and the California Action are related cases within the meaning of Civil

28   Local Rule 3-12. (*Id.* ¶ 9 & Ex. 7.)  In light of this referral, this court set a case management

894109.4

5

1  conference in the California Action for December 3, 2007.  (*Id.* ¶ 10 & Ex. 8.)

2      At the case management conference, the court requested supplemental briefing by the

3  parties regarding whether the California and Indiana Actions should be consolidated under Federal

4  Rule of Civil Procedure 42(a).  (*Id.* ¶ 10 & Ex. 9.)  Accordingly, Plaintiffs have submitted this

5  brief to address that issue and to respectfully request that the court consolidate the two actions.

6  

### III. LEGAL ANALYSIS

7  **A.**    **Legal Standard for Consolidation**

8      The parties need not file a motion requesting consolidation in order for the court to

9  consider the issue, as the court may consolidate actions *sua sponte*.  *In re Adams Apple, Inc.*, 829

10  F.2d 1484, 1487 (9th Cir. 1987); Wright and Miller, Federal Practice and Procedure: Civil § 2383

11  (2007).  That is what the court did here by requesting supplemental briefing on the issue of

12  consolidation.

13      Under Federal Rule of Civil Procedure 42, a district court may consolidate actions

14  involving "a common question of law or fact."  Fed. R. Civ. Proc. 42(a) ("When actions involving

15  a common question of law or fact are pending before the court . . . it may order all the actions

16  consolidated[] and it may make such orders concerning proceedings therein as may tend to avoid

17  unnecessary costs or delay.").  A district court has "broad discretion" whether to consolidate

18  actions.  *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987); *see also Brown v. Kelly*,

19  2006 WL 3411868, *1 (N.D. Cal. 2006) (Ware, J.) (citing *Investors Research Co. v. U.S. Dist. Ct.*

20  *for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989)).  When exercising that discretion, the

21  district court should "weigh[] the saving of time and effort consolidation would produce against

22  any inconvenience, delay, or expense that it would cause."  *Huene v. United States*, 743 F.2d 703,

23  704 (9th Cir.1984); *Brown*, 2006 WL 3411868, *1; *Berkowitz ex rel. Affymetrix, Inc. v. Fodor*,

24  2006 WL 3365587, *1 (N.D. Cal. 2006) (Ware, J.).

25      "Actions involving the same parties are apt candidates for consolidation."  Wright and

26  Miller, Federal Practice and Procedure, Civil § 2384 (2007) (noting that "the identity of the

27  parties strengthens the case for consolidation").  In addition, when the claims in one action are

28  compulsory counterclaims in the other action, even stronger justifications exist for consolidation.

894109.4

6

1    The court's rationale in *Internet Law Library, Inc. v. Southridge Capital Management, LLC*, 208

2    F.R.D. 59, 63 (S.D.N.Y. 2002), is instructive.  In that case, a company brought an action against

3    an investor for violations of securities laws, fraud, and unlawful conspiracy in connection with a

4    stock purchase agreement.  In a separate, later-filed action, the investor brought an action against

5    the company for breach of the stock purchase agreement and fraud.  The first action was

6    transferred to the court were the second action was pending.  On a motion to consolidate, the

7    court opined:

8                   [T]he filing of a separate action in lieu of a compulsory
                    counterclaim, as [investor] elected to do, is not a violation of Rule
9                   13(a).  Such a practice does, however, contravene the purpose of
                    the Rule in that it creates a multiplicity of actions, wastes judicial
10                  resources, and unduly burdens the litigation process.  When faced
                    with such a situation, courts have a number of options at their
11                  disposal.  Where a party institutes a second action based upon a
                    compulsory counterclaim in a still pending action, courts can use
12                  the procedural devices of transfer, stay and consolidation to avoid
                    multiple litigation and to effectuate the Rule.  Accordingly, instead
13                  of staying the [investor] action and granting leave to [the investor]
                    to re-file its claims as counterclaims to the [company] action, the
14                  court can just as easily achieve the same result by consolidating the
                    two actions . . . .
15

16   *Internet Law Library*, 208 F.R.D. at 63 (internal citations and quotation marks omitted); *cf.*

17   *Cyprus Corp. v. Whitman*, 93 F.R.D. 598, 606 (S.D.N.Y. 1982) (allowing two actions with

18   compulsory counterclaims to proceed independently "would result in fragmentation of litigation

19   and multiplicity of suits contrary to one of the major purposes of Rule 13(a)").

