**Declaration of Tory E. Griffin in Support of Consolidation of Actions**

# EXHIBIT 2

FILED

07 SEP 11 PM 2:10

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DEPUY ORTHOPAEDICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| GAULT SOUTH BAY, INC. and | ) | 3:07CV0425 RM |
| ROBERT GAULT, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The Plaintiff, DePuy Orthopaedics, Inc. ("DePuy"), for its Complaint against the

Defendants, Gault South Bay, Inc. ("Gault South Bay") and Robert Gault ("Gault"), alleges and

states:

## JURISDICTION AND VENUE

1.    DePuy is a corporation organized under the laws of the State of Indiana and has

its principal place of business at 700 Orthopaedic Drive, Warsaw, IN 46581-0988.

2.    On information and belief, Gault South Bay is a corporation incorporated in the

State of California with its principle place of business in California.

3.    On information and belief, Gault is a citizen and resident of the State of

California.

4.    This Court has personal jurisdiction over the defendants.

5.    This Court has subject matter jurisdiction over this Complaint pursuant to

28 U.S.C. § 1332 as there is complete diversity between the plaintiff and defendants and the

amount in controversy exceeds $75,000, exclusive of costs and interest.

Case 5:07-cv-04659-JW     Document 35-3     Filed 12/07/2007     Page 3 of 27
Case 5:07-cv-04659-RS     Document 9-4     Filed 09/12/2007     Page 3 of 27

case 3:07-cv-00425-PLM-CAN     document 1     filed 09/11/2007     page 2 of 9

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) as the parties have contractually agreed to venue of all disputes in this district.

### THE BUSINESS OF DEPUY

7.      DePuy is engaged in the business of manufacturing, selling and distributing orthopedic products and instruments.

8.      DePuy promotes the distribution and sale of its orthopedic products through independent contractor sales representatives known as "sales reps."

9.      Some of these sales reps are responsible for significant geographical territories and supervise other representatives.

10.      DePuy devotes significant resources to the training, development and retention of its sales force.

11.      Members of DePuy's sales force are the individuals with the most frequent contact with DePuy's customers.  As such, members of the sales force become intimately familiar with DePuy's customers and their needs and preferences, and are integral to the development and maintenance of good will between DePuy and its customers.

12.      In order to protect its investment in its sales force, the good will developed by that sales force on behalf of DePuy, DePuy generally requires that its sales reps execute agreements with DePuy.

13.      Most of these agreements contain covenants not to compete and a commitment to devote "best efforts" to selling DePuy products.

### THE RELATIONSHIP BETWEEN DEPUY AND GAULT

14.      Mr. Gault began working as an independent contractor, through Gault South Bay, for DePuy several years ago.

Case 5:07-cv-04659-JW     Document 35-3     Filed 12/07/2007     Page 5 of 27
Case 5:07-cv-04659-RS     Document 9-4     Filed 09/12/2007     Page 5 of 27

case 3:07-cv-00425-LM-CAN     document 1     filed 09/11/2007     page 3 of 9

15.    In or around November 2006, DePuy entered into a contract with Gault South Bay, effective January 1, 2007, appointing it as its sales representative for the sale of DePuy products to a specific territory in California until December 31, 2007, absent termination for cause by either party.  The contract would be renewed automatically for a further year absent notice of non-renewal by either party on sixty (60) days prior notice.  A true and accurate copy of Gault South Bay's contract ("Gault Contract") is attached as Exhibit A.

16.    On information and belief, Gault is the president of Gault South Bay, and owns all or the majority of its stock, or otherwise has a controlling interest in the company.

17.    The Gault Contract states that Gault South Bay will "devote its best efforts" to selling DePuy products, and that neither it nor any of its employees, independent contractors or agents, including Gault will "during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent."

18.    The Gault Contract also states that if the contract is terminated "for any reason" that neither Gault South Bay, "nor any of its employees, independent contractors, or agents who were involved in the representation or sale" of the DePuy products, including Gault, "will, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement" for "one (1) year after termination."

19.    On information and belief, while still under contract with DePuy, Gault caused Gault South Bay to breach the Gault contract with DePuy by engaging in activities to assist DePuy's competitor, Biomet Inc. ("Biomet"), by, among other things, attempting to convince DePuy customers in his territory to purchase Biomet products rather than DePuy products;

- 3 -

attempting to solicit DePuy sales representatives to leave DePuy and to work instead for Biomet; and arranging meetings between Biomet and another sales rep for the benefit of Biomet.

20. On information and belief, Gault contacted several of his customers in early to mid-August 2007, while still a DePuy sales rep, and solicited them to purchase Biomet products rather than DePuy products.

21. On August 20, 2007, Brad LaPoint, Gault's Territory General Manager, sent Gault a letter providing notice that DePuy was terminating the Gault Contract effective August 24, 2007, because of Gault's activities assisting Biomet.

22. On August 24, 2007, Gault and Gault South Bay filed a lawsuit in California Superior Court, Santa Clara County, seeking to declare the non-compete void and unenforceable. The complaint names Candice Polich, one of Gault's sub-sale reps, as a plaintiff, but on information and belief, Ms. Polich never provided authorization to file the complaint.

23. On information and belief, since leaving DePuy, Mr. Gault has accepted a position, beginning September 4, 2007, involving the direct or indirect sale of products competitive to those of DePuy in the same territory assigned to Gault South Bay by DePuy and to the same accounts assigned to it by DePuy in violation of Gault South Bay's contractual obligations with DePuy.

