**Declaration of Tory E. Griffin in Support of Consolidation of Actions**

# EXHIBIT 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEPUY ORTHOPAEDICS, INC.,    )
                             )
        Plaintiff            )
                             )
    vs.                      )        CAUSE NO.  3:07-CV-425RM
                             )
GAULT SOUTH BAY, INC., and   )
ROBERT GAULT,                )
                             )
        Defendants           )

<u>OPINION AND ORDER</u>

This cause is before the court on Robert Gault's motion to dismiss for lack

of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) and

12(b)(3) and Mr. Gault's motion to dismiss for improper venue pursuant to 28

U.S.C. § 1391, or alternatively, the defendants' motion to transfer venue pursuant

to 28 U.S.C. § 1404, or stay. Mr. Gault maintains that the claims of the plaintiff

DePuy Orthopaedics, Inc., which relate to the alleged breach of a sales

representative agreement between Gault South Bay and DePuy, don't give rise to

minimum contacts between Mr. Gault and the State of Indiana sufficient to

subject Mr. Gault to this court's personal jurisdiction. Mr. Gault also claims that

venue is improper in this court because the claims alleged against him have no

connection to Indiana. If the case is not dismissed on one of these grounds, Mr.

Gault contends that this action should be transferred to the Northern District of

California, where the defendants have an action pending against DePuy relating

to the same agreement. Alternatively, Mr. Gault requests that this case be stayed pending resolution of the California dispute.

During the motions' pendency, the court received a letter from counsel for the defendants that was difficult to interpret. The letter explained that these motions were pending and that a preliminary injunction hearing was scheduled (facts already known to the court, of course), detailed the importance of making travel arrangements from California to Indiana for Mr. Gault and his witnesses (a topic already briefed at length), and asked the court for notice when a ruling was imminent. Complying with the request wouldn't have solved anyone's problems: knowledge that a ruling was imminent would spare no preparation unless the ruling itself were known. The court can only assume that the letter (which the court received by facsimile transmission while conducting the jury trial of another case) was designed to prompt the court to rule more quickly than it would have done had the letter not been sent. Such communication to the court helps neither the court nor the client of the attorney who sends it.

## I. Factual Background

On September 11, 2007, DePuy filed its complaint in this court against Gault South Bay and Robert Gault, alleging that Gault South Bay and Mr. Gault breached certain covenants not to compete contained in a sales representative agreement entered into between DePuy and Gault South Bay. DePuy is an Indiana corporation that manufactures, sells, and distributes orthopedic implants and

operating room products through independent contractor sales representatives located throughout the country. Because its sales representatives act as the primary point of contact with the physicians and hospitals that constitute DePuy's customers, DePuy generally executes agreements with its sales representatives restricting outside competition.

In November 2006, DePuy entered into a sales representative agreement with California corporation Gault South Bay, through its president and majority stockholder, Mr. Gault. Mr. Gault signed the agreement and its amendments on Gault South Bay's behalf as its "President." He didn't sign the separate paragraph that permitted him to execute the contract in his individual capacity. Under the agreement, DePuy appointed Gault South Bay as its representative for the sale of specified lines of DePuy products to accounts located in and around the San Francisco bay area. The agreement imposed a number of obligations on Gault South Bay while the contract was in effect and after its termination, including best efforts and non-compete clauses. The agreement also contained a forum selection clause, designating Indiana as the venue for litigating any claims related to or arising from the agreement.

In August 2007, DePuy notified Gault South Bay that it was terminating the agreement, claiming that Mr. Gault had caused Gault South Bay to breach the contract by engaging in activities to assist DePuy's competitor, Biomet Inc. On August 24, Gault South Bay and Robert Gault filed suit in California state court seeking a declaration that the non-compete provisions in the sales agreement are

void and unenforceable under California law. DePuy removed that case to the United States District Court, Northern District of California, on the basis of diversity jurisdiction; that action pends.

