Declaration of Tory E. Griffin in Support of Consolidation of Actions

# EXHIBIT 11

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 2 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 6 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 6 of 27

DOWNEY BRAND LLP
TORY E. GRIFFIN (Bar No. 186181)
MATTHEW J. WEBER (Bar No. 227314)
555 Capitol Mall, Tenth Floor
Sacramento, CA 95814-4686
Telephone: (916) 444-1000
Facsimile: (916) 444-2100

Attorneys for Plaintiff
KENT MAHONEY

FILED
07 AUG 21 AM 9:55

CLERK OF THE SUPERIOR COURT
COUNTY OF STANISLAUS
BY _____ DEPUTY

This case has been assigned to Judge _____, Department ____, for all purposes including Trial.

SUPERIOR COURT OF CALIFORNIA

COUNTY OF STANISLAUS

KENT MAHONEY, an individual,

   Plaintiff,

v.

DEPUY ORTHOPAEDICS, INC., an Indiana Corporation,

   Defendant.

CASE NO. 618179

COMPLAINT

Plaintiff Kent Mahoney ("Mahoney" or "Plaintiff") seeks declaratory relief pursuant to California Code of Civil Procedure Section 1060 and Business & Professions Code section 17200. In support thereof, Plaintiff alleges:

## THE PARTIES

1. Mahoney is an individual residing in Modesto, California.

2. Plaintiff is informed and believe that DePuy Orthopaedics, Inc. ("Defendant" or "DePuy") is an Indiana corporation with its principal place of business in Indiana. Plaintiff is further informed and believe that Defendant maintains sufficient contacts with California such that this court has personal jurisdiction over said defendant. These contacts include, but are not limited to, doing business throughout California, having numerous clients in California, and having several employees residing in California. Moreover, the instant dispute arises out of the contract between Plaintiff and Defendant that was to be performed in Stanislaus County.

COMPLAINT   1   Page 5
Exhibit 1

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 3 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 7 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 7 of 27

3. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff at the time of filing this complaint, and therefore Plaintiff sues said defendants under such fictitious names. Plaintiff will amend this complaint to insert the true name and capacities of the fictitiously named Defendants when the same become known to Plaintiff.

**VENUE**

4. Venue is proper in this court pursuant to Code of Civil Procedure sections 395 or 395.5 because Defendant does not reside in California, and because the controversy regarding the written agreement that is the subject of this declaratory relief action arose in Stanislaus County, California.

**GENERAL BACKGROUND**

5. Defendant is a corporation that designs, manufactures and distributes orthopaedic devices and supplies including hip, knee, extremity, trauma, orthobiologics, and operating room products.

6. In October 2005, Mahoney and Defendant entered into an independent contractor agreement (the "Agreement") whereby Mahoney agreed to act as the independent sales representative for Defendant's products in a certain identified territory. The Agreement had an effective date of January 1, 2006. A copy of the Agreement is attached hereto as Exhibit A.

7. The Agreement purports to be in effect until December 31, 2006, with continuous renewal for one-year terms unless terminated within the time periods set forth in the Agreement. The Agreement states that, while in effect, Mahoney will not "sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent." (Exhibit A, at p. 1.) The Agreement further defines competitive activities in this context as "selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for similar use as those offered by DePuy or any other J&J company, or accepting remuneration or any kind from any person providing such goods and services." (*Id.*)

///// 
/////

2

COMPLAINT

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 4 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 8 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 8 of 27

8. In addition to the restrictive covenant noted in Paragraph 7 above, the Agreement contains an extremely broad covenant not to compete following termination of the Agreement. It provides, in pertinent part:

> You agree that, if this Agreement is terminated for any reason, that for a period of one (1) year after termination of the Agreement, that you will not, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement.
>
> ...
>
> You also agree to waive any defense to entry of a preliminary injunction prohibiting its violation of the noncompetition provisions of this Agreement based on the existence of an adequate remedy at law by DePuy.

(Exhibit A, at p.6.)