20          Indeed, some courts have even found consolidation mandatory under such circumstances.

21   *Webb v. Just In Time, Inc.*, 769 F.Supp. 993, 994 (E.D. Mich. 1991) (consolidating actions

22   involving compulsory counterclaims because the court "determined that consolidation of these

23   two actions [was] mandatory under Rule 13(a), the rule governing compulsory counterclaims").

24   "Neither justice nor Rule 13(a) requires the [parties] to fight their war on two fronts."  *Cyprus*

25   *Corp.*, 93 F.R.D. at 606 (S.D.N.Y. 1982).

26   / / /

27   / / /

28   / / /

894109.4

7

1    **B.    The Actions Should Be Consolidated Because They Are Compulsory Counterclaims**
2    **Involving Common Issues of Law and Fact**

3    The claims asserted in the Indiana Action are compulsory counterclaims to those asserted

4    in the California Action, as are the claims in the California Action to those in the Indiana Action.

5    Under the Federal Rules of Civil Procedure, claims are considered compulsory when they arise

6    out of the same transaction or occurrence as those asserted by the opposing party. Fed. R. Civ.

7    Proc. 13(a); *see also Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir.1987).

8    To determine whether a claim "arises out of the same transaction or occurrence" courts apply a

9    "liberal logical relationship test." *See Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249

10   (9th Cir.1987); *see also Woodrow v. Satake Family Trust*, 2006 WL 2092630, *1 (N.D. Cal.

11   2006) (noting that the term "transaction" has been given a liberal construction).  Under this test,

12   the court analyzes "whether the essential facts of the various claims are so logically connected

13   that considerations of judicial economy and fairness dictate that all the issues be resolved in one

14   lawsuit." *Pochiro*, 827 F.2d at 1249.  "A logical relationship exists when a counterclaim arises

15   from the same aggregate set of operative facts as the initial claim, in that the same operative facts

16   serve as the basis of both claims . . . ." *Woodrow*, 2006 WL 2092630, *1 (N.D. Cal. 2006) (citing

17   *Pinkstaff v. United States*, 974 F.2d 113, 115 (9th Cir. 1992) (other citations omitted).

18   The claims in the Indiana Action and in the California Action all arise out of the same

19   transaction or occurrence because they all concern the *exact same* threshold legal issue—the

20   validity and enforceability of restrictive covenants in the agreement between GSB and DePuy.

21   While the California Action seeks a declaration on behalf of Gault and GSB that these covenants

22   are invalid, the Indiana Action conversely seeks to enforce these exact same covenants against

23   Gault and GSB and requests damages for an alleged violation of these covenants.  Thus, although

24   the actions are couched in terms of differing legal theories (declaratory relief and unfair business

25   practices in the California Action, and breach of contract, unfair business practices and business

26   torts in the Indiana Action), the core of *all* of these claims centers on the restrictive covenants.

27   Indeed, at the core of the Indiana Action is the claim that Gault and GSB breached a

28   written contract by violating the restrictive covenants.  In order to prove this claim, DePuy first

894109.4                                  8

1  has to prove one of the most fundamental elements of a breach of contract—a valid and

2  enforceable contract—which forms the crux of the entire California Action. Accordingly, the

3  claims in the Indiana Action are compulsory counterclaims to those in the California Action,

4  while the claims in the California Action are compulsory counterclaims to those the Indiana

5  Action, because all of the claims are so logically connected such that considerations of judicial

6  economy and fairness dictate that all the issues be resolved in one lawsuit. *See Pochiro*, 827 F.2d

7  at 1249; *Woodrow*, 2006 WL 2092630 *1.

8       As a result of the compulsory nature of the claims in the California and Indiana Actions,

9  consolidation would be particularly appropriate, not only to conserve judicial resources, but also

10  to prevent unnecessary fragmentation of the litigation and to eliminate the risk of inconsistent

11  judgments.[2] *See Internet Law Library*, 208 F.R.D. at 63; *Cyprus*, 93 F.R.D. at 606; *Webb*, 769

12  F.Supp. at 994. Given that the parties in both actions are the same, that both actions are in the

13  pleading stage, and that the limited discovery conducted to date applies (per Indiana court order)

14  to both actions, consolidation would not lead to confusion or prejudice in the management or trial

15  of the cases. Further, consolidation would decrease costs not only for Plaintiffs (because they

16  would not need to file their new claims in the Indiana Action), but also for both parties to the

17  extent they will not have to litigate mirror image actions on opposition sides of the country.