24. DePuy has fully performed all of its obligations under its contract with Gault South Bay.

25. Gault South Bay has breached its agreement with DePuy, and Gault has intentionally caused such breach.

26. This conduct has caused and will continue to cause harm to DePuy in lost sales and goodwill, which damage cannot be fully compensated in damages.

Case 5:07-cv-04659-JW    Document 35-3    Filed 12/07/2007    Page 7 of 27
Case 5:07-cv-04659-RS    Document 9-4    Filed 09/12/2007    Page 7 of 27

case 3:07-cv-00425-JLM-CAN    document 1    filed 09/11/2007    page 5 of 9

## COUNT I
## BREACH OF CONTRACT
### (Directed to Gault South Bay)

27.    DePuy incorporates by reference, as though fully stated herein, paragraphs 1 through 26 of its Complaint.

28.    Gault South Bay entered into a valid and binding contract with DePuy.

29.    DePuy has performed all of the obligations required of it under this contract.

30.    Gault South Bay has breached its agreement with DePuy by, inter alia, violating the covenant not to compete contained in that contract. In addition, Gault South Bay has breached its agreement with DePuy to devote its best efforts to selling DePuy product.

31.    Gault South Bay's conduct has caused and will continue to cause harm to DePuy, and has caused irreparable harm which cannot be fully compensated in damages.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
### (Directed to Gault)

32.    DePuy incorporates by reference, as though fully stated herein, paragraphs 1 through 26 of its Complaint.

33.    DePuy and Gault South Bay entered into an enforceable contract.

34.    Gault was aware of that contract.

35.    Pursuant to the terms of that contract, Gault South Bay agreed, *inter alia*, to devote best efforts to the sale and promotion of DePuy products during the term of the contract and not to sell competitive products during the term of the contract.

36.    Gault intentionally and without justification interfered with DePuy's contract with Gault South Bay by soliciting DePuy's existing customers to purchase products from Biomet.

- 5 -

Case 5:07-cv-04659-JW    Document 35-3    Filed 12/07/2007    Page 8 of 27
Case 5:07-cv-04659-RS    Document 9-4    Filed 09/12/2007    Page 8 of 27

case 3:07-cv-00425-RLM-CAN    document 1    filed 09/11/2007    page 6 of 9

37.    As a result of the tortuous interference, DePuy has suffered and will suffer damages, including damages to its customer relationships, business and good will.    Such damages constitute irreparable harm for which DePuy has no adequate remedy at law.

## COUNT III
## TORTIOUS INTERFERENCE WITH CUSTOMER RELATIONSHIPS
### (Directed to Gault and Gault South Bay)

38.    DePuy incorporates by reference, as though fully stated herein, paragraphs 1 through 26 of its Complaint.

39.    DePuy has a reasonable expectation of entering into and maintaining valid business relationships with its existing customers serviced by Gault, and Gault South Bay.

40.    Upon information and belief, Gault and Gault South Bay were aware of DePuy's expectations, as DePuy expressed such expectations to them in training sessions and other DePuy events and the expectation is customary in the medical product distribution business.

41.    Gault and Gault South Bay intentionally and without justification interfered with DePuy's business relationships by soliciting DePuy's existing customers to purchase products from Biomet.

42.    As a result of the tortiuous interference, DePuy did not realize its expectation of business relationships, and DePuy already has suffered and will suffer damages, including damages to its customer relationships, business and good will.    Such damages constitute irreparable harm for which DePuy has no adequate remedy at law.

## COUNT IV
## BREACH OF DUTIES OWED TO DePUY
### (Directed to Gault and Gault South Bay)

43.    DePuy incorporates by reference, as though fully stated herein, paragraphs 1 through 26 of its Complaint.

- 6 -

Case 5:07-cv-04659-JW    Document 35-3    Filed 12/07/2007    Page 9 of 27
Case 5:07-cv-04659-RS    Document 9-4    Filed 09/12/2007    Page 9 of 27

case 3:07-cv-00425-M-CAN    document 1    filed 09/11/2007    page 7 of 9

44.    As an independent contractor and agent of DePuy, Gault South Bay and its president/controlling shareholder Gault owed duties, during the duration of the agency with DePuy, to pursue the best interests of DePuy and to promote the business, products and services of DePuy only.

45.    Gault South Bay and Gault have breached their obligations to DePuy.

46.    DePuy has suffered and continues to suffer severe and irreparable harm as a result of Gault South Bay's and Gault's breaches of their duties of loyalty, including but not limited to loss of goodwill and business relationships, resulting in DePuy having no adequate remedy at law that will fully compensate DePuy for its injury and harm.

### COUNT V
### UNFAIR COMPETITION
### (Directed to Gault and Gault South Bay)

47.    DePuy incorporates by reference, as though fully stated herein, paragraphs 1 through 26 of its Complaint.

48.    Gault and Gault South Bay have developed relationships with DePuy's customers.

49.    Gault's and Gault South Bay's relationship with DePuy's customers put them in a position that would allow them to unfairly compete with DePuy if they were to use their relationship with these customers to solicit them to purchase competing products.

50.    Gault and Gault South Bay have improperly used their relationship with DePuy's customers in order to help Biomet gain an unfair competitive advantage in the marketplace.

51.    By knowingly misappropriating DePuy's relationships with its customers, Gault and Gault South Bay have engaged in unfair competition.