About two weeks after the defendants filed suit in California, DePuy filed this action, asserting breach of contract claims against Gault South Bay as well as tortious interference, breach of duty of loyalty, and unfair competition claims against Gault South Bay and Mr. Gault. DePuy also moved for injunctive relief, requesting that the court enjoin Gault South Bay and Mr. Gault from engaging in competitive activities allegedly in breach of the sales agreement. The court denied DePuy's motion for a temporary restraining order and set the cause for a hearing on DePuy's preliminary injunction motion.

Mr. Gault moved the court to dismiss DePuy's claims against him under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), arguing that he hasn't purposefully established sufficient minimum contacts for this court to exercise personal jurisdiction over him and that the exercise of personal jurisdiction doesn't comport with fair play and substantial justice. Mr. Gault and Gault South Bay also argue that either venue is improper in the Northern District of Indiana or transfer of venue to the Norther District of California is appropriate. Alternatively, they ask the court to stay the case pending resolution of the California dispute.

DePuy counters that Mr. Gault's several trips to Indiana and acceptance of commission payments from DePuy's Indiana office were business dealings in

4

furtherance of Gault South Bay's performance of the parties' sales agreement. DePuy also claims that Mr. Gault is Gault South Bay's alter ego, so the Indiana forum selection clause in the sales agreement applies to Mr. Gault and confers personal jurisdiction on him. Similarly, DePuy contends that venue is proper in the Northern District of Indiana pursuant to the forum selection clause and because a substantial part of the events giving rise to DePuy's claims allegedly took place in Indiana. DePuy also argues that the defendants have not established that transfer is appropriate in light of the forum selection clause.

## II. DISCUSSION

### A. Personal Jurisdiction

Mr. Gault challenges the court's ability to exert personal jurisdiction over him pursuant to Rule 12(b)(2). A motion to dismiss under 12(b)(2) generally places the burden on the plaintiff to establish jurisdiction. *See* RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). The plaintiff may make a prima facie showing of jurisdiction by demonstrating, via affidavits or other written materials, facts that, if true, would be sufficient to establish jurisdiction over the non-resident defendant. *See* Reliable Tool & Mach. Co., Inc. v. U-Haul Intl'l, Inc., 837 F. Supp. 274, 278 (N.D. Ind. 1993). Any conflicts in the facts must be resolved in favor of the non-moving party. Id. at 279.

In a diversity action filed pursuant to 28 U.S.C. § 1332, a federal district court has personal jurisdiction over a non-resident defendant "only if a court of

the state in which it sits would have such jurisdiction." Purdue Research Found.
v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 779 (7th Cir. 2003); see also Steel
Warehouse of Wisconsin, Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998).
Determining whether jurisdiction over an out-of-state defendant is proper involves
two inquires: (1) whether the forum state's long-arm statute allows jurisdiction,
and (2) whether assertion of personal jurisdiction violates due process. See
Anthem Ins. Cos. v. Tenet Healthcare Corp., 730 N.E.2d 1227, 1232 (Ind. 2000);
see also Wilson v. Humphreys (Cayman) Ltd., 916 F.2d 1239, 1243 (7th Cir.
1990). Indiana courts determine their personal jurisdiction over non-resident
defendants by applying the long-arm statute set forth in Indiana Trial Rule 4.4(A),
which extends personal jurisdiction to the limits allowed under the Due Process
Clause of the Fourteenth Amendment to the United States Constitution. See
LinkAmerica Corp. v. Cox, 857 N.E.2d 961, 967 (Ind. 2006). Accordingly, the court
"need only engage in a single search for the outer limits of what due process
permits." Reliable Tool v. U-Haul, 837 F. Supp. at 278; see also Purdue Research
v. Sanofi-Synthelabo, 338 F.3d at 779 (citing Int'l Med. Group, Inc. v. Am.
Arbitration Ass'n, Inc., 312 F.3d 833, 846 (7th Cir. 2002)).