9. On or about August 1, 2007, Mahoney and Defendant agreed to terminate the Agreement. On August 9, 2007, Defendant sent Mahoney a letter purporting to require Mahoney, in exchange for Defendant's consent to terminate the Agreement, to reaffirm all non-compete provisions in the Agreement, and to agree not to sue Defendant for any claims arising out of or related to the Agreement. Mahoney did not sign or agree to the terms set forth in Defendant's August 9, 2007 letter as such terms were inconsistent with the prior agreement between Mahoney and Defendant, and because such terms were contrary to California law.

10. The Agreement also contains a waiver of a right to a jury trial. (Exhibit A, at p.8.) Such provisions are unenforceable in California.

11. Mahoney is interested in exploring opportunities in his profession, but Defendant continues to insist that the non-compete provisions in the Agreement are valid and remain in effect for one year after termination of the Agreement.

12. By this action, Plaintiff wishes to have this court declare that the non-compete provisions contained in the Agreement are void and invalid as contrary under California law, due to California's strong public policy against agreements restricting an individual from employment in his or her chosen trade or profession. (*See* Business and Professions Code Section 16600). In particular, Plaintiff seeks to have this court declare all non-compete in the Agreement void as an

3

COMPLAINT   Page 7
Exhibit 1

Case 5:07-cv-04659-JW    Document 35-12    Filed 12/07/2007    Page 5 of 15

Case 1:07-cv-01321-AWI-SMS    Document 4-2    Filed 09/11/2007    Page 9 of 26
Case 1:07-at-00485    Document 1    Filed 09/10/2007    Page 9 of 27

1  improper restraint of trade under Business and Professions Code Section 16600. (*See Application*
2  *Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881 (1998)).
3      13.  Plaintiff further seeks to have the Agreement declared invalid insofar as the one-
4  year term purports to limit Mahoney's ability to terminate the Agreement, or insofar as the one-
5  year term purports to prohibit Mahoney from engaging in his chosen profession during this one-
6  year period. Enforcement of the one-year term against Mahoney would constitute an unlawful
7  restraint of trade in violation of California law.

### FIRST CAUSE OF ACTION
### REQUEST FOR DECLARATORY RELIEF

10      14.  Plaintiff incorporates by reference the allegations contained in paragraphs 1
11  through 13, as though fully contained herein.
12      15.  An actual controversy has arisen and now exists between Plaintiff and Defendant
13  concerning their respective rights and obligations under the Agreement. Plaintiff believes the
14  Agreement is terminable at will, and that the non-compete provisions contained in the Agreement
15  are void and unenforceable. Plaintiff, however, is informed and believes, and thereon alleges,
16  that Defendant disputes these assertions.
17      16.  Plaintiff requests a judicial determination regarding the validity and enforceability
18  of the non-compete provisions contained in the Agreement, as well as the termination provision
19  of the Agreement and the waiver of the right to a jury trial.
20      17.  A judicial declaration is necessary and appropriate at this time under the
21  circumstances so that Mahoney may ascertain the scope and extent of his right to do business in
22  his chosen profession.

### SECOND CAUSE OF ACTION
### UNFAIR COMPETITION
(Business & Professions Code § 17200)

25      18.  Plaintiff incorporates by reference the allegations contained in paragraphs 1
26  through 17, as though fully contained herein.
27  /////
28  /////

Page __8__
Exhibit __1__

4

COMPLAINT

08/21/2007 11:11 FAX 209 474 3654    HAKEEM ELLIS & MARENGO    @008/026

Exhibit "1" Page 11

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 6 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 10 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 10 of 27

1  19.   The Agreement is unlawful and unfair within the meaning of Business &
2  Professions Code Section 17200 insofar as the Agreement restricts Mahoney's ability to compete,
3  or otherwise restricts the ability to terminate the Agreement.
4  20.   Plaintiff seeks an injunction to prohibit enforcement of the invalid portions of the
5  Agreement, as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For a declaration that the non-compete provisions contained in the Agreement are void and unenforceable in California, that the Agreement is terminable at the will of Mahoney;
2. For a preliminary and permanent injunction preventing Defendant from enforcing any non-compete provision contained in the Agreement, or from enforcing any provision of the Agreement that purports to restrict the ability to terminate the Agreement prior to a date certain;
3. For attorneys' fees, according to proof and as permitted by law;
4. For costs of suit as permitted by law; and
5. For such other relief as the court deems just and proper.