18       Under similar circumstances, this court found consolidation appropriate. In *Brown*, which

19  involved two shareholder derivative actions, this court found that both actions involved "virtually

20  identical factual and legal issues" because the "core issue of both cases" was whether certain

21  executives breached their fiduciary duties when they backdated stock options. *Brown*, 2006 WL

22  3411868, *1. "Given these similarities and the lack of any apparent inconvenience, delay, or

23  expense that would result from bringing the cases together," this court found consolidation

24  appropriate. *Id.* The situation here is no different, so the result should be the same.

---

[2] Even if the claims in the Indiana and California Actions were not compulsory because they did not involve the same transaction or occurrence, consolidation would still be appropriate because the actions involve common issues of law and fact. *See generally* Wright and Miller, Civil § 2382 (explaining that a common question of law or fact "by itself is enough to permit consolidation, even if the claims arise out of independent transactions"). As noted above, the court will have to determine whether the non-compete provisions are valid and enforceable in both actions.

894109.4     9

1    Moreover, this court should consider the significant impact if, as DePuy suggests, both

2    actions are considered separate and unrelated. Under DePuy's theory, in the event a plaintiff files

3    a lawsuit claiming breach of contract, the defending party could immediately file a separate,

4    declaratory judgment action on the same contract in another venue or jurisdiction, claiming that

5    the actions are separate even though they involve the exact same agreement. Allowing this type

6    of fragmentation would violate the spirit and intent of the Federal Rules of Civil Procedure, could

7    result in inconsistent decisions, and would add further burden to our judicial system—truly

8    undesirable results. *See Internet Law Library*, 208 F.R.D. at 63.

9    Therefore, Plaintiffs respectfully request that the court consolidate the Indiana and

10   California Actions for all purposes and thereby allow the parties to litigate the merits of the

11   claims in one court, with no risk of inconsistent rulings on the same fundamental legal issues.

12   **C.    Because Splitting the Actions Would Lead to Highly Undesirable Results, the Court
           Should Deny the Motion to Dismiss the California Action**

13

14   In light of Judge Miller's November 13, 2007, order in the Indiana Action, the Indiana

15   Action will be litigated and decided in the Northern District of California. DePuy essentially is

16   asking this court to ignore the fact that the Indiana Action must be litigated in this court in light of

17   Judge Miller's November 13, 2007 order, and to split the case into two pieces by sending the

18   California Action to Indiana. DePuy argues that doing so will allow the common threshold legal

19   issue—the validity and enforceability of the non-compete provisions in the Agreement—to be

20   decided in Indiana, and that the Indiana court's decision on that issue will dictate whether

21   DePuy's damages claims against Gault and Gault South Bay in the Indiana Action should proceed

22   before this court. In essence, DePuy wants the Indiana court to address the underlying legal issue

23   in both cases.

24   DePuy's argument, however, ignores the fact that Gault and Gault South Bay can and will

25   challenge the validity of the non-compete provision *before this court*, either via a Rule 12 motion

26   or motion for partial summary judgment filed in *defense* of the Indiana Action, which again *must*

27   be litigated before this court in light of Judge Miller's order. Moreover, given that the claims

28   asserted by Gault and Gault South Bay in the California Action are compulsory counterclaims to

894109.4                                                10

1  the Indiana Action, Plaintiffs also have to assert them in the Indiana Action.  *See, e.g., Meritage*

2  *Homes Corp. v. Hancock*, 2007 WL 3359649, *8 (D. Ariz. 2007) (party must bring compulsory

3  counterclaims in one action, otherwise, those claims cannot be asserted in subsequent litigation).

4  In other words, if the court sends the California Action to Indiana, Plaintiffs will be forced to file

5  the *same exact* complaint as they filed in the California Action as a compulsory counterclaim in

6  the Indiana Action that will remain to be litigated in this court.  The end result is that Plaintiffs

7  will have the exact same declaratory relief action on file in two different courts.