Case 5:07-cv-04659-JW     Document 35-3     Filed 12/07/2007     Page 10 of 27
Case 5:07-cv-04659-RS     Document 9-4     Filed 09/12/2007     Page 10 of 27

case 3:07-cv-00425-JM-CAN     document 1     filed 09/11/2007     page 8 of 9

52.     As a result of Gault's and Gault South Bay's unfair competition, DePuy has been damaged. DePuy has been and will continue to be injured, irreparably and otherwise in amounts that cannot be fully or adequately measured or compensated by monetary damages.

53.     Unless an injunction is issued requiring defendants to refrain from unfair competition, DePuy will suffer irreparable and incalculable harm to DePuy's business, including damages to share and shareholder value, as well as the loss of its instruments, goodwill among both customers and employees, and its reputation and customer and distributor relationships.

WHEREFORE, DePuy respectfully requests the following relief:

A.     An award of preliminary and permanent injunctive relief to prevent Gault South Bay and Gault from violating the restrictions on competitive activities as defined in their contract with DePuy;

B.     An award of damages according to proof;

C.     An award of punitive and exemplary damages;

D.     All other just and equitable relief.

Respectfully submitted,

By: _____

Dwight D. Lueck (14294-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: dlueck@btlaw.com

D. Michael Anderson (20770-53)
BARNES & THORNBURG LLP
600 1st Source Bank Center
100 North Michigan
South Bend, IN 46601-1632
Telephone: (574) 233-1171
Facsimile: (574) 237-1125
E-mail: mike.anderson@btlaw.com

*Attorneys for Plaintiff,*
*DePuy Orthopaedics, Inc.*

INDS02 DDL 918775v2

Case 5:07-cv-04659-JW     Document 35-3     Filed 12/07/2007     Page 12 of 27
Case 5:07-cv-04659-RS     Document 9-4     Filed 09/12/2007     Page 12 of 27

case 3:07-cv-00425-PLM-CAN     document 1-2     filed 09/11/2007     page 1 of 16

# EXHIBIT A

T-117

RECEIVED

JAN 02 2007

COMMISSIONS
M. Reno

**DePuy**
a Johnson-Johnson company
DePuy Orthopaedics, Inc.

November 22, 2006

Gault South Bay Inc.
18428 Twin Creeks Road
Monte Sereno, CA 95939

Dear Bob,

Effective January 1, 2007 (the "Effective Date") please accept this letter as DePuy Orthopaedics, Inc.'s ("DePuy") appointment of Gault South Bay Inc. ("Contractor") as its independent sales representative for the specific DePuy Territory ("Territory") and specific DePuy product categories (the "Products") as outlined on the attached Appendix A, which appendix is incorporated herein by reference. DePuy may add or delete any or all Product category or categories included on Appendix A or change the category or classification of any or all of the Products included in the Product categories listed on Appendix A at any time on sixty (60) days prior written notice to Contractor. Except as set forth herein, the Territory described on Appendix A may be modified from time to time only as mutually agreed by the parties.

Contractor agrees that it is an independent contractor and not an employee of DePuy. Contractor shall be responsible for making sales calls representing DePuy and completing sales within the Territory in accordance with DePuy and Johnson and Johnson ("J&J") guidelines, policies and procedures, including without limitation, policies and procedures concerning prevention of healthcare fraud and abuse, that are made known to Contractor from time to time. Contractor agrees to devote its best efforts and sufficient working time to selling DePuy Products. Contractor agrees to cause its employees, contractors and other entities which assist Contractor with its duties under this Agreement to participate in and comply with the requirements of the Salesforce Certification Program outlined in Appendix C. Contractor further agrees that DePuy may, on at least thirty (30) days prior written notice to Contractor, change the requirements set forth in the Salesforce Certification Program but may not during the term of this Agreement, modify the Recognition and Non-Compliance section of such Program without Contractor also agrees to attend and participate, and cause its employees, contractors and other entities assisting Contractor in its duties under this Agreement, to attend and participate in sales training and training related to DePuy and/or J&J guidelines, policies and procedures as required by DePuy. The manner in which Contractor performs its obligations under the Agreement is at Contractor's sole discretion, provided that Contractor complies with DePuy's sales policies and procedures. Contractor is required to submit orders to DePuy, or, in the case of Co-Marketed Products, (as defined below) to other parties, and may from time to time be requested by DePuy to provide reports to DePuy regarding Contractor's sales activities or results. Contractor agrees that neither Contractor nor anyone in its employ, nor any member of the immediate family of any one owning the majority of the stock, a controlling interest or exercising control of the Contractor will, during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent. Competitive activities mean selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services. Contractor is, of course, free to engage in any non-competitive activities.

08/24/0 Case 5:07-cv-00426-RS  CAN    DOCUMENT DEPT. filed 09/11/2007    page 3 of 16

Gault South Bay Inc.
November 22, 2006
Page 2

Contractor acknowledges and agrees that the noncompetition provisions contained in this Agreement are a material inducement to DePuy to enter into this Agreement, are reasonable and necessary to protect DePuy's interests and will result in material and irreparable loss to DePuy if breached.

Contractor may hire its own employees or contract with other individuals or entities to assist Contractor in the performance of its duties hereunder, which employees, individuals or entities shall be solely Contractor's responsibility and shall be compensated solely by Contractor. Contractor agrees that any such employees, individuals or entities will not be subject to DePuy's approval or supervision, but will be bound by the same DePuy and Johnson & Johnson guidelines, policies and procedures, the non-compete provisions and all other provisions of this agreement to which Contractor is subject. Contractor agrees to provide DePuy with information regarding such employees and/or copies of any agreements between Contractor and any such employees, individuals or entities as requested by DePuy. Contractor further agrees to remove any such employee from the sale of Product should DePuy have a reasonable objection to their representation or sale of such Products. Contractor further agrees to modify such agreements as reasonably requested by DePuy to achieve the purposes of this paragraph. Contractor is responsible for maintaining its own office and/or office equipment for its employees' use.