### 1. Minimum Contacts

To subject a non-resident defendant to personal jurisdiction, due process
requires that the defendant must have certain minimum contacts with the forum
state "such that the maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Necessary minimum contacts are defined as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

A court may obtain personal jurisdiction over a defendant based upon either the defendant's general contacts with the forum or the defendant's specific contacts with the forum. See Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, 149 F. Supp. 2d 615, 624 (S.D. Ind. 2001) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). General personal jurisdiction requires substantial, continuous, and systematic contacts and presence in the forum state, id., while specific personal jurisdiction "is utilized where the defendant lacks a general presence in the state and where the only possible basis for hauling the defendant into court arises from or is related to the contacts giving rise to the litigation." N. Texas Steel Co., Inc. v. R.R. Donnelley & Sons Co., 679 N.E.2d 513, 518 (Ind. Ct. App. 1997) (citation omitted). A "single act" can support a finding of specific jurisdiction, so long as that act creates a "substantial connection" with the forum state. Id.

There is no allegation that Mr. Gault engaged in the sort of continuous and systematic business contacts necessary to support general personal jurisdiction. Mr. Gault had no office, employees, or property in the state of Indiana. As such,

the court must determine if Mr. Gault purposefully availed himself of the privilege of conducting business in Indiana sufficient to subject him to specific personal jurisdiction in this court.

The existence of specific personal jurisdiction depends on the "quality and nature" of the non-resident defendant's contact with the forum state. *See* Kulko v. Superior Court of California, 436 U.S. 84, 92 (1978). This analysis "is fact-specific and determined on a case-by-case basis," focusing on a number of factors including: "(1) whether the claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being hauled into court in that state; (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state." Brockman v. Kravic, 779 N.E.2d 1250, 1256 (Ind. App. 2002).

Mr. Gault contends that his contacts with Indiana are insufficient to meet the minimum requirements for specific personal jurisdiction. Mr. Gault says he is a citizen and resident of the State of California and has only traveled to Indiana on four occasions over the past 13 years. Mr. Gault claims that none of these occasions were related to his performance of the sales agreement with DePuy and that he initiated only one of these trips. Mr. Gault maintains that he dealt almost exclusively with DePuy's Emeryville, California, office and was admonished against contacting DePuy's Indiana office directly.

DePuy responds that Mr. Gault regularly communicated with DePuy representatives located in Indiana. DePuy contends that three of Mr. Gault's trips

to Indiana were in connection with his work for DePuy and were efforts to advance his individual business interests: Mr. Gault traveled to Indiana in August 1994 for orientation at DePuy; in August 1999, he returned to Indiana on his own initiative to meet with DePuy's president out of concern for his future employment as a DePuy sales representative after Johnson & Johnson acquired the company; and he brought a surgeon to DePuy's Indiana facilities in November 2001 as part of his duties as a sales representative. Further, DePuy contends that Mr. Gault maintained contacts with Indiana by accepting commission payments made from DePuy's Indiana office to Mr. Gault's personal checking account.

Although Mr. Gault didn't sign the 2006 sales agreement in the space provided for individual representatives, his actions as Gault South Bay's president and primary employee subject him to this court's personal jurisdiction. *See* Calder v. Jones, 465 U.S. 783, 788-790 (1984) (stating that agency status alone does not automatically insulate an employee from jurisdiction). Unlike an ordinary employee who has no control over or derives no direct benefit from his employer's sales in a distant state, Mr. Gault was the primary participant in the parties' distributorship arrangement and personally caused the alleged breach of the sales agreement. Id. Mr. Gault purposefully availed himself of the benefits and protections of the state's laws by traveling to Indiana and deliberately engaging in significant business activities here. *Cf.* Baseball Card World, Inc. v. Pannette, 583 N.E.2d 753, 755 (Ind. App. 1991) (holding that the plaintiff did not establish jurisdiction where the non-resident defendant's "sole contact with Indiana