DATED: August 20, 2007       DOWNEY BRAND LLP

By: _____
MATTHEW J. WEBER
Attorney for Plaintiff
KEN... EY

Page 9
Exhibit 1

5
COMPLAINT

08/21/2007 11:17 FAX 209 474 3654   HAKEEM ELLIS & MARENGO   ☑ 009/026

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 7 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 11 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 11 of 27

**EXHIBIT A**

Page __10__
Exhibit __1__

08/21/2007 11:17 FAX 208 474 3654   HAKEEM ELLIS & MARENGO   @010/026

Exhibit "1" Page 13

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 8 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 12 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 12 of 27

**DePuy**
*a johnson & johnson company*

DePuy Sacramento
2600 Venture Oaks Way
Suite 100
Sacramento, CA 95833
Tel: +1 (916) 853 1860
Fax: +1 (916) 853 2580

October 1, 2005

Dear

Effective, January, 1 2006, (the "Effective Date") please accept this letter as DePuy Orthopaedics, Inc.'s ("DePuy") appointment of you as its independent sales representative for the specific DePuy Territory ("Territory") and specific DePuy product categories (the "Products") as outlined on the attached Appendix A, which appendix is incorporated herein by reference. DePuy may add or delete any or all Product category or categories included on Appendix A or change the category or classification of any or all of the Products included in the Product categories listed on Appendix A at any time on sixty (60) days prior written notice to you. Except as set forth herein, the Territory described on Appendix A may be modified from time to time only as mutually agreed by the parties.

You agree that you are an independent contractor and not an employee, agent or representative of DePuy. You shall be responsible for making sales calls regarding the Products and completing sales within the Territory in accordance with DePuy and Johnson and Johnson ("J&J") guidelines, including without limitation, policies and procedures concerning prevention of healthcare fraud and abuse, that are made known to you from time to time. You agree to devote your best efforts and sufficient working time to selling DePuy Products. You agree to participate in and comply with the requirements of the Salesforce Certification Program outlined in Appendix C. You agree that DePuy may, on at least thirty (30) days prior written notice to you, change the requirements set forth in the Salesforce Certification Program but may not during the term of this Agreement, modify the Recognition and Non-Compliance section of such Program without your prior written consent. You also agree to attend and participate in sales training and training related to DePuy and/or J&J guidelines, policies and procedures as required by DePuy. The manner in which you perform your obligations under the Agreement is at your sole discretion, provided that you comply with DePuy's sales policies and procedures. You are required to submit orders to DePuy, or, in the case of Co-Marketed Products, (as defined below) to other parties, and may from time to time be requested by DePuy to provide reports to DePuy regarding your sales activities or results. You agree that neither you nor anyone in your employ, nor any member of your immediate family will, during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent. Competitive activities mean selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services. You are, of course, free to engage in any non-competitive activities.

Page ___11___
Exhibit ___1___

08/21/2007 11:11 FAX 209 474 3654   HAKEEM ELLIS & MARENGO   ☒011/026

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 9 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 13 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 13 of 27

October 1, 2005
Page 2

You may hire your own employees or contract with other individuals or entities to assist you in the performance of your duties hereunder, which employees, individuals or entities shall be solely your responsibility and shall be compensated solely by you. You agree that any such employees, individuals or entities will not be subject to DePuy's approval or supervision, but will be bound by the same DePuy and Johnson & Johnson guidelines, policies and procedures, the non-compete provisions and all other provisions of this agreement to which you are subject. You agree to provide DePuy with information regarding such employees and/or copies of any agreements between you and any such employees, individuals or entities as requested by DePuy.

You further agree to modify such agreements as reasonably requested by DePuy to achieve the purposes of this paragraph. You are responsible for maintaining your own office and/or office equipment for your employees' use.

You will be responsible for all federal, state and local income taxes, social security, unemployment compensation, workers compensation and insurance coverage and all expenses incurred by you or your employees in the performance of this Agreement.