8         Accordingly, sending the California Action to Indiana does *not*, as DePuy suggests,

9  obviate the need for this court to address the same exact legal issue raised in the California

10  Action.  Splitting the cases to be litigated in two courts would only result in a race to obtain a

11  decision on the underlying legal issue from one court or the other, may lead to inconsistent

12  rulings, certainly adds unnecessary costs and expenses to the process, and wastes valuable judicial

13  resources.  *All* of these factors suggest that the actions *not* be split, and that they be consolidated

14  before this court so that decisions may be made on an orderly basis.

15         For similar reasons, DePuy's argument that the California Action should be dismissed or

16  transferred so that the Indiana court can determine whether that action should proceed in Indiana

17  or California should be rejected.  The Indiana court has already found that the actions are

18  intertwined, and ruled that the Northern District of California is the most appropriate forum for

19  resolution of the parties' disputes.  (See Order at 24-25, attached to Griffin Decl. as Ex. 5.)

20  DePuy had a full and fair opportunity to litigate the issue in the Indiana Action and no purpose

21  would  be served by sending the parties back to Indiana to relitigate the same issue all over again.

22  (See DePuy Opposition, attached to Griffin Decl. as Ex. 4.)  Even if this court were to grant the

23  Motion to Dismiss/Transfer, the Indiana court would simply transfer the action back to the

24  Northern District of California.

25         It should also be noted that the Indiana court decided to transfer the Indiana Action to this

26  court with full knowledge of the California Action and claims raised therein.  In fact, when Judge

27  Miller denied an application by DePuy for a temporary restraining order and ordered expedited

28  discovery to take place, he specifically asked the parties to communicate to this court what had

894109.4                                   11

1   happened in the Indiana Action. (*See* Transcript at 79:14-19, attached Griffin Decl. as Ex. 10.)

2   Moreover, when Judge Miller permitted certain expedited discovery to take place in the Indiana

3   Action, he specifically ordered that such discovery should be equally applicable to both the

4   Indiana Action and the California Action because of the "overlapping issues." (*See id.* at 73:24-

5   74:14.) Importantly, DePuy did not object to the discovery being applicable to the California

6   Action. (*Id.*)

7          In sum, the record in the Indiana Action demonstrates that all parties recognized that the

8   two actions were indeed mirror images of one another, and that, ultimately, the disputes between

9   the parties ought to proceed only in one court. At no point in the Indiana Action did DePuy claim

10  what it apparently now claims in this case—that the two actions are unrelated and involve

11  separate issues. The only reason DePuy gave for filing the Indiana Action instead of filing

12  counterclaims in this court (or simply bringing a motion to transfer in this court) was that doing

13  so supposedly would give Plaintiffs here (Defendants in the Indiana Action) "more time to violate

14  the noncompete." (*Id.* at 50:5-15.) Thus, any claim by DePuy that the two actions are separate

15  and distinct is disingenuous at best, blatant gamesmanship at worst.

16         Accordingly, the court should not dismiss or transfer the California Action, but should

17  consolidate the Indiana and California Actions.

18  **D.    The Mahoney Action Cannot be Consolidated with the California and Indiana
           Actions, and thus the Mahoney Action is Irrelevant to the Court's Determinations on**
19         **the Pending Motion to Dismiss and Consolidation**

20         At the case management conference in the California Action on December 3, 2007, DePuy

21  suggested that the Indiana and California Actions should somehow be consolidated with a

22  separate case pending in Indiana entitled *Kent Mahoney v. DePuy Orthopaedics, Inc.* (the

23  "Mahoney Action"). DePuy further suggested that Judge Miller should have but did not take into

24  consideration the Eastern District of California's decision in the Mahoney Action, and at the very

25  least the California Action ought to be transferred to Indiana so that Judge Miller can

26  "reconsider" his order in light of the Eastern District of California's decision in the Mahoney

27  Action.

28  / / /

894109.4                                          12

1    DePuy's reliance on the Mahoney Action is nothing more than a desperate attempt to

2    resurrect the arguments already rejected by Judge Miller.  First, the decision in Mahoney was

3    issued by the Eastern District of California on November 8, 2007, yet DePuy apparently made no

4    effort to inform Judge Miller of such order before he issued his decision.