Contractor will be responsible for all federal, state and local income taxes, social security, unemployment compensation, workers compensation and insurance coverage and all expenses incurred by Contractor or its employees in the performance of this Agreement.

Prices for the Products will be set by DePuy at its sole discretion and commissions will be paid based on the actual price charged by DePuy to the customer. Contractor shall not offer or otherwise communicate any discount on any Product without DePuy's prior written consent. DePuy may change the price of any Product at any time. Contractor agrees that it will not enter into any agreement with any customer of DePuy or any third party regarding the sale or delivery of the Products and that Contractor has no authority to bind DePuy to such agreements or any other agreements of any kind.

Contractor will not in any way modify DePuy packaging or products, including any related instruments and accessories. Contractor will only sell DePuy products, which conform to the specifications and quality control procedures of DePuy. Contractor will not provide, suggest or advise the use of any other instrument(s) in connection with the Products outside of those provided or approved for use by DePuy. Contractor will not knowingly submit to DePuy any false, inaccurate or misleading information regarding the sales of products, the customers to whom the products were sold, or the inventory of products in Contractor's possession. Contractor will not engage in direct billing of products to any customer or any other person. Direct billing means any transaction involving a third party's acquisition, use or lease of a

Gault South Bay Inc.
November 22, 2006
Page 3

Product, instrument or service connected with a Product which results in such third party being invoiced or charged a price or fee(s) of any kind, including a delivery charge or fee, for the product or instrument by Contractor, someone in Contractor's control or employ, or by an entity in which Contractor has a financial interest.  Pursuant to DePuy's and J&J's policies and procedures, Contractor will immediately report to DePuy any reports of problems with any DePuy product which comes to its attention, including without limitation, adverse events regarding such products.

. DePuy will pay Contractor a monthly commission, as described on Appendix B, based on invoice sales completed to customers in the Territory while this appointment is in effect.  It is DePuy's normal business practice to pay earned commissions by the 20th day of the month following the generation of the invoice.  This will be the only compensation paid by DePuy to Contractor regarding sales of the products.  DePuy will pay commissions on Contractor's sales based upon invoices generated by DePuy. The commission rate for a sale already completed will only be adjusted by mutual written consent. *Notwithstanding the foregoing, if Contractor fails to meet the requirements established by DePuy in the Salesforce Certification Program, Contractor agrees that DePuy may adjust the commission rates as describe in Appendix C.*  Contractor agrees to repay DePuy on demand any commission paid in error, any commission for which DePuy is unable to collect the underlying invoice, or any advance or any other commission which Contractor did not earn. Commissions on Co-Marketed Products will be paid as set forth below.

Contractor agrees to meet mutually agreed upon annual sales quotas for each Product category. Provided this agreement has not been terminated, Contractor agrees to meet with DePuy representative(s) no later than thirty (30) days prior to the anniversary of this agreement to discuss such sales quotas for the next year.  If Contractor fail to meet with DePuy representative(s) or if Contractor and DePuy cannot reach agreement on such sales quotas before the anniversary date of this agreement, then both parties agrees that the annual sales quotas for the next year will be equal to the prior year's sales for each of the following Product or Product Categories, provided these Products or Product Categories are included in Appendix A, in the Territory plus the following percentages: ten percent (10%) for Total Hip Systems and Total Knee Systems; fifteen percent (15%) for Extremities; twenty percent (20%) for Bone Cement and/or Orthobiologics and/or Trauma Products; and three percent (3%) for O.R. Products. In the event that Contractor fails to meet such annual sales quotas for any or all Product categories for two (2) successive calendar quarters on an annualized basis, Contractor agrees that DePuy may, at its sole option, may take the following actions on thirty (30) days prior written notice to Contractor: (a) terminate this agreement: or (b) remove any Product category(ies) from the Products listed on Appendix A; or (c) modify the Territory described in Appendix A.  DePuy's

Gault South Bay Inc.
November 22, 2006
Page 4

exercise of any of the foregoing options a, b or c shall not be considered or construed as a waiver of DePuy's right or option to future exercise of any such option for continued failure to meet any sales quota(s).

DePuy will reimburse Contractor certain expenses Contractor incurs in connection with Contractor's performance of its obligations under this Agreement, in accordance with DePuy sales policies and procedures. In no event, however, will Contractor be reimbursed for its travel or transportation expenses. Notwithstanding the foregoing, DePuy may, at its sole option, reimburse Contractor for travel and related expenses incurred by Contractor in connection with sales training, trade, and educational meetings and seminars, Contractor and/or its employees attends at DePuy's request.

DePuy will supply Contractor at no charge with reasonable quantities of descriptive literature, promotional materials and catalogs describing the products and access to inventory and instrument as DePuy feels is appropriate. DePuy at its option may accept or refuse orders and will not be bound by an order until it is accepted by DePuy. Further, DePuy shall not be liable to Contractor for any loss or damages caused by non-acceptance of orders, by failure to deliver products or by delays in making shipments. Contractor agrees that DePuy may at any time this Agreement is in effect and for a period of three (3) years after termination of this Agreement for any reason audit and inspect Contactor's business record to ensure compliance with DePuy and J&J policies and procedures.