9

consist[ed] of periodic telephone communications to place orders with [the plainitff."). Mr. Gault's three trips to DePuy's headquarters in Indiana were not "random, fortuitous, or attenuated," but rather, they were directly related to his responsibilities as a DePuy sales representative. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-473 (1985). Mr. Gault's fourth trip to Indiana to interview for a sales position with DePuy's competitor, Biomet, also provides contacts to support the court's exercise of personal jurisdiction. *See* Brockman v. Kravic, 779 N.E.2d at1256 (noting that the contacts necessary for personal jurisdiction may include "any acts physically performed in the forum state").

In addition, Mr. Gault's course of dealing with DePuy demonstrates minimum contacts with Indiana. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 716 (7th Cir. 2002) ("'[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant.") (citing Burger King v. Rudzewicz, 471 U.S. at 478). Mr. Gault contracted with DePuy in his individual capacity several times before the 2006 sales agreement. These contracts formed a series of agreements relating to Mr. Gault's and Gault South Bay's distribution of DePuy products in the San Francisco bay area. Each of these prior contracts contained an Indiana forum selection clause, so Mr. Gault could reasonably anticipate being sued in Indiana for his alleged breach of the 2006 sales agreement. *See* Hyatt v. Coco, 302 F.3d at 717 (holding that the relevant set of dealings in regard to the court's minimum

contacts analysis encompassed the "parties' entire course of conduct" with respect to the disputed contract); *see also* RAR v. Turner Diesel, 107 F.3d at 1278-1279 (explaining that past dealings in an ongoing commercial relationship may be relevant to determining jurisdiction with respect to a disputed contract where the "strong similarities between transactions immediately suggest the substantive relevance of the past transactions.").

DePuy also argues that the court may exercise personal jurisdiction over Mr. Gault because he was operating as Gault South Bay's alter ego. A court may pierce the corporate veil and assert personal jurisdiction over individuals who otherwise would not be subject to the court's jurisdiction where corporate form is ignored. *See* Burkemper v. Waite, 2007 WL 781658, at *5 (N.D. Ind. Mar. 12, 2007) (citing IDS Life Ins. Co. v. Sun America Life Ins. Co., 136 F.3d 537, 540 (7th Cir. 1998)); *see also* In re Teknek, L.L.C., 354 B.R. 181, 196 n.5 (Bankr. N.D. Ill. 2006) ("The exception permits the individual corporate defendant to be roped in with personal jurisdiction if the plaintiff makes a *prima facie* showing . . . that the corporate form is a shell or sham rather than a real, separate entity."). Under Indiana law, application of the piercing the corporate veil doctrine depends on a number of non-exhaustive factors, including the failure to observe required corporate formalities and the commingling of assets and affairs. *See* Escobedo v. BHM Health Assoc., Inc., 818 N.E.2d 930, 933 (Ind. 2004).

Mr. Gault instructed DePuy to directly deposit Gault South Bay's commission payments into the personal checking account that he shared with his

wife and never requested that DePuy make payments to Gault South Bay. Mr. Gault contributed his sales commissions to Gault South Bay, however, for federal tax purposes. These facts support the conclusion that the distinction between individual and corporate obligations was not observed and that Mr. Gault was acting as Gault South Bay's alter ego. If Mr. Gault was acting as Gault South Bay's alter ego, not only would he be subject to personal jurisdiction due to Gault South Bay's substantial contacts with Indiana but also he would be subject to the forum selection clause in the 2006 sales agreement, which is sufficient to confer personal jurisdiction on Mr. Gault as a non-resident defendant. *See* TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 589 (7th Cir. 2005) ("[A] valid forum-selection clause, even standing alone, can confer personal jurisdiction.").