Prices for the Products will be set by DePuy at its sole discretion and commissions will be paid based on the actual price charged by DePuy to the customer. You shall not offer or otherwise communicate any discount on any Product without DePuy's prior written consent. DePuy may change the price of any Product at any time. You agree that you will not enter into any agreement with any customer of DePuy or any third party regarding the sale or delivery of the Products and that you have no authority to bind DePuy to such agreements or any other agreements of any kind.

You will not in any way modify DePuy packaging or products, and may only sell DePuy products, which conform to the specifications and quality control procedures of DePuy. You will not knowingly submit to DePuy any false, inaccurate or misleading information regarding the sales of products, the customers to whom the products were sold, or the inventory of products in your possession. You will not engage in direct billing of products to any customer or any other person. Direct billing means any transaction involving a third party's acquisition, use or lease of a DePuy product or instrument which results in such third party being invoiced or charged a price or fee(s) of any kind, including a delivery charge or fee, for the product or instrument by you, someone in your control or in your employ, or by an entity in which you have a financial interest. Pursuant to DePuy's and J&J's policies and procedures, you will immediately report to DePuy any reports of problems with any DePuy product which comes to your attention, including without limitation, adverse events regarding such products.

DePuy will pay you a monthly commission, as described on Appendix B, based on invoice sales completed to customers while this appointment is in effect. It is DePuy's normal business

Page 12
Exhibit 1

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 10 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 14 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 14 of 27

October 1, 2005
Page 3

practice to pay earned commissions by the 20th day of the month following the generation of the invoice. This will be the only compensation paid by DePuy to you regarding sales of the products. DePuy will pay commissions on your sales based upon invoices generated by DePuy. The commission rate for a sale already completed will only be adjusted by mutual written consent. Notwithstanding the foregoing, if you fail to meet the requirements established by DePuy in the Salesforce Certification Program, you agree that DePuy may adjust the commission rates as describe in Appendix C. You agree to repay DePuy on demand any commission paid in error, any commission for which DePuy is unable to collect the underlying invoice, or any advance or any other commission which you did not earn. Commissions on Co-Marketed Products will be paid as set forth below.

You agree to meet mutually agreed upon annual sales quotas for each Product category. Provided this agreement has not been terminated, you agree to meet with DePuy representative(s) no later than thirty (30) days prior to the anniversary of this agreement to discuss such sales quotas for the next year. If you fail to meet with DePuy representative(s) or if you and DePuy cannot reach agreement on such sales quotas before the anniversary date of this agreement, then both parties agree that the annual sales quotas for the next year will be equal to the prior year's sales for each of the following Product or Product Categories, provided these Products or Product Categories are included in Appendix A, in the Territory plus the following percentages: ten percent (10%) for Total Hip Systems and Total Knee Systems; fifteen percent (15%) for Extremities; twenty percent (20%) for Bone Cement and/or Orthobiologics and/or Trauma Products; and three percent (3%) for O.R. Products. In the event that you fail to meet such annual sales quotas for any or all Product categories for two (2) successive calendar quarters on an annualized basis, you agree that DePuy may, at its sole option, may take the following actions on thirty (30) days prior written notice to you: (a) terminate this agreement; or (b) remove any Product category(ies) from the Products listed on Appendix A; or (c) modify the Territory described in Appendix A. DePuy's exercise of any of the foregoing options a, b or c shall not be considered or construed as a waiver of DePuy's right or option to future exercise of any such option for continued failure to meet any sales quota(s).

DePuy will reimburse you certain expenses you incur in connection with your performance of your obligations under this Agreement, in accordance with DePuy sales policies and procedures. In no event, however, will you be reimbursed for your travel or transportation expenses. Notwithstanding the foregoing, DePuy may, at its sole option, reimburse you for travel and related expenses incurred by you in connection with sales training, trade, and educational meetings and seminars, you attend at DePuy's request.