5    Even more telling is the fact that the Mahoney Action was filed before the California

6    Action and Indiana Action, yet at no point in the proceedings in either the California Action or

7    Indiana Action did DePuy argue that the decisions on transfer or dismissal in either of those

8    actions should be informed by the existence of the Mahoney Action.

9    In fact, DePuy's prior actions reflect its belief that the Mahoney Action is not in any way

10   related to the actions before this court.  Local Rule 3-13 requires a party to notify the court of any

11   action that "involves all or a material part of the same subject matter and all or substantially all of

12   the same parties as another action which is pending in any other federal or state court…."  DePuy

13   *did* file a Notice of Pendency of Other Action in the California Action, and represented that the

14   Indiana and California Actions "involve[d] a material part of the same subject matter and the

15   same parties," *but never raised the existence of the Mahoney Action.  (See* Notice at 1, attached to

16   Griffin Decl. as Ex. 15.)  This completely belies DePuy's present assertion that the Mahoney

17   Action should somehow inform the court's decision on the pending motions before this court.

18   Moreover, after DePuy removed the Mahoney Action to the Eastern District of California, DePuy

19   filed another Notice stating it was unaware of any cases related to that action.  (*See* Notice at 1,

20   attached to Griffin Decl. as Ex. 16.)

21   In addition, the Eastern District's decision in the Mahoney Action is in no way

22   inconsistent with Judge Miller's decision in the Indiana Action.  In the Mahoney Action, the

23   Eastern District found the forum-selection clause enforceable, and deferred to the Indiana courts

24   to address the forum non-conveniens issues to be raised by Mahoney if Mahoney elected to re-file

25   the action in Indiana.  In the Indiana Action, Judge Miller *also* found that the forum-selection

26   clause was enforceable, *but then went one step further engaged in the forum non-conveniens*

27   *analysis that the Eastern District explicitly did not engage in during the Mahoney Action.*  After

28   doing so, Judge Miller found that, notwithstanding the forum-selection clause, the Indiana Action

894109.4                                    13

1    must be litigated in the Northern District of California based on the same forum non-conveniens

2    factors that explicitly were not addressed in the Mahoney Action. Thus, contrary to DePuy's

3    representations at the case management conference, there is nothing inconsistent about the

4    Eastern District's ruling in the Mahoney Action and Judge Miller's ruling in the Indiana Action.

5         If Judge Miller had not yet issued his decision, then perhaps the decision in the Mahoney

6    Action might be pertinent here. Assuming Judge Miller had yet to issue his decision, and

7    assuming this court followed the Eastern District's decision in the Mahoney Action, the result

8    would be that both the California Action and the Indiana Action both would be before Judge

9    Miller in Indiana. The issue before Judge Miller would be whether to consolidate the two actions

10   and, if so, whether to transfer the consolidated actions to California under 28 U.S.C. § 1404. But,

11   based on his November 13, 2007 order, we already know how Judge Miller would have decided

12   those issues! In other words, if Judge Miller had not yet issued his decision and the California

13   Action were transferred to Indiana at DePuy's request, there is no doubt that Judge Miller

14   ultimately would have transferred *both* the Indiana Action and California Action to this court.

15   The result should be no different just because Judge Miller already issued his decision in the

16   Indiana Action—both cases should be litigated before this court.

17        Finally, the Mahoney Action is irrelevant because consolidation of either the Indiana

18   Action or California Action with the Mahoney Action would be impossible. Mahoney originally

19   filed a Complaint against DePuy in the Superior Court of California, County of Stanislaus, on

20   August 21, 2007. (*See* Mahoney Complaint, attached to T. Griffin Decl. as Ex. 11.) The action

21   seeks a judicial determination regarding the validity and enforceability of non-compete provisions

22   in a sales representative agreement between Kent Mahoney and DePuy. (*Id.*) On September 10,

23   2007, DePuy removed the Mahoney action from state court to the United States District Court,

24   Eastern District of California, Fresno Division. (Griffin Decl. ¶ 14.) DePuy then moved to

25   dismiss the Mahoney Action based on the existence of an Indiana forum clause in the Agreement,

26   or alternatively, to transfer the action to Indiana. (*Id.*)

27        Mahoney filed a motion to remand the action back to state court and also opposed the

28   motion to dismiss/ transfer. (*See id.* ¶ 15.)