From time to time during the term of this appointment, DePuy may, but shall not be required to offer new products for sale in the Territory ("New Products"). With regard to such New Products in the Territory, DePuy reserves the right, in its sole discretion, to (a) on thirty (30) days prior written notice to Contractor, require Contractor to market and solicit sales of New Products pursuant to the terms of this Agreement; or (b) on thirty (30) days prior written notice to Contractor, require Contractor to jointly introduce and market such New Products in conjunction with the efforts of DePuy and any other J&J company or companies ("Affiliate") and/or DePuy's business partners ("Business Partner"). For purposes of this Agreement, an "Affiliate" is any other company or entity controlling, controlled by or under common control with DePuy and a Business Partner shall include, without limitation, an individual or entity which is not an Affiliate and which has contracted with DePuy regarding the marketing or distribution of such New Product; or (c) introduce and market such New Product on DePuy's own behalf or through its Affiliates on an exclusive basis, in which event such New Products will not be made available to Contractor or included in the Products covered by this Agreement. DePuy shall have the sole and exclusive right to establish the terms under which New Products will be marketed and to make all decisions regarding such marketing arrangements, including but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Notwithstanding anything to the contrary contained in this Agreement, DePuy shall not be liable to make any payment to Contractor with regard to a New

Gault South Bay Inc.
November 22, 2006
Page 5

Product if Company introduces and markets such New Product pursuant to (c) in the immediately preceding paragraph.  All of Contractor's obligations regarding Products shall also apply to any New Products which are added to this Agreement.

Notwithstanding anything herein to the contrary, DePuy shall have the right to enter into Co-Marketing Arrangements (as defined below) with its Affiliates related to the marketing, representation and sale of New Products.  As used herein, "Co-Marketing Arrangement" means that New Products subject to a Co-Marketing Arrangement will be marketed, represented and sold in the Territory through the sales forces of DePuy and/or its Affiliates and/or its Business Partners.  DePuy reserves the sole right to establish the terms under which New Products will be co-marketed and to make all decisions regarding such Co-Marketing Arrangements, including but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable).  Products currently subject to a Co-Marketing Arrangement are identified on Appendix A, which may be modified from time to time by DePuy.  Products and New Products currently subject to a Co-Marketing Arrangement or which become subject to a Co-Marketing Arrangement during the term of this Agreement will be referred to herein as "Co-Marketed Products".  Commissions from the sale of Co-Marketed Products will be included in commission payments made to Contractor within forty-five (45) days of the first to occur of (a) receipt by DePuy of the actual commission from the applicable Business Partner or Affiliate or (b) receipt by DePuy of a report from the Business Partner or Affiliate confirming the sale and/or commission due from the sale of the Co-Marketed Product.

Contractor will not engage in any advertising or promotion of any of the Products, New Products or Co-Marketed Products in any form or media without DePuy's prior written consent or approval.  Contractor further agrees not to issue any payment or otherwise convey or provide any item of independent value to any health care provider, whether an institution or an individual, for any reason without prior written approval from DePuy.

This appointment will remain in effect until December 31, 2007. The appointment shall be automatically renewed for one (1) year periods thereafter unless terminated by either party on sixty (60) days' notice prior to the end of the initial term or any renewal period.  In the event that DePuy provides written notice pursuant to this paragraph that this Agreement will not be renewed or extended at the end of the initial term or any renewal term, Contractor agrees that anytime in the sixty (60) day period immediately prior to termination or expiration of this Agreement, DePuy may, at is sole option, immediately terminate this Agreement by paying Contractor an amount equal to one (1) month's average commissions based on the prior six (6) months commissions paid to Contractor, in which case the noncompetition period described below will commence upon Contractor's receipt of such payment.

In the event that neither party provides sixty (60) days notice prior the end of the term that this Agreement will not be extended for an additional year, DePuy may, on sixty (60) days written notice prior to the end of the term or then current term, change or modify the Territory. However, DePuy agrees, that, except as agreed to by the parties, changes or modifications in the Territory will not occur more than once per year with while this Agreement is in effect.

·08/24/Case 5:07-cv-04059-RS-CAN    document11-DEPT. filed 09/11/2007    page 7 of 16

Gault South Bay Inc.
November 22, 2006
Page 6

The appointment may be terminated unilaterally by either party on thirty (30) days' notice in the event of either (a) breach of any provision of this appointment which, if correctable, is not corrected within the thirty (30) days notice period; or, (b) if either party becomes bankrupt or enters into any arrangement with its creditors or enters into liquidation. DePuy, at its sole discretion, may also terminate this Agreement thirty (30) days written notice to Contractor in the event Contractors and/or Contractors employees, contractors and other entities assisting Contractor in its duties under this Agreement fail to participate in or comply with the requirements of the Salesforce Certification Program. Notwithstanding the above, however, Contractor agrees that there will be sufficient cause to terminate this appointment immediately in the event that Contractor or any of its employees sells a competitive product, knowingly provides to DePuy false and misleading information regarding products sold, engages in direct billing, violates any written DePuy or J&J policy and procedure, is debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program, if Contractor knowingly employs or contracts with an individual or entity so debarred, excluded or prohibited. Contractor agrees to notify DePuy of any final adverse action, discovery of employment by or contract with an excluded individual or entity or exclusion as defined above within thirty (30) days of such an action. Contractor further agrees that DePuy may terminate this Agreement immediately if Contractor commits any act or omission which in DePuy's sole determination has or will have a negative effect on the reputation of DePuy and/or J&J. The appointment will automatically terminate in the event of the dissolution of Contractor or if Contractor, or a major part of its assets, becomes subject to the direction or control of a party other than the owner(s) of Contractor at the time this agreement is signed by the parties..