### 2. *Fairness Inquiry*

Because Mr. Gault's contacts are sufficient, the court must evaluate whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice by weighing a variety of interests. *See* Brockman v. Kravic, 779 N.E.2d at 1256 (citing Anthem v. Tenet Healthcare Corp., 730 N.E.2d at 1234). The court may evaluate the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states

in furthering fundamental substantive social policies. Burger King v. Rudzewicz, 471 U.S. at 477.

Mr. Gault argues that fairness dictates that he shouldn't be subject to this court's personal jurisdiction. His argument hinges on his claim that he stands to face a significant burden if forced to travel from California to Indiana for the purposes of this litigation. In particular, Mr. Gault lives in California and contends that all of the documents and witnesses relevant to DePuy's claims are located in California. While inconvenience to the parties and witnesses is a factor in the personal jurisdiction analysis, this consideration may be accommodated through consideration of means other than jurisdiction. See Purdue Research v. Sanofi-Synthelabo, 338 F.3d at 781 n.10 (noting that although the Burger King factors may militate in favor of the exercise of jurisdiction where the defendant's minimum contacts with the forum are relatively weak, they "rarely will justify a determination against personal jurisdiction."). The possibility of transfer of venue to the Northern District of California adequately mitigates the inconvenience to the witnesses and serves the interests of justice, as explained below. The burden on Mr. Gault doesn't outweigh Indiana's interest in enforcing the contractual obligations of its companies or DePuy's interest in obtaining relief. See Travel Supreme, Inc. v. NVER Enter., Inc., 2007 WL 2962641, at *5 (N.D. Ind. Oct. 5, 2007) (finding the exercise of personal jurisdiction fair based on Indiana's "interest in adjudicat[ing] matters related to the contractual obligations of its residents.").

Exercise of personal jurisdiction over Mr. Gault is neither unreasonable nor unfair.

The court finds that Mr. Gault's contacts with Indiana are specifically related to the business of this lawsuit and sufficient to subject him to suit in this state. Further, the exercise of personal jurisdiction over Mr. Gault comports with traditional notions of fair play and substantial justice. Accordingly, the court denies Mr. Gault's motion to dismiss for lack of personal jurisdiction.

### B. Improper Venue

Mr. Gault also seeks dismissal on the ground that Indiana is an improper forum for DePuy's claims against him. Federal Rule of Civil Procedure 12(b)(3) authorizes a district court to dismiss an action for improper venue. Venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situation, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

Mr. Gault claims that venue is improper in Indiana because neither of the defendants reside in the state and the bulk of the events giving rise to the dispute occurred in California. DePuy contends that venue analysis is unnecessary based

on the mandatory forum selection clause in the sales agreement. Even without a forum selection clause, DePuy says, venue would be proper in Indiana because Mr. Gault's allegedly tortious actions relating to his contact with Biomet occurred in Indiana. Mr. Gault objects to DePuy's assertion that the mandatory forum selection clause binds him, since he did not execute the agreement in his individual capacity.

DePuy's claims against Mr. Gault arise from the contractual relationship between DePuy and Gault South Bay, and so are within the scope of the agreement's forum selection clause. It remains to decide whether the forum selection clause binds Mr. Gault personally. As DePuy notes, the language of the 2006 sales agreement binds all Gault South Bay employees, as well as the corporation itself.[1] Further, Mr. Gault may be bound as a non-party because of his close relation to the dispute. Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209-210 (7th Cir. 1993). "[T]o bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." Id. at 209.

In Hugel, for example, the court of appeals affirmed the district court's decision to dismiss the plaintiffs' suit based on a forum selection clause contained in an agreement between one of the individual plaintiffs (Hugel) and the

---

[1]The 2006 sales agreement contains language applying all of its provisions to Gault South Bay's employees: "Contractor agrees that any such employees, individuals or entities . . . will be bound by . . . the non-compete provisions and all other provisions of this agreement to which Contractor is subject."

defendant. Id. at 210. Hugel signed the agreement in his individual capacity and the other plaintiffs, corporations controlled and owned by Hugel, were not parties to the agreement. Although the corporate plaintiffs argued that the forum selection clause applied only to Hugel, the district court found that the corporations were "so closely related to the dispute that they [were] equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue." Id; see also Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd., 364 F.3d 884, 889 (7th Cir. 2004) (explaining that a forum selection clause may not be "defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates."). The court's determination turned on the fact that Hugel was the president and chairman of the board and the majority shareholder for both corporations.