DePuy will supply you at no charge with reasonable quantities of descriptive literature, promotional materials and catalogs describing the products and access to inventory and

Page __13__
Exhibit __1__

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 11 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 15 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 15 of 27

October 1, 2005
Page 4

instruments as DePuy feels is appropriate. DePuy at its option may accept or refuse orders and will not be bound by an order until it is accepted by DePuy. Further, DePuy shall not be liable to you for any loss or damages caused by non-acceptance of orders, by failure to deliver products or by delays in making shipments. You agree that DePuy may at any time this Agreement is in effect and for a period of three (3) years after termination of this Agreement for any reason audit and inspect your business record to ensure compliance with DePuy and J&J policies and procedures.

From time to time during the term of this appointment, DePuy may, but shall not be required to, offer new products for sale in the Territory ("New Products"). With regard to such New Products in the Territory, DePuy reserves the right, in its sole discretion, to (a) on thirty (30) days prior written notice to you, require you to market and solicit sales of New Products pursuant to the terms of this Agreement; or (b) on thirty (30) days prior written notice to you, require you to jointly introduce and market such New Products in conjunction with the efforts of DePuy and any other J&J company or companies ("Affiliate") and/or DePuy's business partners ("Business Partner"). For purposes of this Agreement, an "Affiliate" is any other company or entity controlling, controlled by or under common control with DePuy and a Business Partner shall include, without limitation, an individual or entity which is not an Affiliate and which has contracted with DePuy regarding the marketing or distribution of such New Product; or (c) introduce and market such New Product on DePuy's own behalf or through its Affiliates on an exclusive basis, in which event such New Products will not be made available to you or included in the Products covered by this Agreement. DePuy shall have the sole and exclusive right to establish the terms under which New Products will be marketed and to make all decisions regarding such marketing arrangements, including but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Notwithstanding anything to the contrary contained in this Agreement, DePuy shall not be liable to make any payment to you with regard to a New Product if Company introduces and markets such New Product pursuant to (c) in the immediately preceding paragraph. All of your obligations regarding Products shall also apply to any New Products which are added to this Agreement.

Notwithstanding anything herein to the contrary, DePuy shall have the right to enter into Co-Marketing Arrangements (as defined below) with its Affiliates related to the marketing, representation and sale of New Products. As used herein, "Co-Marketing Arrangement" means that New Products subject to a Co-Marketing Arrangement will be marketed, represented and sold in the Territory through the sales forces of DePuy and/or its Affiliates and/or its Business Partners. DePuy reserves the sole right to establish the terms under which New Products will be co-marketed and to make all decisions regarding such Co-Marketing Arrangements, including

Page 14
Exhibit 1

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 12 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 16 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 16 of 27

October 1, 2005
Page 5

but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Products currently subject to a Co-Marketing Arrangement are identified on Appendix A, which may be modified from time to time by DePuy. Products and New Products currently subject to a Co-Marketing Arrangement or which become subject to a Co-Marketing Arrangement during the term of this Agreement will be referred to herein as "Co-Marketed Products". Commissions from the sale of Co-Marketed Products will be included in commission payments made to you within forty-five (45) days of the first to occur of (a) receipt by DePuy of the actual commission from the applicable Business Partner or Affiliate or (b) receipt by DePuy of a report from the Business Partner or Affiliate confirming the sale and/or commission due from the sale of the Co-Marketed Product.

This appointment will remain in effect until December 31, 2006. The appointment shall be automatically renewed for one (1) year periods thereafter unless terminated by either party on sixty (60) days' notice prior to the end of the initial term or any renewal period. In the event that DePuy provides written notice pursuant to this paragraph that this Agreement will not be renewed or extended at the end of the initial term or any renewal term, you agree that anytime in the sixty (60) day period immediately prior to termination or expiration of this Agreement, DePuy may, at its sole option, immediately terminate this Agreement by paying you an amount equal to one (1) month's average commissions based on the prior six (6) months commissions paid to you, in which case the noncompetition period described below will commence upon your receipt of such payment.

In the event that neither party provides sixty (60) days notice prior the end of the term that this Agreement will not be extended for an additional year, DePuy may, on sixty (60) days written notice prior to the end of the term or then current term, change or modify the Territory. However, DePuy agrees, that, except as agreed to by the parties, changes or modifications in the Territory will not occur more than once per year with while this Agreement is in effect.