894109.4                                    14

SUPPLEMENTAL BRIEF IN SUPPORT OF CONSOLIDATION

1    On November 8, 2007, the district court denied the motion to remand and dismissed the

2    Mahoney Action. (*See* Order, attached to Griffin Decl. as Ex. 12.) In doing so, the court ruled

3    that the forum non-conveniens arguments raised by Mahoney were premature. (*Id.* at p. 13

4    (citing *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir.

5    1984).) The court further ruled that to the extent the plaintiff filed his motion to transfer under 28

6    U.S.C. § 1404 in Indiana, it was speculative what the Indiana court may do. (*Id.*) The court,

7    therefore, deferred to the Indiana court to decide the forum non-conveniens issues if and when

8    Mahoney re-filed his action in Indiana. (*Id.*)

9    After dismissal of his Complaint in the Eastern District of California, Mahoney re-filed

10    his Complaint in Indiana state court. (Griffin Decl. ¶ 17 & Ex. 13.) DePuy then removed the

11    Indiana state court action to the United States District Court, Northern District of Indiana. (*Id.* ¶

12    17.) Mahoney informed DePuy that the removal was improper because DePuy—a citizen of the

13    state of Indiana—could not remove the action to federal court within that state. (*Id.*) After

14    recognizing its error, DePuy proposed a stipulation with Mahoney that the action be remanded to

15    Indiana state court. (*Id.* ¶ 17 & Ex. 15.) Consequently, the Mahoney Action will be litigated in

16    Indiana state court.

17    In contrast, the Indiana and California Actions will be litigated in federal court. As a

18    result, no procedural mechanisms are available to this court to consolidate the three cases

19    together. *See generally* Wright and Miller, Federal Practice and Procedure, Civil § 2384 (2007)

20    (explaining that only actions pending in the same federal judicial district may be consolidated)

21    (citations omitted). Furthermore, even if the actions were all in the same district, consolidation

22    would not be appropriate. *See* Fed. R. Civ. Pro. 42(a) (consolidation not appropriate when

23    actions do not have common question of law or fact). Neither Gault or Gault South Bay are

24    parties to the Mahoney Action. The Mahoney Action involves a different sales agreement. And,

25    the California and Indiana Actions involve unique legal issues that are not present in the Mahoney

26    Action, namely, whether the non-complete provisions can be enforced against Gault, a non-

27    signatory to the Agreement.

28    / / /

894109.4

15

1   Furthermore, unlike the situation here, DePuy has *not* filed any claims against Mahoney.

2   Thus, the Indiana Action will require resolution of factual disputes by the jury as to whether Gault

3   and/or GSB breached the Agreement, while the Mahoney Action involves no allegations of

4   breach and therefore likely can be decided on the pleadings.  As a result, even if consolidation

5   were available, which it is not, the delay in resolution of the Mahoney Action caused by

6   consolidation would weigh heavily against it.  *Huene v. United States*, 743 F.2d 703, 704 (9th

7   Cir.1984) (indicating court should not order consolidation when any benefit from doing so would

8   be outweighed by inconvenience, delay or expense).

9   Consequently, the Mahoney Action is completely irrelevant to DePuy's motion to dismiss

10  and the related consolidation issue.

11  ### IV. CONCLUSION

12  As odd as this whole procedural situation may seem, it is one created by DePuy, not

13  Plaintiffs, inasmuch as DePuy elected to pursue a separate action in Indiana rather than file its

14  compulsory counterclaims in the California Action.  Since Plaintiffs must now file their

15  compulsory counterclaims in the transferred Indiana Action, i.e. the same exact claims they

16  asserted in the California Action, all factors dictate that this court consolidate the Indiana and

17  California Actions and allow the claims be decided in one lawsuit.

18  Accordingly, Plaintiffs respectfully request that this court deny the Motion to Dismiss

19  and/or Transfer, consolidate the Indiana and California Actions, and thereby allow the parties to

20  litigate the merits of the claims in one court, with no risk of inconsistent rulings on the same

21  fundamental legal issues.

22  DATED:  December 7, 2007            DOWNEY BRAND LLP

24  By:_____/s/ Tory E. Griffin_____
25                    TORY E. GRIFFIN
                    Attorney for Plaintiffs
26         GAULT SOUTH BAY, INC. and BOB GAULT

894109.4                    16

SUPPLEMENTAL BRIEF IN SUPPORT OF CONSOLIDATION