Upon termination, Contractor further agrees to return to DePuy all DePuy owned inventory, instruments and promotional materials in Contractor's possession. Any inventory, instruments and promotional materials related to Co-Marketed Products shall be returned either to DePuy or another party, as directed solely by DePuy. Contractor also agrees to reimburse DePuy for any such inventory which is not returned and for which there is no record of sale to any other party or which is returned to DePuy in a damaged condition rendering such inventory incapable of sale. Contractor also agrees within thirty (30) days of the termination of this agreement for any reason to pay to DePuy any sums that are outstanding. DePuy agrees to pay Contractor any commissions due to Contractor within thirty (30) days of termination of this Agreement; however, DePuy may offset against such commissions any amounts owed by Contractor to DePuy. Contractor further agrees that DePuy may deduct from any commissions owed to Contractor any outstanding amounts resulting from Contractor's failure to return to DePuy any inventory, instruments and promotional materials in its possession or for which there is no record of sale or any inventory which has been damaged to a point where it is no longer capable of sale. Any office or other equipment purchased by Contractor shall remain its property upon termination.

Gault South Bay Inc.
November 22, 2006
Page 7

Contractor further acknowledges that it may be receiving and processing Protected Health Information ("PHI") as that term is defined in 45 C.F.R. Section 164.501 from the Company or on its behalf, that has been disclosed subject to a HIPAA authorization, under 45 C.F.R. Section 164.508 or to a Business Associate Agreement(s) between DePuy and a healthcare provider or institution, copies of which shall be provided to the Contractor by DePuy upon request by the Contractor.     Contractor will collect, hold, use and disclose such information only for the purposes authorized in the Business Associate Agreement and as expressly directed by DePuy.

Contractor shall not disclose any PHI to any third party or use PHI for any purpose, commercial or otherwise.  Contractor shall either (a) remove any PHI from its records and/or systems no later than thirty (30) days after receipt of such PHI or (b) take reasonable measures to ensure the security and confidentiality of such PHI.  Contractor's failure to comply with this Section shall be considered a material breach of this Agreement and DePuy shall have the right to terminate this Agreement pursuant immediately without payment of any penalty or termination fee.

Contractor agrees that, if this Agreement is terminated for any reason, that for or a period of one (1) year after termination of the Agreement, that neither Contractor nor any of its employees, independent contractors, or agents who were involved in the representation or sale of the Products, will, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement or engage, directly or indirectly in the sales of competitive products or in competitive activities as described above. Contactor agrees that no claim that Contractor, or any of its employees, independent contractors or agents  may have against DePuy shall constitute a defense to enforcement of the noncompetition provisions of this Agreement. Contractor also agree to waive any defense to entry of a preliminary injunction prohibiting its violation of the noncompetition provisions of this Agreement based on the existence of an adequate remedy at law by DePuy. As consideration for the foregoing agreement not to accept such a position, upon termination of this Agreement, DePuy agrees to pay Contractor on a monthly basis during the one (1) year period after termination an amount equal to one-twelfth of the aggregate commissions paid to Contractor for the twelve months prior to such termination, beginning with the first month following such termination. DePuy will pay Contractor this amount unless this Agreement is terminated by DePuy due to Contractor's sale of a competitive product, or providing DePuy with false and misleading information about the sale of products, or direct billing or failure to comply with DePuy and/or J&J policies and procedures. Notwithstanding the foregoing, however, if DePuy should give Contractor thirty (30) days prior written notice before it begins such payments that it chooses not to make such payments or if during the one year (1) period after termination DePuy should give Contractor thirty (30) days prior written notice that it will cease making such payments, then Contractor will be released from any and all restrictions on accepting a position with a competitor of DePuy and/or on sales of product competitive to DePuy.  In addition, if Contractor should accept a position with a

Gault South Bay Inc.
November 22, 2006
Page 8

competitor or enter into any agreement or arrangement with any third party which involves, directly or indirectly, the sales of products competitive to DePuy during the one (1) year period after terminate, such payments shall immediately cease and DePuy shall have no further obligation to make such payments. In each such event described above, will Contractor have no right or claim to any further payments from DePuy.

Contactor acknowledges and agrees that the noncompetition provisions of this Agreement, including, without limitation, the scope and geographical areas included therein, are fair and reasonable and reasonably required for the protection of DePuy and to enable DePuy to obtain the benefit of this Agreement.

Contractor represents and warrants to DePuy that the execution, delivery, and performance of this Agreement by Contractor will not conflict with, breach, cause a default under, or result in the termination of any contract, employment relationship, agreement, or understanding, oral or written, with any third party, including without limitation any noncompetition covenant to which or by which Contractor is bound and that there are no other commitments or agreements that would prevent Contractor from entering into this Agreement or performing the obligations required of Contractor under this Agreement. In the event that Contractor is so bound or has commitments or agreements that prevent it from entering into this Agreement or performing its obligations under this Agreement, Contractor agrees that this Agreement will not commence until it is free of any such agreements or commitments, and that it will not perform any of its obligations under this Agreement while such agreements or commitments are in existence. In the event that the foregoing should delay the Effective Date of this Agreement, Contractor agrees that DePuy may, at its sole discretion and without further obligation to Contractor, terminate this Agreement at any time prior to the actual start of this Agreement. Contractor agrees to indemnify, hold harmless and defend DePuy, its employees, officers and directors, against any causes of action, claims, suits, proceedings, damages and judgments arising out of any claim by any third party arising out of any alleged or actual misrepresentation or violation of the provisions of this paragraph.