Similarly, Mr. Gault's close relationship to the current dispute makes it foreseeable that he should be bound by the 2006 sales agreement's forum selection clause. Mr. Gault is Gault South Bay's president and sole shareholder. He serves as Gault South Bay's primary employee and directs its sales activities for DePuy. Mr. Gault's prior contracts with DePuy contained similar forum selection clauses designating Indiana as the proper venue. Moreover, Mr. Gault's actions form the basis of DePuy's claims with respect to the alleged breach of the contractual relationship between DePuy and Gault South Bay. Mr. Gault is so intertwined in the dispute that he should be subject to the Indiana forum

selection clause. *See* <u>Hugel v. Lloyd's</u>, 999 F.2d at 210.[2] Because Mr. Gault is bound by the forum selection clause, the court need not consider whether venue is proper based on the location of where the events giving rise to the suit took place.

Neither Mr. Gault nor Gault South Bay challenge the validity of the sales agreement's forum selection clause, so the clause is enforceable, and venue is proper in Indiana. <u>Muzumdar v. Wellness Int'l Network, Ltd.</u>, 438 F.3d 759, 762 (7th Cir. 2006) ("[W]here venue is specified with mandatory or obligatory language, the clause will be enforced . . . ."). The court denies Mr. Gault's motion to dismiss for improper venue.


### C. Motion to Transfer

The defendants request that if dismissal is not granted for improper forum, the court transfer the case to the Northern District of California, where the defendants' suit already pends against DePuy. A district court may transfer any civil action to any other district where the plaintiff had a right to bring the case. 28 U.S.C. § 1404(a). In exercising discretion to transfer, district courts employ a "flexible and individualized analysis," focusing on: (1) whether venue is proper in both the transferor and transferee courts; (2) whether transfer is for the

---

[2]Additionally, as described above, if Mr. Gault is deemed to be an alter ego of Gault South Bay, he is bound by the sales agreement and its forum selection clause, thus making venue proper in Indiana. *See* <u>AGA Shareholders, L.L.C. v. CSK Auto, Inc.</u>, 467 F. Supp. 2d 834, 843 (N.D. Ill. 2006) (holding that venue was proper in Arizona due to a mandatory forum selection clause in the parties' agreement).

convenience of the parties and witnesses; and (3) whether the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. *See* Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-31 (1988); *see also* Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989).

As already discussed, venue is proper in this court. Venue is also proper in the Northern District of California, where Mr. Gault and Gault South Bay reside and where a substantial part of the events giving rise to DePuy's claim allegedly took place. 28 U.S.C. § 1391.[3] As a result, the court must consider whether transfer serves the convenience of the parties and witnesses and the interests of justice. As the movants, Mr. Gault and Gault South Bay have the burden of demonstrating that the transferee forum is clearly more convenient. *See* Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986).

### 1. Convenience of the Parties and Witnesses

In deciding whether transfer serves the private interests of the parties and witnesses, the court may consider a number of factors, including: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses." *See* First Nat'l Bank v. El Camino Resources, Ltd.,

---

[3]DePuy also maintains a number of offices in California, including its Emeryville office, through which the majority of negotiations relating to the 2006 sales agreement took place.

447 F. Supp. 2d 902, 911-912 (N.D. Ill. 2006). Examination of the relevant facts and circumstances reveals that transfer of this action to the Northern District of California is the most efficient, convenient, and appropriate action.