The appointment may be terminated unilaterally by either party on thirty (30) days' notice in the event of either (a) breach of any provision of this appointment which, if correctable, is not corrected within the thirty (30) days notice period; or, (b) if either party becomes bankrupt or enters into any arrangement with its creditors or enters into liquidation. DePuy, at its sole discretion, may also terminate this Agreement thirty (30) days written notice to you in the event you fail to participate in or comply with the requirements of the Salesforce Certification Program. Notwithstanding the above, however, you do agree that there will be sufficient cause to terminate this appointment immediately in the event that you or any of your employees sells a competitive product, knowingly provides to DePuy false and misleading information regarding products sold, engages in direct billing, violates any written DePuy or J&J policy and procedure, is debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which

Page  /5
Exhibit  /

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 13 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 17 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 17 of 27

October 1, 2003
Page 6

payment may be made by a federal healthcare program, if you knowingly employ or contract with an individual or entity so debarred, excluded or prohibited. You agree to notify DePuy of any final adverse action, discovery of employment by or contract with an excluded individual or entity or exclusion as defined above within thirty (30) days of such an action. You further agree that DePuy may terminate this Agreement immediately if you commit any act or omission which in DePuy's sole determination has or will have a negative effect on the reputation of DePuy and/or J&J. The appointment will automatically terminate in the event of your death.

Upon termination, you further agree to return to DePuy, all DePuy owned inventory, instruments and promotional materials in your possession. Any inventory, instruments and promotional materials related to Co-Marketed Products shall be returned either to DePuy or another party, as directed solely by DePuy. You also agree to reimburse DePuy for any such inventory which is not returned and for which there is no record of sale to any other party or which is returned to DePuy in a damaged condition rendering such inventory incapable of sale. You also agree within thirty (30) days of the termination of your appointment to pay to DePuy any sums that are outstanding. DePuy agrees to pay you any commissions due to you within thirty (30) days of your termination; however, DePuy may offset against such commissions any amounts owed by you to DePuy. You further agree that DePuy may deduct from any commissions owed to you any outstanding amounts resulting from your failure to return to DePuy any inventory, instruments and promotional materials in your possession or for which there is no record of sale or any inventory which has been damaged to a point where it is no longer capable of sale. Any office or other equipment purchased by you shall remain your property upon termination.

You agree that, if this Agreement is terminated for any reason, that for a period of one (1) year after termination of the Agreement, that you will not, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement. In the event of termination of this Agreement as set forth above, the one year period of noncompetition will start on the date such termination is effective. You agree that no claim that you may have against DePuy shall constitute a defense to enforcement of the noncompetition provisions of this Agreement. You also agree to waive any defense to entry of a preliminary injunction prohibiting your violation of the noncompetition provisions of this Agreement based on the existence of an adequate remedy at law by DePuy.

You represent and warrant to DePuy that the execution, delivery, and performance of this Agreement by you will not conflict with, breach, cause a default under, or result in the termination of any contract, employment relationship, agreement, or understanding, oral or written, with any third party, including without limitation any noncompetition covenant to which

Page  16
Exhibit  1

08/21/2007 11:18 FAX 209 474 3654    HAKEEM ELLIS & MARENGO    @016/026

Exhibit "1" Page 19

Case 5:07-cv-04659-JW    Document 35-12    Filed 12/07/2007    Page 14 of 15

Case 1:07-cv-01321-AWI-SMS    Document 4-2    Filed 09/11/2007    Page 18 of 26
Case 1:07-at-00465    Document 1    Filed 09/10/2007    Page 18 of 27

October 1, 2005
Page 7

or by which you are bound and that there are no other commitments or agreements that would prevent you from entering into this Agreement or performing the obligations required of you under this Agreement. In the event that you are so bound or have commitments or agreements that prevent you from entering into this Agreement or performing your obligations under this Agreement, you agree that this Agreement will not commence until you are free of any such agreements or commitments, and that you will not perform any of your obligations under this Agreement while such agreements or commitments are in existence. In the event that the foregoing should delay the Effective Date of this Agreement, you agree that DePuy may, at its sole discretion and without further obligation to you, terminate this Agreement at any time prior to the actual start of this Agreement. You agree to indemnify, hold harmless and defend DePuy, its employees, officers and directors, against any causes of action, claims, suits, proceedings, damages and judgments arising out of any claim by any third party arising out of any alleged or actual misrepresentation or violation of the provisions of this paragraph.