It is expressly stipulated, agreed and understood between the parties that the business relationship between Contactor and DePuy shall be that of independent contractor and not employer-employee or principal-agent. Contractor further agrees that the only monetary or economic obligation of DePuy to Contractor shall be to provide commissions as set forth herein that Contractor shall not be entitled to receive and shall not receive from DePuy any medical

08/24/06 Case 3:07-cv-00425-REM CAN     document FAA-2EPT filed 09/11/2007     page 10 of 16

Gault South Bay Inc.
November 22, 2006
Page 9

coverage, vacation pay, pension benefits, stock options, insurance, or any other type of employee or fringe benefit. Should Contractor otherwise have any right to receive any such benefit from DePuy, Contractor hereby expressly waive the right to receive same. Neither Contractor nor DePuy shall have the authority to legally bind the other in contract, debt or otherwise.

Contractor further represents and warrants that Contractor is not now and has not at any time in the past been debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program and Contractor has not knowingly employed or contracted with an individual or entity so debarred, excluded or prohibited. Finally, Contractor agrees that Contractor has no rights of any kind concerning the Territory and cannot assign its appointment or any part of this agreement to any other party or recover any money from any party to whom DePuy may subsequently assign all or part of the Territory. Any attempt to do so will be cause for DePuy to immediately terminate Contractor's appointment as DePuy's independent sales representative. Both parties agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside in the state and/or federal courts located in the state of Indiana. Each party specifically agrees to waive our right to trial by jury in any litigation arising from this Agreement. Each party agrees that this Agreement supersedes any and all other agreements, written or oral, regarding this appointment and relationship with DePuy including, without limitation, the letter dated December 5, 2005. Each party agrees that the language of this Agreement will be construed as a whole, according to its fair meaning and not for or against either of us, regardless of who drafted such language. If a court of competent jurisdiction or an arbitrator finds or determines any provision of this Agreement invalid or unenforceable, such provision shall not affect the remainder of this Agreement, which shall remain in full force and effect.

Gault South Bay Inc.
November 22, 2006
Page 10

If Contractor agrees to accept this appointment under these terms, please sign and return to the undersigned the enclosed copy of this document. Contractor agrees that the above Agreement is not effective until approved by the appropriate DePuy' Director for Sales or other appropriate officer of DePuy. .

If there are any questions please feel free to contact me. We look forward to working with you.

Very truly yours,

Bradford C. LaPoint
Territory General Manager Northern California

**AGREED AND ACCEPTED:**                    **APPROVED:**

Contractor                                   DePuy Orthopaedics, Inc.

By: _____                          By: _____

Title: _President_                           Title: _Pacific Area Director_

Date: _12/21/06_                             Date: _12/22/06_

As a material inducement to DePuy to enter into the foregoing agreement, and with full intent to be bound by the terms of the foregoing agreement, the following individual(s) agree, represent and warrant that they will personally perform all the obligation of the Contractor and will honor and perform all the promises of the Contractor, including without limitation, those addressing Contractor's noncompete obligations during the term of the foregoing agreement and after termination thereof.

_____
name

_____
date

## APPENDIX A

**Territory:**    **All accounts listed for customer number 701940:**

**Contractor:**    **Gault South Bay Inc.**

**Products:**    DePuy Product categories to include:

- Total Hip Systems
- Total Knee Systems
- O.R. Products (Excluding Hall Power Equipment)
- Extremities
- Bone Cement and Accessories
- Trauma Products

- Co-Marketed Product categories to include:

  o Orthosorb
  o Restore
  o Conduit
  o Alpha BSM
  o Symphony
  o I.C. Graft Chamber
  o Optium
  o Cellect & Cellect DBM Bone Products, excluding those
     with Healos

Case 5:07-cv-04659-JW     Document 35-3     Filed 12/07/2007     Page 24 of 27
Case 5:07-cv-04659-RS     Document 9-4     Filed 09/12/2007     Page 24 of 27

08/24/08 Case 3:07-cv-004267-RMW-CAN     document 1-2 PT filed 09/11/2007     page 13 of 16

## APPENDIX B

**Contractor: Gault South Bay Inc.**

**DePuy Reconstructive Product Commissions:**

Commission tiers on sales of the Product Categories noted below:

11% on all sales up to 10% growth over prior year
16% on all growth sales should Territory finish between 10% and 15% growth over prior year
18% on all growth sales should Territory finish between 15% and 20% growth over prior year
22% on growth at or above 20%

Product Categories:

- o Hips
- o Knees
- o Extremities
- o OR Medical
- o Bone Cement/Accessories
- o Co-Marketed Products
  - Restore

**DePuy Trauma and Biologic Product Commissions:**

Commission tiers on sales of the Product Categories noted below:

14% on all sales up to 15% growth over prior year
18% on all growth sales should Territory finish between 15% and 20% growth over prior year
22% on all growth sales should Territory finish at or above 20% growth over prior year

Product Categories:

- o Trauma Products
- o Co-Marketed Products
  - Orthsorb
  - Alpha BSM

**Symphony/IC Graft Chambers/Conduit/Cellect/Optium ("SICCO") Product Commissions:**

Product Categories:
- o Co-Marketed Products
  - ▪ Symphony
  - ▪ I.C. Graft Chamber
  - ▪ Conduit
  - ▪ Optium
  - ▪ Cellect & Cellect DBM Bone Products, excluding those with Healos

1. For Sales Representatives with Orthopaedic and Trauma product responsibilities SICCO commissions will be calculated as follows:

   - o SICCO Base Commission rate will match the sales representative's orthopaedic base commission rate. SICCO base commission will be paid on 100% of the SICCO net sales billed by DePuy and/or its Affiliates and/or its Business Partners.