DePuy's choice of forum is its home state. Although the plaintiff's choice of forum is generally given substantial weight, "this deference is not absolute and the weight given to the plaintiff's choice of forum can vary depending upon the circumstances of each case." Id. For example, the plaintiff's choice of forum is entitled less deference where the forum is not the site of material events, i.e., where the business decision causing the alleged breach occurred. Id. (citing Hyatt Corp. v. Pers. Comm. Indus. Ass'n, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004)).

The relevant business decisions by Mr. Gault and Gault South Bay allegedly in breach of the 2006 sales agreement occurred outside Indiana. DePuy doesn't dispute that the vast majority of the actions and occurrences pertaining to its allegations relate to customers and sales representatives who reside in California. Because the situs of the material events arguably was in California, DePuy's choice of forum is given less deference. See First Nat'l Bank v. El Camino, 447 F. Supp. 2d at 912. These factors must also be considered in light of the valid forum selection clause designating Indiana as the proper forum for litigating disputes arising from the sales agreement.

Forum selection clauses generally are given deference in determining whether to transfer venue but are not dispositive of a court's decision on a motion

19

to transfer. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. at 30-31 (holding that a forum selection clause "should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in Section 1404(a)."); *see also Heller Fin. v. Midwhey Powder*, 883 F.2d at 1293 (explaining that forum selection clauses are not dispositive "because only one of § 1404(a)'s factors — convenience of the parties — is within the parties' power to waive."). Instead, a forum selection clause will not be enforced if the objecting party can show that enforcement would be unreasonable and unjust, effectively depriving the litigant from its day in court. *See Muzumdar v. Wellness Int'l Network*, 438 F.3d at 762; *see also Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 48 (Ind. Ct. App. 2005) (holding that under Indiana law, forum selection clauses are enforceable if they are freely negotiated and "there is no evidence of fraud or overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court.").

While a forum selection clause in a contract does not foreclose a court from transferring venue, "the signing of a valid forum selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience to the moving party." *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990). Because the forum selection clause in this case applies to both Gault South Bay and Mr. Gault, neither defendant may seek to transfer venue based on its own costs or inconvenience. Either defendant may move for a transfer, however, based on the inconvenience to third parties and in the interest of justice. *Id*; *see also Newcourt*

Linc Fin., Inc. v. Allwire, Inc., 1997 WL 119973, at *3 (N.D. Ill. Mar. 14, 1997) ("Inconvenience to third-parties (most importantly, witnesses) and the interest of justice still may justify a court's decision to transfer venue, even in the face of an otherwise valid forum selection clause."). The defendants must show that being required to litigate in an Indiana federal forum would be unreasonable and unjust.

In light of this framework, the defendants move to transfer the case to the Northern District of California based on the inconvenience to witnesses, the relative ease and access to sources of proof, and the interests of justice. As to the convenience of witnesses, the defendants assert that all of the party and non-party witnesses with knowledge of the relevant facts are located in California. In particular, all of Gault South Bay's employees and the majority of DePuy's employees who work in connection with Gault South Bay reside in California. The defendants intend to rely on non-party physicians and former employees of Gault South Bay to rebut DePuy's allegations that Mr. Gault solicited them on behalf of Biomet. DePuy doesn't dispute that these witnesses are likely unwilling to travel to Indiana to testify, and they will not be subject to this court's subpoena power. This factor weighs in favor of transfer. *See* Karrels v. Adolph Coors Co., 699 F. Supp. 172, 176 (N.D. Ill. 1988) ("The inability to compel the appearance of material non-party witnesses weighs in favor of transfer."); Kendall U.S.A., Inc. v. Cent. Printing Co., 666 F. Supp. 1264, 1268 n.3 (N.D. Ind. 1987) (noting the difficulties of compelling attendance at trial of non-party witnesses who must travel more than 100 miles).