It is expressly stipulated, agreed and understood between the parties that the business relationship between you and DePuy shall be that of independent contractor and not employer-employee or principal-agent. You further agree that the only monetary or economic obligation of DePuy to you shall be to provide commissions as set forth herein that you shall not be entitled to receive and shall not receive from DePuy any medical coverage, vacation pay, pension benefits, stock options, insurance, or any other type of employee or fringe benefit. Should you otherwise have any right to receive any such benefit from DePuy, you hereby expressly waive the right to receive same. Neither you nor DePuy shall have the authority to legally bind the other in contract, debt or otherwise.

You further acknowledge that you may be receiving and processing Protected Health Information ("PHI") as that term is defined in 45 C.F.R Section 164.501 from DePuy or on its behalf, that has been disclosed subject to a HIPAA authorization, under 45 C.F.R. Section 164.508 or to a Business Associate Agreement(s) between DePuy and a healthcare provider or institution, copies of which shall be provided to you by DePuy upon request by you. You will collect, hold, use and disclose such information only for the purposes authorized in the Business Associate Agreement and as expressly directed by DePuy. You shall not disclose any PHI to any third party or use PHI for any purpose, commercial or otherwise. You shall either (a) remove any PHI from your records and/or systems no later than thirty (30) days after receipt of such PHI or (b) take reasonable measures to ensure the security and confidentiality of such PHI. Your failure to comply with this Section shall be considered a material breach of this Agreement and DePuy shall have the right to terminate this Agreement pursuant immediately without payment of any penalty or termination fee.

You further represent and warrant that you are not now and have not at any time in the past been debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare

Page 17
Exhibit 1

08/21/2007 11:18 FAX 209 474 3654    HAKEEM ELLIS & MARENGO    ⌀017/028

Exhibit "1" Page 20

Case 5:07-cv-04659-JW   Document 35-12   Filed 12/07/2007   Page 15 of 15

Case 1:07-cv-01321-AWI-SMS   Document 4-2   Filed 09/11/2007   Page 19 of 26
Case 1:07-at-00465   Document 1   Filed 09/10/2007   Page 19 of 27

October 1, 2005
Page 8

program as defined in 42 U.S.C. Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program and you have not knowingly employed or contracted with an individual or entity so debarred, excluded or prohibited. Finally, you agree that you have no rights of any kind concerning the Territory and cannot assign your appointment to any other party or recover any money from any party to whom DePuy may subsequently assign all or part of the Territory. Any attempt to do so will be cause for DePuy to immediately terminate your appointment as DePuy's independent sales representative. You agree that DePuy may, on thirty (30) days prior written notice to you, assign this Agreement and its obligations hereunder to any third party. We both agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside in the state and/or federal courts located in the state of Indiana. We each specifically agree to waive our right to trial by jury in any litigation arising from this Agreement. We agree that this Agreement supersedes any and all other agreements, written or oral, regarding this appointment and relationship with DePuy. We both agree that the language of this Agreement will be construed as a whole, according to its fair meaning and not for or against either of us, regardless of who drafted such language. If a court of competent jurisdiction or an arbitrator finds or determines any provision of this Agreement invalid or unenforceable, such provision shall not affect the remainder of this Agreement, which shall remain in full force and effect.

If you agree to the terms set forth above, please sign and return to the undersigned the enclosed copy of this document. You agree that the above Agreement is not effective until approved by the appropriate DePuy Area Director for Sales or other appropriate officer of DePuy.

If there are any questions please feel free to contact me. We look forward to working with you.

Very truly yours,


Peter D. Cuffare
Territory General Manager

AGREED AND ACCEPTED:

_____

Date:_____

APPROVED:

DePuy Orthopaedics, Inc.
By:_____

Title:_____
Date:_____

Page 18
Exhibit 1

Exhibit "1" Page 21