   - o DePuy Orthopaedic and SICCO net sales (at 100%) will be combined and measured against prior year sales. Standard growth commission will be paid on Orthopaedic sales in excess of last year's sales. Sales growth commissions for SICCO will be calculated on 50% of the SICCO sales growth dollars. The growth commission percentage rate for SICCO will be the same additional percentage as the rep's orthopaedic growth commissions.

Gault South Bay Inc. will receive an addition 1% commission (total of 12%) towards payment for John Angleri for the length of this contract on the following accounts, (Stanford University 339740, Sequoia HS 327550, VAPA 360129, Menlo Park Surgical Hospital 307232, Surgical Center of Palo Alto 339740) :

**Gault South Bay Inc. will receive a commission subsidy of $3,000 per month towards sales coverage at Stanford University. This will remain in effect until the first to occur, Termination of the Agreement or you cease to have additional individuals working with you to assist you in performing your sales obligations under this Agreement.**

**Upon achieving annual Sales Goal in core Trauma, Hand Innovation and Biologics of 30% growth over prior six months and year-end a 1% bonus on total sales (DePuy Reconstructive excluded) will be paid. Bonus will be paid at 6 and 12 months if sales meet target.**

**Gault South Bay Inc. will receive an addition .5% commission on all Reconstructive Sales should territory be at or above 15% growth and 1% should territory be at or above 20% growth over 2006 year end Reconstructive Sales. Bonus will be paid at 6 and 12 months if sales meet target.**

**Gault South Bay Inc. will receive an additional 1% on all Knee sales should Knee sales meet or exceed sales quota of 15% growth over 2006 year end Knee sales. This will be paid at the end of year.**

## Appendix C

## DePuy Salesforce Certification Program

**General Program Overview:**
The Certification Program will begin February 1, 2006. An 18-month time frame will be used for the Primary Certification period.

*Participation:*
All DePuy Sales Associates and their sub-representatives and/or assistants are required to participate in and comply with the requirements of this Certification Program.

*Reconstructive Sales Associates:* Hips, Knees, Extremities and ORCA
Sales Associates who have contracted with DePuy **prior to February 1, 2006** will need to accumulate 29 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy **after February 1, 2006** will need to accumulate 95 hours.

*Trauma Sales Associates:*
Sales Associates who have contracted with **DePuy prior to February 1, 2006** will need to accumulate 45 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy **after February 1, 2006** will need to accumulate 80 hours.

*Orthobiologics Sales Associates:*
Sales Associates who have contracted with DePuy **prior to February 1, 2006** will need to accumulate 35 Continuing Education Credit hours over the 18-month period to achieve Primary Certification. Associates who contract with DePuy **after February 1, 2006** will need to accumulate 55 hours.

Once the Primary Certification is accomplished, all Sales Associates must complete 25 continuing education credit hours per 12-month period to retain their certification status.

**Primary:** Consists of courses that focus on our core product offerings.
**Continuing Education:** Consists of courses that focus on **honing product knowledge, surgical and selling skills,** which build upon the core product certification.

Sales Associates must complete a minimum of **25 continuing education credit hours** per year to retain their certification status. Failure to meet this requirement will result in being demoted to a non-certified status and at DePuy's sole option, implementation of the Non Compliance Consequences set forth below.

08/24 Case 3:07-cv-0047257PRICAN    document 41-2EPT filed 09/11/2007    page 16 of 18

Pfiedler Enterprises will act as DePuy's third party accreditation body for this program. Pfiedler's role is to grant credits from **The International Association of Continuing Education and Training (IACET).**

**Sales Associate Recognition/Non Compliance Consequence:**

*Company Store Representatives:*
Beginning in 2007, DePuy will reduce commissions ½% for each year a Sales Associate does not meet certification requirements. The maximum commission penalty will be 1%. Failure to achieve certification in any given year is considered a material breach of the Sales Associate Agreement.

*Recognition:*
All Sales Associates achieving certification will be recognized at the NSM. Other recognition may include name badge enhancement to identify certification and certification insignia that could be added to business cards indicating certification. Sales Associate certification accomplishments will also be featured prominently on www.accessdepuy.com.

**Course Catalog:**
A course catalog detailing the various learning opportunities and associated CMEs will be distributed prior to the start of each calendar year. The Courses included in this catalog may be added, modified and or deleted by DePuy at anytime. However, the Sales Associate who successfully completed a Course prior to deletion will retain credits for that Course.

**New requirements for OST learning connections 08/2006**
**Credit requirements for primary certification are as follows:**

**Biologics Certification Track**

- Start date before February 1, 2006 – 20 credit hours Primary - 12, Elective - 8

- Start date after February 1, 2006 –38 credit hours – Primary -30, Elective -8

**Trauma and Extremities Certification Track**

- Start date before February 1, 2006 – 31 credit hours – Primary 23, Elective 8

- Start date after February 1, 2006 – 76 credit hours – Primary 68, Elective 8

**Reconstructive Products Certification Track**

- Start date before February 1, 2006 – 36 credit hours – Primary 29, Elective 7

- Start date after February 1, 2006 – 84 credit hours – Primary 77, Elective 7