21

As to the relative ease and access to sources of proof, Mr. Gault provides an affidavit stating that all of Gault South Bay's and Mr. Gault's sales records are located in California, as are DePuy's records from its regional California offices. Other relevant documents and evidence, including physician and hospital records, are also located in California. DePuy presents no argument to the contrary, and hasn't informed the court of any evidence located in Indiana. Rather, DePuy relies on the forum selection clause and claims that the location of the parties, witnesses, and documents fails to establish that the defendants will be deprived of their day in court. DePuy doesn't address the significant costs associated with litigating in Indiana and offers no evidence of a connection to the state of Indiana other than the location of its headquarters. When considering the location of all evidence relevant to this case, as well as the witnesses' residences, the location of both parties' records in California favors transfer to that judicial forum.

### 2. Interests of Justice

The court must also consider the interests of justice in determining whether to transfer under § 1404(a). "This analysis focuses on the efficient administration of the court system, rather than the private considerations of the litigants." <u>Amoco Oil Co. v. Mobil Oil Corp.</u>, 90 F. Supp. 2d 958, 961 (N.D. Ill. 2000). Public interest factors include "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." <u>First Nat'l Bank v. El Camino</u>, 447 F. Supp. 2d at 912.

The court's familiarity with applicable law is an important factor, but is not determinative of a decision to transfer. Boone v. Sulphur Creek Resort, Inc., 749 F. Supp. 195, 202 (S.D. Ind. 1990) ("Whether [Indiana] law is to be applied or not, this determination will not override the other considerations relevant to the transfer issue . . . ."). For example, "where the law in question is neither complex nor unsettled, the interest of justice remain neutral between competing courts." First Nat'l Bank v. El Camino Resources, 447 F. Supp. 2d at 914. The 2006 sales agreement contains an Indiana choice of law provision, but DePuy points to nothing so unusual about this case as to make the California court's job overly difficult. As such, this factor favors Indiana, but only slightly.

Similar to the private interest factors, the consideration regarding the relative speed at which a case will proceed to trial also favors transfer. U.S. Court Statistics list the median time from filing to disposition for civil cases in the Northern District of Indiana at 10.8 months versus 7.4 months in the Northern District of California. See FED. CT. MGMT. STATISTICS (2006), available at http://www.uscourts.gov/cgi-bin/cmsd2006.pl. The California action proceeds simultaneously against the same parties and involves the same factual and legal issues. This court had occasion to rule on DePuy's motion for a temporary restraining order but has not yet delved into the substantive legal issues raised by the action and stands in no more advantageous position to proceed with adjudication of this cause than would the Northern District of California.

Therefore, transfer to the Northern District of California promotes judicial efficiency to some degree and reduces the risk of inconsistent judgments.

Finally, California has a greater interest in the outcome of this litigation. Its citizens are more closely related to and interested in the dispute as DePuy seeks to restrict a California resident from pursuing his livelihood in the state of California. Most of the material events giving rise to DePuy's claims occurred in California and concern California residents. Indiana's interest in enforcing its companies' contractual obligations doesn't outweigh California's interest in resolving localized disputes. *See* Doage v. Bd. of Regents, 950 F. Supp. 258, 262 (N.D. Ill. 1997) ("Resolving litigated controversies in their locale is a desirable goal of the federal courts.").

In sum, regardless of whether the forum selection clause governs the parties' convenience, the defendants have demonstrated that the private and public interests in this case would be served to a greater degree in the Northern District of California. Accordingly, the court grants the motion for transfer.

### III. CONCLUSION

For the foregoing reasons, the court:

(1) DENIES Robert Gault's motion to dismiss for lack of personal jurisdiction [Doc. No. 16];

(2) DENIES Mr. Gault's motion to dismiss for improper venue [Doc. No. 15]; and

(3) GRANTS Mr. Gault's motion to transfer pursuant to 28 U.S.C. § 1404.

SO ORDERED.

Dated: November 13, 2007

                                        /s/ Robert L. Miller, Jr.
                                        Chief Judge
                                        United States District Court

cc:    counsel of record